**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendant. | Civil Action No. 1:17-cv-01167-JEB |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 1:17-cv-01175-JEB |
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 1:17-cv-01189-JEB |
| FREEDOM WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendants. | Civil Action No. 1:17-cv-01212-JEB |

THE DAILY CALLER NEWS
FOUNDATION,

     Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

     Defendant.

Civil Action No. 1:17-cv-01830-JEB

## **MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND .................................................................................................................. 2

I.  FACTUAL BACKGROUND.......................................................................................... 2

II.  THE FOIA REQUESTS AND RESPONSES ................................................................ 4

  A.  Cable News Network's ("CNN's") Request (Case No. 17-1167) ............................. 4

  B.  Gannett Satellite Info. Network, LLC, *et al.*'s Requests (Case No. 17-1175)............ 5

  C.  Judicial Watch's Request (Case No. 17-1189)............................................................ 6

  D.  Freedom Watch's Request (Case No. 17-1212)........................................................... 7

  E.  The Daily Caller's Request (Case No. 17-1830)......................................................... 8

ARGUMENT ....................................................................................................................... 9

I.  THE SEARCH FOR RESPONSIVE RECORDS WAS REASONABLE .................................. 10

II.  THE COMEY MEMOS ARE EXEMPT FROM DISCLOSURE PURSUANT TO FOIA
    EXEMPTION 7(A)....................................................................................................11

  A.  Exemption 7(A) Applies to the Comey Memos........................................................ 12

  B.  There Has Been No Official "Prior Disclosure" of the Comey Memos .................. 17

  C.  Disclosure of the Comey Memos Will Still Interfere with the Russia Investigation,
      Notwithstanding Mr. Comey's Testimony............................................................... 20

III.  PORTIONS OF THE RECORDS ARE EXEMPT FROM DISCLOSURE PURSUANT TO
     EXEMPTION 1 .......................................................................................................21

III.  PORTIONS OF THE RECORDS ARE EXEMPT FROM DISCLOSURE PURSUANT TO
     EXEMPTION 3 .......................................................................................................25

IV.  PORTIONS OF THE RECORDS ARE EXEMPT FROM DISCLOSURE PURSUANT TO
    EXEMPTION 7(E) ...................................................................................................26

V.      PORTIONS OF THE RECORDS ARE EXEMPT FROM DISCLOSURE PURSUANT TO
        EXEMPTIONS 6 AND 7(C) ....................................................................................................28

CONCLUSION .................................................................................................................................. 31

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*ACLU v. United States Department of Defense,*
  628 F.3d 612 (D.C. Cir. 2011) ........................................................................ 17, 21

*ACLU v. Department of State,*
  878 F. Supp. 2d 215 (D.C. Cir. 2012) .................................................................. 18

*Afshar v. United States Department of State,*
  702 F.2d 1125 (D.C. Cir. 1983) ........................................................................... 18

*Alyeska Pipeline Service Co. v. EPA,*
  856 F.2d 309 (D.C. Cir. 1988) ...................................................................... 10, 16

*Ancient Coin Collectors Guild v. United States Department of State,*
  641 F.3d 504 (D.C. Cir. 2011) ............................................................................. 10

*Armstrong v. Executive Office of the President,*
  97 F.3d 575 (D.C. Cir. 1996) .............................................................................. 10

*Bast v. United States Department of Justice,*
  665 F.2d 1251 (D.C. Cir. 1981) ........................................................................... 30

*Black v. United States Department of Justice,*
  69 F.Supp.3d 26 (D.D.C., 2014) .......................................................................... 19

*Blackwell v. FBI,*
  646 F.3d 37 (D.C. Cir. 2011) .............................................................................. 27

*Blanton v. Department of Justice,*
  63 F. Supp. 2d 35 (D.D.C. 1999) ......................................................................... 31

*Campbell v. Department of Health and Human Services,*
  682 F.2d 256 (D.C. Cir. 1982) ...................................................................... 12, 20

*Center for National Security Studies v. United States Department of Justice,*
  331 F.3d 918 (D.C. Cir. 2003) ................................................................. 13, 14, 23

*CIA v. Sims,*
  471 U.S. 159 (1985) ............................................................................... 9, 24, 26

*Citizens for Responsibility and Ethics in Washington v. United States Department of Justice,*
  746 F.3d 1082 (D.C. Cir. 2014) ........................................................................... 14

*Cottone v. Reno,*
   193 F.3d 550 (D.C. Cir. 1999) ................................................................................. 19

*Crooker v. Bureau of Alcohol, Tobacco & Firearms,*
   789 F.2d 64, 67 (D.C. Cir. 1986) ............................................................................ 12

*Davis v. Department of Justice,*
   968 F.2d 1276 (D.C. Cir. 1992) ............................................................................... 29

*DiBacco v. United States Army,*
   795 F.3d 178 (D.C. Cir. 2015) ................................................................................. 26

*Dorsey v. Executive Office for United States Attorneys,*
   926 F. Supp. 2d 253 (D.D.C. 2013) ........................................................................ 10

*FBI v. Abramson,*
   456 U.S. 615 (1982) ............................................................................................ 9, 13

*Fitzgibbon v. CIA,*
   911 F.2d 755 (D.C. Cir. 1990) ................................................................. 17, 25, 26

*Gardels v. CIA,*
   689 F.2d 1100 (D.C. Cir. 1982) ........................................................................ 23, 26

*Hayden v. National Security Agency,*
   608 F.2d 1381 (D.C. Cir. 1979) ............................................................................... 25

*Hudson River Sloop Clearwater, Inc. v. Department of the Navy,*
   891 F.2d 414 (2d Cir. 1989) .................................................................................... 18

*John Doe Agency v. John Doe Corp.,*
   493 U.S. 146 (1989) ............................................................................................ 9, 13

*Juarez v. Department of Justice,*
   518 F.3d 54 (D.C. Cir. 2008) ................................................................................... 14

*Judicial Watch, Inc. v. FDA,*
   449 F.3d 141 (D.C. Cir. 2006) ................................................................................. 28

*Judicial Watch, Inc. v. United States Department of Justice,*
   306 F. Supp. 2d 58 (D.D.C. 2004) .......................................................................... 16

*Kansi v. United States Department of Justice,*
   11 F. Supp. 2d 42 (D.D.C. 1998) ............................................................................ 13

*Larson v. Department of State,*
    565 F.3d 857 (D.C. Cir. 2009) ................................................................. 23, 24

*Leadership Conference on Civil Rights v. Gonzales,*
    404 F. Supp. 2d 246 (D.D.C. 2005) ............................................................. 9

*Mapother v. Department of Justice,*
    3 F.3d 1533 (D.C. Cir. 1993) ..................................................................... 14

*Maydak v. United States Department of Justice,*
    218 F.3d 760 (D.C. Cir. 2000) ................................................................... 15

*McRae v. United States Department of Justice,*
    869 F. Supp. 2d 151 (D.D.C. 2012) ........................................................... 27

*Military Audit Project v. Casey,*
    656 F.2d 724 (D.C. Cir. 1981) ............................................................. 10, 23

*Moore v. Bush,*
    601 F. Supp. 2d 6 (D.D.C. 2009) ............................................................... 10

*Morley v. CIA,*
    508 F.3d 1108 (D.C. Cir. 2007) ................................................................. 23

*Muslim Advocates v. United States Department of Justice,*
    833 F. Supp. 2d 92 (D.D.C. 2011) ............................................................. 19

