**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>    Defendant. | Civil Action No. 1:17-cv-01167-JEB |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No. 1:17-cv-01175-JEB |
| JUDICIAL WATCH, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>    Defendant. | Civil Action No. 1:17-cv-01189-JEB |
| FREEDOM WATCH, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION,<br><br>    Defendants. | Civil Action No. 1:17-cv-01212-JEB |

THE DAILY CALLER NEWS
FOUNDATION,

    Plaintiff,

Civil Action No. 1:17-cv-01830-JEB

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

    Defendant.

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this

position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"),

from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for

Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA")

policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30,

2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA

matters. I am also an attorney who has been licensed to practice law in the State of Texas since

1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 248

employees who staff a total of twelve (12) Federal Bureau of Investigation Headquarters

("FBIHQ") units and two (2) field operational service center units whose collective mission is to

effectively plan, develop, direct, and manage responses to requests for access to FBI records and

information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN

FOIA Act of 2009, and FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive

Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial

decisions; and Presidential and Congressional directives.  My responsibilities also include the

review of FBI information for classification purposes as mandated by Executive Order 13526,[1]

and the preparation of declarations in support of Exemption 1 claims asserted under the FOIA.  I

have been designated by the Attorney General of the United States as an original classification

authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1.

The statements contained in this declaration are based upon my personal knowledge, upon

information provided to me in my official capacity, and upon conclusions and determinations

reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.  Specifically, I am aware of the

FBI's handling of plaintiffs' FOIA requests to FBI at issue in this litigation.  The following

lawsuits have been consolidated under Civil Action No. 17-cv-1167 (D.D.C.):  *CNN v. FBI,* 17-

cv-1167 (D.D.C.); *Gannett Satellite Information Network et al. v. DOJ,* 17-cv-1175 (D.D.C.);

*Judicial Watch v. DOJ,* 17-cv-1189 (D.D.C.); *Freedom Watch v. DOJ & FBI,* 17-cv-1212

(D.D.C.); and *Daily Caller v. DOJ,* 17-cv-1830 (D.D.C.).  *See* Civil Action No. 17-cv-1167

(D.D.C.), Minute Order dated July 26, 2017 (consolidating all lawsuits except the Daily Caller

lawsuit) and Minute Order dated September 7, 2017 (consolidating the Daily Caller lawsuit).

(4)     On August 15, 2017, the Court entered a briefing schedule whereby the FBI

would brief the appropriateness of its withholdings of the so-called "Comey Memos" on or

before October 11, 2017.  This deadline was subsequently extended to October 13, 2017.  The

---

[1]  75 Fed. Reg. 707 (2010).

remainder of the plaintiffs' FOIA requests for records other than the Comey Memos will be briefed/resolved separately. *See* Minute Order in 17-cv-1167 (D.D.C.) (Aug. 15, 2017).

(5)     This declaration is being submitted in support of the FBI's partial motion for summary judgment with respect to the Comey Memos in the consolidated cases.

### PLAINTIFFS' FOIA REQUESTS

#### CNN

(6)     CNN submitted a FOIA request through the FBI's eFOIA portal on May 16, 2017, seeking "all records of notes taken by or communications sent from FBI Director James Comey regarding or documenting interactions (including interviews and other conversations) with President Donald Trump [from] January 20, 2017 [through] May 10, 2017." **(Exhibit CNN-A.)**

(7)     CNN also sought a fee waiver and expedited processing. *Id.*

(8)     The FBI acknowledged receipt of the request in a letter dated May 23, 2017, notifying CNN that the request had been assigned FOIPA Request No. 1374094-000 and that its fee waiver request was being considered. **(Exhibit CNN-B.)**

(9)     In another letter dated May 23, 2017, the FBI denied CNN's request for expedited processing for failure to provide sufficient information to establish an entitlement for such processing under DOJ's regulations or under the FOIA.  The letter notified CNN that it could appeal this determination to DOJ's Office of Information Policy ("OIP"). **(Exhibit CNN-C.)**

(10)     CNN appealed to OIP and on June 2, 2017, OIP granted its request for expedited processing. **(Exhibit CNN-D.)**

(11)     The FBI subsequently sent CNN a letter confirming the grant of expedited processing on June 13, 2017. **(Exhibit CNN-E.)**

(12)     On June 15, 2017, CNN filed the present lawsuit. *CNN et al. v. FBI*, 17-cv-1167

(D.D.C.), ECF No. 1, Complaint.

(13)     On June 16, 2017, the FBI responded to CNN's request, denying it in full based

on FOIA Exemption (b)(7)(A).  The letter further notified CNN that it could appeal this

determination to OIP.  **(Exhibit CNN-F.)**

### GANNETT SATELLITE INFORMATION NETWORK dba USA TODAY and BRAD HEATH

(14)     Gannett Satellite Information Network dba USA Today (hereafter "USA Today")

and Brad Heath submitted a FOIA request through the FBI's eFOIA portal on May 12, 2017,

seeking:

> 1.  Copies of any reports, letters, memoranda, electronic mail messages, FD-302s or other records memorializing conversations between former Director Comey and President Trump.  Such records would have been generated since January 20, 2017 … ."
> 2.  Complete copies of any recordings in the possession of the FBI of conversations between former Director Comey and President Trump.

**(Exhibit USA Today-A.)**

(15)     USA Today and Mr. Heath also sought a fee waiver and expedited processing. *Id.*

(16)     The FBI acknowledged receipt of the request in a letter dated May 23, 2017,

notifying USA Today and Mr. Heath that their request had been assigned FOIPA Request No.

1374159-000 and that its fee waiver request was being considered.  **(Exhibit USA Today-B.)**

(17)     On May 24, 2017, the FBI granted USA Today and Mr. Heath's request for

expedited processing.  **(Exhibit USA Today-C.)**

(18)     On June 15, 2017, USA Today and Mr. Heath filed the present lawsuit. *See

Gannett Satellite Information Network dba USA Today et al. v. DOJ*, 11-cv-1175 (D.D.C.), ECF

No. 1, Complaint.

(19)     On June 16, 2017, the FBI responded to USA Today and Mr. Heath's request,

denying it in full based on FOIA Exemption (b)(7)(A).  The letter further notified them that they

could appeal this determination to OIP.  **(Exhibit USA Today-D.)**

(20)     On July 26, 2017, USA Today and Mr. Heath's lawsuit was consolidated into

CNN's lawsuit.  *See CNN et al. v. FBI*, 17-cv-1167 (D.D.C.), Minute Order dated July 26, 2017.

### JAMES MADISON PROJECT and GARRETT GRAFF

(21)     The James Madison Project ("JMP") and Garrett Graff submitted a FOIA request

dated May 17, 2017 through the FBI's eFOIA portal, seeking:

> 1)  Any memoranda, notes, summaries and/or recordings (hereinafter referred to
>     jointly as "memoranda") memorializing conversations Director Comey had
>     with President Trump;
> 2)  Any records reflecting discussions – including written documentation
>     memorializing verbal conversations – between Director Comey and FBI staff
>     regarding memoranda referenced in category #1; and
> 3)  Any records reflecting discussions – including written documentation
>     memorializing verbal conversations – between Director Comey and DOJ staff
>     regarding the memorandum [sic] referenced in category #1.

JMP and Mr. Graff limited their request to the period of November 8, 2016 through May 9,

2017.  **(Exhibit JMP/Graff-A.)**

(22)     JMP and Mr. Graff also sought a fee waiver and expedited processing.  *Id.*

(23)     The FBI acknowledged receipt of the request in a letter dated May 25, 2017,

notifying JMP and Mr. Graff that their request had been assigned FOIPA Request No. 1374565-

000; that their fee waiver request was being considered; and that their request for expedited

processing was granted.  **(Exhibit JMP/Graff-B.)**

(24)     On June 12, 2017, the FBI notified JMP and Mr. Graff that it was assigning each

part of their request separate FOIPA Request Nos.:  1374565-000 was remain assigned to Item

#1 of their request; 1376068-000 was assigned to Item #2 of their request; and 1376070-000 was

6

assigned to Item #3 of their request. **(Exhibit JMP/Graff-C.)**

(25)    On June 16, 2017, the FBI responded to Item #1 of JMP and Mr. Graff's request (1374565-000), denying it in full based on FOIA Exemption (b)(7)(A). The letter further notified them that they could appeal this determination to OIP.[2] **(Exhibit JMP/Graff-D.)**

(26)    On June 28, 2017, JMP and Mr. Graff appealed the FBI's response to OIP. **(Exhibit JMP/Graff-E.)**

(27)    On July 12, 2017, OIP affirmed the FBI's determination. **(Exhibit JMP/Graff-F.)**

(28)    On July 19, 2017, plaintiffs in Civil Action No. 17-cv-1175 (D.D.C.) filed their First Amended Complaint, adding JMP and Mr. Graff's claims regarding the above-referenced FOIA request. *See Gannett Satellite Information Network dba USA Today et al. v. DOJ*, 11-cv-1175 (D.D.C.), ECF No. 9, First Amended Complaint.

(29)    On July 26, 2017, JMP and Mr. Graff's lawsuit was consolidated into CNN's lawsuit. *See CNN et al. v. FBI*, 17-cv-1167 (D.D.C.), Minute Order dated July 26, 2017.

### JAMES MADISON PROJECT and LACHLAN MARKAY

(30)    JMP and Lachlan Markay submitted a FOIA request through the FBI's eFOIA portal on May 17, 2017, seeking:

> 1) The memorandum drafted by Director Comey memorializing his conversation with President Trump on February 14, 2017;
> 2) Any records reflecting discussions—including written documentation memorializing verbal conversations—between Director Comey and FBI staff regarding the memorandum referenced in category #1; and
> 3) Any records reflecting discussions—including written documentation memorializing verbal conversations—between Director Comey and DOJ staff regarding the memorandum referenced in category #1.

---

[2] As of the date of this declaration, no further correspondence has been sent to JMP and Mr. Graff by the FBI regarding FOIPA Request No. 1376068 and 1376070.

JMP and Mr. Markay limited their request to the period of February 14, 2017 through the date of the FBI's search for responsive records. **(Exhibit JMP/Markay-A.)**

(31)     JMP and Mr. Markay also sought a fee waiver and expedited processing. *Id.*

(32)     The FBI acknowledged receipt of the request in a letter dated May 25, 2017, notifying JMP and Mr. Markay that their request had been assigned FOIPA Request No. 1374542-000; that their fee waiver request was being considered; and that their request for expedited processing was granted. **(Exhibit JMP/Markay-B.)**

(33)     On June 16, 2017, the FBI responded to JMP and Mr. Graff's request, denying it in full based on FOIA Exemption (b)(7)(A). The letter further notified them that they could appeal this determination to OIP. **(Exhibit JMP/Markay-C.)**

(34)     On June 28, 2017, JMP and Mr. Markay appealed the FBI's response to OIP. **(Exhibit JMP/Markay-D.)**

(35)     On July 12, 2017, OIP affirmed the FBI's determination. **(Exhibit JMP/Markay-E.)**

(36)     On July 19, 2017, plaintiffs in Civil Action No. 17-cv-1175 (D.D.C.) filed their First Amended Complaint, adding JMP and Mr. Markay's claims regarding the above-referenced FOIA request. *See Gannett Satellite Information Network dba USA Today et al. v. DOJ*, 11-cv-1175 (D.D.C.), ECF No. 9, First Amended Complaint.

### JUDICIAL WATCH

(37)     On May 16, 2017, Judicial Watch submitted a request through the FBI's eFOIA portal seeking:

> The memorandum written by former Director James Comey memorializing his meeting and conversation with President Trump regarding the FBI's investigation of potential Russian interference in the 2016 United States presidential election. For purposes of clarification, this memorandum was reportedly written on or

8

about February 13, 2017 and is the subject of a New York Times article dated May 16, 2017 and titled, "Comey Memo Says Trump Asked Him to End Flynn Investigation."

**(Exhibit Judicial Watch-A.)**

(38)     Judicial Watch asked for expedited processing and a fee waiver. *Id.*

(39)     The FBI acknowledged receipt of the request by a letter dated May 23, 2017, which notified Judicial Watch that the request was assigned FOIPA Request No. 1374122-000 and that its fee waiver request was being considered. **(Exhibit Freedom Watch-B.)**

(40)     By letter dated May 24, 2017, the FBI granted Judicial Watch's request for expedited processing. **(Exhibit Judicial Watch-C.)**

(41)     On June 16, 2017, the FBI denied Judicial Watch's request pursuant to FOIA Exemption (b)(7)(A). **(Exhibit Judicial Watch-D.)**

(42)     Also on June 16, 2017, Judicial Watch filed the present lawsuit regarding its request. *See* Civil Action No. 17-cv-1189 (D.D.C.), ECF No. 1, Complaint.

(43)     On July 26, 2017, Judicial Watch's lawsuit was consolidated into CNN's lawsuit. *See CNN et al. v. FBI*, 17-cv-1167 (D.D.C.), Minute Order dated July 26, 2017.

## FREEDOM WATCH

(44)     By letter dated May 18, 2017, that was mailed and faxed to the FBI, Freedom Watch submitted a FOIA request seeking "[a]ny and all documents and records…which constitute, refer or relate in any way to any memorandum prepared, written and/or issued by former FBI Director James Comey concerning Barack Obama, Hillary Clinton, Bill Clinton, Lieutenant General Michael Flynn, and President Donald Trump." **(Exhibit Freedom Watch-A.)**

(45)     Freedom Watch also requested a fee waiver and expedited processing. *Id.*

(46)    The FBI acknowledged receipt of the request by a letter dated May 25, 2017, which notified Freedom Watch that the request was assigned FOIPA Request No. 1374527-000 and that its fee waiver request was being considered. **(Exhibit Freedom Watch-B.)**

(47)    In another letter on May 25, 2017, the FBI granted Freedom Watch's request for expedited processing. **(Exhibit Freedom Watch-C.)**

(48)    On June 16, 2017, the FBI responded to the portion of Freedom Watch's request seeking records prepared by former FBI Director Comey regarding President Donald Trump. The FBI denied this portion of the request pursuant to FOIA Exemption (b)(7)(A). **(Exhibit Freedom Watch-D.)**

(49)    Freedom Watch filed the present lawsuit regarding its request on June 20, 2017. *See* Civil Action No. 17-cv-1212 (D.D.C.), ECF No. 1, Complaint.

(50)    On July 26, 2017, Freedom Watch's lawsuit was consolidated into CNN's lawsuit. *See CNN et al. v. FBI*, 17-cv-1167 (D.D.C.), Minute Order dated July 26, 2017.

## DAILY CALLER NEWS FOUNDATION

(51)    On June 1, 2017, the Daily Caller submitted a FOIA request to the FBI via the eFOIA portal seeking "unclassified memos authored by former FBI Director James Comey that contemporaneously memorialize his discussions with President Donald Trump and his aides." The Daily Caller went on to explain that it was particularly interested in obtaining "a specific memo reported by the New York Times on May 16, 2017." The time period of the request was specified as November 8, 2016 to former Director Comey's last day in office (*i.e.*, May 9, 2017). **(Exhibit Daily Caller-A.)**

(52)    Daily Caller also requested expedited processing and a fee waiver. *Id.*

(53)    The FBI acknowledged receipt of the request by a letter dated June 8, 2017, which

notified Daily Caller that the request was assigned FOIPA Request No. 1376135-000 and that its fee waiver request was being considered. **(Exhibit Daily Caller-B.)**

(54)    In another letter on June 8, 2017, the FBI denied Daily Caller's request for expedited processing. **(Exhibit Daily Caller-C.)**

(55)    On June 16, 2017, the FBI responded to Daily Caller's request, denying it in full based on FOIA Exemption (b)(7)(A). The letter further notified Daily Caller that it could appeal this determination to OIP. **(Exhibit Daily Caller-D.)**

(56)    By letter dated June 20, 2017, Daily Caller appealed the FBI's determination to OIP. **(Exhibit Daily Caller-E.)**

(57)    Daily Caller's appeal was assigned reference number DOJ-AP-2017-004573 by OIP. On September 21, 2017, OIP affirmed the FBI's determination. **(Exhibit Daily Caller-F.)**

(58)    Daily Caller filed the present lawsuit regarding its request on September 7, 2017. *See* Civil Action No. 17-cv-1830 (D.D.C.), ECF No. 1, Complaint.

(59)    On September 7, 2017, USA Today and Mr. Heath's lawsuit was consolidated into CNN's lawsuit. *See CNN et al. v. FBI*, 17-cv-1167 (D.D.C.), Minute Order dated September 7, 2017.

### SUMMARY OF PORTIONS OF PLAINTIFFS' REQUESTS AT ISSUE IN THE "COMEY MEMOS" PORTION OF BRIEFING IN THIS CASE

(60)    The materials that have been colloquially referred to as the "Comey Memos" refer to a series of records that former-FBI Director Comey publicly stated he wrote following his one-on-one interactions with President Donald Trump in order to document/record those conversations. These memoranda, or some subset of this collection, is what the FBI understood each of the plaintiffs to be seeking, at least in part.

(61)    The following are the portions of plaintiffs' requests that seek the "Comey

11

Memos" and are at issue in this stage of briefing in this case:

A. **CNN**:  Entire request – *i.e.*, "all records of notes taken by or communications sent from FBI Director James Comey regarding or documenting interactions (including interviews and other conversations) with President Donald Trump [from] January 20, 2017 [through] May 10, 2017."

B. **USA Today/Heath**:  Item #1 – *i.e.*, "[c]opies of any reports, letters, memoranda, electronic mail messages, FD-302s or other records memorializing conversations between former Director Comey and President Trump.  Such records would have been generated since January 20, 2017 … ."

C. **JMP/Graff**:  Item #1 – *i.e.*, "[a]ny memoranda, notes, summaries and/or recordings (hereinafter referred to jointly as "memoranda") memorializing conversations Director Comey had with President Trump."

D. **JMP/Markay**:  Item #1 – *i.e.*, "[t]he memorandum drafted by Director Comey memorializing his conversation with President Trump on February 14, 2017."

E. **Judicial Watch**:  Entire request – *i.e.*, "[t]he memorandum written by former Director Comey memorializing his meeting and conversation with President Trump regarding the FBI's investigation of potential Russian interference in the 2016 United States presidential election."

F. **Freedom Watch**:  Portion of the request regarding President Trump – *i.e.*, " [a]ny and all documents and records…which constitute, refer or relate in any way to any memorandum prepared, written and/or issued by former FBI Director James Comey concerning … President Donald Trump."

G. **Daily Caller**:  Entire request – *i.e.*, "unclassified memos authored by former FBI Director James Comey that contemporaneously memorialize his discussions with President Donald Trump and his aides," and particularly "a specific memo reported by the New York Times on May 16, 2017."

## SEARCH

(62) In most instances when searching for records to respond to a FOIA request,

RIDS's first step is to conduct a search of the FBI's Central Records System ("CRS").  Such a

search was not necessary in this case because the records responsive to plaintiffs' request – *i.e.*,

"the Comey Memos" – were previously located by other means.  First, personnel in the FBI's

Records Management Division ("RMD") responsible for compiling and preserving FBI records were consulted about the existence and location of any responsive records. These personnel were involved in compiling and preserving the records of former-Director Comey after his removal. They consulted their collection of former-Director Comey records and identified what they believed to be the set of records constituting the Comey Memos. They also provided agency counsel from the FBI's Office of General Counsel ("OGC") and RIDS personnel access to the collection of former-Director Comey's materials and the set of records therein that they had identified as the Comey Memos. Agency counsel in OGC's National Security and Cyber Law Branch ("NSCLB") who were already familiar with the relevant records were consulted to confirm that the records identified by RMD as the Comey Memos were, in fact, the full set of memos, which NSCLB counsel did.

## FOIA EXEMPTIONS

### EXEMPTION (b)(7)(A) – PENDING ENFORCEMENT PROCEEDINGS

(63)    The FBI withheld the Comey Memos in full pursuant to FOIA Exemption (b)(7)(A) to avoid harm to a pending investigation. *See* 5 U.S.C. § 552(b)(7)(A).

(64)    The first step in applying any of Exemption (b)(7)'s subparts is to demonstrate that the records or information at issue were compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7). Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement responsibility of the agency.

(65)    Pursuant to 28 U.S.C. §§ 533 and 534, Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations ("AGG-DOM"), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government, with authority and

responsibility to:  investigate all violations of federal law not exclusively assigned to another agency; conduct investigations and activities to protect the United States and its people from terrorism and threats to national security; and further the foreign intelligence objectives of the United States.

(66)    On March 20, 2017, then-FBI Director James B. Comey confirmed in public testimony before Congress "that the FBI, as part of our counterintelligence mission, is investigating the Russian government's efforts to interfere in the 2016 presidential election, and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts."  Statement before the House Permanent Select Committee on Intelligence, available at https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation).  He added that "[a]s with any counterintelligence investigation, this will also include an assessment of whether any crimes were committed."  *Id.*  On May 17, 2017, Deputy Attorney General Rod Rosenstein named former FBI Director Robert S. Mueller, III as Special Counsel to oversee the Russia investigation.  Under the terms of his appointment, Special Counsel Mueller is authorized to "conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)."  DOJ Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017)).  In addition, "[i]f the Special Counsel believes it necessary and appropriate, the

14

Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters." *Id.* The Russia investigation remains ongoing. No further information about the subjects, scope, or focus of the investigation has been officially acknowledged by the FBI, Special Counsel Mueller, or any representative of the Department of Justice.

(67)    The Comey Memos include numerous references to sensitive information directly related to the Russia investigation, including information which would reveal aspects of the investigation's subjects, scope, and focus. That investigation is clearly within the law enforcement duties of the FBI to undertake counterintelligence and national security investigations, and to detect and investigate possible violations of Federal criminal laws. *See* 28 U.S.C. § 533. Thus, information contained in the memos was compiled as part of and in relation to an investigation within the FBI's law enforcement duties; as such, that information and by extension the memos in which it is referenced were compiled for law enforcement purposes. The *in camera* and *ex parte* declaration being filed in support of the motion for summary judgment contains further information about the law enforcement purpose for which the information and memos were compiled.

(68)    Next, to apply Exemption (b)(7)(A), the FBI must establish the existence of a pending or prospective investigation or other enforcement proceeding. The Russian interference investigation is pending as of the date of this filing. Thus, this element is also readily established.

(69)    Finally, the FBI must establish that disclosure of responsive records could reasonably be expected to interfere with the pending investigation. The FBI and the Special Counsel's Office have determined that disclosure of the Comey Memos while this sensitive, on-

going investigation is proceeding could reasonably be expected to interfere with the investigation as well as any law enforcement proceedings that may ultimately result from the investigation.

(70)     The FBI is limited in the amount of information it can provide publicly about how the investigation may be adversely affected by disclosure of the Comey Memos without the explanation itself risking harm to the investigation or revealing information exempt under one or more other exemptions.  This is because little has been officially confirmed or denied by the FBI, DOJ, or the Special Counsel about the investigation; although there has been extensive media coverage of the investigation, that coverage relies on speculation, assumptions, and anonymous/unnamed sources.

(71)     Broadly speaking, disclosing the Comey Memos and the information contained in them could reasonably be expected to adversely affect the pending investigation by revealing the scope and focus of the investigation, and whether particular persons, activities, information, or evidence is or is not of interest in the investigation.  The FBI considered the public statements made regarding the contents of the Comey Memos, including the testimony of former-Director Comey, in making this determination. Further explanation of the harms that the FBI has concluded may reasonably be expected to flow from disclosure of any portion of the Comey Memos at this time is being provided in the *in camera, ex parte* declaration accompanying the Government's motion for summary judgment in this case.

(72)     Even providing a document-by-document *Vaughn* index or description of the Comey Memos would undermine the very interests that the FBI seeks to protect under Exemption (b)(7)(A).  Specifically, identifying the precise number/volume of the particular – and very narrow universe – of records sought by plaintiffs could reasonably be expected to reveal non-public information about the scope and focus of the investigation.  Additional information

16

about this is provided in the *in camera, ex parte* declaration being submitted in support of the FBI's motion for summary judgment.

## OTHER APPLICABLE EXEMPTIONS

(73)    As previously explained, the FBI has determined that the Comey Memos are exempt under Exemption (b)(7)(A). However, in light of the D.C. Circuit's ruling in *Maydak v. DOJ*, 218 F.3d 760 (D.C. Cir. 2000), the FBI is also asserting other applicable FOIA exemptions, in order to preserve those exemptions in the event that Exemption (b)(7)(A) expires or is found to be inapplicable.

(74)    In the following paragraphs, the FBI justifies its withholding of information in the Comey Memos based on additionally applicable exemptions to the extent that such justification will not itself adversely affect the on-going investigation into Russia's interference in the 2016 Presidential election. Where public disclosure of any more detailed information about the FBI's application of these exemptions at this time would undermine the very interests the FBI seeks to protect through its application of Exemption (b)(7)(A) in this case, the FBI has justified its application of those exemptions in the *in camera, ex parte* declaration accompanying the Government's motion for summary judgment.

## EXEMPTION (b)(1) – CLASSIFIED INFORMATION

(75)    The FBI has protected a limited amount of information in the Comey Memos because it is classified. Exemption (b)(1) protects from disclosure records that are:

(A)    specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and

(B)    are in fact properly classified pursuant to such Executive Order.

5 U.S.C. § 552(b)(1).

(76)    The FBI's analysis of whether Exemption (b)(1) permits the withholding of

17

agency information consists of two significant steps. The FBI must determine first whether the information contained in the records qualifies for classification under the applicable Executive Order governing classification and protection of national security information, and second whether the information actually has been classified in compliance with the various substantive and procedural criteria of the Executive Order.

(77) E.O. 13526 presently governs the classification and protection of information that affects the national security (*i.e.*, "the national defense of foreign relations of the United States," § 6.1(cc)), and prescribes the various substantive and procedural criteria for classifying information. I am bound by the requirements of E.O. 13526 when making classification determinations.

(78) For information to be properly classified, and thus properly withheld pursuant to Exemption (b)(1), the information must meet the substantive requirements set forth in E.O. 13526 § 1.1(a), which requires:

> (1)     an original classification authority must have classified the information;
>
> (2)     the information must be owned by, produced by or for, or be under the control of the United States Government;
>
> (3)     the information must fall within one or more of the categories of information listed in § 1.4 of [the] order; and
>
> (4)     the original classification authority must determine that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority must be able to identify or describe the damage.

(79) The information covered by Exemption (b)(1) here is under the control of the United States Government, falls within applicable categories of E.O. 13526 § 1.4, and requires a classification marking at the SECRET level because the unauthorized disclosure of this information reasonably could be expected to cause serious damage to the national security, or at

the CONFIDENTIAL level because the unauthorized disclosure of this information reasonably could be expected to cause damage to the national security. *See* E.O. 13526 § 1.2(a)(2)-(3).

(80)    In addition to these substantive requirements, certain procedural and administrative requirements set forth in E.O. 13526 must be followed before information can be considered to be properly classified, such as proper identification and marking of documents. Specifically, E.O. 13526 requires that:

      (a)    Each document was marked as required and stamped with the proper classification designation. *See* E.O. 13526 § 1.6(a)(1) – (5).

      (b)    Each document was marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in E.O. 13526 § 1.5(b). *See* E.O. 13526 § 1.6(a)(5)(c).

      (c)    The prohibitions and limitations on classification specified in E.O. 13526 § 1.7 were followed.

      (d)    The declassification policies set forth in E.O. 13526 §§ 3.1 and 3.3 were followed.

      (e)    Any reasonably segregable portions of these classified documents that did not meet the standards for classification under E.O. 13526 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

(81)    With the above requirements in mind, I determined that the information protected pursuant to Exemption (b)(1) in the Comey Memos is currently and properly classified at the SECRET or CONFIDENTIAL level pursuant to E.O. 13526, and satisfies both the procedural and substantive requirements set forth in the Executive Order.

(82)    Specifically, this information is owned by, was produced by or for, and is under the control of the U.S. Government; was classified by an original classification authority; meets all of the procedural requirements of E.O. 13526; and warrants classification at the SECRET or CONFIDENTIAL level to protect "intelligence activities (including covert action), intelligence

sources or methods, or cryptology," *see* E.O. 13526 § 1.4(c), and "foreign relations or foreign activities of the United States, including confidential sources," *see* E.O. 13526 § 1.4(d), because unauthorized disclosure of this information could be expected to cause damage to national security (for information classified at the CONFIDENTIAL level) or serious damage to national security (for information classified at the SECRET level). Each category of classified information is discussed further below.

(83)    I examined the information protected in this case pursuant to Exemption (b)(1) in light of the body of information available to me concerning the national defense and foreign relations of the United States. This information was not examined in isolation. Instead, it was evaluated with careful consideration given to the impact that its disclosure could have on other sensitive information contained elsewhere in the United States Intelligence Community's files. Equal consideration was given to the impact that other information – both in the public domain and likely known or suspected by present or potential adversaries of the United States – would have upon the information protected here.

(84)    The justifications for protecting classified information here were prepared with the intent that they be read with consideration given to the context in which the classified information is found. This context includes not only the surrounding unclassified information, but also other information already in the public domain, as well as information likely known or suspected by other hostile intelligence entities. It is my judgment that any greater specificity in the descriptions and justifications set forth with respect to information relating to intelligence activities, sources, and methods and foreign relations/activities of the United States could reasonably be expected to harm interests that FOIA exemptions were designed to protect. Additional explanation about the FBI's application of Exemption (b)(1) in this case has been

provided in the *in camera, ex parte* declaration submitted in conjunction with the FBI's motion for summary judgment.

### *E.O. 13526 § 1.4(c) – Intelligence Activities, Sources and Methods*

(85)     E.O. 13526 § 1.4(c) authorizes the classification of "intelligence activities (including cover action), intelligence sources or methods, or cryptology." An intelligence activity, source, or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest, and includes any procedure (human or non-human) utilized to obtain information concerning such individual or organization. An intelligence activity, source, or method has two characteristics. First, the intelligence activity, source, or method, and information generated by it, is needed by United States Intelligence/Counterintelligence agencies to carry out their missions. Second, confidentiality must be maintained with respect to the use or non-use of the activity, source, or method, including intelligence sources, if the viability, productivity, and usefulness of the activity, source, and method are to be preserved.

(86)     Intelligence activities, sources, and methods must be protected from disclosure in every situation in which a certain intelligence capability, technique, or interest – or its specific use – is unknown to the groups against which it is deployed, since those groups could take countermeasures to nullify its effectiveness. Intelligence activities, sources, and methods are valuable only so long as they remain unknown and unsuspected. Once an intelligence activity, source, or method – or the fact of its use or non-use in a certain situation – is discovered, its continued successful use is seriously jeopardized.

(87)     Moreover, the U.S. Government must do more than prevent explicit references to intelligence activities, sources, and methods; it must also prevent indirect references to them.

One vehicle for gathering information about the U.S. Government's capabilities is by reviewing officially-released information. We know that terrorist organizations and other hostile or Foreign Intelligence groups have the capacity and ability to gather information from myriad sources, analyze it, and deduce means and methods from disparate details to defeat the U.S. Government's collection efforts. Thus, even seemingly innocuous, indirect references to an intelligence activity, source, or method could have significant adverse effects when juxtaposed with other publicly-available data.

(88)    Here, information covered by Exemption (b)(1) in conjunction with E.O. 13526 § 1.4(c) would, if disclosed, reveal otherwise non-public information regarding the FBI's intelligence interests, priorities, activities, and methods; the intelligence sources upon which it relies; and whether or not the FBI is or was using specific intelligence sources or activities in connection with the Russia investigation. All of this is information that is highly desired by hostile actors who seek to thwart the FBI's intelligence-gathering mission.

### *E.O. 13526 § 1.4(d) – Foreign Relations or Foreign Activities*

(89)    E.O. 13526 § 1.4 (d) authorizes the classification of information about foreign relations or foreign activities of the United States, including confidential sources. Such information includes information gathered from/with the assistance of and/or about foreign countries. It is sensitive due in part to the delicate nature of international diplomacy, and must be handled with care so as not to jeopardize the fragile relationships that exist between the United States and certain foreign governments.

(90)    The unauthorized disclosure of information concerning foreign relations or foreign activities of the United States can reasonably be expected to lead to diplomatic or economic retaliation against the United States; the loss of the cooperation and assistance of

22

friendly nations; or the compromise of cooperative foreign sources, which may jeopardize their

safety and curtail the flow of information from these sources.

(91)    Here, the FBI protected specific discussions and details concerning the United

States' foreign relation activities with identified foreign governments and officials, the disclosure

of which, in the context of other surrounding information, could reasonably be expected to

impair or adversely impact relations with those countries, and thus, cause harm to the national

security.

### EXEMPTION (b)(3) – INFORMATION EXEMPTED FROM DISCLOSURE BY STATUTE

(92)    Exemption (b)(3) protects information that is specifically exempted from public

disclosure by a statute that :

> (A)(i) requires that the matters be withheld from the public in such
> a manner as to leave no discretion on the issue; or (ii) establishes
> particular criteria for withholding or refers to particular types of
> matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act
> of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).

(93)    As explained above, the Comey Memos include information that is classified

pursuant to E.O. 13526 § 1.4(c) to protect intelligence sources and methods. Those same

intelligence sources and methods are also exempt here under Exemption (b)(3). Specifically,

their disclosure is prohibited pursuant to the National Security Act of 1947, as amended, which

provides that the Director of National Intelligence (DNI) "shall protect intelligence sources and

methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1).

(94)    As relevant to the FBI's application of Exemption (b)(3), the National Security

Act of 1947 was enacted before the date of enactment of the OPEN FOIA Act of 2009, and on its

face, leaves no discretion to agencies about withholding from the public information about intelligence sources and methods.

(95)     In order to fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. §§ 3024(i)(1).  The FBI is one of the member agencies comprising the IC, and as such must protect intelligence sources and methods.

(96)     Accordingly, information in the Comey Memos that reveals intelligence sources and methods is prohibited from disclosure pursuant to 50 U.S.C. § 3024(i)(1) and thus exempt from disclosure under Exemption (b)(3).

## EXEMPTIONS (b)(6) AND (b)(7)(C) – UNWARRANTED INVASIONS OF PERSONAL PRIVACY

(97)     Exemption (b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  All information that applies to a particular person falls within the scope of Exemption (b)(6).

(98)     Exemption (b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

(99)     The practice of the FBI is to assert Exemption (b)(6) in conjunction with Exemption (b)(7)(C) as they provide overlapping protections for personal privacy.  Although the balancing test for Exemption (b)(6) uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption (b)(7)(C) uses the lower standard of

"could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. Each exemption balances individuals' privacy interests against the public's interest in disclosure.

(100)   For purposes of these exemptions, a public interest exists only when information would significantly increase the public's understanding of the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats; uphold and enforce the criminal laws of the United States; and provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.

(101)   The FBI has relied on Exemptions (b)(6) and (b)(7)(C) here to protect the names of and any identifying information about (a) FBI employee(s), (b) relative(s) of the FBI employee(s), (c) individual(s) who has provided information to the FBI during its investigation of Russian interference in the 2016 Presidential election, and (d) individuals who were merely mentioned in the Comey Memos. The FBI is not relying on to Exemptions (b)(6) and (b)(7)(C) to protect information about former Director Comey.

(102)   The FBI concluded that all of these individuals maintain substantial privacy interests with respect to being associated with this investigation. The FBI considers that its employees – whether Special Agents or Professional Staff – enjoy substantial privacy protections by virtue of their FBI employment because, whether they are involved in investigating cases or providing other types of services and support, their employment can subject them to harassment, as well as unnecessary, unofficial questioning as to the conduct of agency business. Moreover, relatives of such employees, like anyone merely mentioned in an FBI record, maintain similarly high privacy interests. The individual providing information to the FBI in its investigation also

has substantial privacy interests.  The FBI considers that exposing the identities of individuals who cooperate with and assist in an FBI investigation could cause adverse consequences to the individual, such as harassment, intimidation, legal or economic reprisal, or even physical harm. Similarly, the third parties merely mentioned in the Comey Memos have substantial privacy interests in relation to being connected with the FBI's investigation, which could result in harassment, criticism, derogatory inferences, or suspicion.  That is particularly true in high-profile and sensitive cases such as the investigation into Russian interference in the 2016 Presidential election.

(103)  In contrast, the FBI could not identify any public interest in the disclosure of these individuals' names here because the disclosure of these names would not, itself, shed any light on the operations and activities of the FBI.  Therefore, the FBI determined that the privacy interests of the individuals outweighed any public interest, and applied Exemptions (b)(6) and (b)(7)(C) to protect this information.

## EXEMPTION 7(E) – INVESTIGATIVE TECHNIQUES AND PROCEDURES

(104)  Exemption (b)(7)(E) protects "records or information compiled for law enforcement purposes [when release] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  This exemption affords categorical protection to techniques and procedures used in law enforcement investigations.  It protects techniques and procedures that are not well-known to the public as well as non-public details about the use of publicly-known techniques and procedures.

(105)  Exemption (b)(7)(E) applies to information in the Comey Memos reflecting the

FBI's use of particular investigative techniques or procedures in furtherance of the Russian interference investigation. To date, neither the FBI, DOJ, nor Special Counsel has publicly confirmed or denied the use of any particular techniques or procedures in the on-going investigation. Moreover, publicly disclosing the particular techniques and procedures utilized in the investigation could reasonably be expected to risk circumvention of the law because it would arm those under investigation, and others intent on disrupting it, the information necessary to, *inter alia*: develop countermeasures to evade detection; destroy, adulterate, or other compromise evidence; and interfere with witnesses and their testimony.

(106)  Any further public description of the information protected here would disclose non-public information that is itself exempt under Exemption (b)(7)(E) and would trigger harm under Exemption (b)(7)(A) by prematurely revealing the conduct, scope, and direction of the on-going investigation. Additional explanation about the assertion of Exemption (b)(7)(E) is provided in the *in camera, ex parte* declaration accompanying the FBI's motion for summary judgment.

OFFICIAL ACKNOWLEDGMENT

(107)  Public statements made by former agency officials or individuals who are not part of and cannot speak on behalf of an agency do not constitute official disclosures by an agency, and do not bind or govern the actions of an agency in response to a FOIA request. Similarly, newspaper and other media reports relying on unnamed or anonymous sources do not constitute official disclosures on behalf of the agency that then bind or govern the actions of the agency in response to a FOIA request. This is true regardless of the accuracy or inaccuracy of any given, unofficial public statement. Binding an agency when unofficial public statements are accurate would necessarily require the agency to confirm the accuracy of the information, which could

itself be harmful to interests protected under the FOIA.

(108)   The FBI has considered the public statements that have been made about the
Comey Memos, including former-Director Comey's testimony about them during the June 6,
2017, hearing before the Senate Select Committee on Intelligence ("SSCI"). However, former-
Director Comey was removed from his position on May 9, 2017. Because former-Director
Comey was no longer an FBI official at the point that he provided his testimony before the SSCI,
the FBI has concluded that his testimony did not and does not require any modification in its
response to plaintiffs' FOIA request.

**SEGREGATION**

(109)   The Comey Memos were reviewed to determine whether any portions could be
segregated and released to plaintiffs. However, given that these records relate to an on-going
investigation, and the reasonable expectation of harm from premature disclosure of them here,
and after applying all applicable exemptions, the FBI has concluded that no non-exempt
information exists that can be reasonably segregated and released to plaintiffs. To provide any
further details about this determination risks the very harms that the FBI is trying to avoid by
relying on Exemption (b)(7)(A), as well as the other exemptions that are applicable to these
records

28

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits CNN-A – F, USA Today-A – D, JMP/Graff-A – F, JMP/Markay-A – E, Judicial Watch-A – D, Freedom Watch-A – D, and Daily Caller-A – F attached hereto are true and correct copies.

Executed this ___ day of October, 2017.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia