# Table of Contents

FACTUAL BACKGROUND ........................................................................................................ 3

ARGUMENT .................................................................................................................................. 3

   STANDARD OF REVIEW ....................................................................................................... 3

   THERE IS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE REGARDING THE ADEQUACY OF THE SEARCHES CONDUCTED ........................................................... 4

   THE PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT AS A MATTER OF LAW CONCERNING THE APPROPRIATENESS OF CERTAIN OF DOJ'S CATEGORICAL INVOCATIONS OF FOIA EXEMPTION 7(A) OR, ALTERNATIVELY, THIS COURT SHOULD CONCLUDE THERE IS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE THAT PRECLUDES AWARDING SUMMARY JUDGMENT TO THE DOJ WITH RESPECT TO CERTAIN FOIA EXEMPTION 7(A) INVOCATIONS ............................................................................... 8

      Official Disclosures By President Trump ................................................................... 8

      This Court Can Incorporate By Reference Portions Of Unofficial Disclosures Relied Upon By President Trump In The Context Of His Official Disclosures .................. 11

      As A Matter Of Law, President Trump's Official Disclosures Are Sufficient To Negate The Appropriateness Of The Categorical FOIA Exemption 7(A) Invocations With Respect To At Least Two Of The Comey Memoranda. .................................. 13

   DOJ HAS NOT SUFFICIENTLY DEMONSTRATED THE APPROPRIATENESS OF ITS INVOCATION OF FOIA EXEMPTION 7(A) WITH RESPECT TO THE COMEY MEMORANDA IN GENERAL ................................................................................... 14

CONCLUSION ............................................................................................................................ 17

# Table of Authorities

Cases

ACLU v. Dep't of Defense, 628 F.3d 612 (D.C. Cir. 2011) ............................................... 8

ACLU v. FBI, 2013 U.S. Dist. LEXIS 93079 (N.D. Cal. July 1, 2013) ............................ 7

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ..................................................... 4

Campbell v. Dep't of Health and Human Servs., 682 F.2d 256 (D.C. Cir. 1982) ...... 14, 15

Campbell v. Dep't of Justice, 164 F.3d 20 (D.C. Cir. 1998) ......................................... 5, 7

Crooker v. Bureau of Alcohol, Tobacco & Firearms, 789 F.2d 64 (D.C. Cir. 1986) ....... 15

Elec. Privacy Info. Ctr. v. Dep't of Justice, 82 F. Supp. 3d 307 (D.D.C. 2015) ................. 5

FBI v. Abramson, 456 U.S. 615 (1982) ........................................................................... 12

Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir. 1990) ............................................................ 8

Gray v. Army Crim. Investigation Command, 742 F. Supp. 2d 68 (D.D.C. 2010) ..... 14-16

Holcomb v. Powell, 433 F.3d 889 (D.C. Cir. 2006) .......................................................... 4

James Madison Project v. Dep't of Justice, 208 F. Supp. 3d 265 (D.D.C. 2016) ............ 16

Jefferson v. Dep't of Justice, 168 F. App'x 448 (D.C. Cir. 2005) ..................................... 5

Judicial Watch, Inc. v. Dep't of Homeland Sec., 857 F. Supp. 2d 129 (D.D.C. 2012) ...... 5

Kowalczyk v. Dep't of Justice, 73 F.3d 386 (D.C. Cir. 1996) ........................................... 5

Moore v. CIA, 666 F.3d 1330 (D.C. Cir. 2011) ................................................................ 8

Oglesby v. Dep't of the Army, 920 F.2d 57 (D.C. Cir. 1990) ............................................ 5

Pub. Citizen Health Research Group v. FDA, 185 F.3d 898 (D.C. Cir. 1999) .................. 4

Toensing v. Dep't of Justice, 890 F. Supp. 2d 121 (D.D.C. 2012) ................................ 7, 8

Truitt v. Dep't of State, 897 F.2d 540 (D.C. Cir. 1990) .................................................... 4

Truthout v. Dep't of Justice, 968 F. Supp. 2d 32 (D.D.C. 2013) ....................................... 7

Wadelton v. Dep't of State, 106 F. Supp. 3d 139 (D.D.C. 2015) ...................................... 7

Weisberg v. Dep't of Justice, 745 F.2d 1476 (D.C. Cir. 1984) .......................................... 4

## Other Authorities

*http://www.cbc.ca/news/world/trump-lashes-back-at-comey-in-friday-news-conference-1.4154172* (last accessed October 17, 2017) ................................................................ 11

*http://www.cnn.com/2017/05/09/politics/fbi-james-comey-fired-letter/index.html* (last accessed October 12, 2017) ........................................................................................ 9

*http://www.cnn.com/2017/05/11/politics/transcript-donald-trump-nbc-news/index.html* (last accessed October 12, 2017) ..................................................................................... 9

*https://www.document cloud.org/documents/3860342-SSCI-Released-Comey-Prepared-Testimony-6-7-17.html* (last accessed October 18, 2017) .......................................... 9, 13

*https://www.nytimes.com/2017/05/11/us/politics/trump-comey-firing.html* (last accessed October 17, 2017) ................................................................................................. 9

*https://www.nytimes.com/2017/05/16/us/politics/james-comey-trump-flynn-russia-investigation.html* (last accessed October 17, 2017) ....................................................... 9

*https://www.nytimes.com/2017/06/08/us/politics/senate-hearing-transcript.html* (last accessed October 18, 2017) ........................................................................................ 9

*https://www.whitehouse.gov/the-press-office/2017/06/09/remarks-president-trump-and-president-iohannis-romania-joint-press* (last accessed October 17, 2017) ............ 11, 12

## Rules

FRCP 56 ................................................................................................................. 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CABLE NEWS NETWORK, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 17-1167 (JEB) |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a/ USA TODAY, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 17-1175 (JEB) |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| JUDICIAL WATCH, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 17-1189 (JEB) |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| FREEDOM WATCH, INC., | |
| Plaintiff, | |

| | | |
|---|---|---|
| v. | * | Civil Action No. 17-1212 (JEB) |
| DEPARTMENT OF JUSTICE, | * | |
| Defendant. | * | |

* * * * * * * *

| | | |
|---|---|---|
| THE DAILY CALLER NEWS FOUNDATION, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 17-1830 (JEB) |
| DEPARTMENT OF JUSTICE, | * | |
| Defendant. | * | |

* * * * * * * * * * * * * *

**MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND IN SUPPORT OF
<u>PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

The Plaintiffs, Gannett Satellite Information Network, LLC, d/b/a/ USA TODAY ("USA TODAY"), Brad Heath ("Mr. Heath"), The James Madison Project ("JMP"), Garrett Graff ("Mr. Graff"), and Lachlan Markay ("Mr. Markay")(hereinafter referred to collectively as the "Plaintiffs"), brought this action under the Freedom of Information Act ("FOIA") to secure the lawful disclosure of records held by the defendant Department of Justice ("DOJ") and its component entities. Specifically, this FOIA action seeks not only the now-infamous "Comey Memoranda", but also records reflecting discussions between former FBI Director James Comey ("Director Comey") and DOJ staff regarding the information memorialized in the Comey Memoranda.

Presently before this Court is the DOJ's Motion for Partial Summary Judgment ("Motion") concerning the Comey Memoranda only. For the reasons set forth in detail below, however, this Court should grant the Plaintiffs' Cross-Motion for Partial Summary Judgment ("Cross-Motion") and deny DOJ's Motion in part.[1]

## FACTUAL BACKGROUND

The factual and procedural background of this proceeding was largely set forth in two documents: the First Amended Complaint, see Dkt. #9 (filed July 19, 2017), and DOJ's Statement of Material Facts as to which there is no genuine dispute, see Dkt. #22-10 (filed October 13, 2017)("Statement of Material Facts").

In the interest of avoiding repeating information already set forth before this Court in DOJ's Statement of Material Facts, the Plaintiffs incorporate that document herein by reference. However, the Plaintiffs are only incorporating the factual statements in relation to paragraphs 1-4, 6-7, and 11-16, and only to the extent that they do not constitute legal characterizations and conclusions regarding the sufficiency of the searches conducted for responsive records or the appropriateness of invocations of particular FOIA exemptions.

## ARGUMENT

### I. STANDARD OF REVIEW

Summary judgment pursuant to FRCP 56 should be awarded to a movant if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In evaluating the appropriateness of summary judgment, the Court must view the evidence in the light most favorable to the

---

[1] The Plaintiffs are not challenging the appropriateness of redactions/withholdings made pursuant to FOIA Exemptions 1, 3, 6, 7(C) or 7(E).

3

non-moving party, Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006), accepting the non-moving party's evidence as true and drawing "all justifiable inferences" in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, the Court need not rely on any "conclusory allegations unsupported by factual data," Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks and citations omitted), and should only find that "there is a genuine issue for trial" where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249 (citation omitted).

The mere existence of some alleged factual dispute between the parties will not defeat summary judgment; the requirement is that there is no genuine issue of material fact. See Holcomb, 433 F.3d at 895 (internal quotation marks and citations omitted). A fact is "material" if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are "irrelevant or unnecessary" do not affect the summary judgment determination. Anderson, 477 U.S. at 248. An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

## II. THERE IS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE REGARDING THE ADEQUACY OF THE SEARCHES CONDUCTED

"[A]n agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990); see also Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984)("[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."). However, an agency may not "ignore

4

what it cannot help but know" when faced with "a lead so apparent that the [agency] cannot in good faith fail to pursue it." Kowalczyk v. Dep't of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996).

A search must be conducted in good faith using methods that are likely to produce the information requested. See Campbell v. Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998). "While there is no requirement that an agency search every record system, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested." Jefferson v. Dep't of Justice, 168 F. App'x 448, 450 (D.C. Cir. 2005)(internal quotation and alteration omitted), quoting Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Agency affidavits, for their part, must set forth search terms and the type of searches performed. Oglesby, 920 F.2d at 68.

The district court judges within this Circuit have continued to apply the requirements of Oglesby in FOIA cases. See e.g., Elec. Privacy Info. Ctr. v. Dep't of Justice, 82 F. Supp. 3d 307, 316-317 (D.D.C. 2015)(citing Oglesby, finding agency search reasonable due in part to reliance upon search term "WikiLeaks"); Judicial Watch, Inc. v. Dep't of Homeland Sec., 857 F. Supp. 2d 129, 140-141 (D.D.C. 2012)(relying upon Oglesby, finding agency affidavits insufficient specifically due to omission of, among other things, particular search terms relied upon in conducting the searches).

To meet its legal burden, DOJ provided a declaration from David M. Hardy ("Hardy Declaration"), the Section Chief of the Record/Information Dissemination Section. See Dkt. #22-2 (filed October 13, 2017). The Hardy Declaration notes that the FBI did not conduct its search using the standard method of searching its Central Records System ("CRS"). Instead, the Hardy Declaration states that the Comey Memoranda were

5

previously identified in the context of agency personnel compiling and preserving the records of Director Comey after his termination on May 9, 2017. FBI personnel identified "what they believed to be the set of records constituting the Comey Memos" and consulted with personnel in the Office of General Counsel's National Security and Cyber Law Branch ("NSCLB") regarding that determination. Id. at ¶62.

At a minimum, the descriptions outlined in the Hardy Declaration – to say nothing of the actual actions being described – fail to meet the requirements of FOIA. The Hardy Declaration declines to provide even a scintilla of contextual information regarding how FBI personnel made their determinations. The Hardy Declaration merely states that FBI personnel identified "what they believed to be the set of records constituting the Comey Memos", see id., without providing the Plaintiffs – or, more importantly, this Court – with any understanding of *how* they reached that conclusion. In what context and in what manner were the set of records within which the Comey Memoranda were located originally compiled? What methodologies were used to ensure the records identified as the Comey Memoranda were the full universe of responsive records? Was Director Comey or any member of his personal staff, presumably all of whom are easily accessible by the FBI, consulted to ensure that all of the Comey Memoranda had been identified? Declaration of Bradley P. Moss at ¶7 (dated November 3, 2017)("Moss Decl."), attached as Exhibit "1".

The Hardy Declaration further notes that confirmation that the identified records were the full universe of the Comey Memoranda was provided by the NSCLB. See Dkt. #22-2 at ¶62. The Hardy Declaration declines to explain, however, what possible expertise or knowledge the NSCLB would have that would enable it to render such a determination.

Were any of the staff in the NSCLB consulted by Director Comey about the contents of one or more of the Comey Memoranda prior to his termination? See Moss Decl. at ¶8. The Hardy Declaration does not say.

The questions posed and deficiencies identified above are all reasonable questions seeking material information that were not addressed by the Hardy Declaration. These deficiencies justify denying DOJ's Motion at this time with respect to adequacy of the searches conducted. See Wadelton v. Dep't of State, 106 F. Supp. 3d 139, 146-47 (D.D.C. 2015)(denying summary judgment due to unresolved questions regarding why State only searched files of certain officials and not others); see also Campbell, 164 F.3d at 28 (rejecting agency argument that "weight of authority" justified refusing to supplement central database search when evidence indicated responsive records might be located in other systems); ACLU v. FBI, 2013 U.S. Dist. LEXIS 93079, *9-*14 (N.D. Cal. July 1, 2013)(finding that agency's affidavit made only conclusory assertions that systems searched were most likely to contain responsive records and ordering agency to submit supplemental affidavits providing court with basis to "evaluate whether its decision to not search additional databases was reasonable"). Compare with Truthout v. Dep't of Justice, 968 F. Supp. 2d 32, 37 (D.D.C. 2013)(denying reconsideration because agency affidavits clarified that central database searched would have identified responsive records contained on shared drives if existed).

The time may ultimately come to pass when DOJ can sufficiently demonstrate to this Court that its searches for the universe of the Comey Memoranda was adequate under FOIA. The reliance here by DOJ upon unexplained "personal knowledge", however, does not withstand scrutiny. See Toensing v. Dep't of Justice, 890 F. Supp. 2d 121, 143

(D.D.C. 2012)("Hence, Ms. Hannigan's response, which admits that no search was performed and instead relies on professed personal knowledge that no responsive records exist, cannot possibly constitute an adequate search.").

**III. THE PLAINTIFFS ARE ENTITLED TO PARTIAL SUMMARY JUDGMENT AS A MATTER OF LAW CONCERNING THE APPROPRIATENESS OF CERTAIN OF DOJ'S CATEGORICAL INVOCATIONS OF FOIA EXEMPTION 7(A) OR, ALTERNATIVELY, THIS COURT SHOULD CONCLUDE THERE IS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE THAT PRECLUDES AWARDING SUMMARY JUDGMENT TO THE DOJ WITH RESPECT TO CERTAIN FOIA EXEMPTION 7(A) INVOCATIONS**

When an agency has officially acknowledged otherwise exempt information through prior disclosure, the disclosure of the information may be compelled notwithstanding the agency's otherwise valid exemption claim. See Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990). A strict test applies to claims of official disclosure, see Moore v. CIA, 666 F.3d 1330, 1333 (D.C. Cir. 2011), and in the context of overcoming a valid exemption claim regarding the contents of a record itself the plaintiff must demonstrate that the information requested matches the specific information previously disclosed. See ACLU v. Dep't of Defense, 628 F.3d 612, 620-21 (D.C. Cir. 2011).

**A. Official Disclosures By President Trump**

President Trump has made several official disclosures of information regarding the contents of at least two of the Comey Memoranda since their existence was first brought to light.

In order to provide this Court with informational context with respect to the circumstances in which President Trump ultimately made his official disclosures, the Plaintiffs refer this Court to the following pieces of information that originally emerged from unofficial disclosures:

1) On January 27, 2017, President Trump and Director Comey had a private dinner together at the White House;

2) During the January 27, 2017, dinner, President Trump asked for a pledge of loyalty from Director Comey, who declined. President Trump asked a second time, at which point Director Comey replied that he would give him "honesty";

3) During a February 14, 2017, meeting in the Oval Office, President Trump told Director Comey that "I hope you can see your way clear to letting this go, to letting Flynn go", referring specifically to the FBI's investigation into former National Security Advisor Michael Flynn ("Mr. Flynn"); and

4) In his testimony before the Senate Select Committee on Intelligence ("SSCI"), Director Comey confirmed that he drafted memoranda after both the January 27, 2017, dinner and the February 14, 2017, Oval Office meeting.

*https://www.nytimes.com/2017/05/11/us/politics/trump-comey-firing.html* (last accessed October 17, 2017); *https://www.nytimes.com/2017/05/16/us/politics/james-comey-trump-flynn-russia-investigation.html* (last accessed October 17, 2017); *https://www.documentcloud.org/documents/3860342-SSCI-Released-Comey-Prepared-Testimony-6-7-17.html* (last accessed October 18, 2017); *https://www.nytimes.com/2017/06/08/us/politics/senate-hearing-transcript.html* (last accessed October 18, 2017).

On May 9, 2017, President Trump fired Director Comey. *http://www.cnn.com/2017/05/09/politics/fbi-james-comey-fired-letter/index.html* (last accessed October 12, 2017). Two days later, President Trump sat for an interview with NBC Nightly News' Lester Holt in which he discussed in detail the decision to fire Director Comey. In that interview, President Trump confirmed the existence of the January 27, 2017, dinner. *http://www.cnn.com/2017/05/11/politics/transcript-donald-trump-nbc-news/index.html* (last accessed October 12, 2017).

On June 9, 2017, President Trump was asked during a press conference about Director Comey's SSCI testimony, specifically the aforementioned issues surrounding the January 27, 2017, dinner and February 14, 2017, Oval Office meeting.

> JON KARL: Mr. President, can we get back to James Comey's testimony. You suggested he didn't tell the truth in everything he said. *He did say, under oath, that you told him to let the Flynn – you said you hoped the Flynn investigation he could let –*
>
> DONALD TRUMP: *I didn't say that.*
>
> JON KARL: So he lied about that?
>
> DONALD TRUMP: Well, I didn't say that. I mean, I will tell you I didn't say that.
>
> JON KARL: And did he ask you to pledge –
>
> DONALD TRUMP: And there would be nothing wrong if I did say that, according to everybody that I've read today. But I did not say that.
>
> JON KARL: *And did he ask for a pledge of loyalty from you?* That's another thing he said.[2]
>
> DONALD TRUMP: *No, he did not.*
>
> JON KARL: So he said those things under oath. Would you be willing to speak under oath to give your version of those events?
>
> DONALD TRUMP: One hundred percent. I didn't say under oath – I hardly know the man. I'm not going to say, I want you to pledge

---

[2] This appears to be a linguistic error by the reporter, Jon Karl, as it suggests that it was Director Comey who was asking for a pledge of loyalty from President Trump (as opposed to the other way around).

allegiance. Who would do that? Who would ask a man to pledge allegiance under oath? I mean, think of it. I hardly know the man. It doesn't make sense. No, I didn't say that, and I didn't say the other.

*https://www.whitehouse.gov/the-press-office/2017/06/09/remarks-president-trump-and-president-iohannis-romania-joint-press* (last accessed October 17, 2017)(verbatim transcript)(emphasis added); *http://www.cbc.ca/news/world/trump-lashes-back-at-comey-in-friday-news-conference-1.4154172* (last accessed October 17, 2017).

### B. This Court Can Incorporate By Reference Portions Of Unofficial Disclosures Relied Upon By President Trump In The Context Of His Official Disclosures

The Plaintiffs do not dispute that, ordinarily speaking, the remarks made by former FBI Director Comey in his testimony to the SSCI would not qualify as "official disclosures." See Memorandum in Support of Motion for Partial Summary Judgment at 18 (Dkt. #22-1)(filed October 13, 2017)("Def's Memo"). However, the Plaintiffs respectfully submit that this Court retains the discretionary equitable authority under FOIA to "incorporate by reference" otherwise-unofficial disclosures and render them as "official disclosures" when authorized U.S. Government officials rely upon those unofficial disclosures in the context of making their own official statements.

The undersigned has not been able to identify any case law on-point that addresses this legal argument one way or the other. The argument is itself an outgrowth of President Trump's unconventional communication methods, specifically his voluntary decisions to make official disclosures of information in reliance upon unofficial disclosures emanating from media reports and congressional testimony of former U.S. Government officials such as Director Comey. The present situation is not comparable to typical unofficial

11

disclosure circumstances, see Def's Memo at 18 (citing cases), in which there have not been *any* official disclosures but rather *only* unofficial disclosures.

In contrast, here the President of the United States made official disclosures of information in specific reference to information outlined in unofficial disclosures. This was not something as banal as President Trump merely commenting on the unofficial disclosures: he went so far as to publicly deny as false Director Comey's claims regarding the so-called "loyalty pledge" from the January 27, 2017, dinner and the "let Flynn go" issue from the February 14, 2017, Oval Office meeting. *https://www.white house.gov/the-press-office/2017/06/09/remarks-president-trump-and-president-iohannis-romania-joint-press* (last accessed October 17, 2017).

The interests of public policy support the conclusion that when Government officials incorporate by reference into their official statements otherwise-unofficial disclosures of information – such as, for example, substantively addressing the merits of those unofficial disclosures – they render that information "officially acknowledged". Cf. FBI v. Abramson, 456 U.S. 615, 630 (1982)(finding FOIA Exemption 5 protection for predecisional communications no longer applied when those communications were incorporated into final agency decision). This Court would be within its discretion to conclude that President Trump's public denial of the substantive accuracy of Director Comey's claims permits incorporating by reference the substance of what Director Comey said occurred. Specifically, this Court can and should incorporate by reference the substance of Director Comey's particular remarks during his SSCI testimony regarding President Trump's request for a pledge of loyalty during the January 27, 2017, dinner, as well as President Trump's request during the

12

October 14, 2017, Oval Office meeting that Director Comey find a way to "let go" of the investigation into Mr. Flynn. *https://www.documentcloud.org/documents/3860342-SSCI-Released-Comey-Prepared-Testimony-6-7-17.html* (last accessed October 18, 2017)

**C. As A Matter Of Law, President Trump's Official Disclosures Are Sufficient To Negate The Appropriateness Of The Categorical FOIA Exemption 7(A) Invocations With Respect To At Least Two Of The Comey Memoranda.**

No less an authoritative source than President Trump himself has chosen of his own volition to officially acknowledge what was said – or, as far as the President is concerned, what was *not said* – in the January 27, 2017, dinner and the February 14, 2017, Oval Office meeting. President Trump has acknowledged that both events occurred, and has publicly denied two specific claims Director Comey has made about what transpired during those two events (the details of which Director Comey testified were memorialized within two separate memoranda that he drafted). See supra at 10-13.

There is sufficient evidence in the record by way of official disclosures from President Trump to conclude that the categorical invocation of FOIA Exemption 7(A) regarding these two particular Comey Memoranda have been nullified as a matter of law. There is no genuine issue of material fact in dispute that the two underlying events occurred and that President Trump has officially denied that he made the claims regarding which he was alleged to have made by way of Director Comey's SSCI testimony. By virtue of addressing and substantively countering the merits of those claims, which are memorialized in the two particular memoranda, President Trump has officially acknowledged their existence and at least some of their respective contents.

At an absolute minimum, these official disclosures by President Trump are sufficient to create a genuine issue of material fact in dispute that warrants denying DOJ's Motion at this time.

### III. DOJ HAS NOT SUFFICIENTLY DEMONSTRATED THE APPROPRIATENESS OF ITS INVOCATION OF FOIA EXEMPTION 7(A) WITH RESPECT TO THE COMEY MEMORANDA IN GENERAL

Even if this Court rejects the Plaintiffs' argument with respect to President Trump's official disclosures regarding two of the Comey Memoranda, it would be reasonable to conclude there is a genuine issue of material fact in dispute that precludes granting summary judgment to DOJ with respect to the appropriateness of its categorical FOIA Exemption 7(A) invocations with respect to the universe of the Comey Memoranda.

There is no disagreement regarding the standard for evaluating Exemption 7(A) withholdings. The burden is on the agency to demonstrate that disclosure could reasonably be expected to interfere with enforcement proceedings that are pending or reasonably anticipated. See Def's Memo at 12-14.

DOJ has failed to meet its burden to demonstrate that disclosure could reasonably be expected to interfere with the enforcement proceeding. The D.C. Circuit has held that an agency invoking Exemption 7(A) must show, by more than a conclusory statement, how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding. See Campbell v. Dep't of Health and Human Servs., 682 F.2d 256, 259 (D.C. Cir. 1982). At a minimum, the agency's submissions must "focus upon categories of records encompassed by [plaintiff's] request." See Gray v. Army Crim. Investigation Command, 742 F. Supp. 2d 68, 74 (D.D.C. 2010)(quoting Campbell, 682 F.2d at 265).

14

In particular, the agency affidavits or declarations "must demonstrate specifically how each document or category of documents, if disclosed, would interfere with the investigation, for example, how revelation of any particular record or record category identified as responsive to [plaintiff's] request would reveal to particular targets actual or potential, the scope, direction, or focus of the [agency's] inquiry." See Gray, 742 F. Supp. 2d at 74 (quoting Campbell, 682 F.2d at 265); see also Crooker v. Bureau of Alcohol, Tobacco & Firearms, 789 F.2d 64, 67 (D.C. Cir. 1986)("The hallmark of an acceptable Robbins category is thus that it is *functional*; it allows the court to trace a rational link between the nature of the document and the alleged likely interference)(emphasis in original).

Notwithstanding the requirements established in Crooker and Campbell, as well as those refined further in Gray, DOJ has provided this Court with little in the way of non-conclusory information upon which to determine the appropriateness of its categorical FOIA Exemption 7(A) invocations. See Dkt. #22-2 at ¶¶69-71. DOJ is not attempting to hide this fact. The Hardy Declaration admits as much, stating that the "FBI is limited in the amount of information it can provide publicly about the investigation may be adversely affected by disclosure of the Comey Memos…". Id. at ¶70; see also id. at ¶72 ("Even providing a document-by-document *Vaughn* index or description of the Comey Memos would undermine the very interests that the FBI seeks to protect under Exemption (b)(7)(A).").

Instead, DOJ appears to be relying heavily upon the additional detail that purportedly exists in a separate *in camera*, *ex parte* declaration that it is seeking to submit to this Court through its contemporaneous motion for leave. Id. at ¶72; see also Dkt. #23 at ¶4

15

(indicating that *ex parte* declaration provides "law-enforcement-sensitive information" provided by "another FBI employee")(filed October 13, 2017). Even assuming *arguendo* that this Court has the authority to render its decision on DOJ's categorical FOIA Exemption 7(A) invocation relying almost exclusively upon *ex parte* information, the Plaintiffs would fervently and respectfully urge that this Court exercise utmost hesitation and caution in doing so. See James Madison Project v. Dep't of Justice, 208 F. Supp. 3d 265, 292 (D.D.C. 2016)(finding CIA's refusal to "identify why the disclosure of the specific category of records would interfere with enforcement proceedings" required conclusion that the agency had failed to adequately justify invocation of FOIA Exemption 7(A)); see also Gray, 742 F. Supp. 2d at 75 ("However, these conclusory, boilerplate statements, without reference to specific documents or even categories of documents, fail to support the agency's motion for summary judgment on the basis of Exemption 7(A)).

The interests of public policy support the conclusion that this Court should require that DOJ provide, at an *absolute minimum*, supplemental public declaration(s) justifying their FOIA Exemption 7(A) invocation. To justify the categorical withholding of the Comey Memoranda – documentation regarding which it is axiomatic are of *significant* public interest – based entirely upon *ex parte* information runs contrary to the spirit, if not the letter, of FOIA.

It may ultimately come to pass that DOJ can justifiably invoke FOIA Exemption 7(A) in such a categorical fashion. This Court should not countenance that action, however, without first mandating a more detailed public accounting of the nature of the risk to the investigation that is reasonably likely to occur if the Comey Memoranda are released.

## **CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Partial Summary Judgment should be denied in part and the Plaintiffs' Cross-Motion for Partial Summary Judgment should be granted.

Date: November 3, 2017

                                        Respectfully submitted,

                                        /s/
                                  _____
                                  Bradley P. Moss, Esq.
                                  D.C. Bar #975905
                                  Mark S. Zaid, Esq.
                                  D.C. Bar #440532
                                  Mark S. Zaid, P.C.
                                  1250 Connecticut Avenue, N.W.
                                  Suite 200
                                  Washington, D.C. 20036
                                  (202) 454-2809
                                  (202) 330-5610 fax
                                  Brad@MarkZaid.com
                                  Mark@MarkZaid.com

                                  Attorneys for the Plaintiffs