**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., <br><br>      Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br><br>      Defendant. | Civil Action No. 1:17-cv-01167-JEB |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al*., <br><br>      Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br>      Defendant. | Civil Action No. 1:17-cv-01175-JEB |
| JUDICIAL WATCH, INC., <br><br>      Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br>      Defendant. | Civil Action No. 1:17-cv-01189-JEB |
| FREEDOM WATCH, INC., <br><br>      Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION, <br><br>      Defendants. | Civil Action No. 1:17-cv-01212-JEB |

THE DAILY CALLER NEWS
FOUNDATION,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendant.

Civil Action No. 1:17-cv-01830-JEB

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' CROSS-MOTIONS FOR SUMMARY
JUDGMENT AND TO FREEDOM WATCH'S FED. R. CIV. P. 56(d) MOTION
AND
REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DEFENDANTS' MOTION TO SUBMIT
DECLARATION *IN CAMERA* AND *EX PARTE***

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...........................................................................................................................1

ARGUMENT .................................................................................................................................5

I.     THE FBI CONDUCTED AN ADEQUATE SEARCH.......................................................5

II.    THE FBI PROPERLY WITHHELD THE COMEY MEMOS IN FULL
UNDER EXEMPTION 7(A) ............................................................................................9

        A.     The Memos Have Been "Compiled" for Law Enforcement Purposes .................10

        B.     The Government Properly Addressed the Withheld Documents on a
Categorical Basis ................................................................................................11

        C.     The Government's *In Camera*, *Ex Parte* Declaration, Which the Court
Should Accept, Together With the Public Declarations, Establish That
Release of the Memos Could Cause Harm to a Pending Law
Enforcement Proceeding, and *In Camera* Review is Not Warranted ...................13

        D.     The Prior-Disclosure Doctrine Does Not Apply Here to All or Even
Part of the Comey Memos ...................................................................................18

III.    THE GOVERNMENT PROPERLY WITHHELD LAW ENFORCEMENT
TECHNIQUES AND PROCEDURES UNDER EXEMPTION 7(E).............................24

IV.    THE GOVERNMENT PROPERLY WITHHELD INFORMATION
PURSUANT TO EXEMPTIONS 1 AND 3 ....................................................................26

V.    THE GOVERNMENT PROPERLY WITHHELD INFORMATION
PURSUANT TO EXEMPTIONS 6 AND 7(C)...............................................................28

VI.    FREEDOM WATCH'S RULE 56(d) MOTION FOR DISCOVERY SHOULD
BE DENIED....................................................................................................................31

CONCLUSION.............................................................................................................................33

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Accuracy in Media, Inc. v. National Park Service*,
    194 F.3d 120 (D.C. Cir. 1999) ............................................................................... 32

*Adair v. Mine Safety and Health Administration*,
    No. 08-1573 (EGS), 2009 WL 9070947 (D.D.C. Sept. 23, 2009) ........................................... 20

*Afshar v. United States Department of State*,
    702 F.2d 1125 (D.C. Cir. 1983) ............................................................................. 19

*Ahuruonye v. United States Department of Interior*,
    239 F. Supp. 3d 136 (D.D.C. 2017) .......................................................................... 9

*American-Arab Anti-Discrimination Committee v. United States Department of
    Homeland Security*,
    516 F. Supp. 2d 83 (D.D.C. 2007) ........................................................................... 7

*American Civil Liberties Union v. United States Department of Defense*,
    628 F.3d 612 (D.C. Cir. 2011) .............................................................................. 19

*Amnesty International USA v. CIA*,
    728 F. Supp. 2d 479 (S.D.N.Y. 2010) ....................................................................... 7

*Anderson v. Department of Treasury*,
    No. 98-1112, 1999 WL 282784 (W.D. Tenn. 1999) ............................................................ 23

*Antonelli v. Bureau of Alcohol, Tobacco, Firearms and Explosives*,
    No. Civ. A. 04-1180-CKK, 2005 WL 32762222 (D.D.C. Aug. 16, 2005) ......................................... 25

*Barnard v. Department of Homeland Security*,
    598 F. Supp. 2d 1 (D.D.C. 2009) ........................................................................... 14

*Barre v. Obama*,
    932 F. Supp. 2d 5 (D.D.Cir. 2013) ......................................................................... 22

*Bartko v. United States Department of Justice*,
    62 F.Supp.3d 134 (D.D.C. 2014) ....................................................................... 15, 32

*Bast v. United States Department of Justice*,
    665 F.2d 1251 (D.C. Cir. 1981) ............................................................................ 30

*Beltranena v. Clinton*,
    770 F. Supp. 2d 175 (D.D.C. 2011) ......................................................................... 32

ii

*Bevis v. Department of State*,
    801 F.2d 1386 (D.C. Cir. 1986) ........................................................................ 12

*Blanton v. United States Department of Justice*,
    182 F. Supp. 2d 81 (D.D.C. 2002) ...................................................................... 8

*Brown v. FBI*,
    873 F. Supp. 2d 388 (D.D.C. 2012) ................................................................... 25

*Campbell v. United States Department of Justice*,
    164 F.3d 20 (D.C. Cir. 1998) .............................................................................. 8

*Center for National Security Studies v. United States Department of Justice*,
    331 F.3d 918 (D.C. Cir. 2003) ............................................................ 11, 17, 27

*Church of Scientology of Texas v. IRS*,
    816 F. Supp. 1138 (W.D. Tex. 1993) ................................................................ 26

*Citizens for Responsibility and Ethics in Washington v. United States Departmnt of Justice*,
    746 F.3d 1082 (D.C. Cir. 2014) ......................................................................... 12

*Council on American-Islamic Relations v. FBI*,
    749 F. Supp. 2d 1104 (S.D. Cal. 2010) ............................................................. 26

*Crooker v. Bureau of Alcohol, Tobacco and Firearms*,
    789 F.2d 64 (D.C. Cir. 1986) ............................................................................ 11

*DeBrew v. Atwood*,
    244 F. Supp. 3d 123 (D.D.C. 2017) .................................................................... 9

*Dow Jones & Co. v. United States Department of Justice*,
    880 F. Supp. 145 (S.D.N.Y. 1995), *opinon vacated in part*,
    907 F. Supp. 79 (S.D.N.Y. 1995) ................................................................ 21, 22

*Edmonds v. FBI*,
    272 F. Supp. 2d 35 (D.D.C. 2003) .................................................................... 12

*Electronic Privacy Information Center v. Department of Justice Criminial Division*,
    82 F. Supp. 3d 307 (D.D.C. 2015) .................................................................... 14

*Erb v. United States Department of Justice*,
    572 F. Supp. 954 (W.D. Mich. 1983) ............................................................... 23

*Exner v. United States Department of Justice*,
    902 F. Supp. 240 (D.D.C. 1995) ....................................................................... 11

iii

*Fisher v. United States Department of Justice*,
   772 F. Supp. 7 (D.D.C. 1991) ........................................................... 21

*Fitzgibbon v. CIA*,
   911 F.2d 755 (D.C. Cir. 1990) ..................................................... 20, 29

*Frugone v. CIA*,
   169 F.3d 772 (D.C. Cir. 1999) ........................................................ 16

*Hayden v. National Security Agency*,
   608 F.2d 1381 (D.C. Cir. 1979) ...................................................... 32

*Hudson River Sloop Clearwater, Inc. v. Department of Navy*,
   891 F.2d 414 (2d Cir. 1989)........................................................... 20

*James Madison Project v. Department of Justice*,
   No. 15-1307, 2017 WL 3172855 (D.D.C. July 25, 2017) ......................... 7

*Jarvik v. CIA*,
   741 F. Supp. 2d 106 (D.D.C. 2010) ................................................ 32

*John Doe Agency v. John Doe Corp.*,
   493 U.S. 146 (1989)..................................................................... 10

*Judicial Watch, Inc. v. Department of Justice*,
   185 F. Supp. 2d 54 (D.D.C. 2002) ................................................. 32

*Judicial Watch v. United States Department of Defense*,
   857 F. Supp. 2d 44 (D.D.C. 2012) ................................................... 7

*Justice v. IRS*,
   798 F. Supp. 2d 43 (D.D.C. 2011) .................................................. 31

*Kansi v. United States Department of Justice*,
   11 F. Supp. 2d 42 (D.D.C. 1998) ................................................... 10

*Larson v. Department of State*,
   565 F.3d 857 (D.C. Cir. 2009) ..................................................... 5, 27

*Lykins v. United States Department of Justice*,
   725 F.2d 1455 (D.C. Cir. 1984) ..................................................... 14

*Maydak v. United States Department of Justice*,
   218 F.3d 760 (D.C. Cir. 2000) ................................................ 3, 13, 14

*Meeropol v. Meese,*
  790 F.2d 942 (D.C. Cir. 1986) ............................................................................ 5

*Military Audit Project v. Casey,*
  656 F.2d 724 (D.C. Cir. 1981) ............................................................................ 16

*Murphy v. FBI,*
  490 F. Supp. 1138 (D.D.C. 1980) ................................................................. 16, 17

*National Archives and Records Administration v. Favish,*
  541 U.S. 157 (2004) ............................................................................................ 31

*Neely v. FBI,*
  208 F.3d 461 (4th Cir. 2000) .............................................................................. 29

*New York Civil Liberties Union v. Department of Homeland Security,*
  771 F. Supp. 2d 289 (S.D.N.Y. 2011) ................................................................ 26

*NLRB v. Robbins Tire & Rubber Co.,*
  437 U.S. 214 (1978) ............................................................................................ 11

*Owens v. United States Department of Justice,*
  2007 WL 778980 (D.D.C. 2007) ........................................................................ 12

*Phillipi v. CIA,*
  655 F.2d 1325 (D.C. Cir. 1981) .......................................................................... 19

*Pike v. United States Department of Justice,*
  No. 15-CV-0301 (KBJ), 2016 WL 5108012 (D.D.C. Sept. 20, 2016) ................... 20

*Prison Legal News v. Executive Office for United States Attorneys,*
  628 F.3d 1243 (10th Cir. 2011) .......................................................................... 23

*Robbins, Geller, Rudman & Dowd v. U.S. SEC,*
  No. 3:14-CV-2197, 2016 WL 950995 (M.D. Tenn. Mar. 12, 2016) ............... 21, 23

*Rush v. Department of State,*
  748 F. Supp. 1548 (S.D. Fla. 1990) .................................................................... 20

*SafeCard Services, Inc. v. SEC,*
  926 F.2d 1197 (D.C. Cir. 1991) ................................................................. 3, *passim*

*Sarno v. United States Department of Justice,*
  --- F. Supp. 3d ---, 2017 WL 4355925 (D.D.C. 2017) ......................................... 12

*Schiffer v. FBI*,
  78 F.3d 1405 (9th Cir. 1996) ........................................................................ 29

*Schrecker v. United States Department of Justice*,
  217 F. Supp. 2d 29 (D.D.C. 2002) ................................................................ 31

*Schrecker v. United States Department of Justice*,
  349 F.3d 657 (D.C. Cir. 2003) ...................................................................... 28

*Senate of the Commonwealth of Puerto Rico on Behalf of Judiciary Committee v.*
  *United States Department of Justice*,
  823 F.2d 574 (D.C. Cir. 1987) ................................................................ 15, 29

*Simmons v. United States Department of Justice*,
  796 F.2d 709 (4th Cir. 1986) ........................................................................ 19

*Solar Sources, Inc. v. United States*,
  142 F.3d 1033 (7th Cir. 1998) ...................................................................... 13

*Tipograph v. Department of Justice*,
  83 F. Supp. 3d 234 (D.D.C. 2015) ................................................................ 12

*Toensing v. United States Department of Justice*,
  890 F. Supp. 2d 121 (D.D.C. 2012) ................................................................ 7

*Wadelton v. Department of State*,
  106 F. Supp. 3d 139 (D.D.C. 2015) ................................................................ 8

*Wheeler v. CIA*,
  271 F. Supp. 2d 132 (D.D.C. 2003) .............................................................. 31

*Wilson v. CIA*,
  586 F.3d 171 (2d Cir. 2009) .......................................................................... 16

*Wilson v. U.S. Department of Transportation*,
  No. 10-5295, 2010 WL 5479580 (D.C. Cir. Dec. 30, 2010) ........................ 32

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) ...................................................................... 16

**STATUTES**

5 U.S.C. § 552(b)(7)(A) ........................................................................ 2, 9, 23

**EXECUTIVE ORDER**

Executive Order No. 13,526 ................................................................................................. 26, 27

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 56(d) .................................................................................................. 1, 2, 31, 33

## **INTRODUCTION**

Defendants the United States Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") (collectively, the "government") respectfully submit this memorandum in opposition to plaintiffs' cross-motions for summary judgment and in further support of the government's motion for partial summary judgment in these consolidated Freedom of Information Act ("FOIA") cases.  The government also responds herein to plaintiffs' opposition to the government's motion to submit an *in camera* and *ex parte* declaration and to one plaintiff's (Freedom Watch's) motion for discovery pursuant to Federal Rule of Civil Procedure 56(d).[1]

---

[1]  This memorandum will cite to the following documents:

- Defendants' Memorandum in Support of Motion for Partial Summary Judgment, ECF No. 22-1 ("Defs.' Mem.");
- Declaration of David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBI, ECF No. 22-2 ("Hardy Decl.");
- Cable News Network's Memorandum of Points and Authorities in Support of Plaintiffs' Cross-Motion for Summary Judgment and in Opposition to Defendant's (1) Motion for Summary Judgment and (2) Motion to Submit an In Camera, Ex Parte Declaration, ECF No. 25 ("CNN Mem.");
- Gannett Satellite Information Network, LLC, *et al*.'s Memorandum of Points and Authorities in Opposition to Defendant's Motion for Partial Summary Judgment and in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment, ECF No. 30-1 ("Gannett Mem.");
- Judicial Watch's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment and in Support of Judicial Watch's Cross-Motion for Summary Judgment, ECF No. 32 ("JW Mem.");
- Freedom Watch's Fed. R. Civ. P. 56(d) Motion in Opposition to Defendants' Partial Motion for Summary Judgment, ECF No. 33 ("FW Mem.");
- The Daily Caller News Foundation's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Partial Summary Judgment and in Support of its Cross-Motion for Summary Judgment, ECF No. 28 ("DCNF Mem.").

The documents at issue in the present motions, the so-called Comey Memos, pertain to, and have been compiled into, the ongoing investigation by the Special Counsel into Russian interference in the 2016 election.  Hardy Decl. ¶ 67.  The FBI and the Special Counsel have determined that the disclosure of these records at the current time, while this sensitive and high-profile investigation remains ongoing, could reasonably be expected to adversely affect the integrity of that investigation.  *Id.* ¶¶ 69-71.  Accordingly, the Comey Memos have been properly withheld in full pursuant to FOIA Exemption 7(A), which protects documents compiled for law enforcement purposes where their disclosure "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  In addition, the government has shown that its claims of Exemptions 1, 3, 6, 7(C), and 7(E) for limited amounts of information in these memos are also justified.[2]  Plaintiffs' attempts to establish that the government's search was inadequate or that these exemptions have been improperly invoked are without merit.

First, as to the adequacy of the search, given the high-profile nature of the documents at issue and the limited set of responsive documents, the FBI has provided more than adequate detail, including the additional detail in the Second Hardy Declaration submitted with this brief, to establish that its reliance on individuals familiar with the documents at issue in conducting its

---

[2]  As explained in the Second Declaration by FBI Section Chief Hardy submitted with this memorandum, none of these additional exemptions apply to the one memo requested by plaintiff Judicial Watch.  *See* Second Hardy Decl. ¶ 9; Hardy Decl. ¶ 37 (describing Judicial Watch's request).  Accordingly, Judicial Watch's arguments with regard to these exemptions are moot. *See* JW Mem. at 16-18; *see also id.* at 16 (complaining that the government had not identified which additional exemptions applied to the memo it requested).

2

search was "reasonably calculated to discover the requested documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

Second, the FBI's declarations, both the public ones and the *in camera*, *ex parte* one, establish that the memos have been "compiled" for law enforcement purposes so as to meet the threshold requirement for assertion of Exemption 7(A). The statements by former FBI Director James B. Comey cited by plaintiffs to show that the memos may have had some other purpose at their inception are immaterial now, as Mr. Comey no longer had current information as to the status of the memos after he was removed from his position in May 2017. The FBI also properly addressed the withholding of the memos under Exemption 7(A) on a categorical basis. Courts routinely address claims based on Exemption 7(A) on a categorical basis, where, as here, the categories are sufficiently distinct to allow the court to understand how release of each category of document would interfere with the investigation. Plaintiffs' request for a document-by-document *Vaughn* is a backdoor effort to obtain information the FBI has explained is exempt from disclosure because of its sensitivity, *i.e.*, the actual number of memos in existence, and should be rejected for this reason. And the Court should agree to receive the FBI's *in camera, ex parte* declaration. Plaintiffs cite no case in which a court has declined to receive an *in camera, ex parte* declaration when Exemption 7(A) is at issue.

As to the merits of the government's Exemption 7(A) claim, the Court should find that the FBI declarations are sufficient to meet the government's burden to show that disclosure could cause harm to the Russia investigation because it "might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations . . . ." *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000). The fact of Mr. Comey's testimony and the disclosure of part of the purported contents of one memo to

the New York Times does not vitiate any harm from disclosure of the Comey Memos, as

plaintiffs contend, because the alleged disclosures have been in the form of oral testimony or

reportage, which do not reveal the precise contents of the memos.  As discussed in the first

Hardy Declaration, there remains much that is uncertain about the memos' exact contents,

including the level of detail in the memos, the extent to which they corroborate Mr. Comey's

testimony, and the extent to which they contain information that was not the subject of his

testimony, and official disclosure or confirmation of any of this information could reasonably be

expected to impair the ongoing investigation.  For similar reasons, the prior-disclosure doctrine

does not apply here because any prior disclosure was not an "official disclosure" of "specific"

information that "matches" the contents of the memos.

Third, as to the remaining exemptions, Exemption 7(E) is properly exerted here to protect

the use of particular techniques in connection with an ongoing investigation, information that is

not publicly available even if the techniques themselves are generally known.  Plaintiffs offer

nothing to contradict the assessment of the Executive Branch that disclosure of the national

security information protected under Exemption 1 could reasonably be expected to cause harm,

an assessment that is entitled to substantial deference.  The Second Hardy Declaration filed

herewith explains that the memos were classified at the time of their writing and therefore

confirms that the proper procedures were followed at that time, addressing plaintiffs' concerns

about procedures.  Plaintiff CNN's objections to the government's assertion of Exemption 3 to

protect intelligence sources or methods is based on its own ungrounded speculation about what

Comey might have said (or avoided saying) to President Trump or put in his memos and should

be rejected.  Finally, CNN's challenge to the withholding of the names and identifying

information of FBI employees, relatives of FBI employees, and individuals providing

4

information to the FBI should also be rejected.  The public interest in such specific identifying

information is limited at best and overcome here by the privacy interest in not having one's name

associated with such a high-profile matter or revealed as having been the subject of a

conversation with the President.

## ARGUMENT

## I.     THE FBI CONDUCTED AN ADEQUATE SEARCH

As an initial matter, the Gannett plaintiffs and The Daily Caller contest whether the FBI

conducted an adequate search.  Gannett Mem. at 4-8; DCNF Mem. at 6-7.  They assert that the

FBI's description of the search conducted is too conclusory and relies upon unexplained

"personal knowledge."  Gannett Mem. at 7, ECF No. 30-1; *see also* DCNF Mem. at 6.  However,

the FBI has provided more than adequate detail to establish that its search by and reliance on

individuals familiar with the documents at issue was "reasonably calculated to discover the

requested documents," *SafeCard Servs.*, 926 F.2d at 1201, in the particular circumstances of this

case.

In general, the adequacy of an agency's search is "measured by the reasonableness of the

effort in light of the specific request."  *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir.

2009) (quoting *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)).  Here, the requests at

issue are requests for a discrete and limited set of easily identifiable, high-profile documents,

namely, any memoranda that then-FBI Director Comey wrote documenting his conversations

with President Trump.  Given the specific nature of the documents requested, there was no need

for the FBI to resort to the sort of electronic database search using "search terms" often required

in FOIA contexts.  *See* Gannett Mem. at 5 (referencing such searches); Hardy Decl. ¶ 62.

Rather, as FBI Section Chief Hardy explains, individuals with relevant knowledge of these

documents searched for and located them.  Hardy Decl. ¶ 62.  More specifically, individuals in

the FBI's Records Management Division who were involved in compiling and preserving former

Director Comey's records located the memoranda, and the collected documents were then

reviewed by counsel in the National Security and Cyber Law Branch ("NSCLB") of the FBI's

Office of General Counsel, who were already familiar with the relevant records and who

confirmed that this was the full set of records.  *Id.*  In a second declaration submitted with this

brief, Section Chief Hardy explains that attorneys in the NSCLB  "were responsible for

providing legal advice and guidance within the Bureau regarding the Russian interference

investigation" and, as a result, "were able to confirm to staff members handling these FOIA

requests that the collection of memos located within the larger collection of former Director

Comey's records comprised the universe of the 'Comey Memos' requested by some of the

plaintiffs."  Second Hardy Decl. ¶ 4.  Mr. Hardy further explains that the FBI "consulted with the

Special Counsel's Office and confirmed that the records . . . located and processed in response to

this portion of plaintiffs' requests represent the universe of 'Comey Memos' that exist."  *Id.*

Accordingly, "[t]he FBI is confident that it has identified and located the entire collection of

documents comprising the 'Comey Memos.'"  *Id.*

   The FBI's reliance on these individuals with direct, current, personal knowledge of the

records at issue was entirely reasonable in this context.  The FBI is not required to explain

further the source or extent of these individuals' "personal knowledge" or "*how* they reached

t[heir] conclusion[s]."  Gannett Mem. at 6.  Nonetheless, in order to clarify this issue, the FBI

has submitted the second declaration by Section Chief Hardy; to reveal any further information

would reveal protected government deliberations.  In cases such as this one, involving a "discrete

set of extraordinarily high-profile records," the courts have held that it is reasonable for the

agency to seek the records from the "relevant individuals" who will be "well aware" of whether the agency has those records. *Judicial Watch v. U.S. Dep't of Def.*, 857 F. Supp. 2d 44, 53-55 (D.D.C. 2012) (affirming reasonableness of the Defense Department's search for records for video or photos of Bin Laden's death, which uncovered no records), *aff'd*, 715 F.3d 937 (D.C. Cir. 2013); *see also James Madison Project v. Dep't of Justice*, No. CV 15-1307 (RMC), 2017 WL 3172855 (D.D.C. July 25, 2017) (affirming reasonableness of the Defense Department's search for records pertaining to book on Bin Laden's death that began with "identifying the individuals likely to have responsive records and interviewing them"); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 499-500 (S.D.N.Y. 2010) (concluding that "a search that included having the person most knowledgeable regarding [subject of request] inquire into the existence of a list of erroneous renditions" was reasonable in response to a request for such a list).

Given the involvement of multiple offices in confirming the results of the FBI's search here and the fact that the search did result in the location of responsive documents, this case is distinguishable from the case relied upon by the Gannett plaintiffs (Gannett Mem. at 7-8), where the agency relied on one declarant's cursory statement that she and her colleagues "kn[ew] there were no tapes/transcripts responsive to the request." *Toensing v. U.S. Dep't of Justice*, 890 F. Supp. 2d 121, 143 (D.D.C. 2012). The present case is more like the cases cited in the preceding paragraph and (except for the actual discovery of responsive records) like *American-Arab Anti-Discrimination Committee v. United States Department of Homeland Security*, 516 F. Supp. 2d 83, 88 (D.D.C. 2007). In the latter case, the court found that the agency's assertion that it "does not maintain the [requested] information" was sufficient where the agency declarant's statements were "based on information with which he is personally familiar as well as his conversations with 'ICE Counsel and . . . with several ICE Supervisory and Senior Special Agents'" and, "[i]n

7

his role as the Deputy Assistant Secretary for Operations, [he was] presumed able to familiarize himself with what statistics ICE does and does not maintain." The other cases relied upon by the Gannett plaintiffs (Gannett Mem. 7) where searches were found to be inadequate involved requests for much broader sets of documents and searches of electronic databases, and are therefore inapposite here. *Cf. Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 26 (D.C. Cir. 1998) (request sought all FBI records about author and civil rights activist James Baldwin); *Wadelton v. Dep't of State*, 106 F. Supp. 3d 139, 144 (D.D.C. 2015) (request encompassed, *e.g.*, "copies of all [State Department] emails or other documents pertaining to [Wadelton] from 2000–present maintained or created by the Bureau of Human Resources"). Moreover, unlike in some of those cases (*e.g.*, *Campbell*), there is no evidence here that additional responsive records exist. *Cf. Campbell*, 164 F.3d at 28 (noting that original search plan "became untenable once the FBI discovered information suggesting the existence of documents that it could not locate without expanding the scope of its search").

Nor was the FBI was required, as the Gannett plaintiffs claim (Gannett Mem. at 6-7), to contact former Director Comey to verify the accuracy of its results, particularly where to do so in this context could pose investigative concerns. *See Blanton v. U.S. Dep't of Justice*, 182 F. Supp. 2d 81, 85 (D.D.C. 2002) ("[T]he FOIA does not impose an obligation on defendant to contact former employees to determine whether they know of the whereabouts of records that might be responsive to a FOIA request.").

The Daily Caller contends that, for the government to establish a satisfactory search, it must identify "the number of records they located and are withholding." DCNF Mem. at 6. But the FBI has explained that it cannot provide the number of memoranda at issue because disclosure of that number could reveal sensitive nonpublic information and compromise the

investigation.  Hardy Decl. ¶ 72.  Nor is this information necessary to establish the adequacy of

the search.  The FBI has stated that it is satisfied that it recovered all extant memoranda and The

Daily Caller does not point to any evidence to the contrary.  "Mere speculation that as yet

uncovered documents may exist does not undermine the finding that the agency conducted a

reasonable search for them."  *SafeCard Servs., Inc.*, 926 F.2d at 1201; *see also DeBrew v.*

*Atwood*, 244 F. Supp. 3d 123, 129 (D.D.C. 2017) ("[S]peculation as to the existence of additional

records . . . does not render the searches inadequate." (citation omitted)).  In sum, as there is no

evidence of bad faith or missed documents here, "the Court must accept the defendant's

representations that a reasonable search was conducted in good faith" and that all responsive

documents were located.  *Ahuruonye v. U.S. Dep't of Interior*, 239 F. Supp. 3d 136, 143 (D.D.C.

2017).  This Court should accordingly find that the government's search here was reasonable and

adequate.

## II.    THE FBI PROPERLY WITHHELD THE COMEY MEMOS IN FULL UNDER EXEMPTION 7(A)

The Court should uphold the government's decision to withhold the Comey Memos in

full under Exemption 7(A).  The Comey Memos pertain to, and have been compiled into, the

ongoing investigation by the Special Counsel into Russian interference in the 2016 election.

Hardy Decl. ¶ 67.  The FBI and the Special Counsel have determined that the disclosure of these

records at the current time, while this sensitive and high-profile investigation remains ongoing,

would be reasonably expected to adversely affect the integrity of that investigation.  *Id.* ¶¶ 69-71.

Accordingly, the Comey Memos have been properly withheld in full pursuant to FOIA

Exemption 7(A), which protects documents compiled for law enforcement purposes where their

disclosure "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C.

§ 552(b)(7)(A).  Plaintiffs' attempts to establish that this exemption has been improperly invoked are without merit.

### A.      The Memos Have Been "Compiled" for Law Enforcement Purposes.

As a threshold matter, CNN, Judicial Watch, and The Daily Caller argue that the Comey Memos have not been "compiled for law enforcement purposes," asserting that they were written by Mr. Comey not "in furtherance of an investigation but for "political" purposes, to "preserv[e] the FBI's integrity as an institution."  CNN Mem. at 15-17; *see also* JW Mem. at 11; DCNF Mem. at 9-10.  But, regardless of Mr. Comey's personal reasons for writing the memos, the FBI has explained that the memos contain sensitive information related to the Russian investigation that "was compiled as part of and in relation to an investigation."  Hardy Decl. ¶ 67.  In addition, the FBI further explains in its *in camera* and *ex parte* declaration how all portions of the memos now constitute records compiled for law enforcement purposes, such that the disclosure of any part of the memos would risk harm to the investigation.  *See id.* ¶ 71.  Defendants' opening brief demonstrated that even records not initially obtained or generated for law enforcement purposes may nevertheless qualify if they were *subsequently* compiled for a valid law enforcement purpose.  Defs.' Mem. at 13-14; *see John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989); *Kansi v. U.S. Dep't of Justice*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998).

Moreover, the statements by Mr. Comey that plaintiffs rely upon to show his original purpose for writing the memos, made in June, 2017, after Mr. Comey was removed from office, are irrelevant as to the status of the memos *after* Mr. Comey was removed from his position, when he ceased to have any official information as to how those memos were being handled or for what purposes they are being used.  Also irrelevant (*see* JW Mem. at 12-13; DCNF Mem. at 10) is the fact that copies of the memos are filed in former Director Comey's files, in what

10

plaintiffs characterize as an administrative file, and not just in the Special Counsel's files.  *See*

*Exner v. U.S. Dep't of Justice*, 902 F. Supp. 240, 243 n.4 (D.D.C. 1995) (noting that "[t]he fact

that a copy of the documents might also be found in a non-law enforcement file does not dictate"

the conclusion that they were not compiled for law enforcement purposes).

At its core, the requirement that a law enforcement agency establish that records at issue

were "compiled" for a law enforcement issue is not a stringent one.  The FBI's statements on this

issue are entitled to substantial deference by this Court.  *Ctr. for Nat'l Sec. Studies v. U.S. Dep't*

*of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003) (DOJ entitled to deference as to claim of law

enforcement purposes as well as to any claims which implicate national security).  The

declarations submitted in this case satisfy the FBI's burden on this issue and plaintiffs'

arguments are insufficient to create an issue of fact.

### B.    The Government Properly Addressed the Withheld Documents on a Categorical Basis.

On another threshold matter, plaintiffs Judicial Watch and the Daily Caller News

Foundation criticize the fact that the FBI's declarations address the memos on a categorical

basis, rather than, for example, in a *Vaughn*-type declaration listing each document individually.

JW Mem. at 8-11; DCNF Mem. at 7-8.  However, courts routinely address claims based on

exemption 7(A) on a categorical basis.  *See, e.g., NLRB v. Robbins Tire & Rubber Co*., 437 U.S.

214, 222-24 (1978) (endorsing government's position "that a particularized, case-by-case

showing is neither required nor practical" and that language of Exemption 7(A) "appears to

contemplate that certain generic determinations might be made").  As to Exemption 7(A), "the

government need not justify its withholdings document-by-document; it may instead do so

category-of-document by category-of-document."  *Crooker v. Bureau of Alcohol, Tobacco &*

*Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986).  Such an approach is permissible so long as the

categories are defined "functionally," and are sufficiently distinct to allow the court to

understand how release of each category of document would interfere with the investigation.

*Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986).  The case cited by Judicial Watch

(JW Mem. at 9), *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d

1082, 1098-99 (D.C. Cir. 2014), is not to the contrary – there the court did not disapprove of a

categorical approach but rather questioned what investigations remained ongoing and how the

categories of information pertained to those investigations.

Here, the documents at issue logically fall into one functional category, memos written

by Mr. Comey documenting discussions with President Trump over a period of a few months.

This categorization is sufficient to inform the parties and the Court of "the nature of the

information contained in the records, rather than merely the nature of the records themselves" and,

along with the information provided by the FBI's declarations, to permit the Court to assess the

applicability of the exemption.  *Tipograph v. Dep't of Justice*, 83 F. Supp. 3d 234, 240 (D.D.C.

2015); *see also Sarno v. U.S. Dep't of Justice*, --- F. Supp. 3d ---, 2017 WL 4355925, at *6

(D.D.C. 2017) (upholding Exemption 7(A) claim based on categorical descriptions); *Owens v.

U.S. Dep't of Justice*, No. CIV .A. 04-1701 (JDB), 2007 WL 778980, at *1 (D.D.C. Mar. 9,

2007) (same); *Edmonds v. FBI*, 272 F. Supp. 2d 35, 54-55 (D.D.C. 2003) (same).  Judicial

Watch's attempt to re-cast this category as a more generic category of "memos of one-on-one

conversations with the president" (JW Mem. at 9-10) ignores the factual reality that the memos

document conversations between one specific individual and one specific President during one

short timeframe, and should be rejected as patently disingenuous.  Indeed, plaintiffs' request for

a document-by-document *Vaughn* is a backdoor effort to obtain information the FBI has

explained is exempt from disclosure because of its sensitivity, *i.e.*, the actual number of memos in existence.  *See* DCNF Mem. at 8 (referencing defendants' "refusal" to provide the number of records).  The courts recognize that such attempts should be seen for what they are and rebuffed. *See Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1040 (7th Cir. 1998) (observing that "in many Exemption 7(A) cases, provision of a *Vaughn* index would itself disclose much of the information that the Exemption is intended to protect"); *see also Maydak,* 218 F.3d at 767 (agreeing that "in some cases, a *Vaughn* index could disclose too much").

Judicial Watch also argues that the government has failed to show that it properly applied the categorical approach here because it has not indicated that it has reviewed the memos "document-by-document to make sure they are properly assigned to its newly-minted category."  JW Mem. at 10. The Second Hardy Declaration explains, however, that it has reviewed the memos document-by-document in preparing the declarations in this case.  Second Hardy Decl. ¶ 5.

**C.      The Government's *In Camera*, *Ex Parte* Declaration, Which the Court Should Accept, Together With the Public Declarations, Establish That Release of the Memos Could Cause Harm to a Pending Law Enforcement Proceeding, and *In Camera* Review is Not Warranted.**

As to the merits of the government's claim of Exemption 7(A) for the entirety of the memos, plaintiffs contest whether release of the information could harm the pending investigation, again charging the Hardy Declaration as being "too vague and conclusory" to support assertion of the exemption.  CNN Mem. at 20; Gannett Mem. at 15.  But FBI Section Chief Hardy explained that little could be revealed publicly about how the investigation may be adversely affected by the disclosure of the Comey Memos.  Hardy Decl. ¶¶ 70-71.  For this reason, the FBI has set out further explanations of the harms that could reasonably be expected to flow from disclosure in the *in camera* and *ex parte* declaration that it is seeking to submit to the Court.  *Id.*  This *in camera, ex parte* declaration cures the lack of specificity in Section Chief

13

Hardy's public declaration.  The Court should agree to receive it and should hold that the details contained therein are sufficient to meet the government's burden to show that disclosure could cause harm to the Russia investigation because it "might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations . . . ."  *Maydak*, 218 F.3d at 762.

Plaintiffs object to the Court's consideration of an *in camera* and *ex parte* declaration.  *See* Gannett Mem. at 16.  However, plaintiffs cite no case in which a court has declined to receive such a declaration when Exemption 7(A) is at issue.  *See, e.g.*, CNN Mem. at 29-30.  To the contrary, courts have recognized, including in cases postdating the case upon which CNN relies, *Lykins v. U.S. Dep't of Justice*, 725 F.2d 1455, 1465 (D.C. Cir. 1984), that, where "an agency indicates that no additional information concerning an investigation may be publicly disclosed without revealing precisely the information that the agency seeks to withhold, the receipt of *in camera* declarations is appropriate."  *Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 16 (D.D.C. 2009); *see also Maydak*, 218 F.3d at 767. Thus, the courts routinely consider *in camera, ex parte* declarations when Exemption 7(A) is asserted.  *See Elec. Privacy Info. Ctr. v. Dep't of Justice Crim. Div.*, 82 F. Supp. 3d 307, 321 (D.D.C. 2015) (upholding assertion of Exemption 7(A) based in part on *in camera, ex parte* declarations); *Barnard*, 598 F. Supp. 2d at 20 (finding that government had met its burden to show how the release of the information could reasonably be expected to interfere with ongoing investigations based in part on *in camera* declaration).  The Court should do so here as well.

The government believes that the FBI's public declarations along with the *in camera* declaration are sufficient to support withholding pursuant to Exemption 7(A) (as well as the other exemptions addressed below).  But, if the Court disagrees, the proper course at this stage

14

would be to order the agency to submit a further affidavit, *in camera* if necessary, not to order disclosure of the documents. *See Bartko v. U.S. Dep't of Justice*, 62 F. Supp. 3d 134, 147, 149 (D.D.C. 2014) (Boasberg, J.) (holding that "[u]ntil the FBI provides something approaching th[e necessary] level of specificity – and perhaps certain sensitive information may be provided *in camera* – the Court will not be in a position to consider its argument for summary judgment on Exemption 7(A)" and also ordering the FBI to submit a further affidavit "if it hopes to prevail on Exemption 7(E)"). In addition, the preferred course should be to request additional declarations, rather than to order *in camera* review of the responsive documents. *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 589 (D.C. Cir. 1987) (holding that the course of *in camera* review of the documents "should be taken 'only where it is unavoidable'"). Plaintiffs' requests for such review (*see* DCNF Mem. at 11 n.3) should be rejected.

Judicial Watch and the Daily Caller argue that Mr. Comey's testimony vitiates any harm from disclosure of the Comey Memos because, as a result of that testimony, "[v]ery little" of the contents of the memos remain secret. DCNF Mem. at 11; *see also* JW Mem. at 13-15. Judicial Watch also points to Mr. Comey's alleged disclosure of at least part of the contents of the February 14 memo to a friend and hence to the New York Times. JW Mem. at 13-15. But plaintiffs are wrong that "very little" information of a confidential nature remains. Plaintiffs do not dispute that the memos themselves have not been made public and that the alleged disclosures have been in the form of oral testimony or reportage, which do not reveal the precise contents of the memos. As discussed in the Hardy declaration, as long as the Comey Memos themselves do not enter the public domain, there will remain much that is uncertain about their exact contents, including the level of detail in the memos, the extent to which they corroborate Mr. Comey's testimony, and the extent to which they contain information that was not the

subject of his testimony.  *See* Hardy Decl. ¶¶ 71, 107-108.  As FBI Section Chief Hardy has

explained, disclosure of this additional information, and/or official confirmation of what has

already appeared to be disclosed, could reasonably be expected to impair the ongoing

investigation.  *Id.*

"[T]he fact that information exists in some form in the public domain does not

necessarily mean that official disclosure will not cause harm cognizable under a FOIA

exemption."  *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007).  Until there has been an official

disclosure of information, there is always some measure of uncertainty as to the veracity of

information and therefore some protection against harm to government interests.  *Frugone v.

CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999) (agreeing with CIA as to "the untoward consequences

that could ensue were it required either to confirm or to deny statements made by another

agency"); *Military Audit Project v. Casey*, 656 F.2d 724, 745 (D.C. Cir. 1981) (noting the

benefits of leaving foreign intelligence services with "lingering doubts" regarding the accuracy

of reported information); *see also Wilson v. CIA*, 586 F.3d 171, 195 (2d Cir. 2009) ("[A]nything

short of [an official] disclosure necessarily preserves some increment of doubt regarding the

reliability of the publicly available information.").  For example, even if a witness informs the

press of the contents of his interview with federal agents, or of documents turned over pursuant

to a government subpoena, harm could still be caused if the government were thereby required to

disclose to the target of a pending investigation its interview notes or other evidence gathered in

the course of that investigation.

Thus, in *Murphy v. FBI*, 490 F. Supp. 1138, 1142-43 (D.D.C. 1980), the district court

held that video recordings from an undercover operation were covered by Exemption 7(A),

notwithstanding that there had been unauthorized leaks regarding their contents.  The plaintiff

argued there, as the plaintiffs do in this case, that any harm to the investigation had already occurred by virtue of the prior disclosure of information.  The district court disagreed, noting that to require the release of the underlying tapes would cause an "exacerbation of the harm created by the leaks."  *Id*. at 1142.  The court described how an official release of the videotapes could still harm the pending investigation because "the breadth and exact nature of the government's evidence is unknown to prospective defendants and unsubstantiated despite the leaks."  *Id.* at 1143.

Similarly, in *Center for National Security Studies*, the D.C. Circuit rejected the argument that publicly available information cannot be protected under Exemption 7(A).  The D.C. Circuit concluded that the names of all individuals detained by the government in connection with the September 11 investigation were properly withheld, even though those names could be found in public records such as arrest warrants and INS charging documents, and even though the government had selectively disclosed certain of the names.  331 F.3d at 930-31.  With respect to prior government disclosures of certain of the detainee names, the D.C. Circuit recognized that "strategic disclosures can be important weapons in the government's arsenal during a law enforcement investigation," and that such disclosure decisions should be left to the judgment of the Executive Branch.  *Id.* at 931.

Relatedly, Judicial Watch argues that, if the government feared harm from the disclosure of the contents of the memos, the government would "have taken steps" to address Mr. Comey's testimony or leaking of the contents of the memos, or his alleged removal of the memos from the government (for which there is no evidence).  JW Mem. at 14-15 (implying also that the government's failure to do so is evidence of "coordination").  Such matters are committed to the discretion of the government, however, and any ultimate decision on those issues, whatever it

17

may have been, does not reflect on the assessment of the harms or evince the possibility of some sort of "coordination" – for example, it may well be that the government concluded that more harm would be created from reacting, or that it did not have sufficient notice or information to prevent the situation from unfolding.

In sum, the above cases reaffirm that the touchstone of the Exemption 7(A) analysis is not whether information is "secret," but whether the disclosure of information from law enforcement files can reasonably be expected to impede a pending investigation.  The FBI and the Special Counsel have determined that, in the instant case, requiring the government to officially reveal the contents of the Comey Memos would still do much to reveal the government's hand to the detriment of an ongoing investigation.  The declarations logically and plausibly explain the nature of the potential harm that could result from disclosure and that Mr. Comey's public testimony does not eliminate the harms that disclosure might still create.  This ends the Exemption 7(A) inquiry, and the government's assertion of this exemption should be upheld.

### D.   The Prior-Disclosure Doctrine Does Not Apply Here to All or Even Part of the Comey Memos

Related to the foregoing point, plaintiffs argue that the government has waived Exemption 7(A) because information in the Comey Memos is already in the public domain.  *See* Gannett Mem. 8-12; CNN Mem. 13-14; DCNF Mem. at 13-14.   Specifically, they argue that the FBI should release any information from the Comey Memos that either was discussed in former Director Comey's Senate testimony or is part of earlier releases he may have made to friends.  CNN Mem. at 13-14; DCNF at 13.  However, as defendants argued previously, plaintiffs have not shown that any material in the public domain meets the requirements to constitute an

"official acknowledgment" sufficient to overcome a 7(A) Exemption, specifically, that (1) the information requested is as specific as the information previously released; (2) the information requested matches the information previously disclosed; and (3) the information requested has been made public through an official and documented disclosure.  *See* Defs.' Mem. at 26-27 (citing *Am. Civil Liberties Union  v. U.S. Dep't of Def.*, 628 F.3d 612, 620-21 (D.C. Cir. 2011)).

Narrative recollection by former Director Comey of what was written in a memo, or a purported disclosure of parts of one memo by a friend to a journalist, does not constitute "prior disclosure" of the memos' actual contents so as to meet the standards set forth above.  First, it is undisputed that copies of the memos themselves are not in the public domain, and paraphrased statements of their contents do not constitute a "specific" "match" to the original memos themselves.  Second, statements made by former government officials, even high-level officials, do not constitute official acknowledgment.  *See Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1130-31 (D.C. Cir. 1983) (drawing distinction between "[u]nofficial leaks and public surmise" and "official acknowledgment"); *see also Simmons v. U.S. Dep't of Justice*, 796 F.2d 709, 712 (4th Cir. 1986) (FOIA exemption not overcome, even where former FBI agent released documents in question, because "release from an official source naturally confirms the accuracy of the previously leaked information").  There are a variety of reasons why the statements of former officials regarding matters that occurred while they were in government service might be false, incomplete or erroneous.  Thus, so long as there is no official confirmation, it is not free from doubt whether the information provided by the former official is accurate or complete. *Phillipi v. CIA*, 655 F.2d 1325, 1331 (D.C. Cir. 1981) (book written by former CIA director did not constitute an official disclosure, because there could be questions regarding the accuracy of its contents).

19

Moreover, the notion that the statements of former government officials can bind the government and waive its right to protect sensitive law enforcement information is extremely problematic.  Such a rule would effectively render the Executive Branch's authority to determine what confidential information would be detrimental to share with the public subject to the decisionmaking of former government employees.  *See Fitzgibbon v. CIA*, 911 F.2d 755, 765-66 (D.C. Cir. 1990) (noting that a rule that allowed official acknowledgments by Congress would interfere with the Executive Branch's discretion to control the flow of national security information).  Former officials have no authority to exercise such a unilateral veto over government withholding decisions.  *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989) ("Officials no longer serving with an executive branch department cannot continue to disclose official agency policy . . . .").  Even where a former government official authored the document in question, that former official has no power to waive any applicable FOIA exemption on behalf of the agency.  *Rush v. Dep't of State*, 748 F. Supp. 1548, 1556 (S.D. Fla. 1990) ("Nor has the plaintiff provided any authority suggesting that the author [of the requested documents, a former U.S. Ambassador], who is not now a member of the controlling or classifying agency, can waive the (b)(5) exemption . . . .").

It is for this reason that courts require that disclosures be official before finding that Exemption 7(A) has been waived.  *See Pike v. U.S. Dep't of Justice*, No. 15-CV-0301 (KBJ), 2016 WL 5108012, at *6-7 (D.D.C. Sept. 20, 2016) (holding that government's official release of portions of interview transcript served to waive Exemption 7(A), but only as to the portions of the transcript specifically released; the government could continue to withhold the audio recording of those same portions of the interview transcript as that had not entered the public domain), *aff'd*, No. 16-5303, 2017 WL 2859559 (D.C. Cir. June 23, 2017); *Adair v. Mine Safety*

*& Health Admin.*, No. CIV .A. 08-1573 EGS, 2009 WL 9070947, at *4 (D.D.C. Sept. 23, 2009)

(holding that public release of one sentence from a longer interview transcript did "not

undermine the [agency]'s broader concern that disclosure of the entire [t]ranscript would damage

the ongoing criminal investigation"); *Fisher v. U.S. Dep't of Justice*, 772 F. Supp. 7, 12 (D.D.C.

1991) (reporting by news media insufficient to waive Exemption 7 claims where "plaintiff fails

to provide a scintilla of evidence that the media coverage was the result of a release of the

requested information by the government to the press"), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992); *see

also Robbins, Geller, Rudman & Dowd v. U.S. SEC*, No. 3:14-CV-2197, 2016 WL 950995, at *6

(M.D. Tenn. Mar. 12, 2016) ("Although Walmart chose to make public statements about

documents it claims it produced to the SEC, based on its own interests, that choice does not

obligate the government agency charged with conducting investigations and bringing charges

based on violations of federal law to *itself* divulge what documents it has obtained from a subject

of its investigation."); *Dow Jones & Co. v. U.S. Dep't of Justice*, 880 F. Supp. 145, 151-52 & n.1

(S.D.N.Y. 1995) (Sotomayor, J.) (holding that official statements made by Deputy Attorney

General at press conference regarding the conclusions of an FBI report concerning Vincent

Foster's death did not waive government's right to withhold the report under Exemption 7(A),

where the Independent Counsel had determined that release of information from the report would

impede its pending investigation and the information previously disclosed did not duplicate the

information being withheld), *opinion vacated in part*, 907 F. Supp. 79 (S.D.N.Y. 1995) (vacating

on grounds of mootness an unrelated portion of opinion).

      The Gannett plaintiffs also argue that the President has in some way "officially

acknowledged" the contents of the memos in the course of responding to or denying aspects of

Mr. Comey's testimony.  Gannett Mem. 8-14; *see id.* at 12 ("The Court would be within its

discretion to conclude that President Trump's public denial of the substantive accuracy of

Director Comey's claims permits incorporating by reference the substance of what Director

Comey said occurred.").  And DCNF (along with Judicial Watch) argue that "official

acknowledgment" occurred when the FBI failed to "dispute, disavow, [or] even disagree" with

Mr. Comey's testimony.  DCNF Mem. at 13; *see also* JW Mem. at 15.  But plaintiffs cite to no

case adopting these theories, arguing only that the "interests of public policy" support such a

holding.  *Id.* at 12.  The case law in this circuit regarding official acknowledgement does not

stretch to such lengths – neither President Trump's statements nor the FBI's silence constitute

official release *of the contents of the memos themselves* and, in the absence of such an official

release, there has been no waiver.  *See Dow Jones & Co.*, 880 F. Supp. at 151 n.1 (declining to

find that statements made at DOJ press conference waived the exemption 7(A) for an FBI report

even though the statements were "similar to information contained in the Report").  The case

relied upon by The Daily Caller is inapposite as the government inaction in that case followed a

*public filing* of the information at issue in a court case after multiple layers of overlapping

agency review by each stakeholder in the process; it was not silence in the face of testimony by a

former government official, over which the government has no control.  *Cf. Barre v. Obama*, 932

F. Supp. 2d 5, 9 (D.D.C. 2013).

CNN argues that the disclosure of the February 14 memo to Comey's friend (from

whence it went to the New York Times) occurred while Mr. Comey was still FBI Director and

therefore constitutes an official disclosure.  *See* CNN Mem. at 13-14.  Although the record is

unclear as to when Mr. Comey delivered the memo to his friend, it appears that this occurred

after Mr. Comey was removed from his position as Director.   *See* CNN Mem., Decl. of Charles

Tobin, Ex. 5, ECF No. 25-6 ("Transcript"), at 29 (in response to a question asking why he passed

the document through a third party, referencing the media camped out at his house and going out

of town "to hide").   In any event, the FBI states that it "is unaware that Director Comey, during

his tenure as Director, publicly shared the memos, their contents, or details about the

conversations they document" and "has not located any documented official disclosure of the

memos or their contents, or about the conversations they document."  Second Hardy Decl. ¶ 5.

And it is clear that Mr. Comey did not direct a wider dissemination of the contents of the

February 14 memo until after he was removed as FBI Director.  *See* Transcript, at 24.  Mr.

Comey's limited disclosure to one friend prior to that (which may or may not have occurred

while he was still Director) is not an official disclosure sufficient to waive Exemption 7(A)

protection as it was limited to that one person, was not disseminated more widely, and,

accordingly, does not raise the possibility of the harms that a more comprehensive public

disclosure would create.  *See, e.g.*, *Prison Legal News v. Exec. Office for U.S. Attorneys*, 628

F.3d 1243, 1253 (10th Cir. 2011) (upholding Exemption 7(C) for photographs, video, and audio

even though "the actual images have been viewed by a limited number of individuals who were

present in the courtroom at the time of the trials" because "Exemption 7(C) can still protect the

privacy interests of the family with respect to the images and recordings because they have not

been disseminated"); *Anderson v. Dep't of Treasury*, No. 98-1112, 1999 WL 282784, at *4

(W.D. Tenn. 1999) ("[T]he courts generally find no waiver under § 552(b)(7)(A) even though

there has been a limited, discretionary disclosure."); *Erb v. U.S. Dep't of Justice*, 572 F. Supp.

954, 956 (W.D. Mich. 1983) (holding that there had been no waiver of Exemption 7(A) even

where prosecutor had disclosed FBI report to counsel for the target of the investigation); *see also*

*Robbins, Geller, Rudman & Dowd*, 2016 WL 950995, at *6 (finding potential harm in release of

documents by SEC even though Walmart, the New York Times, and Congress had disclosed some of the documents).

Nor does Mr. Comey's testimony constitute a prior disclosure as to portions of the memos, such that those portions must be segregated and released, as argued by CNN.  *See* CNN Mem. 28-29.  Even as to portions of the memos, Mr. Comey's testimony, consisting of his oral recollections, is not an "official disclosure" that "matches" "specific" information in the memos, for the reasons set forth above.  And, as Section Chief Hardy explains, the FBI did expressly consider whether portions of the memos could be released and determined that no reasonably segregable portion of the Comey Memos can be released without risking harm to the Special Counsel's pending investigation.  Hardy Decl. ¶¶ 108-109.  The FBI also explained that no further details about this determination could be provided without risking the very harms that the FBI is trying to avoid by asserting Exemption 7(A), as well as the other exemptions.  *Id.*  Further explanation detailing why segregation is not possible here is included in the *in camera*, *ex parte* declaration.  *Id.* ¶ 72.

## III.   THE GOVERNMENT PROPERLY WITHHELD LAW ENFORCEMENT TECHNIQUES AND PROCEDURES UNDER EXEMPTION 7(E)

The Government has invoked Exemption 7(E) to protect the specific law enforcement techniques and procedures that are currently being used by the FBI in the Russia investigation. CNN argues that, if the FBI is using techniques that are generally known to the public, then the government must reveal in response to a FOIA request the details of how these techniques are being used in a specific, pending criminal investigation.[3]  CNN Mem. at 21-22.  This proposition is wrong.

---

[3] As noted *supra* at p.2 n.2, Judicial Watch's arguments as to Exemption 7(E) are moot.

The government notes, as an initial matter, that the information in the Comey Memos that is covered by Exemption 7(E) is also properly withheld under Exemption 7(A).  This information plainly pertains to a pending law enforcement proceeding, as the information withheld concerns the law enforcement techniques being used in connection with the Russia investigation.  It is self-evident that public disclosure of the use of particular investigative techniques and procedures in connection with a specific pending investigation, and details regarding how those specific techniques and procedures have been deployed, could interfere with that investigation by allowing the targets of the investigation to develop countermeasures against the techniques or procedures; destroy, adulterate, or otherwise compromise evidence; and interfere with witnesses and their testimony.  Hardy Decl. ¶ 105; *see also Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. Civ. A. 04-1180-CKK, 2005 WL 32762222, at *5 (D.D.C. Aug. 16, 2005) (law enforcement techniques used in pending investigation protected under Exemption 7(A)).  And the law enforcement techniques at issue were not disclosed in former-Director Comey's testimony (which is not an official disclosure in any event, as discussed above).  Accordingly, the Court need not reach the Exemption 7(E) issue at all.

Assuming that the Court does need to reach the Government's alternate basis for withholding these law enforcement techniques, Exemption 7(E) is properly asserted here to protect the use of particular techniques in connection with an ongoing investigation, information that is not publicly available.  Whether or not the public is aware of the general existence or use of the law enforcement techniques is not relevant.  Even where the general nature of a law enforcement technique may be known, information regarding the manner and circumstances in which that technique are used may still be withheld under Exemption 7(E).  *Brown v. FBI*, 873 F. Supp. 2d 388, 408 (D.D.C. 2012) (upholding the withholding of VIN numbers of vehicles used

by DEA because "[p]ublic disclosure of VINs could allow clever criminals to circumvent the law

by determining which vehicles are used in DEA's law enforcement operations"); *see also*

*Council on American-Islamic Relations v. FBI*, 749 F. Supp. 2d 1104, 1123 (S.D. Cal. 2010)

("[C]ourts have held Exemption 7(E) applies even when the identity of the techniques has been

disclosed, but the manner and circumstances of the techniques are not generally known[] . . . .");

*N.Y. Civil Liberties Union v. Dep't of Homeland Sec.*, 771 F. Supp. 2d 289, 292 (S.D.N.Y. 2011)

(holding that even though use of surveillance cameras was generally known, information

regarding the specifics of their use could properly be withheld under Exemption 7(E) because

"the publicly available information . . . is not 'identical' to the information [sought]"); *Church of

Scientology of Tex. v. IRS*, 816 F. Supp. 1138, 1162 (W.D. Tex. 1993) ("[E]ven if known by the

public to some extent, [the techniques and procedures] are nevertheless exempt if disclosure of

the circumstances of their use could lessen their effectiveness.").  Notably, none of the cases

plaintiffs cite involve ongoing criminal investigations.  *See* CNN Mem. at 21.  The need to

maintain the confidentiality of law enforcement techniques used in connection with a *still-

ongoing* investigation cannot realistically be disputed.

## IV.    THE GOVERNMENT PROPERLY WITHHELD INFORMATION PURSUANT TO EXEMPTIONS 1 AND 3

The government has asserted Exemption 1 for limited portions of the Comey Memos.

Hardy Decl. ¶ 75.  The government established the propriety of these exemptions through the

public declaration of FBI Section Chief David Hardy, an original classification authority.  *Id.* ¶ 2.

The Hardy Declaration demonstrates that the requirements of Executive Order No. 13,526 have

each been met.  *Id.* ¶¶ 76-91.  This public declaration provides as much detail as is possible

without jeopardizing the very interests the FOIA exemptions were designed to protect. *Id.* ¶ 84. Further detail is provided in the *in camera*, *ex parte* declaration. *Id.*

The Daily Caller and CNN contest the assertion of this exemption.[4] DCNF Mem. at 11-12; JW Mem. at 16-17; CNN Mem. at 25-27. However, they offer nothing to contradict the assessment of the Executive Branch of the harm that could reasonably be expected to result from the disclosure of the national security information contained in the Comey Memos, an assessment that is entitled to substantial deference. *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927 ("[W]e have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review."); *Larson*, 565 F.3d at 865 ("reaffirm our deferential posture in FOIA cases regarding the "uniquely executive purview" of national security").

The Daily Caller also claims that the government's declaration is insufficient to establish that the proper procedures were followed because it does not identify when the Comey Memos were classified, which will control which procedures needed to be followed. In his Second Declaration, Section Chief Hardy explains that the information protected as classified in the memos was classified at the time of their writing. Second Hardy Decl. ¶ 7. Therefore, the procedures set forth in Executive Order No. 13,526, § 1.7(d), referenced by The Daily Caller are not applicable here.

CNN questions whether the exemption can be properly claimed when Mr. Comey "specifically testified that at least some of the memos were written to be unclassified." CNN Mem. at 26. But CNN ignores that the government is claiming this exemption as to only limited

---

[4] As noted *supra* at p.2 n.2, Judicial Watch's arguments as to Exemption 1 are moot.

portions of the memos, Hardy Decl. ¶ 75 ("The FBI has protected a limited amount of

information in the Comey Memos because it is classified."), and that Mr. Comey testified that he

wrote at least one memo on a classified laptop.  *See* Transcript, at 35; *see also id*. at 16

(testifying that he "had one conversation with the President that was classified where he asked

about our, an on-going intelligence investigation").  Moreover, in response to a question from

Senator Heinrich, former-Director Comey specifically denied that all of the memoranda were

unclassified.  *Id.*   CNN's arguments therefore have no basis in fact and should be rejected.

The Government has also withheld some limited information pursuant to Exemption 3.

*See* Hardy Decl. ¶¶ 92-96.  Only CNN contests the assertion of this exemption, but its arguments

must be rejected as based on speculation.  CNN Mem. at 27-28.  Specifically, CNN speculates

that it is "implausible" that Comey would have included sensitive details about intelligence

sources and methods in his memos.  *Id.*  But such speculation about what Comey said to Mr.

Trump or put in his memos has no grounds in fact, and is not sufficient to rebut the government's

declarations.

## V.   THE GOVERNMENT PROPERLY WITHHELD INFORMATION PURSUANT TO EXEMPTIONS 6 AND 7(C)

The FBI is withholding a small amount of personal information for privacy reasons under

Exemption 6 and 7(C) – namely, the names of, and some identifying information about:  (a) FBI

employee(s), (b) relative(s) of the FBI employee(s), (c) individual(s) providing information to

the FBI during its investigation of Russian interference in the 2016 Presidential election, and

(d) individuals who were merely mentioned in the Comey Memos.  Hardy Decl. ¶ 101.  CNN

challenges the withholding of the names and identifying information of the FBI employee(s),

relatives of any such FBI employees, and individuals providing information to the FBI that are not solely private individuals. CNN Mem. at 22-25. This challenge should be rejected.

In general, the names and identifying information of private individuals in law enforcement files are presumptively exempt from disclosure under Exemption 7(C) and the so-called *SafeCard* rule. *Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 666 (D.C. Cir. 2003) (citing *SafeCard Servs.*, 926 F.2d at 1206 (holding that information in law enforcement records identifying private individuals is exempt from disclosure unless release is necessary to "confirm or refute compelling evidence that the agency is engaged in illegal activity")). This is because "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Fitzgibbon*, 911 F.2d at 767 (internal quotation marks and citation omitted). Therefore, third parties involved in law enforcement investigations – witnesses, informants, and the like – "have a substantial interest in seeing that their participation remains secret." *Senate of the Com. of Puerto Rico*, 823 F.2d at 588; *see also Schiffer v. FBI*, 78 F.3d 1405, 1410 (9th Cir. 1996) (stating that persons named in FBI files have "strong interest in 'not being associated unwarrantedly with alleged criminal activity'" (quoting *Fitzgibbon*, 911 F.2d at 767)). Even government investigative agents themselves have a privacy interest in information about themselves included in law enforcement files. *Fitzgibbon*, 911 F.2d at 767 ("Exemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, *or investigators*, 'in not being associated unwarrantedly with alleged criminal activity.'" (citation omitted, emphasis added)); *see also Neely v. FBI*, 208 F.3d 461, 465 (4th Cir. 2000) (finding that FBI Special Agents have "substantial interest[s] in nondisclosure of their identities and their connection with particular investigations").

29

In the present case, the FBI explains that the employee, although a senior-level career official, nevertheless has at least a more than de minimis privacy interest in the nondisclosure of his or her name and identifying information, particularly in the context of the circumstances here, where the discussion at issue reflected personal opinions concerning that official. Second Hardy Decl. ¶ 7. On the other hand, the employee's relative has a more significant privacy interest, and that relative's identity is inextricably intertwined with the employee's identity, such that disclosure of one individual's identity would reveal the other. *Id.* Therefore, the FBI concluded that the privacy interest to be considered in the balancing test must be that of the relative. *Id.* The FBI then determined that these intertwined privacy interests are not outweighed by any public interest because disclosure of the identities of its employee and that employee's relative, referenced in the context of personal opinions about those individuals, would not significantly increase the public's understanding of the FBI's operations and activities. *Id.*

CNN speculates that the non-FBI individuals at issue may be certain public, elected *state* officials or former candidates for *state* office. CNN Mem. at 24-25. But those facts, even if true, are irrelevant to the Exemption 7(C) analysis. These individuals are still private individuals from the standpoint of the FBI investigation and retain privacy interests in not having their names revealed in this context. *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254-55 (D.C. Cir. 1981) ("[G]overnment officials do not surrender all rights to personal privacy when they accept a public appointment.").

CNN has not shown that the public interest in the identities of these individuals overrules the privacy interests discussed above. CNN merely speculates that the names of the individuals at issue might reveal "the political pressure . . . this White House . . . brings to bear on the FBI," CNN Mem. at 25, but does not suggest that there are any improprieties in *FBI* conduct that might

30

be revealed.  "[W]here there is a privacy interest protected by Exemption 7(C) and the public

interest being asserted is to show that responsible officials acted negligently or otherwise

improperly in the performance of their duties, the requester must establish more than a bare

suspicion in order to obtain disclosure." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S.

157, 174 (2004).  CNN has not done so here, and therefore have not established that Exemption

7(C) should be overruled.  *See* Second Hardy Decl. ¶ 6.

## VI.   FREEDOM WATCH'S RULE 56(d) MOTION FOR DISCOVERY SHOULD BE DENIED.

Plaintiff Freedom Watch's motion for discovery under Rule 56(d), and for denial of the

government's summary judgment motion, fails because the government's declarations are

sufficiently detailed for the Court to resolve the issues before it.  Discovery is rarely appropriate

in a FOIA case.  *See Justice v. IRS*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011) (noting that "discovery

is disfavored" in FOIA actions); *Wheeler v. CIA*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003)

("Discovery is generally unavailable in FOIA actions.").  Cases are typically resolved on

summary judgment motions, and discovery generally is not available "where an agency's

declarations are reasonably detailed, submitted in good faith and the court is satisfied that no

factual dispute remains." *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C.

2002), *aff'd*, 349 F.3d 657 (D.C. Cir. 2003); *SafeCard Servs.*, 926 F.2d at 1200-02 (affirming

district court's decision to deny discovery as to adequacy of search, on ground that agency's

affidavits were sufficiently detailed).

Freedom Watch requests discovery because, it asserts, the government's motion is

"comprised entirely of blanket exceptions and vague generalizations" and it therefore "has

absolutely no way of knowing what is in the documents that Freedom Watch is seeking and

Defendants are withholding."  FW Mem. at 2.  But, generally, discovery is permissible in a

FOIA case only where the requestor makes a showing of bad faith on the part of the agency

sufficient to impugn the agency's affidavits or declarations.  *See Wilson v. U.S. Dep't of Transp.*,

No. 10-5295, 2010 WL 5479580, at *1 (D.C. Cir. Dec. 30, 2010) (per curiam) (holding that

"[b]ecause appellant offered no evidence of bad faith to rebut agency's affidavits, he is not entitled

to discovery"); *see also Accuracy in Media, Inc. v. Nat'l Park Serv.*, 194 F.3d 120, 125 (D.C. Cir.

1999) (upholding denial of discovery based on "speculative criticism" of agency's search).

Freedom Watch attempts to meet this hurdle by discussing the FBI's and DOJ counsel's alleged

conduct in *other* cases as evidence of defendants' bad faith.  *Id.* at 3-4.  But Freedom Watch's

allegations regarding alleged conduct in other cases, even if true (which they are not), are not

relevant here.  *Hayden v. Nat'l Sec. Agency*, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (holding that

the sufficiency of the affidavits is not undermined by "by past agency misconduct in other

unrelated cases").

    At base, Freedom Watch's motion represents an attempt to get at the contents of the

documents that it cannot access through FOIA.  This attempt should be rejected.  In the unlikely

event that the Court were to find the FBI's declarations insufficiently detailed, the proper course

would be to order the FBI to submit more detailed declarations, not to order discovery.  *See Bartko*,

62 F. Supp. 3d at 149 (ordering the FBI to submit a further affidavit "if it hopes to prevail on

Exemption 7(E)"); *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 187 (D.D.C. 2011) (denying requests

for discovery and *in camera* review and instead ordering agency to supplement affidavits to establish

that it conducted adequate searches and to provide particularized explanations for its segregability

determinations); *Jarvik v. CIA*, 741 F. Supp. 2d 106, 122 (D.D.C. 2010) ("Even if an agency's

affidavits regarding its search are deficient, courts generally do not grant discovery but instead direct

the agency to supplement its affidavits."); *Judicial Watch, Inc. v. Dep't of Justice*, 185 F. Supp. 2d 54, 65 (D.D.C. 2002) (same).   For those reasons, Freedom Watch's motion should be denied.

## CONCLUSION

For the foregoing reasons, the Court should grant the government's motion to submit its declaration *in camera* and *ex parte* and should deny Freedom Watch's Rule 56(d) motion for discovery.  Furthermore, the Court should find that the Comey Memos were properly withheld in full, and the government's motion for partial summary judgment should be granted and plaintiffs' cross-motions for summary judgment denied.

Dated:  December 6, 2017                    Respectfully submitted,

                                            CHAD A. READLER
                                            Principal Deputy Assistant Attorney General
                                            Civil Division

                                            MARCIA BERMAN
                                            Assistant Director, Civil Division

                                            */s/Carol Federighi*
                                            CAROL FEDERIGHI
                                            Senior Trial Counsel
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            P.O. Box 883
                                            Washington, DC 20044
                                            Phone: (202) 514-1903
                                            Email: carol.federighi@usdoj.gov

                                            *Counsel for Defendant*

33