*Muttitt v. Department of State,*
    926 F. Supp. 2d 284 (D.D.C. 2013) ............................................................. 5

*National Archives and Records Admininstration v. Favish,*
    541 U.S. 157 (2004) ................................................................................... 29

*Nation Magazine, Washington Bureau v. United States Customs Service,*
    71 F.3d 885 (D.C. Cir. 1995) ............................................................... 29, 30

*New York Times Co. v. NASA,*
    920 F.2d 1002 (D.C. Cir. 1990) ................................................................. 29

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ................................................................................... 12

*Patino-Restrepo v. Department of Justice,*
    246 F. Supp. 3d 233 (D.D.C. 2017) ........................................................... 16

*Perry v. Block*,
    684 F.2d 121 (D.C. Cir. 1982) ........................................................................... 10

*Piper v. United States Department of Justice*,
    294 F. Supp. 2d 16 (D.D.C. 2003) ..................................................................... 10

*Pratt v. Webster*,
    673 F.2d 408 (D.C. Cir. 1982) ........................................................................... 13

*Quiñon v. FBI*,
    86 F.3d 1222 (D.C. Cir. 1996) ........................................................................... 13

*Safecard Services, Inc. v. Securities and Exchange Commission*,
    926 F.2d 1197 (D.C. Cir. 1991) .................................................................. 10, 31

*Suzhou Yuanda Enterprise, Co. v. United States Customs and Border Protection*,
    404 F. Supp. 2d 9 (D.D.C. 2005) ....................................................................... 15

*Swan v. Securities and Exchange Commission*,
    96 F.3d 498 (D.C. Cir. 1996) ............................................................................. 15

*United States Department of the Air Force v. Rose*,
    425 U.S. 352 (1976) .......................................................................................... 29

*United States Department of Defense v. FLRA*,
    510 U.S. 487 (1994) .......................................................................................... 29

*United States Department of Justice v. Reporters Committee for Freedom of the Press*,
    489 U.S. 749 (1989) .................................................................................... 29, 30

*United States Department of State v. Washington Post Co.*,
    456 U.S. 595 (1982) .......................................................................................... 29

*Vazquez v. United States Department of Justice*,
    887 F.Supp.2d 114 (D.D.C. 2012) ..................................................................... 27

*Weisberg v. United States Department of Justice*,
    705 F.2d 1344 (D.C. Cir. 1983) ......................................................................... 10

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) .................................................................... 17, 18

## STATUTES

5 U.S.C. § 552................................................................................................................. 1
5 U.S.C. § 552(a)(4)(B) ................................................................................................. 9
5 U.S.C. § 552(b) ........................................................................................................... 9
5 U.S.C. § 552(b)(1) ..................................................................................................... 21
5 U.S.C. § 552(b)(3) ..................................................................................................... 25
5 U.S.C. § 552(b)(6) ..................................................................................................... 28
5 U.S.C. § 552(b)(7)(A) ........................................................................................ *passim*
5 U.S.C. § 552(b)(7)(C) ............................................................................................... 29
5 U.S.C. § 552(b)(7)(E) ............................................................................................... 27
28 U.S.C. § 533.............................................................................................................. 13
50 U.S.C. § 3024(i)(1) ............................................................................................. 1, 26

## REGULATIONS

28 C.F.R. § 600.4(a)........................................................................................................ 3

## CONGRESSIONAL MATERIALS

H.R. Rep. No. 1497, 89th Cong., 2 Sess. 6 (1966), *reprinted in* 1966 U.S.C.C.A.N.
    2416, 2423..................................................................................................................... 9

## EXECUTIVE ORDER

Executive Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009)....................................... 21, 22, 26

## INTRODUCTION

These consolidated actions arise under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  They involve FOIA requests for records memorializing conversations between then-Director of the Federal Bureau of Investigation ("FBI"), James B. Comey, and President Donald J. Trump, which this memorandum will refer to as the "Comey Memos."

The FBI, under the oversight of Robert S. Mueller III, who has been appointed to serve as special counsel ("Special Counsel"), is currently conducting an investigation into the Russian government's efforts to influence the 2016 Presidential election.  Although this investigation has been the subject of intense public speculation and media reporting, in order to preserve the integrity of the investigation, neither the FBI nor the Special Counsel has officially confirmed any details regarding the investigation.

The Comey Memos at issue in these consolidated cases pertain to this sensitive investigation. The FBI and the Special Counsel have determined that the disclosure of these records at the current time, while this sensitive and high-profile investigation remains ongoing, would be reasonably expected to adversely affect the integrity of that investigation. Accordingly, the Comey Memos have been properly withheld in full pursuant to FOIA Exemption 7(A), which protects documents compiled for law enforcement purposes where their disclosure "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).

The FBI has also properly withheld portions of the responsive records pursuant to Exemptions 1 and 3, as they contain information that has been properly classified in accordance with the operative Executive Order, some of which also falls within the ambit of section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 3024(i)(1).  Information concerning

law enforcement techniques and procedures that have been used in connection with the Russian

interference investigation is also being withheld pursuant to FOIA Exemption 7(E).  Finally,

identifying information of third parties mentioned in the documents has been properly withheld

pursuant to Exemptions 6 and 7(C), because the disclosure of this personal information

implicates significant privacy interests that are not outweighed by any cognizable public interest

in disclosure.

Accordingly, summary judgment should be granted in favor of defendants FBI and the

United States Department of Justice.

## BACKGROUND

## I.      FACTUAL BACKGROUND

On March 20, 2017, then-FBI Director James B. Comey confirmed in public testimony

before Congress "that the FBI, as part of our counterintelligence mission, is investigating the

Russian government's efforts to interfere in the 2016 presidential election, and that includes

investigating the nature of any links between individuals associated with the Trump campaign

and the Russian government and whether there was any coordination between the campaign and

Russia's efforts."  Statement Before the House Permanent Select Committee on Intelligence,

*available at* https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-

investigation (last visited Oct. 12, 2017).  He added that "[a]s with any counterintelligence

investigation, this will also include an assessment of whether any crimes were committed."  *Id.*

Then-Director Comey declined to say more regarding the scope or focus of the investigation

during that public hearing, as the investigation was still open and ongoing.  *Id.*

Director Comey was terminated as FBI Director on May 9, 2017. *See, e.g.*, Compl. (No. 17-1167) ¶ 7 (Dkt. No. 1); Declaration of David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBI ("Hardy Decl.") ¶ 108 (submitted herewith). On May 17, 2017, Deputy Attorney General Rod Rosenstein named former FBI Director Robert S. Mueller III as Special Counsel to oversee the Russia investigation. DOJ Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017). Under the terms of his appointment, Special Counsel Mueller is authorized to "conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)." *Id.* In addition, "[i]f the Special Counsel believes it necessary and appropriate, the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters." *Id.*

The Russia investigation is ongoing. Hardy Decl. ¶ 66. No further information about the subjects, scope, or focus of the investigation has been officially acknowledged by the FBI, Special Counsel Mueller, or any representative of the Department of Justice. *Id.* However, as the complaints filed in these consolidated cases indicate, there has been much media speculation and information provided by unofficial sources circulating in the public domain.

On June 8, 2017, former Director Comey, then a private citizen, testified under oath in open session before the Senate Select Committee on Intelligence ("SSCI"). *See, e.g.,* Compl.

3

(No. 17-1167), ¶ 22 (Dkt. No. 1).  In his Statement for the Record, released to the public on June

7, 2017, former Director Comey outlined how he had drafted contemporaneous memoranda after

various meetings and conversations with President Trump in which he discussed matters

pertaining to the Russia investigation.  https://www.intelligence.senate.gov/sites/default/files/

documents/os-jcomey-060817.pdf ("June 7 Statement").  In his live testimony on June 8, 2017,

former Director Comey again discussed his communications with President Trump regarding,

among other things, the Russia investigation, referencing again his contemporaneous memos.[1]

*See, e.g.,* Compl. (No. 17-1167), ¶ 22 (Dkt. No. 1); Am. Compl. (No. 17-1175), ¶¶ 14-15 (Dkt.

No. 9).  With respect to his conversations with President Trump, former Director Comey stated

that he had "not included every detail" in his testimony.  June 7 Statement, at 1.

## II.     THE FOIA REQUESTS AND RESPONSES

### A.     Cable News Network's ("CNN's") Request (Case No. 17-1167)

On May 16, 2017, CNN producer Greg Wallace submitted a FOIA request on behalf of

CNN to the FBI for "copies of all records of notes taken by or communications sent from FBI

Director James Comey regarding or documenting interactions (including interviews and other

conversations) with President Donald Trump."  Compl. (No. 17-1167), ¶¶ 12, 13 & Exh. A (Dkt.

No. 1).  The FBI responded to CNN's request by letter dated June 16, 2017, stating that the

material requested was being withheld pursuant to FOIA Exemption 7(A), 5 U.S.C.

§ 552(b)(7)(A).  Hardy Decl. ¶ 13 & Exh. CNN-F. The FBI further stated that "[t]he records

---

[1]  The video of former Director Comey's testimony may be found at https://www.
intelligence.senate.gov/hearings/open-hearing-former-director-james-comey-fbi (last visited Oct.
12, 2017).  A transcript is published at http://www.politico.com/story/2017/06/08/full-text-
james-comey-trump-russia-testimony-239295 (last visited Oct. 12, 2017) ("Transcript").

responsive to your request are law enforcement records.  There is a pending or prospective law

enforcement proceeding relevant to these responsive records, and release of the information in

these responsive records could reasonably be expected to interfere with enforcement

proceedings."[2]  *Id.*, Ex. CNN-F.

>    **B.**     **Gannett Satellite Info. Network, LLC,** *et al.***'s Requests (Case No. 17-1175)**

By letter dated May 12, 2017, USA TODAY (the business name of Gannett Satellite

Information Network), along with USA TODAY reporter Brad Heath, submitted a FOIA request

to the FBI requesting, *inter alia*, copies of "any reports, letters, memoranda, electronic mail

messages, FD-302s or other records memorializing conversations between former Director

Comey and President Trump."  Am. Compl. ¶¶ 17-18 (Dkt. No. 9).  By letter dated May 17,

2017, the James Madison Project ("JMP") and Garrett Graff submitted a FOIA request to the

FBI, requesting, *inter alia*, "[a]ny memoranda, notes, summaries and/or recordings . . .

memorializing conversations Director Comey had with President Trump."  *Id.* ¶¶ 27, 35-36.

Also on May 17, 2017, JMP and Lance Markay submitted a FOIA request to the FBI seeking,

*inter alia*, "[t]he memorandum drafted by Director Comey memorializing his conversation with

President Trump on February 14, 2017."  *Id.* ¶¶ 44, 50-51.

The FBI responded to all three of the above requests by letters dated June 16, 2017.

Hardy Decl. ¶¶ 19, 25, 33 & Exs. USA Today-D, JMP/Graff-D, JMP/Markay-C.  In all three

letters, the FBI stated that the material requested was being withheld pursuant to FOIA

---

[2]  CNN also requested expedited treatment of its request.  Compl. (No. 17-1167), ¶ 13 &
Exh. A.  However, this claim is now moot as the FBI has responded to the request.  *See Muttitt v.
Dep't of State*, 926 F. Supp. 2d 284, 296 (D.D.C. 2013).

Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).  Hardy Decl., Exs. USA Today-D, JMP/Graff-D,

JMP/Markay-C.  The FBI further stated that "[t]he records responsive to your request are law

enforcement records.  There is a pending or prospective law enforcement proceeding relevant to

these responsive records, and release of the information in these responsive records could

reasonably be expected to interfere with enforcement proceedings."  *Id.*

JMP, Graff, and Markay filed administrative appeals challenging the FBI's withholding,

which were denied on July 12, 2017.  Am. Compl. ¶¶ 38-39, 53-54.

The FOIA requests submitted by USA TODAY, JMP, Graff, and Markay also requested

additional related records.  Am. Compl. ¶¶ 27, 35-36, 44, 50-51; Hardy Decl. ¶¶ 14, 21, 30.  The

government is still conducting searches for documents responsive to the remaining portions of

these requests, as well as the follow-up responsiveness review of documents identified as

potentially responsive.  Joint Status Report, at 2 (Dkt. No. 17).  The present motion does not

include these parts of plaintiffs' FOIA requests.  The parties will file a further report and

proposed production schedule as to these parts of the requests by October 18, 2017.  *Id.*

### C.    Judicial Watch's Request (Case No. 17-1189)

On May 16, 2017, Judicial Watch electronically submitted a FOIA request to the FBI,

seeking "[t]he memorandum written by former Director James Comey memorializing his

meeting and conversation with President Trump regarding the FBI's investigation of potential

Russian interference in the 2016 United States presidential election.  For purposes of

clarification, this memorandum was reportedly written on or about February 13, 2017 and is the

subject of a New York Times article (enclosed) dated May 16, 2017."  Compl. (No. 17-1189) ¶ 5

(Dkt. No. 1).  The FBI responded to Judicial Watch's request by letter dated June 16, 2017,

stating that the material requested was being withheld pursuant to FOIA Exemption 7(A), 5

U.S.C. § 552(b)(7)(A).  Hardy Decl. ¶ 41 & Ex. Judicial Watch-D.  The FBI further stated that

"[t]he records responsive to your request are law enforcement records.  There is a pending or

prospective law enforcement proceeding relevant to these responsive records, and release of the

information in these responsive records could reasonably be expected to interfere with

enforcement proceedings."  *Id.*, Ex. Judicial Watch-D.

> **D.      Freedom Watch's Request (Case No. 17-1212)**

On May 18, 2017, Freedom Watch submitted a FOIA request to the FBI (along with an

identical one to the Department of Justice's Criminal Division)[3] seeking access to "[a]ny and all

documents and records as defined above, which constitute, refer, or relate in any way to any

memoranda prepared, written and/or issues by former FBI Director James Comey concerning

Barack Obama, Hillary Clinton, Bill Clinton, Lieutenant General Michael Flynn, and President

Donald Trump."  Compl. (No. 17-1212) ¶ 6 (Dkt. No. 1).  With regard to the part of Freedom

Watch's request for documents constituting "any memoranda prepared, written and/or issued by

former FBI Director James Comey concerning . . . . President Donald Trump," the FBI

responded by letter dated June 16, 2017, stating that the material requested was being withheld

pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).  Hardy Decl. ¶ 48 & Ex. Freedom

Watch-D.  The FBI further stated that "[t]he records responsive to your request are law

enforcement records.  There is a pending or prospective law enforcement proceeding relevant to

---

[3] The Court granted the Department of Justice's motion for summary judgment as to the
request addressed to DOJ's Criminal Division on September 22, 2017 (Dkt. Nos. 18 & 19).

these responsive records, and release of the information in these responsive records could reasonably be expected to interfere with enforcement proceedings." *Id.*, Ex. Freedom Watch-D.

The FBI is still conducting searches for documents responsive to the remaining portions of Freedom Watch's request, that is, for "[a]ny and all documents and records . . . , which constitute, refer, or relate in any way to any memoranda prepared, written and/or issues by former FBI Director James Comey concerning Barack Obama, Hillary Clinton, Bill Clinton, Lieutenant General Michael Flynn, and President Donald Trump," excluding the Comey Memos, as well as the follow-up responsiveness review of documents identified as potentially responsive. Joint Status Report, at 2 (Dkt. No. 17); *see* Compl. (No. 17-1212) ¶ 6 (Dkt. No. 1). The present motion does not include these parts of Freedom Watch's FOIA request. The parties will file a further report and proposed production schedule as to these parts of the requests by October 18, 2017. Joint Status Report, at 2 (Dkt. No. 17).

### E.     The Daily Caller's Request (Case No. 17-1830)

On June 1, 2017, The Daily Caller News Foundation submitted a FOIA request to the FBI, seeking "all unclassified memoranda authored by former FBI Director James Comey that contemporaneously memorialized his discussions with President Donald Trump and his aides." Compl. (Case No. 17-1830) ¶ 5 (Dkt. No. 1). The FBI responded by letter dated June 16, 2017, stating that the material requested was being withheld pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A). Hardy Decl. ¶ 55 & Ex. Daily Caller-D. The FBI further stated that "[t]he records responsive to your request are law enforcement records. There is a pending or prospective law enforcement proceeding relevant to these responsive records, and release of the information in these responsive records could reasonably be expected to interfere with enforcement proceedings." *Id.*, Ex. Daily Caller-D.

8

## ARGUMENT

The FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). "Congress recognized, however, that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166-67 (1985). Thus, FOIA is designed to achieve a "workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." *John Doe*, 493 U.S. at 152 (quoting H.R. Rep. No. 1497, 89th Cong., 2 Sess. 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423). To that end, FOIA mandates disclosure of government records unless the requested information falls within one of nine enumerated exceptions. *See* 5 U.S.C. § 552(b). While these exemptions are to be "narrowly construed," *FBI v. Abramson*, 456 U.S. 615, 630 (1982), courts still must respect the balance that Congress struck and give the exemptions a "meaningful reach and application." *John Doe Agency*, 493 U.S. at 152.

For a defendant agency to prevail on a motion for summary judgment in FOIA litigation, it must satisfy two elements. First, the agency must "demonstrate that [it] conducted an adequate search which was reasonably calculated to uncover all relevant documents. Second, materials that are withheld must fall within a FOIA statutory exemption." *Leadership Conf. on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005) (citations omitted). Courts review agencies' responses to FOIA requests de novo. 5 U.S.C. § 552(a)(4)(B).

To demonstrate the adequacy of its search, "the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search."

*Dorsey v. Exec. Office for U.S. Attorneys*, 926 F. Supp. 2d 253, 255-56 (D.D.C. 2013) (citing

*Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982)).  "In the absence of contrary evidence, such

affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA."

*Id*. at 256 (citing *Perry*, 684 F.2d at 127).  To meet its burden of justifying withholding of

documents, the government may submit an agency declaration that describes the withheld

material with reasonable specificity and the reasons for non-disclosure.  *See Armstrong v. Exec.*

*Office of the President*, 97 F.3d 575, 577-78 (D.C. Cir. 1996).

     The declarations submitted by the agency are accorded a presumption of good faith,

*Safecard Servs., Inc. v. Securities & Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991),

and a presumption of expertise, *Piper v. U.S. Dep't of Justice*, 294 F. Supp. 2d 16, 20 (D.D.C.

2003), *jdgmt. aff'd*, 222 F. App'x 1 (2007).  Summary judgment is to be freely granted where, as

here, the declarations reveal that there are no material facts genuinely at issue and that the

agency is entitled to judgment as a matter of law.  *See Alyeska Pipeline Serv. Co. v. EPA*, 856

F.2d 309, 314-15 (D.C. Cir. 1988); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.

1981).  Accordingly, "FOIA cases are typically and appropriately decided on motions for

summary judgment."  *Moore v. Bush,* 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

## I.     THE SEARCH FOR RESPONSIVE RECORDS WAS REASONABLE

     "The adequacy of an agency's search is measured by a standard of reasonableness and is

dependent upon the circumstances of the case."  *Weisberg v. U.S. Dep't of Justice*, 705 F.2d

1344, 1351 (D.C. Cir. 1983) (internal quotation marks and citations omitted).  An agency

"fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search

was reasonably calculated to uncover all relevant documents."  *Ancient Coin Collectors Guild v.*

10

*U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted).

The FBI's search for records responsive to plaintiffs' requests is described in the declaration of David Hardy.  Section Chief Hardy explained that, first, personnel in the FBI's Records Management Division ("RMD") responsible for compiling and preserving FBI records, including the records of former Director Comey after his removal, were consulted about the existence and location of any responsive records.  Hardy Decl. ¶ 62.  These personnel consulted their collection of former Director Comey's records and identified what they believed to be the set of records constituting the Comey Memos.  *Id.*  They then provided counsel from the FBI's Office of General Counsel ("OGC") and Record/Information Dissemination Section personnel access to the collection of former Director Comey's materials and the set of records therein that they had identified as the Comey Memos.  *Id.*  Counsel in OGC's National Security and Cyber Law Branch who were already familiar with the relevant records confirmed that the records identified by RMD as the Comey Memos were, in fact, the full set of memos.  *Id.*  This search protocol was "reasonably calculated" to uncover all relevant documents under "the circumstances of the case."  Accordingly, the FBI conducted an adequate search.

## II.     THE COMEY MEMOS ARE EXEMPT FROM DISCLOSURE PURSUANT TO FOIA EXEMPTION 7(A)

As explained in the Declaration of David Hardy, as well as the additional declaration by the Federal Bureau of Investigation that has been submitted *in camera* and *ex parte* because it contains law enforcement sensitive information, the FBI and the Special Counsel have determined that the release of the Comey Memos, or the disclosure of any further information regarding the number, volume, or substance of the Comey Memos, could reasonably be expected

11

to interfere with the ongoing Russia investigation.  Hardy Decl. ¶¶ 69-72.  The FBI has made its

assessment regarding the potential harm that would be caused to the integrity of the current

investigation with full knowledge of the disclosures previously made by former Director Comey

on this subject.  *Id.* ¶ 71.  As detailed further below, these agency declarations plausibly and

logically explain how the disclosure of any portion of the memoranda could compromise this

important law enforcement investigation.  Accordingly, the FBI properly withheld these

documents in their entirety pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).

### A.    Exemption 7(A) Applies to the Comey Memos

FOIA Exemption 7(A) authorizes the withholding of "records or information compiled

for law enforcement purposes . . . to the extent that production of such law enforcement records

or information . . . could reasonably be expected to interfere with enforcement proceedings."  5

U.S.C. § 552(b)(7)(A).  Unlike with other exemptions, the government is not required to provide

a *Vaughn* index to support its withholdings under Exemption 7(A) but may address the

documents on a categorical basis.  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236

(1978); *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 265 (D.C. Cir. 1982).  To

satisfy the government's burden, a declaration need only describe the type of record at issue in

terms sufficient to "allow[] the court to trace a rational link between the nature of the document

and the alleged likely interference." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789

F.2d 64, 67 (D.C. Cir. 1986).  The government has met its burden to establish the applicability of

this exemption here.

To establish the applicability of this exemption, the government must first show that the

records were "compiled for law enforcement purposes."  Investigative documents qualify as

records "compiled for law enforcement purposes" if the agency's declarations establish (1) "a

rational nexus between the investigation and one of the agency's law enforcement duties"; and

(2) "a connection between an individual or incident and a possible security risk or violation of

federal law." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir.

2003) (internal quotation marks omitted); *see also Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir.

1996). "[L]ess exacting proof" of a legitimate law enforcement purpose is required of law

enforcement agencies such as the Department of Justice and the FBI. *Pratt v. Webster*, 673 F.2d

408, 418 & n.25 (D.C. Cir. 1982); *see also Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926.

Information initially obtained in a record made for law enforcement purposes continues to meet

the threshold requirements of Exemption 7 where that recorded information is reproduced or

summarized in a new document prepared for a non-law-enforcement purpose. *Abramson*, 456

U.S. at 631-32. In addition, records not initially obtained or generated for law enforcement

purposes may qualify if they were subsequently assembled for a valid law enforcement purpose.

*John Doe*, 493 U.S. at 154-55; *see also Kansi v. U.S. Dep't of Justice*, 11 F. Supp. 2d 42, 44

(D.D.C. 1998) ("[O]nce [the records at issue] are assembled by the FBI for its law enforcement

purposes, all documents qualify for protection under Exemption 7 regardless of their original

source.").

     Here, the Comey Memos contain information compiled during the FBI's Russia

investigation, which is now being continued by the FBI and the Special Counsel. Hardy Decl.

¶ 67. That investigation is unquestionably within the law enforcement duties of the FBI, which

include undertaking counterintelligence and national security investigations, and detecting and

investigating possible violations of Federal criminal laws. *See* 28 U.S.C. § 533; Hardy Decl.

¶ 65.    It is also within the authority of the Special Counsel, which has specifically been tasked with investigating Russian involvement in the election and prosecuting any federal crimes unearthed.  DOJ Order No. 3915-2017.  And the investigation is based on a viable connection between an "incident" (alleged Russian interference in the election) and a possible security risk or violation of federal law.  *See* Transcript.  Finally, further explanation of how the memos constitute records "compiled for law enforcement purposes" is included in the *in camera* and *ex parte* declaration submitted with this memorandum.  Hardy Decl. ¶ 67.

For the second inquiry under Exemption 7(A), the government must show that production of the records at issue "(1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated."  *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted); *see* 5 U.S.C. § 552(b)(7)(A).  "Exemption 7(A) does not require a presently pending 'enforcement proceeding'" – "an ongoing . . . investigation" suffices.  *Ctr. for Nat'l Security Studies*, 331 F.3d at 926; *see also Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1098 (D.C. Cir. 2014) ("[A]n ongoing criminal investigation typically triggers Exemption 7(A)."); *Juarez v. Dep't of Justice*, 518 F.3d 54, 59 (D.C. Cir. 2008) ("[S]o long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies.").

These requirements are also met here.  The FBI is limited in what it can say on the public record regarding the harms that would flow from the release of any portion of the Comey Memos.  Although there has been extensive media coverage and speculation, little has been officially confirmed by the FBI, DOJ, or the Special Counsel about the investigation.  The FBI

has generally explained, however, that the Comey Memos include information regarding confidential aspects of the Russia investigation, Hardy Decl. ¶ 67, and that disclosure of the Comey Memos and the information contained therein could reasonably be expected to adversely affect the ongoing investigation, as well as any law enforcement proceedings that may ultimately result from this investigation, by revealing the scope and focus of the investigation, and whether particular activities, information, or evidence is or is not of interest in the investigation. *Id.* ¶ 71. The FBI further explains that revealing additional information about the feared harms to the investigation will itself risk harm to the investigation. *Id.* The possible risks to the investigation from disclosure have therefore been further described in the *in camera* and *ex parte* declaration submitted herewith.

The investigators' conclusions about the possible harms are common to many investigations and are sufficient to support application of Exemption 7(A). The courts routinely recognize that Exemption 7(A) protects against the disclosure of information that would reveal the scope and focus of an investigation. *See Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000) ("The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence."); *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996) (the "records could reveal much about the focus and scope of the [agency's] investigation, and are thus precisely the sort of information exemption 7(A) allows an agency to keep secret"); *Suzhou Yuanda Enter., Co. v. U.S. Customs & Border Prot.,* 404 F. Supp. 2d 9, 14 (D.D.C. 2005) (upholding Exemption 7(A) claim where "disclosure of the information . . . could

inform the public of the evidence sought and scrutinized in this type of investigation"). Thus, the courts have routinely found that a disclosure that would reveal information such as the status of an investigation, the investigators' "main concern," "the material . . . thus far collected, [the investigators'] assessment of that information, and the information that [they] still required" could potentially jeopardize the investigation. *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 306 F. Supp. 2d 58, 75-76 (D.D.C. 2004) (internal quotation marks omitted); *see also Alyeska Pipeline Serv. Co.*, 856 F.2d at 312 (upholding assertion of Exemption 7(A) where disclosure would "prematurely reveal[ ] to the subject of this ongoing investigation the size, scope and direction of this investigation" and "expose the particular types of allegedly illegal activities being investigated"). The courts have recognized that not only would disclosure of such investigative progress and priorities chill witnesses and alert targets, but it would provide targets or witnesses with an opportunity to impede the investigation or formulate their testimony to rebut evidence already gathered. Moreover, the courts have recognized that the government, as here, often cannot provide detailed descriptions of the withheld information, but has upheld the withholdings nonetheless. *See Patino-Restrepo v. Dep't of Justice*, 246 F. Supp. 3d 233, 250 (D.D.C. 2017) (finding the FBI's justification of its withholding pursuant to 7(A) adequate even though it was unable to provide a "description of the information withheld" because a specific description could identify the information that the FBI sought to protect by invoking the exemption).

In sum, because release of the Comey Memos could reasonably be expected to reveal information about, and thus interfere with, the ongoing Russia investigation and any ensuing

enforcement proceedings, the documents are properly exempt from disclosure pursuant to FOIA

Exemption 7(A).

## B.      There Has Been No Official "Prior Disclosure" of the Comey Memos

The government anticipates that plaintiffs will argue that former Director Comey's

testimony before Congress, and/or his asserted delivery of one or more memos to a friend,

constitute prior disclosure of the contents of the memos, sufficient to compel disclosure here.

However, that testimony and the release were made while Mr. Comey was no longer in the

employ of the FBI but rather was a private citizen, and does not in any event constitute a

disclosure of the exact contents of all of the memos.  Mr. Comey's testimony therefore does not

constitute "official and documented" disclosure of the memos.  Accordingly, the prior disclosure

doctrine does not apply here.

The general rule is that, when "information has been 'officially acknowledged,' its

disclosure may be compelled even over an agency's otherwise valid exemption claim."

*Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).  The D.C. Circuit applies a three-part test

for whether information has been "officially acknowledged":  "(1) the information requested

must be as specific as the information previously released; (2) the information requested must

match the information previously disclosed; and (3) the information requested must already have

been made public through an official and documented disclosure."  *ACLU v. U.S. Dep't of Def.*,

628 F.3d 612, 620-21 (D.C. Cir. 2011).  Notably, when assessing whether the third prong is met,

the prior disclosure must be an official government disclosure – "the fact that information exists

in some form in the public domain does not necessarily mean that official disclosure will not

cause harm cognizable under a FOIA exemption."  *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir.

17

2007); *see also Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1130-31 (D.C. Cir. 1983) (drawing

distinction between "[u]nofficial leaks and public surmise" and "official acknowledgment").

Moreover, "[p]rior disclosure of similar information does not suffice; instead, the *specific*

information sought by the plaintiff must already be in the public domain by official disclosure."

*Wolf*, 473 F.3d at 378.  Accordingly, the plaintiff asserting a claim of prior disclosure carries the

burden of "pointing to specific information in the public domain that appears to duplicate that

being withheld."  *Afshar*, 702 F.2d at 1130.

Here, Mr. Comey's testimony or transmittal of the material to others, both of which

occurred when he was acting as a private citizen, in no way constitutes "official disclosure" of

the contents of the memos.  *See* Transcript, at 7 (Comey answering "[n]o" to question of whether

"the special counsel's office review[ed] and/or edit[ed] [his] written testimony").  This case is

thus similar to the cases involving, *e.g.*, memoirs by former government officials and the

Wikileaks documents, in which waiver was not found.  *See Afshar*, 702 F.2d at 1133 (concluding

that none of the books by former CIA agents and officials is "an official and documented

disclosure, as the release of CIA cables would be"); *ACLU v. Dep't of State*, 878 F. Supp. 2d

215, 224 (D.C. Cir. 2012) ("No matter how extensive, the WikiLeaks disclosure is no substitute

for an official acknowledgement and the [plaintiff] has not shown that the Executive has

officially acknowledged that the specific information at issue was a part of the WikiLeaks

disclosure."); *see also Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, 891 F.2d 414,

421 (2d Cir. 1989) ("Admiral Carroll's statements cannot effect an official disclosure of

information since he is no longer an active naval officer.").  The government has not even

previously confirmed the existence of any memos, and it does not confirm here that the memo or

memos allegedly provided by Mr. Comey to a friend, even if that occurred, was or were accurate copies of official memos he wrote while FBI Director.

Moreover, the actual contents of the memos themselves, including such critical details as the number of memos and their length, Hardy Decl. ¶ 72, have not been made public.  Thus, even taking into account Mr. Comey's testimony, there has been no documented disclosure of the *specific* information at issue here.  *See Muslim Advocates v. U.S. Dep't of Justice*, 833 F. Supp. 2d 92, 100 (D.D.C. 2011) (written chapters of an FBI guide did not become part of the public domain when the chapters were only shown to a select group of organizations at FBI headquarters, even though attendees were permitted to view and take notes); *Black v. U.S. Dep't of Justice*, 69 F. Supp. 3d 26, 35 (D.D.C. 2014) (plaintiff failed to meet his burden for invoking the prior disclosure doctrine as to certain recordings used in court where, although the attorneys arguing before the court reference the recordings and present their respective characterizations of the content of the recordings, at no point does the transcript "reflect that any portion of the recordings were played in court or that the actual content of the recordings were otherwise entered into the public record"), *aff'd*, No. 14-5256, 2015 WL 6128830 (D.C. Cir. Oct. 6, 2015). *Cf. Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999) (ordering release of the specific tapes which had been played in open court and received into evidence, where requestor could document those facts, but recognizing that "it will very often be the case that some type of hard copy facsimile will be the only practicable way for a FOIA requester to demonstrate that the specific information he has solicited has indeed circulated into the public domain").  Further discussion of issues relevant to the prior disclosure doctrine is included in the *in camera* and *ex parte* declaration submitted herewith.

In sum, Mr. Comey's testimony does not constitute official acknowledgment of the specific contents of the memos.  Accordingly, the prior disclosure doctrine does not apply.

**C.  Disclosure of the Comey Memos Will Still Interfere with the Russia Investigation, Notwithstanding Mr. Comey's Testimony**

Plaintiffs may argue that, even if Mr. Comey's testimony did not constitute an official disclosure, its existence in the public domain negates any harm to the investigation from releasing the memos.  However, the FBI considered the disclosures made by Mr. Comey in making the determination that the release of the Comey Memos could serve to compromise the pending investigation, and nonetheless concluded that the release of the Comey Memos would cause harm to the investigative efforts.  Hardy Decl. ¶ 71.   The Comey Memos themselves have never entered the public domain.  Accordingly, despite the former Director's testimony, there is much that is not publicly known about these documents. Although former Director Comey testified that he memorialized certain conversations with the President, the number of records he created is not publicly known.  Hardy Decl. ¶ 72.  The level of detail contained in the memoranda is not publicly known.  Any disclosure of this non-public information could reasonably be expected to reveal the scope and focus of the investigation and thereby harm the investigation.  *Id.* ¶¶ 71-72.

Further details regarding the nature of these harms is provided in the *in camera* and *ex parte* declaration.  Publicly explaining in any greater detail why the release of the Comey Memos would be detrimental to the pending investigation would itself disclose law enforcement sensitive information that could interfere with the pending investigation.  Hardy Decl. ¶ 70.  In such cases, the submission of an *in camera*, *ex parte* declaration is proper.  *See Campbell*, 682

20

F.2d at 265.  As the government has adequately articulated in that submission, in conjunction

with the public declaration, how release of any portion of the Comey Memos could reasonably

be expected to impede its ongoing investigation, the government has sufficiently demonstrated

that Exemption 7(A) applies to these documents.

## III.    PORTIONS OF THE RECORDS ARE EXEMPT FROM DISCLOSURE PURSUANT TO EXEMPTION 1

Portions of certain of the records responsive to plaintiffs' requests include classified

information that is also exempt from disclosure pursuant to Exemption 1.  Hardy Decl. ¶¶ 75, 79.

This information has been classified at the "Secret" or "Confidential" level.  *Id.*  This

information is also properly withheld.

Exemption 1 allows an agency to protect records that are:  (1) specifically authorized

under criteria established by an Executive Order to be kept secret in the interest of national

defense or foreign policy, and (2) are in fact properly classified pursuant to Executive Order.  *See*

5 U.S.C. § 552(b)(1).  As with the other exemptions, agencies may establish the applicability of

Exemption 1 by declaration.  *See ACLU v. U.S. Dep't of Def.*, 628 F.3d at 619.

The current operative classification order for the purposes of Exemption 1 is Executive

Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) [hereinafter "E.O. 13,526"], which sets

forth the substantive and procedural criteria that an agency must follow to properly invoke the

exemption.  Hardy Decl. ¶ 77.  E.O. 13,526 provides that, for  information to be properly

classified:  (1) an "original classification authority" must have classified the information; (2) the

information must be "owned by, produced by or for, or be under the control of the United States

Government;" (3) the information must fall within one or more of protected categories of

information listed in section 1.4 of the E.O.; and (4) the original classification authority must

"determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security" and be "able to identify or describe the damage." E.O. 13,526, § 1.1(a)(1)-(4). E.O. 13,526 also requires, in relevant part, that information should be classified as "Secret" only if its unauthorized disclosure could reasonably be expected to cause serious damage to the national security, and as "Confidential" only if its unauthorized disclosure could reasonably be expected to cause damage to the national security. E.O. 13,526, §§ 1.2(a)(2)-(3).

Here, Section Chief Hardy has determined that the information for which Exemption 1 protection is sought is currently and properly classified at the Secret or Confidential level pursuant to E.O. 13,526. Hardy Decl. ¶ 81. As an initial matter Section Chief Hardy has established that (1) the information is owned by, was produced by or for, and is under the control of the U.S. Government; (2) it was classified by an original classification authority; and (3) the withheld classified information falls within one or more of the categories described in Section 1.4 of E.O. 13,526, namely § 1.4(c), information pertaining to "intelligence activities (including covert action), intelligence sources or methods, or cryptology," and § 1.4(d), information pertaining to "foreign relations or foreign activities of the United States, including confidential sources." *Id.* ¶ 82.

Section Chief Hardy also confirms that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security and describes the expected damage to the extent possible on the public record. Hardy Decl. ¶¶ 82, 85-91. Because agencies have "unique insights" into the adverse effects that might result from public disclosure of classified information, the courts must accord "substantial weight" to an agency's affidavits

justifying classification.  *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009) (citation

omitted); *see also Military Audit Project*, 656 F.2d at 738.  As the D.C. Circuit has noted, "in the

FOIA context, we have consistently deferred to executive affidavits predicting harm to the

national security, and have found it unwise to undertake searching judicial review."  *Ctr. for*

*Nat'l Sec. Studies*, 331 F.3d at 927.  Thus, the issue for the Court is whether "on the whole

record, the [a]gency's judgment objectively survives the test of reasonableness, good faith,

specificity and plausibility in this field of foreign intelligence in which [the agency] is expert and

has been given by Congress a special role."  *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir.

1982).  Indeed, the D.C. Circuit has instructed that "little proof or explanation is required beyond

a plausible assertion that information is properly classified."  *Morley v. CIA*, 508 F.3d 1108,

1124 (D.C. Cir. 2007).

Here, the FBI has determined that some of the information at issue is properly classified

because it would, if disclosed, reveal otherwise non-public information regarding the FBI's

intelligence interests, priorities, activities, and methods.  Hardy Decl. ¶ 88.  Greater detail

regarding the nature of these intelligence interests, priorities, activities and methods are provided

in the *ex parte*, *in camera* declaration.  *Id.* ¶ 84.  As Section Chief Hardy explains on the public

record, however, release of this information could reasonably be expected to cause harm to the

national security because the use of such activities, sources and methods are valuable only

insofar as their use is unknown by the intelligence targets against which they are deployed.  *Id.*

¶ 86.  Otherwise, the targets of such intelligence techniques would engage in countermeasures to

nullify their effectiveness.  *Id*.  As he further explains,

> [i]ntelligence activities, sources, and methods are valuable only so
> long as they remain unknown and unsuspected.  Once an

> intelligence activity, source, or method – or the fact of its use or
> non-use in a certain situation – is discovered, its continued
> successful use is seriously jeopardized."

*Id.* "[E]ven seemingly innocuous, indirect references to an intelligence activity, source, or

method could have significant adverse effects when juxtaposed with other publicly-available

data." *Id.* ¶ 87.

It is rational and plausible to predict that disclosing details concerning the FBI's

intelligence activities, sources, and methods would undermine the usefulness of those methods,

to the detriment of national security, and thus the Court should sustain the agency's withholding

of this information. *See, e.g.*, *Larson*, 565 F.3d at 863 (holding that "[t]he CIA has carried its

burden to show that FOIA Exemption 1 applies where the agency "described with reasonably

specific detail . . . the importance for continuing intelligence operations of keeping intelligence

sources and methods classified and confidential"); *see also Sims*, 471 U.S. at 175.

The FBI has also determined that the other information at issue would, if disclosed,

reveal otherwise non-public information about foreign relations or foreign activities of the

United States, including confidential sources.  Hardy Decl. ¶¶ 89-91.  Specifically, the FBI has

protected specific discussions and details concerning the United States' foreign relations

activities with identified foreign governments or officials, the disclosure of which, in the context

of other surrounding information, could reasonably be expected to impair or adversely impact

relations with those countries, and thus, cause harm to the national security.  *Id.* ¶ 91.  The FBI

further explains that, for example, the unauthorized disclosure of such information can

reasonably be expected to lead to diplomatic or economic retaliation against the United States;

the loss of the cooperation and assistance of friendly nations; or the compromise of cooperative

foreign sources, which may jeopardize their safety and curtail the flow of information from these

sources.  *Id.* ¶ 90.  The FBI's assertion of Exemption 1 should be upheld here as well.

**III.      PORTIONS OF THE RECORDS ARE EXEMPT FROM DISCLOSURE PURSUANT TO EXEMPTION 3**

FOIA Exemption 3 protects information that is specifically exempted from public

disclosure by a statute that:

> (A)(i) requires that the matters be withheld from the public in such
> a manner as to leave no discretion on the issue; or (ii) establishes
> particular criteria for withholding or refers to particular types of
> matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act
> of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).  As the Court of Appeals has explained, "'Exemption 3 differs from

other FOIA exemptions in that its applicability depends less on the detailed factual contents of

specific documents; the sole issue for decision is the existence of a relevant statute and the

inclusion of withheld material within the statute's coverage.'"  *Fitzgibbon*, 911 F.2d at 761-62.

Thus, "[a] specific showing of potential harm to national security . . . is irrelevant to the language

of [an Exemption 3 statute].  Congress has already, in enacting the statute, decided that

disclosure of [the specified information] is potentially harmful."  *Hayden v. Nat'l Sec. Agency*,

608 F.2d 1381, 1390 (D.C. Cir. 1979).

As explained above, the Comey Memos include information that is classified pursuant to

E.O. 13526, § 1.4(c), to protect intelligence sources and methods.  That same information is also

exempt under Exemption 3.  Hardy Decl. ¶ 93.  Specifically, disclosure of information

concerning intelligence sources and methods is prohibited pursuant to the National Security Act

of 1947, as amended, which provides that the Director of National Intelligence (DNI) "shall

protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1).

As relevant to the application of Exemption 3, this provision was enacted before the date of

enactment of the OPEN FOIA Act of 2009, and on its face, leaves no discretion to agencies

about withholding from the public information about intelligence sources and methods.  It is

therefore "settled" that this statute falls within Exemption 3.  *Gardels*, 689 F.2d at 1103

(discussing substantively similar predecessor statute applicable to CIA which provided that "the

Director of Central Intelligence shall be responsible for protecting intelligence sources and

methods from unauthorized disclosure"); *accord Sims*, 471 U.S. at 167-68, 193; *Fitzgibbon*, 911

F.2d at 761 ("There is thus no doubt that [the predecessor CIA statute] is a proper exemption

statute under exemption 3."); *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015).

　　　　In order to fulfill its obligation of protecting intelligence sources and methods, the DNI is

authorized to establish and implement guidelines for the Intelligence Community ("IC") for the

classification of information under applicable laws, Executive Orders, or other Presidential

Directives, and for access to and dissemination of intelligence.  50 U.S.C. § 3024(i)(1).  The FBI

is one of the member agencies comprising the IC, and as such must protect intelligence sources

and methods.  Hardy Decl. ¶ 95.  Accordingly, information in the Comey Memos that reveals

intelligence sources and methods is prohibited from disclosure pursuant to 50 U.S.C.

§ 3024(i)(1), *id.* ¶ 96, and thus properly exempt from disclosure under Exemption 3.

## IV.　　PORTIONS OF THE RECORDS ARE EXEMPT FROM DISCLOSURE PURSUANT TO EXEMPTION 7(E)

　　　　Exemption 7(E) protects "records or information compiled for law enforcement purposes

[when release] would disclose techniques and procedures for law enforcement investigations or

prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if

such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C.

§ 552(b)(7)(E).  This exemption affords categorical protection to techniques and procedures used

in law enforcement investigations.  *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 168

(D.D.C. 2012); *but see Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (applying, without

analysis, "risk of circumvention" standard to law enforcement techniques and procedures).  It

protects techniques and procedures that are not well-known to the public as well as non-public

details about the use of publicly-known techniques and procedures.  *Vazquez v. U.S. Dep't of

Justice*, 887 F. Supp. 2d 114, 117 (D.D.C. 2012), *aff'd*, No. 13-5197, 2013 WL 6818207 (D.C.

Cir. Dec. 18, 2013).

Exemption 7(E) applies to information in the Comey Memos reflecting the FBI's use of

particular investigative techniques or procedures in furtherance of the Russian interference

investigation.  Hardy Decl. ¶ 105.  To date, neither the FBI, DOJ, nor Special Counsel has

publicly confirmed or denied the use of any particular techniques or procedures in the ongoing

investigation.  *Id.*  Moreover, although defendants do not believe they are required to show a risk

of circumvention here, the FBI explains that publicly disclosing the particular techniques and

procedures utilized in the investigation could reasonably be expected to risk circumvention of the

law because it would arm those under investigation, and others intent on disrupting it, the

information necessary to, *inter alia*:  develop countermeasures to evade detection; destroy,

adulterate, or otherwise compromise evidence; and interfere with witnesses and their testimony.

*Id.*

Any further public description of the information protected here would disclose non-

public information that is itself exempt under Exemption 7(E) and would trigger harm under

Exemption 7(A) by prematurely revealing the conduct, scope, and direction of the ongoing

investigation.  Hardy Decl. ¶ 106.  Defendants have therefore provided additional reasons for

assertion of this exemption in the *in camera* and *ex parte* declaration filed herewith.  *Id.*

## V.   PORTIONS OF THE RECORDS ARE EXEMPT FROM DISCLOSURE PURSUANT TO EXEMPTIONS 6 AND 7(C)

The records at issue contain a small amount of personal information – namely, the names

of, and some identifying information about:  (a) FBI employee(s), (b) relative(s) of the FBI

employee(s), (c) individual(s) providing information to the FBI during its investigation of

Russian interference in the 2016 Presidential election, and (d) individuals who were merely

mentioned in the Comey Memos.  Hardy Decl. ¶ 101.  This information has properly been

withheld pursuant to FOIA Exemptions 6 and 7(C).

Exemption 6 exempts from disclosure information about individuals in "personnel and

medical and similar files" when the disclosure of such information "would constitute a clearly

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 6 was "intended to

cover detailed government records on an individual which can be identified as applying to that

individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982).  It, therefore,

protects personal information contained in any government file so long as that information

"applies to a particular individual."  *Id.*; *see also N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006

(D.C. Cir. 1990) (en banc).  Exemption 6 does not merely apply to files "about an individual,"

but applies more broadly to "bits of personal information, such as names and addresses,"

contained in otherwise releasable documents. *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152

(D.C. Cir. 2006).  Exemption 6 requires an agency to balance the individual's right to privacy

against the public's interest in disclosure.  *See U.S. Dep't of Air Force v. Rose*, 425 U.S. 352,

372 (1976).  However, in general, "the only relevant 'public interest in disclosure' to be weighed

in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,'

which is 'contribut[ing] significantly to the public understanding *of the operations or activities of*

*the government.*'"  *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 495 (1994) (quoting *U.S. Dep't*

*of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989)) (emphasis

and alteration in original).

Exemption 7(C) protects from disclosure "records or information compiled for law

enforcement purposes" to the extent that the production of such law enforcement records or

information "could reasonably be expected to constitute an unwarranted invasion of personal

privacy."  5 U.S.C. § 552(b)(7)(C).  In applying Exemption 7(C), the Court must "balance the

privacy interests that would be compromised by disclosure against the public interest in release

of the requested information."  *Davis v. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).

Because Exemption 7(C) applies only to law enforcement documents, however, and because it

protects documents that "could reasonably be expected to constitute an unwarranted invasion of

personal privacy," rather than those that "would" constitute a "clearly unwarranted" invasion,

courts have required a lesser showing under Exemption 7(C) than under Exemption 6.  *Nat'l*

*Archives & Records Admin. v. Favish*, 541 U.S. 157, 166 (2004).  As with Exemption 6, the

public interest "must be assessed in light of FOIA's central purpose," which is "to open agency

action to the light of public scrutiny."  *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71

F.3d 885, 894 (D.C. Cir. 1995) (quotation marks and citation omitted).  However, in general, this

purpose "is not fostered by disclosure about private individuals that is accumulated in various

government files but that reveals little or nothing about an agency's conduct."  *Id.*

29

The personal information at issue, the names of the FBI employee(s) and private individuals, falls within the scope of both of these exemptions.[4]  Hardy Decl. ¶¶ 101-103.  The FBI concluded that all of these individuals maintain substantial privacy interests with respect to being associated with this investigation.  *Id.* ¶ 102.  The FBI considers that its employees – whether Special Agents or Professional Staff – enjoy substantial privacy protections by virtue of their FBI employment because, whether they are involved in investigating cases or providing other types of services and support, their employment can subject them to harassment, as well as unnecessary, unofficial questioning as to the conduct of agency business.  *Id.*  Moreover, relatives of such employees, like anyone merely mentioned in an FBI record, maintain similarly high privacy interests.  *Id.*  The individual providing information to the FBI in its investigation also has substantial privacy interests.  *Id.*  It is well settled that third parties "who may be mentioned in investigatory files" have a presumptive privacy interest in having their names and other personal information withheld from public disclosure.  *Nation Magazine, Wash. Bureau*, 71 F.3d at 894; *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254-55 (D.C. Cir. 1981).  In particular, the individuals whose information was withheld maintain a strong privacy interest in not being identified in connection with a high-profile investigation.  Hardy Decl. ¶ 102; *see Reporters Comm. For Freedom of Press*, 489 U.S. at 763-66.  On the other hand, the public interest in knowing the names of individuals mentioned in law enforcement records, as a general matter, is nil.  *See Blanton v. Dep't of Justice*, 63 F. Supp. 2d 35, 45 (D.D.C. 1999) ("The privacy interests of individual parties mentioned in law enforcement files are 'substantial' while

---

[4]  The FBI is not seeking to protect any information regarding former Director Comey's under these exemptions.  Hardy Decl. ¶ 101.

'[t]he public interest in disclosure [of third party identities] is not just less substantial, it is unsubstantial.'" (quoting *Safecard Servs., Inc.*, 926 F.2d at 1205, alterations in original)); *Safecard Servs*, 926 F.2d at 1206 ("[T]here is no reason to believe that the incremental public interest in such information would ever be significant.").  There is no reason to believe here that disclosure of the identities of the individuals mentioned in the Comey Memos would shed any light on government conduct, Hardy Decl. ¶ 103, and therefore the balancing test weighs clearly in favor of withholding.  This personal information is thus properly exempt from disclosure pursuant to Exemption 6 and 7(C).

## CONCLUSION

For the reasons stated above, defendants' motion for partial summary judgment should be granted.

Dated:  October 13, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Director, Civil Division

*/s/Carol Federighi*
CAROL FEDERIGHI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendant*