**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., <br><br>      Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br><br>      Defendant. | Civil Action No. 1:17-cv-01167-JEB |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*, <br><br>      Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br>      Defendant. | Civil Action No. 1:17-cv-01175-JEB |
| JUDICIAL WATCH, INC., <br><br>      Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br>      Defendant. | Civil Action No. 1:17-cv-01189-JEB |
| FREEDOM WATCH, INC., <br><br>      Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION, <br><br>      Defendants. | Civil Action No. 1:17-cv-01212-JEB |

THE DAILY CALLER NEWS
FOUNDATION,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendant.

Civil Action No. 1:17-cv-01830-JEB

## <u>DEFENDANTS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

These consolidated actions arise under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552.  They involve FOIA requests for records relating to conversations between former

Director of the Federal Bureau of Investigation ("FBI"), James B. Comey, and President Donald

J. Trump, referred to as the "Comey Memos," as well as additional records.  The portions of the

FOIA requests submitted to the FBI for the memoranda written by former Director Comey

documenting these conversations ("the Comey Memos") were addressed in the motion for partial

summary judgment previously filed by defendants in this case (Dkt. No. 22).  The present motion

addresses the remaining portions of the FOIA requests submitted to the FBI at issue in Case Nos.

17-1175 and 17-1212, as well as the FOIA requests to the Department of Justice ("DOJ") at issue

in Case No. 17-1175.   In response to these requests, DOJ's Office of Information Policy ("OIP")

located no responsive documents; the FBI located three pages of responsive documents, which it

has withheld in full.

Defendants hereby move pursuant to Federal Rule of Civil Procedure 56 for partial

summary judgment in their favor as to DOJ's and the FBI's responses to the foregoing requests.

The reasons for this Motion are set forth in the accompanying Memorandum in Support of

Defendants' Second Motion for Partial Summary Judgment, the Statement of Material Facts as to Which There is No Genuine Dispute, the First, Second, and Third Declarations of David M. Hardy, and the two additional FBI declarations submitted *in camera* and *ex parte*.  A proposed order is filed concurrently herewith.

Dated:  January 19, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Director, Civil Division

*/s/Carol Federighi*
CAROL FEDERIGHI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>        Defendant. | Civil Action No. 1:17-cv-01167-JEB |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>        Defendant. | Civil Action No. 1:17-cv-01175-JEB |
| JUDICIAL WATCH, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>        Defendant. | Civil Action No. 1:17-cv-01189-JEB |
| FREEDOM WATCH, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION,<br><br>        Defendants. | Civil Action No. 1:17-cv-01212-JEB |

THE DAILY CALLER NEWS
FOUNDATION,

       Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

       Defendant.

Civil Action No. 1:17-cv-01830-JEB

## MEMORANDUM IN SUPPORT OF DEFENDANTS' SECOND PARTIAL MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION .................................................................................................................1

BACKGROUND ..................................................................................................................2

I.      FACTUAL BACKGROUND ....................................................................................2

II.     THE FOIA REQUESTS AND RESPONSES AT ISSUE IN THIS MOTION ..................4

        A.      Request of Gannett Satellite Info. Network, LLC, and Brad Heath
                (Case No. 17-1175) ...................................................................................5

        B.      Requests of (1) The James Madison Project and Garrett Graff ("JMP/
                Graff Request") and (2) The James Madison Project and Lachlan Markay
                ("JMP/Markay Request") (Case No. 17-1175) .............................................5

        C.      Freedom Watch's Request (Case No. 17-1212) .............................................7

ARGUMENT .......................................................................................................................8

I.      THE AGENCIES CONDUCTED ADEQUATE SEARCHES .........................................10

        A.      Legal Standard .........................................................................................10

        B.      OIP Conducted an Adequate Search ...........................................................11

        C.      The FBI Conducted an Adequate Search ......................................................14

II.     THE FBI PROPERLY WITHELD RESPONSIVE DOCUMENTS
        PURSUANT TO FOIA EXEMPTION 7(A) ..............................................................18

        A.      Exemption 7(A) Applies to the Documents at Issue .......................................19

        B.      There Has Been No Official "Prior Disclosure" ...........................................24

        C.      Disclosure of the Documents at Issue Will Still Interfere with the Special
                Counsel's Investigation, Notwithstanding Mr. Comey's Testimony ...................26

III.    THE FBI PROPERLLY WITHHELD PORTIONS OF THE RECORDS
        AT ISSUE PURSUANT TO EXEMPTIONS 6 AND 7(C) ............................................27

CONCLUSION ....................................................................................................................30

i

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Afshar v. U.S. Department of State*,
   702 F.2d 1125 (D.C. Cir. 1983)..........................................................................25

*Alyeska Pipeline Service Co. v. Environmental Protection Agency*,
   856 F.2d 309 (D.C. Cir. 1988)......................................................................10, 23

*American Civil Liberties Union v. Department of State*,
   878 F. Supp. 2d 215 (D.C. Cir. 2012).................................................................25

*American Civil Liberties Union v. U.S. Department of Defense*,
   628 F.3d 612 (D.C. Cir. 2011)............................................................................24

*Ancient Coin Collectors Guild v. U.S. Department of State*,
   641 F.3d 504 (D.C.Cir.2011)................................................................................9

*Armstrong v. Executive Office of the President*,
   97 F.3d 575 (D.C. Cir. 1996)................................................................................9

*Assassination Archives and Research Center v. CIA*,
   334 F.3d 55 (D.C. Cir. 2003)..............................................................................26

*Bigwood v. U.S. Department of Defense*,
   132 F. Supp. 3d 124 (D.D.C. 2015).....................................................................16

*Blanton v. Department of Justice*,
   63 F. Supp. 2d 35 (D.D.C. 1999).........................................................................29

*Brehm v. Department of Defense*,
   593 F. Supp. 2d 49 (D.D.C. 2009).............................................................14, 16, 18

*Campbell v. Department of Health and Human Services*,
   682 F.2d 256 (D.C. Cir. 1982).......................................................................19, 27

*Center for National Security Studies v. U.S. Department of Justice*,
   331 F.3d 918 (D.C. Cir. 2003).......................................................................20, 21

*Center for Public Integrity v. FCC*,
   505 F. Supp. 2d 106 (D.D.C. 2007).....................................................................13

*CIA v. Sims*,
   471 U.S. 159 (1985)..............................................................................................8

*Citizens for Responsibility and Ethics in Washington v. U.S. Department of Justice,*
    746 F.3d 1082 (D.C. Cir. 2014) ............................................................................... 21

*Crooker v. Bureau of Alcohol, Tobacco and Firearms,*
    789 F.2d 64 (D.C. Cir. 1986) ................................................................................... 19

*Davis v. U.S. Department of Justice,*
    968 F.2d 1276 (D.C. Cir. 1992) ............................................................................... 28

*DeBrew v. Atwood,*
    244 F. Supp. 3d 123 (D.D.C. 2017) ......................................................................... 10

*Dorsey v. Executive Office for U.S. Attorneys,*
    926 F. Supp. 2d 253 (D.D.C. 2013) ..................................................................... 9, 10

*FBI v. Abramson,*
    456 U.S. 615 (1982) .................................................................................................... 9

*Fitzgibbon v. CIA,*
    911 F.2d 755 (D.C. Cir. 1990) ................................................................................. 24

*Hudson River Sloop Clearwater, Inc. v. Department of the Navy,*
    891 F.2d 414 (2d Cir. 1989) ..................................................................................... 25

*James Madison Project v. Department of Justice,* No. 17-CV-00144 (APM),
    2018 WL 294530 (D.D.C. Jan. 4, 2018) ................................................................... 25

*John Doe Agency v. John Doe Corp.,*
    493 U.S. 146 (1989) ............................................................................................... 8, 20

*Juarez v. Department of Justice,*
    518 F.3d 54 (D.C. Cir. 2008) ................................................................................... 21

*Judicial Watch, Inc. v. Food and Drug Administration,*
    449 F.3d 141 (D.C. Cir. 2006) ................................................................................. 28

*Judicial Watch, Inc. v. U.S. Department of Justice,*
    306 F. Supp. 2d 58 (D.D.C. 2004) ........................................................................... 23

*Judicial Watch, Inc. v. U.S. Department of Justice,*
    806 F. Supp. 2d 74 (D.D.C. 2011) ........................................................................... 13

*Kansi v. U.S. Department of Justice,*
    11 F. Supp. 2d 42 (D.D.C. 1998) ............................................................................. 20

*Kowalczyk v. Department of Justice,*
   73 F.3d 386 (D.C. Cir. 1996) ............................................................................. 10

*Larson v. Department of State,*
   565 F.3d 857 (D.C. Cir. 2009) ........................................................................... 10

*Leadership Conference on Civil Rights v. Gonzales,*
   404 F. Supp. 2d 246 (D.D.C. 2005) ..................................................................... 9

*Liberation Newspaper v. U.S. Department of State,*
   80 F. Supp. 3d 137 (D.D.C. 2015) ..................................................................... 16

*Mapother v. Department of Justice,*
   3 F.3d 1533 (D.C. Cir. 1993) ............................................................................. 21

*Maydak v. U.S. Department of Justice,*
   218 F.3d 760 (D.C. Cir. 2000) ........................................................................... 22

*Meeropol v. Meese,*
   790 F.2d 942 (D.C. Cir. 1986) ........................................................................... 10

*Military Audit Project v. Casey,*
   656 F.2d 724 (D.C. Cir. 1981) ........................................................................... 10

*Moore v. Bush,*
   601 F. Supp. 2d 6 (D.D.C. 2009) ................................................................. 10, 29

*National Archives and Records Administration v. Favish,*
   541 U.S. 157 (2004) ........................................................................................... 28

*Nation Magazine v. U.S. Customs Service,*
   71 F.3d 885 (D.C. Cir. 1995) ....................................................................... 16, 29

*New York Times Co. v. NASA,*
   920 F.2d 1002 (D.C. Cir. 1990) ......................................................................... 27

*NLRB v. Robbins Tire & Rubber Co.,*
   437 U.S. 214 (1978) ........................................................................................... 19

*Quiñon v. FBI,*
   86 F.3d 1222 (D.C. Cir. 1996) ........................................................................... 20

*Patino-Restrepo v. Department of Justice,*
   246 F. Supp. 3d 233 (D.D.C. 2017) ................................................................... 23

*Perry v. Block*,
 684 F.2d 121 (D.C. Cir. 1982) ........................................................................ 9, 10

*Piper v. U.S. Department of Justice*,
 294 F. Supp. 2d 16 (D.D.C. 2003) ........................................................................ 10

*Pratt v. Webster*,
 673 F.2d 408 (D.C. Cir. 1982) ........................................................................ 20

*Public Citizen v. Department of State*,
 11 F.3d 198 (D.C. Cir. 1993) ........................................................................ 26

*Safecard Services, Inc. v. Securities and Exchange Commission*,
 926 F.2d 1197 (D.C. Cir. 1991) ........................................................................ 9, 10, 29

*Shurtleff v. U.S. Environmental Protection Agency*,
 991 F. Supp. 2d 1 (D.D.C. 2013) ........................................................................ 29

*Suzhou Yuanda Enterprise., Co. v. U.S. Customs and Border Protection*,
 404 F. Supp. 2d 9 (D.D.C. 2005) ........................................................................ 22

*Swan v. SEC*,
 96 F.3d 498 (D.C. Cir. 1996) ........................................................................ 22

*Truesdale v. U.S. Department of Justice*,
 803 F. Supp. 2d 44 (D.D.C. 2011) ........................................................................ 13

*U.S. Department of Air Force v. Rose*,
 425 U.S. 352 (1976) ........................................................................ 28

*U.S. Department of Defense v. Federal Labor Relations Authority*,
 510 U.S. 487 (1994) ........................................................................ 28

*U.S. Department of Justice v. Reporters Committee for Freedom of the Press*,
 489 U.S. 749 (1989) ........................................................................ 28

*U.S. Department of State v. Washington Post Co.*,
 456 U.S. 595 (1982) ........................................................................ 27

*Weisberg v. U.S. Department of Justice*,
 705 F.2d 1344 (D.C. Cir. 1983) ........................................................................ 10

*White v. U.S. Department of Justice*,
 840 F.Supp.2d 83 (D.D.C. 2012) ........................................................................ 14, 16

*Wolf v. CIA*,
    473 F.3d 370 (D.C. Cir. 2007) ............................................................................ 24

**STATUTES**

5 U.S.C. § 552 ............................................................................................................. 1
5 U.S.C. § 552(a)(4)(B) ............................................................................................... 9
5 U.S.C. § 552(b) ........................................................................................................ 9
5 U.S.C. § 552(b)(6) ......................................................................................... 7, 27, 28
5 U.S.C. § 552(b)(7)(A) ........................................................................................ *passim*
5 U.S.C. § 552(b)(7)(C) ..................................................................................... 7, 27, 28
28 U.S.C. § 533 ......................................................................................................... 20

**REGULATIONS**

28 C.F.R. § 600.4(a) ..................................................................................................... 3

**LEGISLATIVE MATERIAL**

H.R. Rep. No. 1497, 89th Cong., 2 Sess. 6 (1966), *reprinted in*
    1966 U.S.C.C.A.N. 2418, 2423) ........................................................................... 8

**INTRODUCTION**

These consolidated actions arise under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  They involve FOIA requests for records relating to conversations between then-Director of the Federal Bureau of Investigation ("FBI"), James B. Comey, and President Donald J. Trump.  The portions of the FOIA requests submitted to the FBI for the memoranda written by former Director Comey documenting these conversations ("the Comey Memos") were addressed in the motion for partial summary judgment previously filed by defendants in this case (Dkt. No. 22).  The present motion addresses the remaining portions of the FOIA requests submitted to the FBI that are at issue in Case Nos. 17-1175 and 17-1212, as well as the FOIA requests at issue in Case No. 17-1175 that were submitted to the Department of Justice ("DOJ"), where they were handled by DOJ's Office of Information Policy ("OIP").   In response to these requests, OIP located no responsive documents; the FBI located three pages of responsive documents, which it has withheld in full.

As discussed below, the FBI and OIP conducted adequate searches that were reasonably calculated to discover all documents responsive to these requests.  Further, the FBI's withholding of the documents it located is permitted by FOIA Exemption 7(A), which protects documents compiled for law enforcement purposes where their disclosure "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  Special Counsel Robert S. Mueller III is currently conducting, with the FBI's assistance, an investigation into Russia's interference with the 2016 Presidential election.  In order to preserve the integrity of this highly sensitive investigation, neither the FBI nor the Special Counsel has officially confirmed any details regarding the investigation beyond the limited information publicly revealed in relation to the cases brought against Paul Manafort, Richard Gates, George Papadapolous, and Lieutenant

General Michael Flynn.  More specifically, as set forth in defendants' prior memorandum, neither the FBI nor the Special Counsel has released the Comey Memos themselves or confirmed any details as to those memos.  The documents at issue in this motion have been compiled into this same investigation and contain sensitive information concerning the Comey Memos themselves.  The FBI and the Special Counsel have determined that the disclosure of these records at the current time, while the Special Counsel's investigation remains ongoing, would be reasonably expected to adversely affect the integrity of that investigation.  Accordingly, these documents have been properly withheld in full pursuant to FOIA Exemption 7(A).  The FBI has also properly withheld the email address of one FBI and the telephone number of one non-FBI employee pursuant to Exemptions 6 and 7(C) because it has determined that the disclosure of this personal information implicates significant privacy interests that are not outweighed by any cognizable public interest in disclosure.

Accordingly, summary judgment should be granted in favor of defendants FBI and DOJ as to these parts of the requests at issue in Case Nos. 17-1175 and 17-1212.

## BACKGROUND

## I.    FACTUAL BACKGROUND

On March 20, 2017, then-FBI Director James B. Comey confirmed in public testimony before Congress "that the FBI, as part of our counterintelligence mission, is investigating the Russian government's efforts to interfere in the 2016 presidential election, and that includes investigating the nature of any links between individuals associated with the Trump campaign and the Russian government and whether there was any coordination between the campaign and Russia's efforts."  Statement Before the House Permanent Select Committee on Intelligence, *available at* https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-

investigation (last visited Jan. 12, 2018).  He added that "[a]s with any counterintelligence investigation, this will also include an assessment of whether any crimes were committed."  *Id.*  Then-Director Comey declined to say more regarding the scope or focus of the investigation during that public hearing, as the investigation was still open and ongoing.  *Id.*

Director Comey was terminated as FBI Director on May 9, 2017.  *See, e.g.*, Am. Compl. (No. 17-1175) ¶ 10 (Dkt. No. 9); Declaration of David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, FBI ("First Hardy Decl.") ¶ 108, Dkt. No. 22-2.  On May 17, 2017, Deputy Attorney General Rod Rosenstein named former FBI Director Robert S. Mueller III as Special Counsel to oversee the Russia investigation.  DOJ Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017).  Under the terms of his appointment, Special Counsel Mueller is authorized to "conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)."  *Id.*  In addition, "[i]f the Special Counsel believes it necessary and appropriate, the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters."  *Id.*

The Special Counsel's investigation is ongoing.  First Hardy Decl. ¶ 66; Third Decl. of David M. Hardy ¶ 34 ("Third Hardy Decl.") (Ex. A hereto).  Other than the limited information made public about the cases brought against Messrs. Manafort, Gates, and Papadapolous and Lt. Gen. Flynn, no further information about the subjects, scope, or focus of the investigation has

3

been officially acknowledged by the FBI, Special Counsel Mueller, or any representative of the Department of Justice.  *Id.*; Second Decl. of David M. Hardy ¶ 10 ("Second Hardy Decl.") (Dkt. No. 36-1); Third Hardy Decl. at 14 n.9.  However, as the complaints filed in these consolidated cases indicate, there has been much media speculation and information provided by unofficial sources circulating in the public domain.

On June 8, 2017, former Director Comey, then a private citizen, testified under oath in open session before the Senate Select Committee on Intelligence ("SSCI").  *See, e.g.,* Am. Compl. (No. 17-1175), ¶ 14 (Dkt. No. 9).  In his Statement for the Record, released to the public on June 7, 2017, former Director Comey outlined how he had drafted contemporaneous memoranda after various meetings and conversations with President Trump in which he discussed matters pertaining to the Russia investigation.  https://www.intelligence.senate.gov/ sites/default/files/documents/os-jcomey-060817.pdf ("June 7 Statement").  In his live testimony on June 8, 2017, former Director Comey again discussed his communications with President Trump regarding, among other things, the Russia investigation, referencing again his contemporaneous memos.[1]  *See, e.g.,* Am. Compl. (No. 17-1175), ¶¶ 14-15 (Dkt. No. 9).  With respect to his conversations with President Trump, former Director Comey stated that he had "not included every detail" in his testimony.  June 7 Statement, at 1.

## II.    THE FOIA REQUESTS AND RESPONSES AT ISSUE IN THIS MOTION

In May, 2017, the plaintiffs in these five consolidated cases submitted FOIA requests to the  FBI essentially seeking the memoranda written by former Director Comey documenting his

---

[1]  The video of former Director Comey's testimony may be found at https://www. intelligence.senate.gov/hearings/open-hearing-former-fbi-director-james-comey (last visited Jan. 19, 2018).  A transcript is published at http://www.politico.com/story/2017/06/08/full-text-james-comey-trump-russia-testimony-239295 (last visited Jan. 19, 2018) ("Transcript").

meetings and conversations with President Trump ("the Comey Memos").  First Hardy Decl. ¶ 60.  The FBI's responses to these requests as they pertained to the Comey Memos were addressed in the motion for partial summary judgment previously filed by defendants in this case (Dkt. No. 22).  In addition, the FOIA requests submitted to the FBI that are at issue in Case Nos. 17-1175 and 17-1212 sought additional related documents.  The plaintiffs in case No. 17-1175 also submitted similar requests to DOJ's OIP.  These requests and the agencies' responses are further described below.

**A.     Request of Gannett Satellite Info. Network, LLC, and Brad Heath (Case No. 17-1175)**

The request submitted on May 12, 2017, to the FBI by USA TODAY (the business name of Gannett Satellite Information Network), along with USA TODAY reporter Brad Heath, requested, *inter alia*, "[c]omplete copies of any recordings in the possession of the FBI of conversations between former Director Comey and President Trump.[2]  First Hardy Decl. ¶ 14 & Ex. USA Today-A.  The FBI responded to this request by letter dated November 1, 2017, stating that it had conducted a search for responsive records but was unable to locate any responsive records.   Third Hardy Decl. ¶ 9 & Ex. USA Today-E.

**B.     Requests of (1) The James Madison Project and Garrett Graff ("JMP/Graff Request") and (2) The James Madison Project and Lachlan Markay ("JMP/Markay Request") (Case No. 17-1175)**

The May 17, 2017, request submitted by the James Madison Project and Garrett Graff to both OIP and the FBI sought the following:

---

[2]  This was the second part of the request submitted by USA TODAY and Brad Heath. First Hardy Decl. ¶ 14.  The first part of the request was addressed in defendants' prior motion for partial summary judgment (Dkt. No. 22).

1) Any memoranda, notes, summaries and/or recordings (hereinafter referred to jointly as "memoranda") memorializing conversations Director Comey had with President Trump;

2) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and FBI staff regarding the memoranda referenced in category #1; and

3) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and DOJ staff regarding the memorand[a] referenced in category #1.

Am. Compl (No. 17-1175) ¶¶ 27, 35-36.

Also on May 17, 2017, JMP and Lance Markay submitted a FOIA request to OIP and the

FBI seeking the following:

1) The memorandum drafted by Director Comey memorializing his conversation with President Trump on February 14, 2017;

2) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and FBI staff regarding the memorandum referenced in category #1; and

3) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and DOJ staff regarding the memorandum referenced in category #1.

Am. Compl. (No. 17-1175) ¶¶ 43-44, 50-51.

OIP responded to these two requests on October 18, 2017, stating that no responsive

records had been located.  Decl. of Daniel R. Castellano ¶ 33 & Ex. E ("Castellano Decl.") (Ex.

B hereto).

The FBI responded as to part 1 of these two requests on June 16, 2017.  First Hardy Decl.

¶¶ 25 & 33 & Exs. JMP/Graff-D & JMP/Markay-C.  These portions of these requests are at issue

in the partial summary judgment motion previously filed by defendants (Dkt. No. 22) and are not addressed in this memorandum.

As to parts 2 and 3 of both requests, the FBI responded on November 1, 2017, stating that it had located six pages of records responsive to the JMP/Graff request and four pages of records responsive to the JMP/Markay request, and that the records were being withheld in full pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).  Third Hardy Decl. ¶¶ 16, 20, Exs. JMP/Graff-G & JMP/Markay-F.  In connection with preparing this motion, the FBI re-reviewed the documents it had identified as responsive to these parts of the two requests and determined that one three-page email chain was not responsive.  Id. ¶ 17.  Accordingly, there remain three pages of records responsive to parts 2 and 3 of the JMP/Graff request, id. ¶ 17, and one page responsive to parts 2 and 3 of the JMP/Markay request, all of which have been withheld in full pursuant to Exemption 7(A).  Id. ¶ 21.  The FBI also asserted Exemptions (b)(6) and (b)(7)(C) as additional grounds for withholding some of the information in the pages responsive to the JMP/Graff request.  Id. ¶¶ 16, 17, 21.

### C.     Freedom Watch's Request (Case No. 17-1212)

On May 18, 2017, Freedom Watch submitted a FOIA request to the FBI (along with an identical one to the Department of Justice's Criminal Division)[3] seeking access to "[a]ny and all documents and records as defined above, which constitute, refer, or relate in any way to any memoranda prepared, written and/or issue[d] by former FBI Director James Comey concerning Barack Obama, Hillary Clinton, Bill Clinton, Lieutenant General Michael Flynn, and President

---

[3]  The Court granted the Department of Justice's motion for summary judgment as to the request addressed by Freedom Watch to DOJ's Criminal Division on September 22, 2017 (Dkt. Nos. 18 & 19).

Donald Trump."  Compl. (No. 17-1212) ¶ 6 (Dkt. No. 1).  With regard to this request as it encompassed the Comey Memos, the FBI responded by letter dated June 16, 2017, stating that the material requested was being withheld pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).  First Hardy Decl. ¶ 48 & Ex. Freedom Watch-D.  The present motion does not include this part of Freedom Watch's FOIA request.

With regard to the remaining portions of Freedom Watch's request, the FBI responded on November 1, 2017, stating that it had located two responsive pages and that it was withholding these two pages in full pursuant to FOIA Exemption 7(A).  Third Hardy Decl. ¶ 26 & Ex. Freedom Watch-E.  In preparing this motion, the FBI re-reviewed the results of its processing of this request and concluded that all the records responsive to parts 2 and 3 of the JMP/Graff request were also responsive to Freedom Watch's request.  *Id.* ¶ 27.  Accordingly, the FBI's final determination is that it has located three pages responsive to this request, all of which are being withheld in full.  *Id.* ¶¶ 27-28.

## ARGUMENT

The FOIA's "basic purpose" reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language."  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).  "Congress recognized, however, that public disclosure is not always in the public interest."  *CIA v. Sims*, 471 U.S. 159, 166-67 (1985).  Thus, FOIA is designed to achieve a "workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy."  *John Doe*, 493 U.S. at 152 (quoting H.R. Rep. No. 1497, 89th Cong., 2 Sess. 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423).  To that end, FOIA mandates disclosure of government records unless the requested information falls within one of

8

nine enumerated exceptions.  *See* 5 U.S.C. § 552(b).  While these exemptions are to be

"narrowly construed," *FBI v. Abramson*, 456 U.S. 615, 630 (1982), courts still must respect the

balance that Congress struck and give the exemptions a "meaningful reach and application."

*John Doe Agency*, 493 U.S. at 152.

    For a defendant agency to prevail on a motion for summary judgment in FOIA litigation,

it must satisfy two elements.  First, the agency must "demonstrate that [it] conducted an adequate

search which was reasonably calculated to uncover all relevant documents."  *Leadership Conf.*

*on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005) (citations omitted).

"Second, materials that are withheld must fall within a FOIA statutory exemption."  *Id.*  In

determining whether these standards have been met, Courts review agencies' responses to FOIA

requests *de novo*.  5 U.S.C. § 552(a)(4)(B).

    To demonstrate the adequacy of its search, "the agency may submit affidavits or

declarations that explain in reasonable detail the scope and method of the agency's search."

*Dorsey v. Exec. Office for U.S. Attorneys*, 926 F. Supp. 2d 253, 255-56 (D.D.C. 2013) (citing

*Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982)).  "At summary judgment, a court may rely on

[a] reasonably detailed affidavit . . . averring that all files likely to contain responsive materials (if

such records exist) were searched."  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d

504, 514 (D.C. Cir. 2011) (quotations and citation omitted).  To meet its burden of justifying

withholding of documents, the government may submit an agency declaration that describes the

withheld material with reasonable specificity and the reasons for non-disclosure.  *See Armstrong*

*v. Exec. Office of the President*, 97 F.3d 575, 577-78 (D.C. Cir. 1996).

    The declarations submitted by the agency are accorded a presumption of good faith,

*Safecard Servs., Inc. v. Securities & Exchange Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991),

and a presumption of expertise, *Piper v. U.S. Dep't of Justice*, 294 F. Supp. 2d 16, 20 (D.D.C. 2003), *amended on other grounds*, 428 F. Supp. 2d 1 (D.D.C. 2007), *aff'd*, 222 F. App'x 1 (D.C. Cir. 2007). "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA." *Dorsey*, 926 F. Supp. 2d at 256 (citing *Perry*, 684 F.2d at 127). Summary judgment is to be freely granted where, as here, the declarations reveal that there are no material facts genuinely at issue and that the agency is entitled to judgment as a matter of law. *See Alyeska Pipeline Serv. Co. v. U.S. Envtl. Prot. Agency*, 856 F.2d 309, 314-15 (D.C. Cir. 1988); *Military Audit Proj. v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Accordingly, "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush,* 601 F. Supp. 2d 6, 12 (D.D.C. 2009).

## I.     THE AGENCIES CONDUCTED ADEQUATE SEARCHES

### A.     Legal Standard

An agency from which information has been requested must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The adequacy of an agency's search is "measured by the reasonableness of the effort in light of the specific request." *Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009) (quoting *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)). The agency "is not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996). "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see also DeBrew v. Atwood*, 244 F. Supp. 3d 123, 129 (D.D.C. 2017) ("[S]peculation as to the existence of additional records . . . does not render the searches

10

inadequate." (citation omitted)).  The searches described by OIP and the FBI are more than adequate here.

### B.        OIP Conducted an Adequate Search

First, as to OIP, the JMP/Graff and JMP/Markay requests were addressed to the Office of the Attorney General and specifically sought copies of certain records created, received and/or maintained by the Office of the Attorney General ("OAG"), the Office of the Deputy Attorney General ("ODAG"), and/or the Office of the Associate Attorney General ("OASG").  *See* Castellano Decl. ¶ 4 & Exs. A & B.  The JMP/Graff and JMP/Markay requests sought both any of the Comey Memos that might be located in those offices, as well as any records maintained by those offices "reflecting discussions" between former Director Comey and FBI staff or DOJ staff regarding the Comey Memos.  *Id.*

OIP processes FOIA requests on behalf of itself and six DOJ senior leadership offices. Castellano Decl. ¶ 1.  OIP reasonably determined, based upon the directions provided by the JMP/Markay and JMP/Graff requesters themselves, as well as on its knowledge of the records maintained by the senior leadership offices, that potentially responsive records would most likely be located in the specified offices (OAG, ODAG, and OASG).  *Id.* ¶¶ 10, 22.  As detailed further below, OIP then conducted broad searches of unclassified email records and computer hard drives within OAG, ODAG, and OASG, as well as a search of the electronic database of the Departmental Executive Secretariat ("DES"), which is the official records repository of OAG, ODAG, and OASG.  *Id.* ¶¶ 24-31.

11

Specifically, OIP conducted electronic searches of the email and computer files of all OAG, ODAG, and OASG officials (seventy-seven[4] officials in total), using the date range of November 8, 2016, to May 16, 2017, and the broad search term "Comey."  Castellano Decl. ¶¶ 27, 29.  The OIP attorney assigned to the case then individually reviewed the thousands of documents retrieved in this search on a document review platform and determined that none of the records were responsive to plaintiffs' requests.  *Id.* ¶ 30.  In addition, consistent with the standard procedures, OIP sent search notifications to OAG, ODAG, and OASG, which provided records custodians in those offices with the details of the request and instructions to identify any additional records, such as text and voice messages or material maintained within a classified system, that would not be captured by OIP's electronic search.  *Id.* ¶ 28.  No additional responsive records (*i.e.*, records not captured by OIP's electronic search) were ultimately identified.  *Id.*

OIP also conducted a search for records responsive to plaintiffs' FOIA requests in the DES electronic database, which contains records of all formal, controlled, unclassified correspondence sent to or from OAG, ODAG, and OASG, from January 1, 2001, to the present day.  Castellano Decl. ¶ 24.  OIP's search of the DES was also conducted using the broad search term "Comey," for the timeframe from November 8, 2016, to May 16, 2017.[5]  *Id.* ¶ 25.  The OIP

---

[4]  Because the timeframe of the search covers two administrations, the search included custodians from both the current and prior administrations, resulting in a large number of accounts searched.  Castellano Decl. at 9 n.4.

[5]  The JMP/Graff request specified that the OAG, ODAG, and OASG searches could limit the timeframe of the search from November 8, 2016, through May 9, 2017.  The JMP/Markay request specified that the OAG, ODAG, and OASG searches could limit the timeframe of the search from February 14, 2017, through the date upon which the search for responsive records began.  Therefore, to fulfill both of the requests, OIP conducted searches for the timeframe of November 8, 2017, through May 16, 2017.  Castellano Decl. at 8 n.3.

attorney assigned to the case reviewed the index of documents identified in this search and identified no records responsive to plaintiffs' requests.  *Id.* ¶ 26.

Finally, OIP concluded that there was no indication after the initial retrieval and second level review of documents that responsive records might also be located on other systems or in other DOJ components.  Castellano Decl. ¶ 31.

The foregoing searches represent a "reasonable and systematic approach to locating the requested documents."  *Ctr. for Pub. Integrity v. FCC*, 505 F. Supp. 2d 106, 116 (D.D.C. 2007).  First, OIP reasonably focused on the offices identified by the requesters in their requests.  *See Truesdale v. U.S. Dep't of Justice*, 803 F. Supp. 2d 44, 51 (D.D.C. 2011) ("In light of plaintiff's . . . insistence that the records he seeks were or should have been maintained by the Attorney General – Defendant's decision to limit its search to the official records repository for the Office of the Attorney General was reasonable under the circumstances.").  The searches within those offices were thorough and reasonably designed to locate responsive documents.  Specifically, OIP searched the entire electronic database (containing emails and computer files) for all officials in these offices during the time frame in question (seventy-seven individuals) and also conducted a search of the official (electronic) records repository and tasked the individual offices in question with instructions to identify any additional records.  These searches therefore encompassed all systems likely to have responsive records, and OIP states that it did not have any reason to believe that records might be located in other systems.  Castellano Decl. ¶ 31; *see Judicial Watch, Inc. v. U.S. Dep't of Justice*, 806 F. Supp. 2d 74, 79 (D.D.C. 2011) (finding that agency's three-pronged search of emails, network, and local files was reasonably calculated to return all responsive records).

Certainly, plaintiffs cannot complain that the search terms were too narrow.  OIP appropriately used the single, and very broad, search term, "Comey," which was sufficient to pull up any responsive records.  Nor can plaintiffs claim that the scope of the search was too limited, as OIP searched the accounts of seventy-seven records custodians, as well as the DES database.  Indeed, because of the breadth of its search, OIP pulled up many thousands of potentially responsive records, which were individually reviewed by an attorney for responsiveness.  This Court should accordingly find that OIP's search here was reasonable and adequate.  *See Brehm v. Dep't of Defense*, 593 F. Supp. 2d 49, 50 (D.D.C. 2009) (finding search adequate where agency searched two systems likely to have responsive records "using the plaintiff's name, variants thereof and other personal identifiers," and where agency also declared other systems were unlikely to have responsive records); *see also White v. U.S. Dep't of Justice*, 840 F.Supp.2d 83, 89 (D.D.C. 2012) (finding declarations sufficient where they "explain[ed] what system was searched, the terms used, why it was likely to contain responsive documents, and that no other search method would reveal responsive documents").

## C.      The FBI Conducted an Adequate Search

The FBI received the same requests addressed above from the JMP/Graff and JMP/Markay requesters, of which parts 2 and 3, for records "reflecting discussions" between former Director Comey and FBI staff or DOJ staff regarding the Comey Memos, are at issue in this motion.  Third Hardy Decl. ¶ 6b & c.  The FBI determined that, if responsive records existed among FBI records, they would likely be found either in former Director Comey's emails or in hard copy within the collection of his records that were inventoried and stored in FBI Headquarters following his termination.  *Id.* ¶ 10.  (The latter set of records is the collection in which the Comey Memos were located.  *Id.* ¶ 7; *see* First Hardy Decl. ¶ 62.)  The FBI further

14

determined that any records responsive to these parts of the JMP/Markay request would be subsumed within the corresponding parts of the JMP/Graff request; therefore, the FBI relied on the searches it conducted for JMP/Graff in responding to both requests.  Third Hardy Decl. ¶ 18.

The FBI accordingly searched the collection of former Director Comey's hard copy papers, using the inventory to do so.  Third Hardy Decl. ¶ 11.  This search located no records responsive to these parts of JMP/Graff's and JMP/Markay's requests.  *Id.*  The FBI also searched former Director Comey's classified and unclassified email accounts.  *Id.* ¶¶ 12-14.  The search terms used were:  "Comey AND Trump," "Comey AND President," "Director AND Trump," "Director AND President," "Comey AND Memo," "Trump AND Memo," "President AND Memo," and "Director AND Memo."  *Id.* ¶ 14.  The term "Memo" would also pull up any references to "memorandum" or "memoranda."  *Id.*  The FBI used the timeframe of January 20, 2017 (the date Trump was sworn in as president) through May 9, 2017 (the date former Director Comey was fired).  *Id.*  The results of these searches were reviewed to determine if any records were responsive to JMP/Graff's request.  *Id.*  The FBI ultimately identified three pages of responsive records as a result of the searches and ensuing review and re-review.  *Id.* ¶¶ 15, 17.  One of the three pages located in response to the JMP/Graff request is also responsive to and within the timeframe of the JMP/Markay request, which had a shorter timeframe of February 14, 2017 (the date of the specific memorandum about which JMP/Markay sought records) though May 9, 2017 (the date that former Director Comey was fired).  *Id.* ¶ 21.  The FBI further states that its searches did not reveal any indication that additional responsive records might be located in other repositories or record systems.  *Id.* ¶¶ 15, 19.

As is the case for the OIP search, the FBI has met its burden to show it that its search was reasonable.  The FBI's declaration appropriately "set[s] forth the search terms and the type of

search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). Because the requests sought communications by Mr. Comey, the FBI reasonably focused on searching Mr. Comey's records, both his archived hard copy files and his email records. In searching the electronic files, the FBI also used a suitable set of eight combinations of search terms that were reasonably calculated to discover communications by Comey about his Memos. The Court should not second guess the agency's determination of the search terms to use. "Where the search terms are reasonably calculated to lead to responsive documents, a court should neither 'micromanage' nor second guess the agency's search." *Bigwood v. U.S. Dep't of Defense*, 132 F. Supp. 3d 124, 140-41 (D.D.C. 2015); *see also Liberation Newspaper v. U.S. Dep't of State,* 80 F. Supp. 3d 137, 140-41 (D.D.C. 2015) ("Where the agency's search terms are reasonable, the Court will not second guess the agency regarding whether other search terms might have been superior."). In sum, the locations searched and methods used are more than adequate here and should be upheld. *See Brehm*, 593 F. Supp. 2d at 50 (finding search adequate where agency searched two systems likely to have responsive records "using the plaintiff's name, variants thereof and other personal identifiers," and where agency also declared other systems were unlikely to have responsive records); *see also White*, 840 F. Supp. 2d at 89 (finding declarations sufficient where they "explain[ed] what system was searched, the terms used, why it was likely to contain responsive documents, and that no other search method would reveal responsive documents").

The FBI also processed Freedom Watch's request for copies of "any memoranda prepared, written and/or issued by former FBI Director James Comey concerning Barack Obama, Hillary Clinton, Bill Clinton, Lieutenant General Michael Flynn and President Donald Trump."

Third Hardy Decl. ¶ 6d.  As with the JMP/Markay and JMP/Graff requests, the FBI determined

that if records existed (aside from the Comey Memos themselves, which the FBI responded to

separately, *id.* ¶ 22), they would likely be found either in hard copy within the collection of

former Director Comey's records that were inventoried and stored in FBI Headquarters

following his termination, or in his emails.  *Id.*  Accordingly, the FBI first searched the collection

of former Director Comey's hard copy papers, using the inventory to do so.  *Id.* ¶ 23.  This

search located no additional records responsive to this request, outside of the Comey Memos

initially identified as responsive.  *Id.*  Second, the FBI turned to former Director Comey's

classified and unclassified email accounts.  The FBI concluded that the three pages of email

records it located in response to the JMP/Graff request, which concern former Director Comey's

communications with President Trump, could also be responsive to Freedom Watch's request.

*Id.* ¶ 27.  The FBI also conducted a new search of these accounts, using the terms "Memo AND

Obama," "Memo AND Clinton," and "Memo AND Flynn," and the date range from July 1, 2015

(the date former Director Comey became Director of the FBI) to May 9, 2017 (the date he was

fired).  *Id.* ¶ 25.  These searches would have also pulled up the full words "memorandum" or

"memoranda."  *Id.*  This search did not locate any additional documents responsive to Freedom

Watch's request, and the FBI did not find any indication that responsive records may exist in

other locations.  *Id.* ¶ 27.  This search, which is substantively similar to the one the FBI

conducted for the JMP/Graff request, is reasonable for the same reasons explained above – the

FBI reasonably focused on searching Mr. Comey's records, both his archived hard copy files and

his email records, and, in its search of the electronic files, the FBI also used a suitable set of

search terms.

Finally, USA Today and Mr. Heath requested "copies of any recordings in the possession of the FBI of conversations between former Director Comey and President Trump." Third Hardy Decl. ¶ 6a. In response to this request, the FBI searched the collection of former Director Comey's records that were inventoried and stored in FBI Headquarters following his termination, using the inventory to do so. *Id.* ¶ 7. This search located no responsive records, nor any indications of the existence of such records. *Id.* The FBI also consulted with personnel assigned to the Special Counsel's investigation to determine whether any such recordings exist in the investigative files. *Id.* Personnel familiar with the investigation and investigative files advised that no such recordings exist in the files. *Id.* The FBI also determined that the locations searched are the only locations where responsive records would likely be maintained. *Id.* In sum, the FBI searched the systems likely to have responsive records and declared that it was not aware of any other locations where responsive records might exist. *Id.* ¶ 8. The Court should find this search adequate as well. *See Brehm.*

## II.  THE FBI PROPERLY WITHELD RESPONSIVE DOCUMENTS PURSUANT TO FOIA EXEMPTION 7(A)

As described above, the FBI located three pages of additional records responsive to the remaining portions of the JMP/Graff, JMP/Markay, and Freedom Watch requests. The FBI withheld these documents in full pursuant to FOIA Exemption 7(A). Third Hardy Decl. ¶¶ 16-17, 20-21, 28. These three pages all relate to the Comey Memos. *Id.* ¶ 30. As explained in defendant's prior motion for partial summary judgment, the FBI withheld the Comey Memos in full under Exemption 7(A) to avoid potential harm to the Special Counsel's investigation. After reviewing the three pages at issue here, the FBI concluded that disclosure of these three pages would reveal information related to the Comey Memos that could reasonably be expected

to interfere with the same pending Special Counsel investigation for the same reasons.  *Id.*  As

detailed further below, these agency declarations plausibly and logically explain how the

disclosure of any portion of these pages could compromise this important law enforcement

investigation.  Accordingly, the FBI properly withheld these documents in their entirety pursuant

to FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).

### A.    Exemption 7(A) Applies to the Documents at Issue

FOIA Exemption 7(A) authorizes the withholding of "records or information compiled

for law enforcement purposes . . . to the extent that production of such law enforcement records

or information . . . could reasonably be expected to interfere with enforcement proceedings."  5

U.S.C. § 552(b)(7)(A).  Unlike with other exemptions, the government is not required to provide

a *Vaughn* index to support its withholdings under Exemption 7(A) but may address the

documents on a categorical basis.  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 236

(1978); *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 265 (D.C. Cir. 1982).  To

satisfy the government's burden, a declaration need only describe the type of record at issue in

terms sufficient to "allow[] the court to trace a rational link between the nature of the document

and the alleged likely interference." *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789

F.2d 64, 67 (D.C. Cir. 1986).  The government has met its burden to establish the applicability of

this exemption here.

To establish the applicability of this exemption, the government must first show that the

records were "compiled for law enforcement purposes."  Investigative documents qualify as

records "compiled for law enforcement purposes" if the agency's declarations establish (1) "a

rational nexus between the investigation and one of the agency's law enforcement duties"; and

(2) "a connection between an individual or incident and a possible security risk or violation of

19

federal law." *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003) (internal quotation marks omitted); *see also Quiñon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996). "[L]ess exacting proof" of a legitimate law enforcement purpose is required of law enforcement agencies such as the Department of Justice and the FBI. *Pratt v. Webster*, 673 F.2d 408, 418 & n.25 (D.C. Cir. 1982); *see also Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926. Records not initially obtained or generated for law enforcement purposes may qualify if they were subsequently assembled for a valid law enforcement purpose. *John Doe*, 493 U.S. at 154-55; *see also Kansi v. U.S. Dep't of Justice*, 11 F. Supp. 2d 42, 44 (D.D.C. 1998) ("[O]nce [the records at issue] are assembled by the FBI for its law enforcement purposes, all documents qualify for protection under Exemption 7 regardless of their original source.").

Here, the documents at issue have been compiled into the ongoing investigation being conducted by the Special Counsel. Third Hardy Decl. ¶ 33. That investigation is unquestionably within the law enforcement duties of the FBI, which include undertaking counterintelligence and national security investigations, and detecting and investigating possible violations of Federal criminal laws. *See* 28 U.S.C. § 533; First Hardy Decl. ¶ 65. It is also within the authority of the Special Counsel, which has specifically been tasked with investigating Russian involvement in the election and prosecuting any federal crimes unearthed. DOJ Order No. 3915-2017. And the investigation is based on a viable connection between an "incident" (alleged Russian interference in the election) and a possible security risk or violation of federal law. *See* Transcript. Finally, further explanation of how the memos constitute records "compiled for law enforcement purposes" is included in the second *in camera* and *ex parte* declaration by the FBI submitted herewith. Third Hardy Decl. ¶ 33.

For the second inquiry under Exemption 7(A), the government must show that production of the records at issue "(1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted); *see* 5 U.S.C. § 552(b)(7)(A). "Exemption 7(A) does not require a presently pending 'enforcement proceeding'" – "an ongoing . . . investigation" suffices. *Ctr. for Nat'l Security Studies*, 331 F.3d at 926; *see also Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1098 (D.C. Cir. 2014) ("[A]n ongoing criminal investigation typically triggers Exemption 7(A)."); *Juarez v. Dep't of Justice*, 518 F.3d 54, 59 (D.C. Cir. 2008) ("[S]o long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies.").

These requirements are also met here. The FBI is limited in what it can say on the public record regarding the harms that would flow from the release of any portion of these documents. Third Hardy Decl. ¶ 36. The FBI generally explained in its prior memorandum and the public declaration submitted therewith how disclosure of the Comey Memos and the information contained therein could reasonably be expected to adversely affect the ongoing Special Counsel investigation, as well as any law enforcement proceedings that may ultimately result from this investigation. First Hardy Decl. ¶ 71. Specifically, disclosure of the Memos could harm the investigation by revealing the scope and focus of the investigation, and whether particular activities, information, or evidence is or is not of interest in the investigation.[6] *Id.* Although

---

[6] While there have been charges brought against four individuals, two of whom have pled guilty, the investigation continues and its full scope and focus have not been publicly disclosed. Third Hardy Decl. at 14 n.9.

there has been extensive media coverage and speculation, little has been officially confirmed officially by the FBI, DOJ, or the Special Counsel about the investigation.  *Id.*  The possible risks to the investigation from disclosure were further described in the *in camera* and *ex parte* declaration submitted by the FBI.

With regard to the records at issue in this motion, disclosing these records, which directly relate to or reference one or more of the Comey Memos, could reasonably be expected to adversely affect the pending investigation by revealing non-public information about the memos that the FBI protected in the first instance to prevent harm to the investigation.  Third Hardy Decl. ¶ 35.  The FBI has protected the memos themselves because disclosure risks revealing aspects of the scope and focus of the Special Counsel's investigation, and whether particular persons, activities, information, or evidence is or is not of interest in the investigation.  *Id.*  These additional three pages, if disclosed, would highlight particular persons, activities, and interactions, which in turn would draw attention to them in relation to the pending investigation. *Id.*  Additional explanation of the FBI's reasoning is provided in the *in camera* and *ex parte* declaration to be submitted in conjunction with this motion for partial summary judgment.  *Id.* ¶ 36.

The investigators' conclusions about the possible harms are common to many investigations and are sufficient to support application of Exemption 7(A).  The courts routinely recognize that Exemption 7(A) protects against the disclosure of information that would reveal the scope and focus of an investigation.  *See Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000) ("The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish

22

defenses or fraudulent alibis or to destroy or alter evidence."); *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996) (the "records could reveal much about the focus and scope of the [agency's] investigation, and are thus precisely the sort of information exemption 7(A) allows an agency to keep secret"); *Suzhou Yuanda Enter., Co. v. U.S. Customs & Border Prot.,* 404 F. Supp. 2d 9, 14 (D.D.C. 2005) (upholding Exemption 7(A) claim where "disclosure of the information . . . could inform the public of the evidence sought and scrutinized in this type of investigation").  Thus, the courts have routinely found that a disclosure that would reveal information such as the "the material . . . thus far collected, [the investigators'] assessment of that information, and the information that [they] still required" could potentially jeopardize the investigation.  *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 306 F. Supp. 2d 58, 75-76 (D.D.C. 2004) (internal quotation marks omitted); *see also Alyeska Pipeline Serv. Co.*, 856 F.2d at 312 (upholding assertion of Exemption 7(A) where disclosure would "prematurely reveal[ ] to the subject of this ongoing investigation the size, scope and direction of this investigation" and "expose the particular types of allegedly illegal activities being investigated").  The courts have recognized that not only would disclosure of such investigative progress and priorities chill witnesses and alert targets, but it would provide targets or witnesses with an opportunity to impede the investigation or formulate their testimony to rebut evidence already gathered.  Moreover, the courts have recognized that the government, as here, often cannot provide detailed descriptions of the withheld information, but has upheld the withholdings nonetheless.  *See Patino-Restrepo v. Dep't of Justice*, 246 F. Supp. 3d 233, 250 (D.D.C. 2017) (finding the FBI's justification of its withholding pursuant to 7(A) adequate even though it was unable to provide a "description of the information withheld" because a specific description could identify the information that the FBI sought to protect by invoking the exemption).

23

In sum, because release of these documents would reveal information about the Comey Memos, and could thus potentially interfere with, the Special Counsel's investigation and any ensuing enforcement proceedings, the documents are properly exempt from disclosure pursuant to FOIA Exemption 7(A).

## B.  There Has Been No Official "Prior Disclosure"

The government anticipates that plaintiffs will argue that former Director Comey's testimony before Congress, and/or his asserted delivery of one or more of his memos to a friend, constitute prior disclosure of the contents of the documents at issue here, sufficient to compel disclosure here.  However, that testimony and the release do not constitute "official acknowledgment" and, in any event, did not pertain to the documents at issue in the present motion (which are not the Memos themselves) and therefore cannot constitute "official and documented" disclosure of the exact contents of these documents.  The prior disclosure doctrine therefore does not apply here.

The general rule is that, when "information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's otherwise valid exemption claim." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990).  The D.C. Circuit applies a three-part test for whether information has been "officially acknowledged":  "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure."  *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 620-21 (D.C. Cir. 2011).  Notably, "[p]rior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure."  *Wolf v. CIA*, 473 F.3d 370, 378 (D.C.

24

Cir. 2007).  Accordingly, the plaintiff asserting a claim of prior disclosure carries the burden of

"pointing to specific information in the public domain that appears to duplicate that being

withheld."  *Afshar v. U.S. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

      As discussed in defendants' prior memorandum (Dkt. No. 22-1), Mr. Comey's

disclosures made while a private citizen do not constitute official disclosure.  *See James Madison*

*Proj. v. Dep't of Justice*, No. 17-CV-00144 (APM), 2018 WL 294530, at *17 (D.D.C. Jan. 4,

2018) (Mehta, J.) (holding that statements of former Director Comey are not official statements

for purposes of the prior disclosure doctrine).  To constitute a "prior disclosure," the disclosure

must be an *official* government disclosure.  *See Afshar*, 702 F.2d at 1130-31 (drawing distinction

between "[u]nofficial leaks and public surmise" and "official acknowledgment").  The testimony

of a former government official, as Mr. Comey was at the time, is not an official government

disclosure.  *See Afshar*, 702 F.2d at 1133 (concluding that none of the books by former CIA

agents and officials is "an official and documented disclosure, as the release of CIA cables would

be"); *Am. Civil Liberties Union v. Dep't of State*, 878 F. Supp. 2d 215, 224 (D.C. Cir. 2012)

("No matter how extensive, the WikiLeaks disclosure is no substitute for an official

acknowledgement and the [plaintiff] has not shown that the Executive has officially

acknowledged that the specific information at issue was a part of the WikiLeaks disclosure.");

*see also Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, 891 F.2d 414, 421 (2d Cir.

1989) ("Admiral Carroll's statements cannot effect an official disclosure of information since he

is no longer an active naval officer.").  In sum, Mr. Comey's testimony does not constitute

official acknowledgment of the specific contents of the documents at issue now.  *James Madison*

*Proj.*, 2018 WL 294530, at *17 ("An unofficial statement cannot, however, be used to show that

the contents of a withheld record have been officially acknowledged.").  Accordingly, the prior

disclosure doctrine does not apply.

In any event, Mr. Comey's testimony about or transmittal of his *Memos* (which was not

even sufficient to constitute disclosure of the Memos themselves, as discussed in defendants'

prior memorandum) in no way constitutes disclosure of the specific records now at issue, which

are *not* the Memos.   The prior disclosure must be "as specific as" the documents for which the

exemption is claimed and "match[]" the information contained in the documents.  *Public Citizen*

*v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993); *see also id.* at 201 ("[A]n agency official

does not waive FOIA exemption 1 by publicly discussing the general subject matter of

documents which are otherwise properly exempt from disclosure."); *Assassination Archives &*

*Research Ctr. v. CIA,* 334 F.3d 55, 61 (D.C. Cir. 2003) (finding no prior disclosure where

plaintiff had not shown "that specific portions of the [record at issue] have been disclosed").

Accordingly, the prior disclosure doctrine is inapposite here for this reason as well.

## C.     Disclosure of  the Documents at Issue Will Still Interfere with the Special Counsel's Investigation, Notwithstanding Mr. Comey's Testimony

Plaintiffs may argue that, even if Mr. Comey's testimony did not constitute an official

disclosure of the contents of the documents at issue, that testimony negates any harm to the

investigation from releasing these documents.  However, the FBI considered the disclosures

made by Mr. Comey in making its determination as to withholding, and nonetheless concluded

that the release of the documents would still cause harm to the investigative efforts.  Third Hardy

Decl. ¶ 37.  As explained in defendants' previous memorandum, the Comey Memos themselves

have never entered the public domain and, accordingly, despite the former Director's testimony,

there is much that is not publicly known about the Memos.  The documents at issue here reveal

some sensitive information about the Memos that is not publicly known.  Therefore, disclosure

would risk harm to the investigation notwithstanding Mr. Comey's testimony.

Further details regarding the nature of these harms is provided in the *in camera* and *ex*

*parte* declarations.  Publicly explaining in any greater detail why the release of these documents

would be detrimental to the pending investigation would itself disclose law enforcement

sensitive information that could interfere with the pending investigation.  Third Hardy Decl.

¶ 37.  In such cases, the submission of an *in camera*, *ex parte* declaration is proper.  *See*

*Campbell*, 682 F.2d at 265.  As the government has adequately articulated in that submission, in

conjunction with the public declaration, how release of these documents could reasonably be

expected to impede its ongoing investigation, the government has sufficiently demonstrated that

Exemption 7(A) applies to these documents.

## III.   THE FBI PROPERLLY WITHHELD PORTIONS OF THE RECORDS AT ISSUE PURSUANT TO EXEMPTIONS 6 AND 7(C)

The records at issue contain a small amount of personal information – namely, the email

address of an FBI employee and the phone number of a non-FBI government employee.  This

information has properly been withheld pursuant to FOIA Exemptions 6 and 7(C).

Exemption 6 exempts from disclosure information about individuals in "personnel and

medical and similar files" when the disclosure of such information "would constitute a clearly

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption 6 was "intended to

cover detailed Government records on an individual which can be identified as applying to that

individual."  *U.S. Dep't of State v. Wash. Post Co*., 456 U.S. 595, 602 (1982).  It, therefore,

protects personal information contained in any government file so long as that information

"applies to a particular individual."  *Id*.; *see also N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006

(D.C. Cir. 1990) (en banc).  Exemption 6 does not merely apply to files "about an individual," but applies more broadly to "bits of personal information, such as names and addresses," contained in otherwise releasable documents.  *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006).  Exemption 6 requires an agency to balance the individual's right to privacy against the public's interest in disclosure.  *See U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976).  However, in general, "the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to the public understanding *of the operations or activities of the government.*'"  *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 775 (1989)) (emphasis and alteration in original).

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" to the extent that the production of such law enforcement records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).  In applying Exemption 7(C), the Court must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information."  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).  Because Exemption 7(C) applies only to law enforcement documents, however, and because it protects documents that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," rather than those that "would" constitute a "clearly unwarranted" invasion, courts have required a lesser showing under Exemption 7(C) than under Exemption 6.  *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 166 (2004).  As with Exemption 6, the public interest "must be assessed in light of FOIA's central purpose," which is "to open

28

agency action to the light of public scrutiny." *Nation Magazine*, 71 F.3d at 894 (quotation marks and citation omitted).  However, in general, this purpose "is not fostered by disclosure about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's conduct."  *Id.*

Here, the FBI withheld the email address of an FBI employee and the non-FBI government employee's phone number.  Third Hardy Decl. ¶¶ 43-44.  The FBI reasonably concluded that these individuals had cognizable privacy interests in the e-mail address and/or phone number not being made publicly available, in order to protect him/her from unsolicited, unnecessary, and unofficial communications.  *Id.*; *see Shurtleff v. U.S. Envtl. Prot. Agency*, 991 F. Supp. 2d 1, 18 (D.D.C. 2013) (redaction of work email addresses would prevent "the burden of unsolicited emails and harassment"); *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) (name and phone number of an FBI support employee protected under Exemptions 6 and 7(C) "because disclosure 'could subject them to embarrassment and harassment in the conduct of their official duties and personal affairs'") (citation omitted).  In contrast, these individuals' contact information, by itself, would not significantly increase the public's understanding of FBI operations and activities, and thus, there is no public interest in disclosure of this information. Third Hardy Decl. ¶¶ 43-44; *see Shurtleff*, 991 F. Supp. 2d at 19 (disclosure of work email address would not "shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to" (citation omitted)); *see also  Blanton v. U.S. Dep't of Justice*, 63 F. Supp. 2d 35, 45 (D.D.C. 1999) ("The privacy interests of third parties mentioned in law enforcement files are 'substantial' while '[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is unsubstantial.'" (quoting *Safecard Servs., Inc.*, 926 F.2d at 1205, alterations in original)); *Safecard Servs*, 926 F.2d at 1206 ("[T]here is no reason to

believe that the incremental public interest in such information would ever be significant.").

Therefore the balancing test weighs clearly in favor of withholding, and this personal

information is properly exempt from disclosure pursuant to Exemptions 6 and 7(C).

## **CONCLUSION**

For the reasons stated above, defendants' second motion for partial summary judgment

should be granted.

Dated:  January 19, 2018                          Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Director, Civil Division

*/s/Carol Federighi*
CAROL FEDERIGHI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendant*

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CABLE NEWS NETWORK, INC.,

     Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION,

     Defendant.

Civil Action No. 1:17-cv-01167-JEB

GANNETT SATELLITE INFORMATION
NETWORK, LLC, d/b/a USA TODAY, *et al.*,

     Plaintiffs,

v.

DEPARTMENT OF JUSTICE,

     Defendant.

Civil Action No. 1:17-cv-01175-JEB

JUDICIAL WATCH, INC.,

     Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

     Defendant.

Civil Action No. 1:17-cv-01189-JEB

FREEDOM WATCH, INC.,

     Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE and FEDERAL BUREAU OF
INVESTIGATION,

     Defendants.

Civil Action No. 1:17-cv-01212-JEB

1

THE DAILY CALLER NEWS
FOUNDATION,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendant.

Civil Action No. 1:17-cv-01830-JEB

## **THIRD DECLARATION OF DAVID M. HARDY**

I, David M. Hardy, declare as follows:

(1)    I am the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this

position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"),

from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for

Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA")

policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30,

2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA

matters. I am also an attorney who has been licensed to practice law in the State of Texas since

1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 246

employees who staff a total of twelve (12) Federal Bureau of Investigation Headquarters

("FBIHQ") units and two (2) field operational service center units whose collective mission is to

effectively plan, develop, direct, and manage responses to requests for access to FBI records and

information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN

FOIA Act of 2009, and FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive

2

Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial

decisions; and Presidential and Congressional directives. The statements contained in this

declaration are based upon my personal knowledge, upon information provided to me in my

official capacity, and upon conclusions and determinations reached and made in accordance

therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Specifically, I am aware of the

FBI's handling of Plaintiffs' FOIA requests that are at issue in this litigation. The following

lawsuits have been consolidated under Civil Action No. 17-cv-1167 (D.D.C.): *CNN v. FBI,* 17-

cv-1167 (D.D.C.); *Gannett Satellite Information Network et al. v. DOJ*, 17-cv-1175 (D.D.C.);

*Judicial Watch v. DOJ*, 17-cv-1189 (D.D.C.); *Freedom Watch v. DOJ & FBI*, 17-cv-1212

(D.D.C.); and *Daily Caller v. DOJ*, 17-cv-1830 (D.D.C.). *See* Civil Action No. 17-cv-1167

(D.D.C.), Minute Order dated July 26, 2017 (consolidating all lawsuits except the Daily Caller

lawsuit) and Minute Order dated September 7, 2017 (consolidating the Daily Caller lawsuit).

(4)     On August 15, 2017 and November 9, 2017, the Court entered schedules in this

case that effectively bifurcated briefing, with briefing on the appropriateness of the FBI's search

for and withholdings of the so-called "Comey Memos" occurring first, to be followed by briefing

on the appropriateness of the FBI's search for and withholdings of records responsive to the

remaining portions of FOIA requests submitted by Plaintiffs Gannett Satellite Information

Network and Brad Heath, James Madison Project and Garrett Graff ("JMP/Graff"), James

Madison Project and Lachlan Markay ("JMP/Markay"), and Freedom Watch. *See* Minute Orders

3

in 17-cv-01167 (D.D.C.) (Aug. 15, 2017 and Oct. 9, 2017). Currently, the briefing on the
"Comey Memos" has been completed.

(5) This declaration is being submitted in support of the FBI's motion for partial
summary judgment as to the remaining portions of the FOIA requests at issue in the consolidated
cases. This declaration incorporates by reference my previous declarations this case, *see* ECF
No. 22-2, Declaration of David M. Hardy (October 13, 2017) ("First Hardy Declaration") and
ECF No. 36-1, Second Declaration of David M. Hardy (November 5, 2017) ("Second Hardy
Declaration"); the *in camera* and *ex parte* declaration being submitted in conjunction with this
motion for partial summary judgment; and the *in camera* and *ex parte* declaration previously
submitted in conjunction with the FBI's motion for partial summary judgment regarding the
Comey Memos (ECF No. 22).

## **REMAINING PORTIONS OF PLAINTIFFS' REQUESTS**

(6)     The portions of plaintiffs' requests that remain to be briefed are detailed below.

   a. **Gannett Satellite Information Network dba USA Today and Heath**:
      Item 2 - "Complete copies of any recordings in the possession of the FBI of
      conversations between former Director Comey and President Trump." *See*
      ECF No. 22-2, First Hardy Declaration at ¶ 14 and Exhibit USA Today-A.

   b. **JMP/Graff**:
      Item 2 –"Any records reflecting discussions – including written
      documentation memorializing verbal conversations – between Director
      Comey and FBI staff regarding memoranda referenced in category #1."[1]

      Item 3 – "Any records reflecting discussions – including written
      documentation memorializing verbal conversations – between Director
      Comey and DOJ staff regarding the memorandum [sic] referenced in category
      #1." *See id.* at ¶ 21 and Exhibit JMP/Graff-A.

---

[1] "Category" (or item) 1 of the JMP/Graff request sought "[a]ny memoranda, notes, summaries and/or
recordings (hereinafter referred to jointly as 'memoranda') memorializing conversations Director Comey had with
President Trump." *See* ECF No. 22-2, First Hardy Declaration at ¶ 21 and Exhibit JMP/Graff-A. The FBI
understood this part of the request to be referring to the series of memoranda that former FBI Director Comey
publicly stated he wrote following his one-on-one interactions with President Trump in order to document/record
those conversations. *See* First Hardy Declaration at ¶ 60.

4

c. **JMP/Markay**:
Item 2 – "Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and FBI staff regarding the memorandum referenced in category #1."[2]

Item 3 – "Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and DOJ staff regarding the memorandum referenced in category #1." *See id.* at ¶ 30 and Exhibit JMP/Markay-A.

d. **Freedom Watch**:
"Any and all documents and records…which constitute, refer or relate in any way to any memoranda prepared, written and/or issued by former FBI Director James Comey concerning Barack Obama, Hillary Clinton, Bill Clinton, Lieutenant General Michael Flynn and President Donald Trump."[3] *See id.* at ¶ 44 and Exhibit Freedom Watch-A.

## SEARCH FOR RESPONSIVE RECORDS

### Gannett Satellite Information Network dba USA Today & Heath

*"Complete copies of any recordings in the possession of the FBI of conversations between former Director Comey and President Trump."*

(7)     The FBI searched its collection of former Director Comey's records that were

inventoried and stored in FBI Headquarters following his termination, using the inventory to do

so. (This is the collection in which the Comey Memos were located. *See* First Hardy

Declaration at ¶ 62.) This search located no responsive records, nor any *indicia* of the existence

of such recordings of his conversations with President Trump within FBI records. The FBI also

consulted with personnel assigned to the Special Counsel's investigation to determine whether

---

[2] "Category" (or item) 1 of the JMP/Markay request sought "[t]he memorandum drafted by Director Comey memorializing his conversation with President Trump on February 14, 2017." *See* ECF No. 22-2, First Hardy Declaration, ¶ 30 and Exhibit JMP/Markay-A.  The FBI understood this part of the request to be referring to the memorandum that former FBI Director Comey publicly stated he wrote following his one-on-one interactions with President Trump on February 14, 2017, in order to document/record that conversation. *See* First Hardy Declaration at ¶ 60.

[3] The FBI divided this request into two parts – the first part encompassing the Comey Memos and the second part encompassing any responsive records other than the Comey Memos.

5

any such recordings exist in the investigative files. Personnel familiar with the investigation and investigative files advised that no such recordings exist in the files. The FBI has determined that the locations searched are the locations where responsive records would likely be maintained; the FBI has not identified any other locations where responsive records are likely to be maintained.

(8)     In sum, the FBI searched those locations where responsive records are likely to be maintained, and found no responsive records nor any indication that responsive records exist in other locations. Thus, the FBI conducted an adequate search reasonably calculated to locate responsive records.

(9)     The FBI responded to this part of USA Today and Mr. Heath's request by letter dated November 1, 2017, stating that it had conducted a search for responsive records but was unable to locate any responsive records. **(Exhibit USA Today-E.)**

### JMP/Graff

*"Any records reflecting discussions … between Director Comey and FBI staff regarding memoranda referenced in category #1."*

*"Any records reflecting discussions … between Director Comey and DOJ staff regarding the memorandum [sic] referenced in category #1."*

(10)     The FBI determined that if responsive records existed, they would likely be found either in hard copy within the collection of former Director Comey's records that were inventoried and stored in FBI Headquarters following his termination, or in his e-mails.

(11)     Accordingly, the FBI searched the collection of former Director Comey's hard copy papers, using the inventory to do so. This search located no records responsive to items 2 and 3 of JMP/Graff's FOIA request.

(12)     The FBI also searched former Director Comey's e-mails.

6

(13)     As background, the FBI utilizes a commercially available eDiscovery software

tool to conduct electronic searches for e-mails and attachments, Personal Storage Tables

("PSTs"), Offline Storage Tables ("OSTs"), and other electronic records from designated

custodians (including both current and former FBI employees).  The FBI uses the software to

search both classified and unclassified computer enclaves.  In order to locate electronic records

in response to a FOIA request, the FBI identifies the enclave(s) and custodian e-mail

accounts/folders to be searched, and the search terms and desired timeframe for the search.

Personnel with expertise in operating the eDiscovery tool obtain the custodian's accounts/folders

and then executes searches of those accounts/folders using the identified search terms and

timeframe to locate potentially responsive records.

(14)     Here, the relevant custodian identified by JMP/Graff is former Director Comey.[4]

The FBI searched former Director Comey's e-mail accounts on both the classified and

unclassified enclaves.  The search terms used were:  "Comey AND Trump," "Comey AND

President," "Director AND Trump," "Director AND President," "Comey AND Memo," "Trump

AND Memo," "President AND Memo," "Director AND Memo."  The term "Memo" would also

pull up any references to "memorandum" or "memoranda."  The FBI used the timeframe of

January 20, 2017 (the date Trump was sworn in as president) through May 9, 2017 (the date

former Director Comey was fired).  The results of these searches were then provided to RIDS,

which reviewed them to identify those records responsive to JMP/Graff's request.  At that time,

the FBI identified six pages of responsive records as a result of these searches.

---

[4] JMP/Graff's request sought communications between former Director Comey and "FBI staff" or "DOJ staff."  The only identifiable FBI custodian is former Director Comey.  Because the software utilized by the FBI is custodian-driven, "FBI staff" is not specific enough to allow for a search of any other accounts and the FBI does not maintain accounts for "DOJ staff."

(15)     In sum, the FBI searched the locations where responsive records were likely to be maintained. These searches located no hard copy records but did locate six pages of electronic records originally determined to be responsive to JMP/Graff's request. These searches did not produce any indication that additional responsive records might be located in other repositories or record systems. Thus, the FBI conducted an adequate search reasonably calculated to locate responsive records.

(16)     The FBI responded to this part of the JMP/Graff request on November 1, 2017, stating that it had located six pages of responsive records and that the records were being withheld in full pursuant to FOIA Exemption (b)(7)(A), 5 U.S.C. § 552(b)(7)(A). The FBI also asserted Exemptions (b)(5), (b)(6), and (b)(7)(C) as additional grounds for withholding some or all of the information, 5 U.S.C. § 552(b)(5), (6), (7)(C). **(Exhibit JMP/Graff-G.)**

(17)     Upon further review for purposes of preparing this declaration, the FBI concluded that one three-page e-mail chain initially deemed responsive to the request is not responsive because it does not, in fact, constitute a discussion between Director Comey and FBI or DOJ staff about any of the Comey Memos. Accordingly, the FBI has located only three pages of records responsive to this request. Also, as a result of this determination, no withholdings under Exemption (b)(5) are at issue, as (b)(5) was asserted only as to a portion of information in the three pages determined to be non-responsive.

### JMP/Markay

*"Any records reflecting discussions ... between Director Comey and FBI staff regarding the memorandum referenced in category #1."*

*"Any records reflecting discussions ... between Director Comey and DOJ staff regarding the memorandum referenced in category #1."*

(18)     Because any records responsive to this request would be subsumed within the JMP/Graff request, the FBI relied on the searches it conducted for JMP/Graff in responding to

8

this request, with a modified timeframe of February 14, 2017 (the date of the specific

memorandum about which JMP/Markay sought records) and May 9, 2017 (the date that former

Director Comey was fired).  Four of the six pages located in response to the JMP/Graff request

were also originally determined to be responsive to and within the timeframe of the JMP/Markay

request.

(19)    Thus, as with the JMP/Graff search, the FBI searched the locations where

responsive records were likely to be maintained; located responsive records; and failed to locate

any indication that additional responsive records might be located in other repositories or record

systems.  Thus, the FBI conducted an adequate search reasonably calculated to locate responsive

records.

(20)    The FBI responded to this part of the JMP/Markay request on November 1, 2017,

stating that it had located four pages of responsive records and that the records were being

withheld in full pursuant to FOIA Exemption (b)(7)(A), 5 U.S.C. § 552(b)(7)(A).  The FBI also

asserted Exemptions (b)(5), (b)(6), and (b)(7)(C) as additional grounds for withholding some or

all of the information, 5 U.S.C. § 552(b)(5), (6), (7)(C).  **(Exhibit JMP/Markay-F.)**

(21)    Upon further review for purposes of preparing this declaration, the FBI concluded

that one three-page e-mail chain initially deemed responsive to the request is not responsive

because it does not, in fact, constitute a discussion between Director Comey and FBI or DOJ

staff about a Comey Memo documenting the February 14, 2017, meeting between former

Director Comey and President Trump.  Accordingly, the FBI has located only one page

responsive to this request.  As a result of this determination, no withholdings under Exemptions

(b)(5), (b)(6), or (b)(7)(C) are at issue any longer; the FBI relied solely on Exemption (b)(7)(A)

to withhold this single page.

## Freedom Watch

### *"[A]ny memoranda prepared, written and/or issued by former FBI Director James Comey concerning Barack Obama, Hillary Clinton, Bill Clinton, Lieutenant General Michael Flynn and President Donald Trump."*

(22)     The FBI previously identified the Comey Memos as responsive to this request. The FBI determined that if any additional responsive records existed, they would likely be found either in hard copy within the collection of former Director Comey's records that were inventoried and stored in FBI Headquarters following his termination, or in his e-mails. The FBI understood this request to be seeking memoranda similar to the memoranda that former Director Comey publicly stated he wrote following one-on-one interactions with President Trump in order to document/record those interactions. First Hardy Declaration at ¶ 60.

(23)     Accordingly, the FBI searched the collection of former Director Comey's hard copy papers, using the inventory to do so. This search located no additional records responsive to Freedom Watch's FOIA request.

(24)     The FBI also searched former Director Comey's email using the eDiscovery software described above.

(25)     Here, the relevant custodian was determined to be former Director Comey. Thus, the FBI searched former Director Comey's e-mail accounts on both the classified and unclassified enclaves using the terms "Memo AND Obama," "Memo AND Clinton," and "Memo AND Flynn."[5] The term "Memo" would pull up any references to "memorandum" or "memoranda." The FBI used July 1, 2015 (the date former Director Comey became Director of

---

[5] The FBI concluded that the search term "Clinton" would capture records, if any, for both President Bill Clinton and former Secretary Hillary Clinton.

The FBI also concluded that any additional records responsive to the portion of Freedom Watch's request mentioning President Trump would have been located through the searches conducted in response to JMP/Graff and JMP/Markay's requests.

the FBI) to May 9, 2017 (the date he was fired) as the timeframe for this request, because of the potential that former Director Comey could have had interactions with one or more of the subjects of the request dating back to the beginning of his tenure with the FBI.

(26)    The FBI responded to this part of Freedom Watch's request on November 1, 2017, stating that it had located two responsive pages and that it was withholding these two pages in full pursuant to FOIA Exemption (b)(7)(A).   The FBI also asserted Exemptions (b)(6) and (b)(7)(C) as additional grounds for withholding some or all of the information, 5 U.S.C. § 552(b)(6), (7)(C).   **(Exhibit Freedom Watch-E.)**

(27)    The two pages originally deemed responsive to Freedom Watch's request are included within the three pages of records that the FBI has concluded are responsive to the JMP/Graff request.  In re-reviewing the records to prepare this declaration, the FBI has concluded that all three pages of the records it located in response to the JMP/Graff request and ultimately deemed to be responsive to the request, could also be responsive to Freedom Watch's request.[6]  Otherwise, the FBI did not locate any additional documents responsive to Freedom Watch's request, and the searches did not provide any indication that responsive records may exist in other locations.

(28)    As previously explained, the FBI is withholding in full all three pages of responsive e-mails pursuant to Exemption (b)(7)(A), and has asserted Exemptions (b)(6) and (b)(7)(C) to protect some information contained within those pages.

(29)    In sum, the FBI searched the locations where responsive records were likely to be maintained.  These searches located no additional hard copy or electronic records responsive to

---

[6] The FBI did not initially consider the third page to be responsive to Freedom Watch's request.  However, upon further review and in an abundance of caution, the FBI believes that all three pages determined to be responsive to the JMP/Graff request could be considered responsive to Freedom Watch's request as well.

Freedom Watch's request; however, the three pages of electronic records located and determined to be responsive to JMP/Graff's request could be considered responsive to Freedom Watch's request. The search for additional records responsive to Freedom Watch's request did not produce any indication that additional responsive records might be located in other repositories or record systems. Thus, the FBI conducted an adequate search reasonably calculated to locate responsive records.

## JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

(30) The three pages of additional responsive records located in response to the remaining portions of the JMP/Graff, JMP/Markay,[7] and Freedom Watch requests all relate to and concern the Comey Memos. The FBI withheld the Comey Memos in full under Exemption (b)(7)(A) to avoid harm to the Special Counsel's pending investigation. After reviewing the three pages at issue here, the FBI concluded that disclosure of the pages would reveal information about the Comey Memos that has not previously been disclosed and that could reasonably be expected to interfere with the same pending investigation. In other words, the FBI concluded that since disclosure of the Comey Memos themselves could reasonably be expected to risk harm to the investigation, disclosure of contemporaneous records relating to the same subject matter as those memos would similarly risk harm to the pending investigation. The FBI is also asserting Exemptions (b)(6) and (b)(7)(C) as additional grounds for withholding certain information in the additional responsive records.[8]

---

[7] As previously explained, only one of the three additional pages is responsive to the JMP/Markay request.

[8] While Exemption (b)(5) was initially cited in response to the remaining portions of JMP/Graff's request, it was cited in the three-page e-mail chain that the FBI has concluded is not responsive to the request. Thus, the FBI is no longer asserting Exemption (b)(5).

(31)     In the following paragraphs, the FBI justifies its withholding decisions to the extent that public disclosure and discussion will not adversely affect the pending investigation. Public disclosure of more detailed information at this time about the application of exemptions here would undermine the very interests the FBI seeks to protect through its assertion of Exemption (b)(7)(A).

### Exemption (b)(7)(A) – Pending Enforcement Proceedings

(32)     Exemption (b)(7)(A) protects "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).  To assert Exemption (b)(7)(A), an agency must establish that records or information were compiled for law enforcement purposes; that there is a pending or prospective law enforcement proceeding; and that disclosure of responsive records could reasonably be expected to adversely affect the pending investigation.

(33)     The three additional pages of responsive records at issue here are e-mails that refer/relate to the Comey Memos.  As established by my first declaration in this litigation, *see* ECF No. 22-2, First Hardy Declaration at ¶ 67, and in the *in camera, ex parte* declaration submitted by the FBI, the Comey Memos themselves satisfy Exemption (b)(7)'s threshold requirement of having been "compiled for law enforcement purposes."  For the same reasons, the three pages of additional records protected here also satisfy this threshold requirement.  Further explanation cannot be provided on the public record, for the reasons explained in the FBI's *in camera* and *ex parte* declarations.

(34)     The requirement of a pending or prospective investigation or other enforcement proceeding is also satisfied as the Special Counsel's investigation remains pending.

(35)     Disclosing these records, which directly relate to/reference one or more of the

13

Comey Memos, could reasonably be expected to adversely affect the pending investigation by revealing non-public information about the memos that the FBI protected in the first instance to prevent harm to the investigation. The FBI has protected the memos themselves because disclosure risks revealing aspects concerning the scope and focus of the investigation, and whether particular persons, activities, information, or evidence is or is not of interest in the investigation.[9] These additional three pages, if disclosed, would highlight particular activities, interactions, and individuals, which in turn would draw attention to them in relation to the pending investigation.

(36)    The FBI is limited in the amount of information it can provide publicly about how the Special Counsel's investigation may be adversely affected by disclosure of the additional records concerning the Comey Memos that were located in response to JMP/Graff, JMP/Markay, and Freedom Watch's requests without the explanation itself risking harm to the investigation or revealing information exempt under one or more other exemptions. This is because little has been officially confirmed or denied by the FBI, DOJ, or the Special Counsel about the investigation. Although there has been extensive media coverage of the investigation, that coverage relies on speculation, assumptions, and anonymous/unnamed sources. Additional explanation of the FBI's reasoning is provided in the *in camera* and *ex parte* declaration submitted in conjunction with this motion for partial summary judgment.

(37)    The FBI considered the public statements made regarding the contents of the Comey Memos, including the testimony of former-Director Comey, in making the determination that these pages cannot be disclosed without risking harm to the pending investigation.

---

[9] While there have been charges brought against four individuals, two of whom have pled guilty, the investigation continues and its full scope and focus have not been publicly disclosed.

(38)   In short, for the reasons discussed above as well as those articulated with regard to the Comey Memos in my first declaration and in the *in camera, ex parte* declarations in this case, the FBI has concluded that the three additional responsive pages cannot be disclosed without risking harm to the investigation, and thus protected them under Exemption (b)(7)(A).

**Exemptions (b)(6) And (b)(7)(C) - Unwarranted Invasions of Personal Privacy**

(39)   Exemption (b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(6).  All information that applies to a particular person falls within the scope of Exemption (b)(6).

(40)   Exemption (b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C).

(41)   The FBI typically asserts Exemption (b)(6) in conjunction with Exemption (b)(7)(C). Although the balancing test for Exemption (b)(6) uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion.  Privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

(42)   For purposes of this analysis, the public interest exists only when information would shed light on the FBI's performance of its mission to protect and defend the United States against terrorists and foreign intelligence threats, to uphold and enforce the criminal laws of the

United States, and provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.

(43)   **E-mail Address of an FBI Official**. The FBI asserted Exemptions (b)(6) and (b)(7)(C) to protect the e-mail address of a current FBI official. The FBI determined that the official has privacy interests in this e-mail address in order to be protected from unsolicited, unnecessary, and unofficial questioning as to the conduct of this pending investigation or any matters related to the subject of this lawsuit, other investigations, or other sensitive matters related to FBI business. Thus, the FBI concluded that this official has a cognizable privacy interest here and that the interest is more than *de minimis*. In contrast, this official's e-mail address, by itself, would not significantly increase the public's understanding of FBI operations and activities, and thus, there is no public interest in disclosure of this information. Accordingly, the FBI concluded that Exemptions (b)(6) and (b)(7)(C) protect this official's e-mail address.

(44)   **Government (Non-FBI) Employee's Phone Number**. The FBI also concluded that the phone number of the executive assistant of a non-FBI government official should be protected under Exemptions (b)(6) and (b)(7)(C). The FBI concluded that this employee has a cognizable privacy interest in her direct work phone number not being made publicly available, in order to protect her from unsolicited, unnecessary, and/or harassing communications. In contrast, this third party's phone number, by itself, would not significantly increase the public's understanding of FBI operations and activities, and thus, there is no public interest in disclosure of this information. Accordingly, the FBI concluded that Exemptions (b)(6) and (b)(7)(C) protect this employee's phone number.

16

## SEGREGABILITY

(45)    Finally, before deciding to withhold the responsive pages in full, the FBI

reviewed them to determine whether there is any information that is not exempt under

Exemptions (b)(6), (b)(7)(A), or (b)(7)(C), and if so, whether that non-exempt information is

reasonably segregable from exempt information.  However, given that these records relate to an

ongoing investigation and the reasonable expectation of harm from premature disclosure of them

here, the FBI has concluded that no non-exempt information exists that can be reasonably

segregated and released to plaintiffs.  Specifically, the FBI has concluded that all information in

the responsive three pages is exempt under one or more of the exemptions discussed in this

declaration; is inextricably intertwined with exempt information such that segregation is not

reasonably possible; or, if segregated, nothing but disjointed words or phrases lacking

substantive content would be available for disclosure.  To provide any further details about this

determination risks the very harms that the FBI is trying to avoid by relying on Exemption

(b)(7)(A) and the other exemptions discussed above to protect these records.

## CONCLUSION

(46)    The FBI conducted searches reasonably calculated to locate all responsive records

in all locations where responsive records are likely to reside; processed all responsive records to

apply FOIA exemptions; conducted a segregability analysis; and determined there is no

reasonably segregable, non-exempt information that can be released here.  To provide any

further details about these determinations risks the very harms the FBI is trying to avoid by

relying on Exemption (b)(7)(A), as well as Exemptions (b)(6) and (b)(7)(C).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___19___ day of January, 2018.

David M. Hardy
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., | |
| Plaintiff, | Civil Action No. 1:17-cv-01167-JEB |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*, | Civil Action No. 1:17-cv-01175-JEB |
| Plaintiffs, | |
| v. | |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| JUDICIAL WATCH, INC., | |
| Plaintiff, | Civil Action No. 1:17-cv-01189-JEB |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| FREEDOM WATCH, INC., | |
| Plaintiff, | Civil Action No. 1:17-cv-01212-JEB |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION, | |
| Defendants. | |

# EXHIBIT USA TODAY-E

**U.S. Department of Justice**



**Federal Bureau of Investigation**

*Washington, D.C. 20535*

November 1, 2017

MR. BRAD HEATH / USA TODAY
7950 JONES BRANCH DRIVE
MCLEAN, VA 22108-0605

Civil Action No.: 17-cv-01175
FOIPA Request No.: 1374159-0
Subject: Copies of any reports, letters,
memoranda, etc. between President Donald
Trump and former Director James Comey

Dear Mr. Heath:

This is in response to your Freedom of Information Act (FOIA) request.

Based on the information you provided, we conducted a search for records responsive to item 2 of your request.  The FBI was unable to locate records responsive to item 2 of your request.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

Although your request is in litigation, we are required by 5 USC § 552 (a)(6)(A) to provide you the following information concerning your right to appeal.   You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.  Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

Enclosed for your information is a copy of the FBI Fact Sheet.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure



# FBI FACT SHEET

- **The primary functions of the FBI are national security and law enforcement.**

- **The FBI does not keep a file on every citizen of the United States.**

- **The FBI was not established until 1908 and we have very few records prior to the 1920s.**

- **FBI files generally contain reports** of FBI investigations of a wide range of matters, including counterterrorism, counter-intelligence, cyber crime, public corruption, civil rights, organized crime, white collar crime, major thefts, violent crime, and applicants.

- **The FBI does not issue clearances or non-clearances for anyone other than its own personnel or persons having access to FBI facilities.**   Background investigations for security clearances are conducted by many different Government agencies.   Persons who received a clearance while in the military or employed with some other government agency should contact that entity.   Most government agencies have websites which are accessible on the internet which have their contact information.

- **An identity history summary check or "rap sheet" is NOT the same as an "FBI file."** It is a listing of information taken from fingerprint cards and related documents submitted to the FBI in connection with arrests, federal employment, naturalization or military service.   The subject of a "rap sheet" may obtain a copy by submitting a written request to FBI CJIS Division – Summary Request, 1000 Custer Hollow Road, Clarksburg, WV 26306.   Along with a specific written request, the individual must submit a new full set of his/her fingerprints in order to locate the record, establish positive identification, and ensure that an individual's records are not disseminated to an unauthorized person.   The fingerprint submission must include the subject's name, date and place of birth.   There is a required fee of $18 for this service, which must be submitted by money order or certified check made payable to the Treasury of the United States.   A credit card payment option is also available.   Forms for this option and additional directions may be obtained by accessing the FBI Web site at www.fbi.gov/about-us/cjis/identity-history-summary-checks.

- **The National Name Check Program (NNCP)** conducts a search of the FBI's Universal Index (UNI) to identify any information contained in FBI records that may be associated with an individual and provides the results of that search to a requesting federal, state or local agency.   Names are searched in a multitude of combinations and phonetic spellings to ensure all records are located.   The NNCP also searches for both "main" and "cross reference" files.   A main file is an entry that carries the name corresponding to the subject of a file, while a cross reference is merely a mention of an individual contained in a file.   The results from a search of this magnitude can result in several "hits" and "idents" on an individual.   In each instance where UNI has identified a name variation or reference, information must be reviewed to determine if it is applicable to the individual in question.

- **The Record/Information Dissemination Section (RIDS)** searches for records and provides copies of FBI files responsive to Freedom of Information or Privacy Act (FOIPA) requests for information.   RIDS provides responsive documents to requesters seeking "reasonably described information."   For a FOIPA search, the subject's name, event, activity, or business is searched to determine whether there is an associated investigative file.   This is called a "main file search" and differs from the **NNCP** search.

**FOR GENERAL INFORMATION ABOUT THE FBI, VISIT OUR WEBSITE AT**
**www.fbi.gov**

7/18/16

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., | |
| Plaintiff, | Civil Action No. 1:17-cv-01167-JEB |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*, | |
| Plaintiffs, | Civil Action No. 1:17-cv-01175-JEB |
| v. | |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| JUDICIAL WATCH, INC., | |
| Plaintiff, | Civil Action No. 1:17-cv-01189-JEB |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| FREEDOM WATCH, INC., | |
| Plaintiff, | Civil Action No. 1:17-cv-01212-JEB |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION, | |
| Defendants. | |

# EXHIBIT JMP/Graff-G



**U.S. Department of Justice**

---

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

November 1, 2017

MR. BRADLEY PRESCOTT MOSS, ESQUIRE
THE JAMES MADISON PROJECT
SUITE 200
1250 CONNECTICUT AVENUE, NW
WASHINGTON, DC 20036

Civil Action No.: 17-cv-01175
FOIPA Request No.: 1374565, 1376068, and 1376070
Subject: Records by Former FBI Director James Comey Regarding Conversations with President Donald Trump

Dear Mr. Moss:

The FBI carefully examined records responsive to items 2 and 3 of your FOIA request and determined the information is exempt from disclosure pursuant to FOIA Exemption (b)(7)(A).  Also, the FBI asserted the exemptions indicated below as additional grounds for withholding the information.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☑ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

6 page(s) were reviewed and 0 page(s) are being released.

☐   Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

☐   This information has been referred to the OGA(s) for review and direct response to you.
☐   We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

☐
   In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.   See 5 U.S.C. § 552(c) (2006 & Supp. IV (2010).   This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

Although your request is in litigation, we are required by 5 USC § 552 (a)(6)(A) to provide you the following information concerning your right to appeal.   You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation.   Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).   Our experience has shown when ident, references usually contain information similar to the information processed in the main file(s).   Because of our significant backlog, we have given priority to processing only the main investigative file(s).   If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal  privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., | Civil Action No. 1:17-cv-01167-JEB |
| Plaintiff, | |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*, | Civil Action No. 1:17-cv-01175-JEB |
| Plaintiffs, | |
| v. | |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| JUDICIAL WATCH, INC., | Civil Action No. 1:17-cv-01189-JEB |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| FREEDOM WATCH, INC., | Civil Action No. 1:17-cv-01212-JEB |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION, | |
| Defendants. | |

# EXHIBIT JMP/Markay-F



**U.S. Department of Justice**

_____

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

November 1, 2017

MR. BRADLEY PRESCOTT MOSS, ESQUIRE
THE JAMES MADISON PROJECT
SUITE 200
1250 CONNECTICUT AVENUE, NW
WASHINGTON, DC 20036

Civil Action No.: 17-cv-01175
FOIPA Request No.: 1374542-0
Subject: All Memos Prepared by Former Director
Comey Detailing Conversations, Meetings, or
Interactions with President Trump

Dear Mr. Moss:

The FBI carefully examined records responsive to items 2 and 3 of your FOIA request and determined the information is exempt from disclosure pursuant to FOIA Exemption (b)(7)(A).  Also, the FBI asserted the exemptions indicated below as additional grounds for withholding the information.

|  | **Section 552** | | **Section 552a** |
|---|---|---|---|
| ☐ (b)(1) | ☑ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
|  | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| _____ | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) |  | ☐ (k)(7) |

4 page(s) were reviewed and 0 page(s) are being released.

☐   Document(s) were located which originated with, or contained information concerning, other
    Government Agency (ies) [OGA].

    ☐   This information has been referred to the OGA(s) for review and direct response to you.
    ☐   We are consulting with another agency.   The FBI will correspond with you regarding this
        information when the consultation is completed.

☐
    In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and
    Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither
    confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010).   This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

Although your request is in litigation, we are required by 5 USC § 552 (a)(6)(A) to provide you the following information concerning your right to appeal.   You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

☐   The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation.   Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).   Our experience has shown when ident, references usually contain information similar to the information processed in the main file(s).   Because of our significant backlog, we have given priority to processing only the main investigative file(s).   If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☐   See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

## EXPLANATION OF EXEMPTIONS

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal   privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., | Civil Action No. 1:17-cv-01167-JEB |
| Plaintiff, | |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*, | Civil Action No. 1:17-cv-01175-JEB |
| Plaintiffs, | |
| v. | |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| JUDICIAL WATCH, INC., | Civil Action No. 1:17-cv-01189-JEB |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| FREEDOM WATCH, INC., | Civil Action No. 1:17-cv-01212-JEB |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION, | |
| Defendants. | |

# EXHIBIT FREEDOM WATCH-E



**U.S. Department of Justice**

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

November 1, 2017

MR. LARRY KLAYMAN
FREEDOM WATCH
SUITE 345
2020 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20006

Civil Action No.: 17-cv-01212
FOIPA Request No.: 1374527-0
Subject: Records and Documents on Former
FBI Director James Comey's Memos (Regarding
President Trump)

Dear Mr. Klayman:

The FBI carefully examined records responsive to the portion of your request seeking records related to memoranda written by former Director Comey concerning Barack Obama, Hillary Clinton, Bill Clinton, and Lieutenant General Michael Flynn.   The FBI determined the information is exempt from disclosure pursuant to FOIA Exemption (b)(7)(A) and also asserted the exemptions indicated below as additional grounds for withholding the information.

| Section 552 | | Section 552a |
|---|---|---|
| ☐ (b)(1) | ☑ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☐ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| _____ | ☐ (b)(7)(D) | ☐ (k)(2) |
| _____ | ☐ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☐ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☐ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

2 page(s) were reviewed and 0 page(s) are being released.

☐   Document(s) were located which originated with, or contained information concerning, other Government Agency (ies) [OGA].

☐   This information has been referred to the OGA(s) for review and direct response to you.
☐   We are consulting with another agency.   The FBI will correspond with you regarding this information when the consultation is completed.

☐   In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c) (2006 & Supp. IV (2010). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

Although your request is in litigation, we are required by 5 USC § 552 (a)(6)(A) to provide you the following information concerning your right to appeal.   You may file an appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following web site:  https://foiaonline.regulations.gov/foia/action/public/home.   Your appeal must be postmarked or electronically transmitted within ninety (90) days from the date of this letter in order to be considered timely.   If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."   Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

☐   The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation.   Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).   Our experience has shown when ident, references usually contain information similar to the information processed in the main file(s).   Because of our significant backlog, we have given priority to processing only the main investigative file(s).   If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☐   See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

**EXPLANATION OF EXEMPTIONS**

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552**

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal  privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

**SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a**

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,  or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., | Civil Action No. 1:17-cv-01167-JEB |
| Plaintiff, | |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*, | Civil Action No. 1:17-cv-01175-JEB |
| Plaintiffs, | |
| v. | |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| JUDICIAL WATCH, INC., | Civil Action No. 1:17-cv-01189-JEB |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| FREEDOM WATCH, INC., | Civil Action No. 1:17-cv-01212-JEB |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION, | |
| Defendants. | |

THE DAILY CALLER NEWS
FOUNDATION,

     Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

     Defendant.

Civil Action No. 1:17-cv-01830-JEB

## <u>DECLARATION OF DANIEL R. CASTELLANO</u>

I, Daniel R. Castellano, declare the following to be true and correct:

1.   I am Senior Attorney in the Office of Information Policy (OIP), United States

Department of Justice (DOJ).  In this capacity, I am responsible for supervising the handling of

the Freedom of Information Act (FOIA) requests processed by the Initial Request Staff (IR Staff)

of OIP that are subject to litigation.  The IR Staff of OIP is responsible for processing FOIA

requests seeking records from within OIP and from six senior leadership offices of the

Department of Justice, specifically the Offices of the Attorney General (OAG), Deputy Attorney

General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs

(OLA), and Public Affairs (PAO).  The IR Staff determines whether records responsive to access

requests exist and, if so, whether they can be released in accordance with the FOIA.  In

processing such requests, the IR Staff consults with personnel in the senior leadership offices

and, when appropriate, with other components within the Department of Justice, as well as with

other Executive Branch agencies.

2.   I make the statement herein on the basis of personal knowledge, including my review

of the records discussed herein, as well as information provided to me by others within the

Executive Branch of the Federal Government with knowledge of the records at issue in this case, and on information that I acquired while performing my official duties.

**OIP's Receipt and Processing of Plaintiffs' FOIA Requests**

3. By two separate letters, both dated May 17, 2017, Bradley Moss submitted FOIA requests to OIP, one letter was on behalf The James Madison Project and Lachlan Markay ("Mr. Markay") and the other letter was on behalf of The James Madison Project and Garrett Graff ("Mr. Graff").

4. Both of the requests sought copies of records created, received, and/or maintained by the Office of the Attorney General, the Office of the Deputy Attorney General, and/or the Office of the Associate Attorney General, including cross-references.

Mr. Markay's request specifically sought:

1) The memorandum drafted by Director Comey memorializing his conversation with President Trump on February 14, 2017;
2) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and FBI staff regarding the memorandum referenced in category #1; and
3) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and DOJ staff regarding the memorandum referenced in category #1.

Mr. Graff's request specifically sought:

1) Any memoranda, notes, summaries and/or recordings memorializing conversations Director Comey had with President Trump;
2) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and FBI staff regarding the memoranda referenced in category #1; and
3) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and DOJ staff regarding the memorandum [sic] referenced in category #1.

5. Mr. Markay's letter stated that the timeframe of the search should be from February 14, 2017 up until the date the search is initiated.

3

6.   Mr. Graff's letter stated that the timeframe of the search should be from November 8, 2016 through May 9, 2017.

7.   Both of the FOIA requests requested expedited processing of their requests pursuant to the Department's standard involving "[a]n urgency to inform the public about an actual or alleged Federal Government activity."  See 28 C.F.R. § 16.5(e)(1)(ii).

8.   Both of the FOIA requests also requested a waiver of fees or, at a minimum, a reduction in fees in their May 17, 2017 requests.[1]

9.   Copies of both requests are attached hereto as Exhibits A and B.

10.  As noted in paragraph 1 above, OIP processes FOIA requests on behalf of itself and six leadership offices of the DOJ.  OIP makes a determination upon receipt of a FOIA request as to the appropriate office or offices in which to conduct initial records searches.  In this instance, OIP determined, based upon a review of plaintiff's request, on its knowledge of the records maintained by the senior leadership offices, and on its knowledge of and research into the subject of the request, that OAG, ODAG, and OASG were the most likely leadership offices to maintain the records sought by both of the plaintiffs in their May 17, 2017 requests.

11.  By letter dated May 25, 2017, OIP acknowledged receipt of Mr. Graff's FOIA request, assigning it three different OIP tracking numbers, DOJ-2017-004166 (AG), DOJ-2017-004330 (DAG), and DOJ-2017-004331 (ASG).

12.  By letter dated May 25, 2017, OIP acknowledged receipt of Mr. Markay's FOIA request, assigning it OIP tracking number, DOJ-2017-004149 (AG).

---

[1] No fees have been assessed for either of the plaintiffs' requests.  Accordingly, the requests for a waiver of fees are moot.

4

13.   Both of the acknowledgment letters notified plaintiffs that their requests for expedited processing had been granted.

14.   Both of the acknowledgement letters also informed plaintiffs that the records sought required searches in other offices and that their requests therefore fell within "unusual circumstances" pursuant to 5 U.S.C. § 552(a)(6)(B)(i)-(iii).

15.   Copies of both acknowledgment letters dated May 25, 2017 are attached hereto as Exhibits C and D.

**Description of OIP's Standard Search Methods**

16.   As previously mentioned in paragraph 1 above, OIP processes FOIA requests on behalf of itself and six senior leadership offices of the Department of Justice.   OIP makes determinations upon receipt of a FOIA request, both as to the appropriate senior leadership office or offices in which to conduct initial records searches, and the records repositories and search methods to use in conducting records searches on behalf of the designated senior leadership offices.   Assessments of where responsive records are likely to be maintained are based on a review of the content of the request itself and the nature of the records sought therein, as well as our familiarity with the types and location of records that each senior leadership office maintains, discussions with knowledgeable personnel in the senior leadership offices, and any research that OIP staff may conduct on the topic of the request.

17.   In order to ensure that reasonably thorough records searches are conducted, during the course of processing a given FOIA request, OIP continually assesses whether other (both current and former) staff members' records should be searched, or whether supplemental or alternative search methods (such as targeted inquiries to knowledgeable leadership office staff

regarding the existence of records not identified via "keyword" searches) should be used, and will initiate such additional searches as appropriate.  This assessment is based on OIP's review of records that are located in the initial records searches, discussions with Department personnel, or other pertinent factors.  In sum, OIP records searches are conducted in an agile and comprehensive manner, and the various search steps undertaken by OIP staff in response to a given request work in tandem to achieve a complete records search.

18.  When searching the records of leadership office custodians identified as having potentially responsive material, OIP staff employ any one of a variety of search methods, or a combination of methods, depending on the factors at hand and on the type of records systems implicated in the search.  Potentially responsive records may be located in unclassified or classified e-mail systems, computer hard drives, and/or hard copy (paper) files.

<u>Unclassified E-mail Systems and Computer Hard Drives</u>

19.  Unclassified e-mail records (which today comprise the bulk of records identified in response to FOIA requests processed by OIP) and computer hard drives are searched using a sophisticated electronic system which remotely searches through a given custodian's entire e-mail collection and individual hard drive to isolate and locate potentially responsive records within that collection of electronic records, using search parameters that are provided by OIP staff.  This same system then serves as the review platform by which OIP staff review the records retrieved using those initial search parameters.  This platform allows broad search terms to be used initially and then if appropriate, a more targeted secondary search can be then conducted within the gathered universe of documents.

<u>Departmental Executive Secretariat</u>

20.  The Departmental Executive Secretariat (DES) is the official records repository of OAG, ODAG, and OASG and maintains records of all formal, controlled, unclassified[2] correspondence sent to or from those Offices from January 1, 2001, to the present day. Moreover, the DES is used to track internal Department correspondence sent through formal channels, as well as certain external correspondence including Departmental correspondence with Congress.

21.  Records received by the designated senior leadership offices are entered into DES's Intranet Quorum (IQ) database by trained analysts.  The data elements entered into the system include such items as the date of the document, the date of receipt, the sender, the recipient, as well as a detailed description of the subject of the record.  In addition, entries are made that, among other things, reflect what action is to be taken on the records, which component has responsibility for that action, and when that action should be completed.  Keyword searches of the electronic IQ database may then be conducted by utilizing a single search parameter or combinations of search parameters.  Search parameters may include the subject, organization, date, name, or other keywords.

**<u>Searches Conducted by OIP in Response to Plaintiffs' Requests</u>**

22.  Upon review of plaintiffs' requests it was determined that potentially responsive records would most likely be located in the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), and Associate Attorney General (OASG) because both of the requests specifically sought records created, received and/or maintained by the Office of the

---

[2] The DES does not maintain classified information.

Attorney General, the Office of the Deputy Attorney General, and/or the Office of the Associate

Attorney General.

23.  In order to capture all potentially responsive records, OIP conducted broad searches

of unclassified e-mail records and computer hard drives within OAG, ODAG, and OASG as well

as of the DES.

Search of the Departmental Executive Secretariat

24.  On May 16, 2017 an OIP Government Information Specialist (GIS) conducted an

initial search for records responsive to plaintiffs' FOIA requests in the electronic database of the

DES which, as described in paragraphs 20 and 21 above, is the official records repository of

OAG, ODAG, and OASG and maintains records of all formal, controlled, unclassified

correspondence sent to or from those Offices from January 1, 2001, to the present day.

25.  OIP's search of the DES was conducted using the broad search term "Comey."  The

timeframe was from November 8, 2016, to May 16, 2017.[3]

26.  The OIP attorney assigned to the case individually reviewed the index of documents

identified in the DES search and located no records responsive to plaintiffs' requests.

---

[3] Mr. Graff's request specified that the OAG, ODAG, and OASG searches could limit the timeframe of the search from November 8, 2016 through May 9, 2017.  Mr. Markay's request specified that the OAG, ODAG, and OASG searches could limit the timeframe of the search from February 14, 2017 through the date upon which the search for responsive records began.  Therefore, to fulfill both of the requests, OIP conducted searches for the timeframe of November 8, 2017 through May 16, 2017.

<u>Search of OAG, ODAG, and OASG E-Mail and Hard Drives</u>

27. OIP initiated its e-mail and hard drive search efforts on May 31, 2017.  Remote electronic searches of the email and computer files of all OAG, ODAG, and OASG officials (seventy-seven[4] officials in total) were performed.

28.  Moreover, consistent with the standard procedures as described in paragraph 10, OIP sent search notifications to OAG, ODAG, and OASG, which provided records custodians with the details of the request and instructions to identify any additional records, such as text and voice messages, or material maintained within a classified system, that would not be captured by OIP's remote search.  No such records (i.e., records not captured by OIP's remote search) were ultimately identified.

29.  Consistent with the DES search described in paragraphs 24-26 above, the initial search parameters used in the e-mail and hard drive searches were the date range of November 8, 2016 to May 16, 2017, and the broad search term "Comey."  As described previously, the initial search gathers a broad set of records from across the entire collection of e-mail and computer files for the relevant custodians.

30.  The OIP attorney assigned to the case individually reviewed the thousands of documents identified in the e-mail and hard drive searches of the seventy-seven officials on the document review platform and determined that none of the records were responsive to plaintiffs' requests.

---

[4] Because the timeframe of the search covers two administrations, this large number of custodians is the total number of custodians searched from the current and prior administration.

<u>Additional Steps Taken To Assess Existence of Potentially Responsive Records</u>

31.  As mentioned above in paragraph 16, OIP continually assesses whether other records systems or search methods should be used, and in this instance there was no indication after the initial retrieval and second level review of documents that responsive records might also be located on other systems or in other DOJ components.

## **Summary and Adequacy of OIP's Records Searches**

32.  In sum, OIP conducted a search for documents from November 8, 2016 to May 16, 2017, the scope of that search included, as appropriate, searches of the unclassified e-mail and hard drives of seventy-seven identified officials, as well as the electronic database of the DES, to locate records responsive to plaintiffs' requests.  Based on my experience with the Department, my familiarity with the records maintained by the leadership offices, discussions with knowledgeable staff, as well as my understanding of the scope of plaintiffs' requests, and information gathered from the documents themselves, I aver that OIP's searches were reasonably calculated to uncover all potentially responsive records and that all files likely to contain relevant documents were searched.

## OIP's Final Responses to Plaintiff's FOIA Request

33.  By letter dated October 18, 2017, OIP provided a final response to plaintiffs' attorney, Mr. Moss, informing the plaintiffs that no records responsive to the requests were located.  A copy of OIP's final response dated October 18, 2017 is attached hereto as Exhibit E.

I declare under penalty of perjury that the foregoing is true and correct.

Daniel R. Castellano
Senior Attorney

Executed this 19th day of January 2018.

11

Exhibit A

# The James Madison Project
## 1250 Connecticut Avenue, N.W.
## Suite 200
## Washington, D.C.  20010

(202) 498-0011                                      E-Mail: FOIA@JamesMadisonProject.org
(202) 330-5610 fax                                  http://www.JamesMadisonProject.org

May 17, 2017

<u>VIA ONLINE PORTAL</u>

Laurie Day
Chief, Initial Request Staff
Office of the Attorney General
Department of Justice
1425 New York Avenue, NW
Washington, D.C. 20530-0001

Re: FOIA Request

Dear Ms. Day:

This is a request on behalf of The James Madison Project ("JMP") and Lachlan Markay ("Mr. Markay")(hereinafter referred to jointly as "the Requesters") under the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*

On May 9, 2017, FBI Director James Comey ("Director Comey") was informed that, by order of President Donald J. Trump ("President Trump"), he had been terminated and removed from office, effective immediately. *http://edition.cnn.com/2017/05/09/politics/james-comey-fbi-trump-white-out/index.html* (last accessed May 9, 2017). Later media reports indicated that President Trump had discussed with Director Comey the possibility of a pending investigation into the President himself on at least three occasions. *https://apps.washingtonpost.com/g /documents/politics/fbi-director-james-b-comeys-termination-letters-from-the-white-house-attorney-general/2430/* (last accessed May 12, 2017); *http://www.nbcnews.com/news/us-news/trump-reveals-he-asked-comey-whether-he-was-under-investigation-n757821* (last accessed May 12, 2017).

On May 16, 2017, media reports revealed that Director Comey had drafted an internal memorandum for his own records after a February 14, 2017, meeting with President Trump. That memorandum allegedly memorialized a conversation in which President Trump asked Director Comey to "shut down" the pending FBI investigation into former National Security Advisor Michael Flynn. *https://www.nytimes.com/2017/05/16/us/politics/james-comey-trump-flynn-russia-investigation.html?hp&action=click&pgtype=Homepage&clickSource=story-heading&module=span-ab-top-region&region=top-news&WT.nav=top-news&_r=0*

---

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

_____

(last accessed May 16, 2017); *https://www.washingtonpost.com/world/national-security/notes-made-by-former-fbi-director-comey-say-trump-pressured-him-to-end-flynn-probe/2017/05/16/52351a38-3a80-11e7-9e48-c4f199710b69_story.html?hpid=hp_rhp-banner-main_comey-615pm%3Ahomepage%2Fstory&utm_term=.46300b9cd04b* (last accessed May 16, 2017).

The Requesters seek copies of records created, received and/or maintained by the Office of the Attorney General ("AG"), the Office of the Deputy Attorney General ("DAG"), and/or the Office of the Associate Attorney General ("AAG"), including cross-references. Specifically, the Requesters are seeking:

1) The memorandum drafted by Director Comey memorializing his conversation with President Trump on February 14, 2017;

2) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and FBI staff regarding the memorandum referenced in category #1; and

3) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and DOJ staff regarding the memorandum referenced in category #1.

The AG, the DAG, and the AAG should construe "DOJ staff" and "FBI staff" to encompass Government civilian employees, political appointees, Constitutional officers, and contract staff. The scope of the searches should include, but not be limited to, e-mail communications on unclassified and classified systems, as well as records stored on individual hard drives and/or shared drives.

The AG, the DAG, and the AAG can limit the timeframe of their searches from February 14, 2017, up until the date upon which the DOJ components begin conducting searches for responsive records. The scope of the searches should not be limited to AG-originated, DAG-originated, or AAG-originated records and should be construed to include records that are currently in the possession of a U.S. Government contractor for purposes of records management.

The Requesters are pre-emptively waiving any objection to the redaction of the names of any U.S. Government officials below a GS-14 position or whom otherwise were not acting in a supervisory position. The Requesters similarly waive any objection to redactions of the names of any U.S. Government contractors in a position of authority similar to that of a GS-13 series civilian employee or below.

In terms of all other third parties who work or worked for the U.S. Government and whose names appear in records responsive to this request, the Requesters submits that the privacy interests of those individuals have been diminished by virtue of their involvement in one or more

_____2_____

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

_____

of the U.S. Government functions described above as falling within the scope of this request. There is a recognized inverse relationship between the position of authority that a government employee holds and the strength of that employee's privacy interests. See Stern v. FBI, 737 F.2d 84, 92 (D.C. Cir. 1984); Jefferson v. Dep't of Justice, 2003 U.S. Dist. LEXIS 26782, *11 (D.D.C. Nov. 14, 2003); see also Perlman v. Dep't of Justice, 312 F.3d 100, 107-109 (2d. Cir. 2002)(setting forth five factors to consider in weighing government employee's privacy interests against public interest in disclosure, including employee's rank and whether information sheds light on a government activity).

The work performed by these third parties was part of their official responsibilities on behalf of the U.S. Government and was not of a personal nature. They served in a position of trust and authority to, among other things, memorialize and evaluate any potential legal concerns implicated by President Trump's alleged request that Director Comey terminate the investigation into Mr. Flynn. Given that responsive records memorializing the work they performed will shed light on government activity, it would be reasonable to conclude that the relevant third parties' respective (and diminished) privacy interests are outweighed by the public interest in disclosure of the information indexed to their name.

We are requesting a waiver of or, at a minimum, a reduction in fees. The Requesters qualify – in their own respective rights – for designation as representatives of the news media.

JMP is a non-partisan organization dedicating to promoting government accountability and the reduction of secrecy. *http://jamesmadisonproject.org/* (last accessed May 9, 2017). The organization is a frequent FOIA requester and litigator and Federal agencies routinely and regularly grant JMP fee waivers. Mr. Markay is the White House Reporter for The Daily Beast. *http://www.thedailybeast.com/author/lachlan-markay* (last accessed May 16, 2017).

The Requesters have the ability to disseminate information on a wide scale and intend to use information obtained through this FOIA request in an original work, particularly through news articles written by Mr. Markay.  According to 5 U.S.C. § 552(a)(4)(A)(ii),

> the term 'a representative of the news media' means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.

The Requesters can demonstrate their intent and ability to publish or otherwise disseminate information to the public. See Nat'l Security Archive v. Dep't of Defense, 880 F.2d 1381, 1386 (D.C. Cir. 1989). Mr. Markay maintains the ability to publish articles explaining the content of any responsive records received as part of this request. In the event that fees are ultimately assessed, do not incur expenses beyond $25 without first contacting our office for authorization.

_____ 3 _____
*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

_____

Relying upon the same reasons we provided above outlining a public interest in disclosure of responsive records, we are also requesting expedited processing. FOIA permits expedited processing when a "compelling need" exists. 5 U.S.C. § 552(a)(6)(E)(v). Specifically, "compelling need" means "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." Id. at § 552(a)(6)(E)(v)(II). Since the emergence of the reports about Director Comey's memorandum, and particularly the allegation that President Trump tried to interfere in a pending FBI investigation, calls have started to emerge for Director Comey to testify before Congress in open session. *http://thehill.com/homenews/senate/333730-graham-asks-comey-to-testify-before-senate-panel* (last accessed May 16, 2017).  It borders on axiomatic that the public has a compelling need to learn exactly what the alleged memorandum actually says, as well as whether Director Comey discussed the details with anyone at the DOJ or the FBI prior to his termination.

If you deny all or part of this request, please cite the specific exemptions you believe justify your refusal to release the information or permit the review and notify us of your appeal procedures available under the law.  We request that any documents or records produced in response to this request be provided in electronic (soft-copy) form wherever possible.  Acceptable formats are .pdf, .jpg, .gif, .tif.  Please provide soft-copy records by email or on a CD if email is not feasible.  However, the Requesters do not agree to pay an additional fee to receive records on a CD, and in the instance that such a fee is required, the Requesters will accept a paper copy of responsive records.

Your cooperation in this matter would be appreciated.  If you wish to discuss this request, please do not hesitate to contact me at (202) 907-7945 or via e-mail at Brad@MarkZaid.com.

Sincerely,

/s/

Bradley P. Moss

_____ 4 _____

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

Exhibit B

# The James Madison Project
## 1250 Connecticut Avenue, N.W.
## Suite 200
## Washington, D.C.  20010

(202) 498-0011                                                                    E-Mail: FOIA@JamesMadisonProject.org
(202) 330-5610 fax                                                                http://www.JamesMadisonProject.org

May 17, 2017

<u>VIA ONLINE PORTAL</u>

Laurie Day
Chief, Initial Request Staff
Office of the Attorney General
Department of Justice
1425 New York Avenue, NW
Washington, D.C. 20530-0001

      Re: FOIA Request

Dear Ms. Day:

    This is a request on behalf of The James Madison Project ("JMP") and Garrett Graff ("Mr. Graff")(hereinafter referred to jointly as "the Requesters") under the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*

    On May 9, 2017, FBI Director James Comey ("Director Comey") was informed that, by order of President Donald J. Trump ("President Trump"), he had been terminated and removed from office, effective immediately. *http://edition.cnn.com/2017/05/09/politics/james-comey-fbi-trump-white-out/index.html* (last accessed May 9, 2017). Later media reports indicated that President Trump had discussed with Director Comey the possibility of a pending investigation into the President himself on at least three occasions. *https://apps.washingtonpost.com/g /documents/politics/fbi-director-james-b-comeys-termination-letters-from-the-white-house-attorney-general/2430/* (last accessed May 12, 2017); *http://www.nbcnews.com/news/us-news/trump-reveals-he-asked-comey-whether-he-was-under-investigation-n757821* (last accessed May 12, 2017).

    On May 16, 2017, media reports revealed that Director Comey had drafted an internal memorandum for his own records after a February 14, 2017, meeting with President Trump. That memorandum allegedly memorialized a conversation in which President Trump asked Director Comey to "shut down" the pending FBI investigation into former National Security Advisor Michael Flynn. *https://www.nytimes.com/2017/05/16/us/politics/james-comey-trump-flynn-russia-investigation.html?hp&action=click&pgtype=Homepage&clickSource=story-heading&module=span-ab-top-region&region=top-news&WT.nav=top-news&_r=0*

---

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

_____

(last accessed May 16, 2017); *https://www.washingtonpost.com/world/national-security/notes-made-by-former-fbi-director-comey-say-trump-pressured-him-to-end-flynn-probe/2017/05 /16/52351a38-3a80-11e7-9e48-c4f199710b69_story.html?hpid=hp_rhp-banner-main_comey-615pm%3Ahomepage%2Fstory&utm_term=.46300b9cd04b* (last accessed May 16, 2017).

   Subsequent reports indicated that Directory Comey had drafted numerous such memoranda documenting his conversations with President Trump, and the Senate Select Committee on Intelligence formally requested that the FBI produce all such memoranda. *http://www. independent.co.uk/news/world/americas/us-politics/trump-comey-latest-news-russia-interactions-senate-intelligence-committee-a7741436.html* (last accessed May 17, 2017); *https://www.nytimes.com/2017/05/17/us/politics/trump-comey-fbi.html?_r=0* (last accessed May 17, 2017). Director Comey has also been asked to testify in both open and closed sessions. *http://www.cbsnews.com/news/jason-chaffetz-invites-james-comey-to-testify-before-congress/* (last accessed May 17, 2017); *http://thehill.com/homenews/senate/333730-graham-asks-comey-to-testify-before-senate-panel* (last accessed May 16, 2017).

   The Requesters seek copies of records created, received and/or maintained by the Office of the Attorney General ("AG"), the Office of the Deputy Attorney General ("DAG"), and/or the Office of the Associate Attorney General ("AAG"), including cross-references. Specifically, the Requesters are seeking:

   1) Any memoranda, notes, summaries and/or recordings (hereinafter referred to jointly as "memoranda") memorializing conversations Director Comey had with President Trump;

   2) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and FBI staff regarding the memoranda referenced in category #1; and

   3) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and DOJ staff regarding the memorandum referenced in category #1.

   The AG, the DAG, and the AAG should construe "DOJ staff" and "FBI staff" to encompass Government civilian employees, political appointees, Constitutional officers, and contract staff. The scope of the searches should include, but not be limited to, e-mail communications on unclassified and classified systems, as well as records stored on individual hard drives and/or shared drives.

   The AG, the DAG, and the AAG can limit the timeframe of their searches from November 8, 2016, through May 9, 2017. The scope of the searches should not be limited to AG-originated, DAG-originated, or AAG-originated records and should be construed to include records that are currently in the possession of a U.S. Government contractor for purposes of records management.

_____

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

_____

The Requesters are pre-emptively waiving any objection to the redaction of the names of any U.S. Government officials below a GS-14 position or whom otherwise were not acting in a supervisory position. The Requesters similarly waive any objection to redactions of the names of any U.S. Government contractors in a position of authority similar to that of a GS-13 series civilian employee or below.

In terms of all other third parties who work or worked for the U.S. Government and whose names appear in records responsive to this request, the Requesters submits that the privacy interests of those individuals have been diminished by virtue of their involvement in one or more of the U.S. Government functions described above as falling within the scope of this request. There is a recognized inverse relationship between the position of authority that a government employee holds and the strength of that employee's privacy interests. See Stern v. FBI, 737 F.2d 84, 92 (D.C. Cir. 1984); Jefferson v. Dep't of Justice, 2003 U.S. Dist. LEXIS 26782, *11 (D.D.C. Nov. 14, 2003); see also Perlman v. Dep't of Justice, 312 F.3d 100, 107-109 (2d. Cir. 2002)(setting forth five factors to consider in weighing government employee's privacy interests against public interest in disclosure, including employee's rank and whether information sheds light on a government activity).

The work performed by these third parties was part of their official responsibilities on behalf of the U.S. Government and was not of a personal nature. They served in a position of trust and authority to, among other things, evaluate any potential legal concerns implicated by President Trump's discussions with Director Comey. Given that responsive records memorializing the work they performed will shed light on government activity, it would be reasonable to conclude that the relevant third parties' respective (and diminished) privacy interests are outweighed by the public interest in disclosure of the information indexed to their name.

We are requesting a waiver of or, at a minimum, a reduction in fees. The Requesters qualify – in their own respective rights – for designation as representatives of the news media.

JMP is a non-partisan organization dedicating to promoting government accountability and the reduction of secrecy. *http://jamesmadisonproject.org/* (last accessed May 9, 2017). The organization is a frequent FOIA requester and litigator and Federal agencies routinely and regularly grant JMP fee waivers. Mr. Graff is a distinguished magazine journalist and historian. *https://www.garrettgraff.com/biography/* (last accessed May 16, 2017).

The Requesters have the ability to disseminate information on a wide scale and intend to use information obtained through this FOIA request in an original work, particularly through news articles written by Mr. Graff.  According to 5 U.S.C. § 552(a)(4)(A)(ii),

> the term 'a representative of the news media' means any person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.

_____
*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

_____

The Requesters can demonstrate their intent and ability to publish or otherwise disseminate information to the public. See Nat'l Security Archive v. Dep't of Defense, 880 F.2d 1381, 1386 (D.C. Cir. 1989). Mr. Graff maintains the ability to publish articles explaining the content of any responsive records received as part of this request. In the event that fees are ultimately assessed, do not incur expenses beyond $25 without first contacting our office for authorization.

Relying upon the same reasons we provided above outlining a public interest in disclosure of responsive records, we are also requesting expedited processing. FOIA permits expedited processing when a "compelling need" exists. 5 U.S.C. § 552(a)(6)(E)(v). Specifically, "compelling need" means "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." Id. at § 552(a)(6)(E)(v)(II). It borders on axiomatic that the public has a compelling need to learn exactly what the alleged memoranda actually say, as well as whether Director Comey discussed the details with anyone at the DOJ or the FBI prior to his termination.

If you deny all or part of this request, please cite the specific exemptions you believe justify your refusal to release the information or permit the review and notify us of your appeal procedures available under the law.  We request that any documents or records produced in response to this request be provided in electronic (soft-copy) form wherever possible.  Acceptable formats are .pdf, .jpg, .gif, .tif.  Please provide soft-copy records by email or on a CD if email is not feasible.  However, the Requesters do not agree to pay an additional fee to receive records on a CD, and in the instance that such a fee is required, the Requesters will accept a paper copy of responsive records.

Your cooperation in this matter would be appreciated.  If you wish to discuss this request, please do not hesitate to contact me at (202) 907-7945 or via e-mail at Brad@MarkZaid.com.


Sincerely,

/s/

Bradley P. Moss

_____
*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

Exhibit C



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

May 25, 2017

Mr. Bradley Moss                              Re:     DOJ-2017-004149 (AG)
The James Madison Project                             DOJ-2017-004166 (AG)
1250 Connecticut Avenue, NW, Suite 200                DOJ-2017-004330 (DAG)
Washington, DC  20010                                 DOJ-2017-004331 (ASG)
FOIA@JamesMadisonProject.org                          VRB:DRH:ERH

Dear Mr. Moss:

        This is to acknowledge receipt of your letters dated and received in this Office on
May 17, 2017, in which you requested records (1) memorializing conversations between former
Federal Bureau of Investigation (FBI) Director James Comey and President Donald Trump,
including any such memorandum concerning their conversation of February 14, 2017, and (2)
reflecting on such conversations between Director Comey and President Trump.  This response
is made on behalf of the Offices of the Attorney General, Deputy Attorney General, and
Associate Attorney General.

        We have received two letters from your organization, both dated May 17, 2017,
submitted on behalf of the James Madison Project and either Mr. Lachlan Markay and Mr.
Garrett Graff.  Because these requests are seeking very similar records, with the only difference
being that Mr. Markay's request is seeking the memorandum memorializing the February 14,
2017 conversation between Director Comey and President Trump while Mr. Graff's request is
seeking memoranda memorializing all such conversations, and in an effort to facilitate our
response, we are processing these requests jointly.  Accordingly, we have closed the
administrative tracking number (DOJ-2017-004149 (AG)) associated with Mr. Markey's request.
These two requests will be processed jointly under the three remaining administrative tracking
numbers listed above.  We will send any future correspondence to Mr. Moss at the provided
address above.

        You have asked for expedited processing of your request.  Please be advised that we are
currently processing other requests seeking records similar to those you have requested, which
have already been granted expedited processing.  As such, your request will also be processed on
an expedited basis.

        The records you seek require searches in other Offices, and so your request falls within
"unusual circumstances."  See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii).  Because of these unusual
circumstances, we need to extend the time limit to respond to your request beyond the ten
additional days provided by the statute.  For your information, we use multiple tracks to process
requests, but within those tracks we work in an agile manner, and the time needed to complete

-2-

our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request.  In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records.  You can also agree to an alternative timeframe for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.  You may also contact the Office of Government Information Services (OGIS) of the National Archives and Records Administration to inquire into the FOIA mediation services they provide.  OGIS can be contacted at the following:

> Office of Government Information Services
> National Archives and Records Administration
> Room 2510
> 8601 Adelphi Road
> College Park, MD  20740-6001
>
> Telephone: (202) 741-5770
> Facsimile: (202) 741-5769
> Toll-Free: (877) 684-6448
> Email: ogis@nara.gov

We have not yet made a decision on your request for a fee waiver.  We will do so after we determine whether fees will be assessed for this request.  In your letter you agreed to pay fees up to $25 in the event that a fee waiver is not granted.

Lastly, given the nature of the records you are seeking and because the Department has a decentralized system for processing FOIA requests and each component maintains and handles FOIA requests for its own records, you may wish to direct your letter to the FBI if you have not done so.  Contact information for the FBI is available at www.foia.gov.

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact Eric Hotchkiss, the analyst processing your request, by telephone at the above number or you may write to him at the above address.  In addition, you may contact our FOIA Public Liaison at the telephone number listed above to discuss any aspect of your request.

You may contact our FOIA Public Liaison at the telephone number listed above for any further assistance and to discuss any aspect of your request.  Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll-free at 1-877-684-6448; or facsimile at 202-741-5769.

-3-

If you are not satisfied with my response to the request of Mr. Lachlan, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal at https://foiaonline.regulations.gov/foia/ action/public/home.  Your appeal must be postmarked or electronically transmitted within ninety days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Vanessa R. Brinkmann
Senior Counsel

# Exhibit D



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

May 25, 2017

Mr. Bradley Moss                                    Re:   DOJ-2017-004149 (AG)
The James Madison Project                                 DOJ-2017-004166 (AG)
1250 Connecticut Avenue, NW, Suite 200                    DOJ-2017-004330 (DAG)
Washington, DC  20010                                    DOJ-2017-004331 (ASG)
FOIA@JamesMadisionProject.org                            VRB:DRH:ERH

Dear Mr. Moss:

        This is to acknowledge receipt of your letters dated and received in this Office on
May 17, 2017, in which you requested records (1) memorializing conversations between former
Federal Bureau of Investigation (FBI) Director James Comey and President Donald Trump,
including any such memorandum concerning their conversation of February 14, 2017, and (2)
reflecting on such conversations between Director Comey and President Trump.  This response
is made on behalf of the Offices of the Attorney General, Deputy Attorney General, and
Associate Attorney General.

        We have received two letters from your organization, both dated May 17, 2017,
submitted on behalf of the James Madison Project and either Mr. Lachlan Markay and Mr.
Garrett Graff.  Because these requests are seeking very similar records, with the only difference
being that Mr. Markay's request is seeking the memorandum memorializing the February 14,
2017 conversation between Director Comey and President Trump while Mr. Graff's request is
seeking memoranda memorializing all such conversations, and in an effort to facilitate our
response, we are processing these requests jointly.  Accordingly, we have closed the
administrative tracking number (DOJ-2017-004149 (AG)) associated with Mr. Markey's request.
These two requests will be processed jointly under the three remaining administrative tracking
numbers listed above.  We will send any future correspondence to Mr. Moss at the provided
address above.

        You have asked for expedited processing of your request.  Please be advised that we are
currently processing other requests seeking records similar to those you have requested, which
have already been granted expedited processing.  As such, your request will also be processed on
an expedited basis.

        The records you seek require searches in other Offices, and so your request falls within
"unusual circumstances."  See 5 U.S.C. 552 § (a)(6)(B)(i)-(iii).  Because of these unusual
circumstances, we need to extend the time limit to respond to your request beyond the ten
additional days provided by the statute.  For your information, we use multiple tracks to process
requests, but within those tracks we work in an agile manner, and the time needed to complete

-2-

our work on your request will necessarily depend on a variety of factors, including the complexity of our records search, the volume and complexity of any material located, and the order of receipt of your request.  In an effort to speed up our process, you may wish to narrow the scope of your request to limit the number of potentially responsive records.  You can also agree to an alternative timeframe for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.  You may also contact the Office of Government Information Services (OGIS) of the National Archives and Records Administration to inquire into the FOIA mediation services they provide.  OGIS can be contacted at the following:

> Office of Government Information Services
> National Archives and Records Administration
> Room 2510
> 8601 Adelphi Road
> College Park, MD  20740-6001
>
> Telephone: (202) 741-5770
> Facsimile: (202) 741-5769
> Toll-Free: (877) 684-6448
> Email: ogis@nara.gov

We have not yet made a decision on your request for a fee waiver.  We will do so after we determine whether fees will be assessed for this request.  In your letter you agreed to pay fees up to $25 in the event that a fee waiver is not granted.

Lastly, given the nature of the records you are seeking and because the Department has a decentralized system for processing FOIA requests and each component maintains and handles FOIA requests for its own records, you may wish to direct your letter to the FBI if you have not done so.  Contact information for the FBI is available at www.foia.gov.

If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact Eric Hotchkiss, the analyst processing your request, by telephone at the above number or you may write to him at the above address.  In addition, you may contact our FOIA Public Liaison at the telephone number listed above to discuss any aspect of your request.

You may contact our FOIA Public Liaison at the telephone number listed above for any further assistance and to discuss any aspect of your request.  Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll-free at 1-877-684-6448; or facsimile at 202-741-5769.

-3-

If you are not satisfied with my response to the request of Mr. Lachlan, you may administratively appeal by writing to the Director, Office of Information Policy, United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal at https://foiaonline.regulations.gov/foia/ action/public/home.  Your appeal must be postmarked or electronically transmitted within ninety days of the date of my response to your request.  If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

Vanessa R. Brinkmann
Senior Counsel

Exhibit E



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

_____

*Telephone: (202) 514-3642*

October 18, 2017

Mr. Bradley Moss                                    Re:   DOJ-2017-004166 (AG)[1]
The James Madison Project                                DOJ-2017-004330 (DAG)
1250 Connecticut Avenue, NW, Suite 200                   DOJ-2017-004331 (ASG)
Washington, DC  20010                                    1:17-cv-01167
FOIA@JamesMadisionProject.org                            DRC:JRS

Dear Mr. Moss:

      This responds to your above-referenced Freedom of Information (FOIA) request, received in this Office on May 17, 2017, and related lawsuit.  This request sought records (1) memorializing conversations between former Federal Bureau of Investigation (FBI) Director James Comey and President Donald Trump, including any such memorandum concerning their conversation of February 14, 2017, and (2) reflecting on such conversations between Director Comey and President Trump.  This response is made on behalf of the Offices of the Attorney General, Deputy Attorney General, and Associate Attorney General.

      Please be advised that our work on your request is now complete.  Searches have been conducted in OAG, ODAG, OASG, and of the electronic database of the Departmental Executive Secretariat, which is the official records repository for those Offices, and no records responsive to your request were located.

      For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.  *See* 5 U.S.C. § 552(c) (2015) (amended 2016).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

      If you have any questions regarding this response, please contact Carol Federighi of the Department's Civil Division, Federal Programs Branch, at (202) 514-1903.

Sincerely,

*Daniel Castellano*

Daniel R. Castellano
Senior Attorney

_____

[1] Please be advised that this letter also responds to FOIA Request Nos. DOJ-2017-004149 (AG), DOJ-2017-005394 (DAG), and DOJ-2017-005395 (ASG).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>   Defendant. | Civil Action No. 1:17-cv-01167-JEB |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*,<br><br>   Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>   Defendant. | Civil Action No. 1:17-cv-01175-JEB |
| JUDICIAL WATCH, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>   Defendant. | Civil Action No. 1:17-cv-01189-JEB |
| FREEDOM WATCH, INC.,<br><br>   Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION,<br><br>   Defendants. | Civil Action No. 1:17-cv-01212-JEB |

THE DAILY CALLER NEWS
FOUNDATION,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendant.

Civil Action No. 1:17-cv-01830-JEB

## DEFENDANTS' STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to LCvR 7(h), Defendants, the United States Department of Justice ("DOJ") and

the Federal Bureau of Investigation ("FBI"), submit this Statement of Material Facts as to Which

There is No Genuine Dispute in connection with their partial second motion for summary

judgment.

1.      The law enforcement duties of the FBI include undertaking counterintelligence

and national security investigations, and detecting and investigating possible violations of

Federal criminal laws.  *See* 28 U.S.C. § 533; Declaration of David M. Hardy, Section Chief,

Record/Information Dissemination Section, Records Management Division, FBI ("First Hardy

Decl.") ¶ 65 (Dkt. No. 22-2).

2.      On March 20, 2017, then-FBI Director James B. Comey confirmed in public

testimony before Congress "that the FBI, as part of our counterintelligence mission, is

investigating the Russian government's efforts to interfere in the 2016 presidential election, and

that includes investigating the nature of any links between individuals associated with the Trump

campaign and the Russian government and whether there was any coordination between the

2

campaign and Russia's efforts." Statement Before the House Permanent Select Committee on Intelligence, available at https://www.fbi.gov/news/testimony/hpsci-hearing-titled-russian-active-measures-investigation (last visited Jan. 12, 2018). He added that "[a]s with any counterintelligence investigation, this will also include an assessment of whether any crimes were committed." *Id.*

3.      Director Comey was terminated as FBI Director on May 9, 2017. First Hardy Decl. ¶ 108.

4.      On May 17, 2017, Deputy Attorney General Rod Rosenstein named former FBI Director Robert S. Mueller III as Special Counsel to oversee the Russia investigation. DOJ Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017). Under the terms of his appointment, Special Counsel Mueller is authorized to "conduct the investigation confirmed by then-FBI Director James B. Comey in testimony before the House Permanent Select Committee on Intelligence on March 20, 2017, including (i) any links and/or coordination between the Russian government and individuals associated with the campaign of President Donald Trump; and (ii) any matters that arose or may arise directly from the investigation; and (iii) any other matters within the scope of 28 C.F.R. § 600.4(a)." *Id.* In addition, "[i]f the Special Counsel believes it necessary and appropriate, the Special Counsel is authorized to prosecute federal crimes arising from the investigation of these matters." *Id.* This investigation is ongoing. First Hardy Decl. ¶ 66; Third Decl. of David M. Hardy ¶ 34 ("Third Hardy Decl.") (Ex. A hereto).

5.      Other than the limited information made public about the cases brought against Paul Manafort, Richard Gates, and George Papadapolous and Lieutenant General Michael Flynn,

no further information about the subjects, scope, or focus of the investigation has been officially

acknowledged by the FBI, Special Counsel Mueller, or any representative of the Department of

Justice.  First Hardy Decl. ¶ 66; Second Decl. of David M. Hardy ¶ 10 (Dkt. No. 36-1) ("Second

Hardy Decl."); Third Hardy Decl. at 14 n.9.

6.      On June 8, 2017, former Director Comey, then a private citizen, testified under

oath in open session before the Senate Select Committee on Intelligence ("SSCI").  *See, e.g.,*

Am. Compl. (No. 17-1175), ¶ 14 (Dkt. No. 9).  In his Statement for the Record, released to the

public on June 7, 2017, former Director Comey outlined how he had drafted contemporaneous

memoranda after various meetings and conversations with President Trump in which he

discussed matters pertaining to the Russia investigation, among other things.

https://www.intelligence.senate.gov/sites/default/files/documents/os-jcomey-060817.pdf ("June

7 Statement").

7.      In his live testimony on June 8, 2017, former Director Comey again discussed his

communications with President Trump regarding, among other things, the Russia investigation,

referencing again his contemporaneous memos.  *See, e.g.,* Am. Compl. (No. 17-1175), ¶¶ 14-15

(Dkt. No. 9).  With respect to his conversations with President Trump, former Director Comey

stated that he had "not included every detail" in his testimony.  June 7 Statement, at 1.

8.      There has been no official confirmation as to the accuracy or completeness of Mr.

Comey's descriptions of his memos or the conversations memorialized therein.  First Hardy

Decl. ¶¶ 67, 70-72.  The Comey Memos themselves have never entered the public domain, and

their exact contents, or even the level of detail contained in the memoranda, is not publicly

known.  *Id.*

9.      By letter dated May 12, 2017, USA TODAY (the business name of Gannett

Satellite Information Network), along with USA TODAY reporter Brad Heath, submitted a

Freedom of Information Act ("FOIA") request to the FBI requesting, *inter alia*, "[c]omplete

copies of any recordings in the possession of the FBI of conversations between former Director

Comey and President Trump."  First Hardy Decl. ¶ 14 & Ex. USA Today-A.

10.     The FBI responded to this part of the request by letter dated November 1, 2017,

stating that it had conducted a search for responsive records but was unable to locate any

responsive records.   Third Hardy Decl. ¶ 9 & Ex. USA Today-E.

11.     By letter dated May 17, 2017, the James Madison Project ("JMP") and Garrett

Graff submitted a FOIA request to both the Office of Information and Privacy ("OIP") of DOJ

and the FBI requesting the following:

> 1)  Any memoranda, notes, summaries and/or recordings
>     (hereinafter referred to jointly as "memoranda") memorializing
>     conversations Director Comey had with President Trump;
>
> 2)  Any records reflecting discussions – including written
>     documentation memorializing verbal conversations – between
>     Director Comey and FBI staff regarding the memoranda
>     referenced in category #1; and
>
> 3)  Any records reflecting discussions – including written
>     documentation memorializing verbal conversations – between
>     Director Comey and DOJ staff regarding the memorand[a]
>     referenced in category #1.

Am. Compl (No. 17-1175) ¶¶ 27, 35-36.

12.     Also on May 17, 2017, JMP and Lance Markay submitted a FOIA

request to OIP and the FBI seeking the following:

> 1)  The memorandum drafted by Director Comey memorializing
>     his conversation with President Trump on February 14, 2017;

2) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and FBI staff regarding the memorandum referenced in category #1; and

3) Any records reflecting discussions – including written documentation memorializing verbal conversations – between Director Comey and DOJ staff regarding the memorandum referenced in category #1.

Am. Compl. (No. 17-1175) ¶¶ 43-44, 50-51.

13.     OIP responded to these two requests on October 18, 2017, stating that no responsive records had been located.  Decl. of Daniel R. Castellano ¶ 33 & Ex. E (Ex. B hereto).

14.     The FBI responded as to part 1 of these two requests on June 16, 2017, stating that the material requested was being withheld pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).   First Hardy Decl. ¶¶ 25 & 33 & Exs. JMP/Graff-D & JMP/Markay-C.  These portions of these requests are at issue in the partial summary judgment motion previously filed by defendants (Dkt. No. 22).

15.     As to parts 2 and 3 of both requests, the FBI responded on November 1, 2017, stating that it had located six pages of records responsive to the JMP/Graff request and four pages of records responsive to the JMP/Markay request, and that the records were being withheld in full pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).  Third Hardy Decl. ¶¶ 16, 20, Exs. JMP/Graff-G & JMP/Markay-F.

16.     In connection with preparing this motion, the FBI re-reviewed the documents it had identified as responsive to these parts of the two requests and determined that one three-page email chain was not responsive.  Third Hardy Decl. ¶ 17.

17.     Accordingly, the FBI's final determination is that it has three pages of records responsive to parts 2 and 3 of the JMP/Graff request, Third Hardy Decl. ¶ 17, and one page responsive to parts 2 and 3 of the JMP/Markay request, all of which have been withheld in full pursuant to Exemption 7(A).  *Id.* ¶ 21.   The FBI also asserted Exemptions (b)(6) and (b)(7)(C) as additional grounds for withholding some of the information in the pages responsive to the JMP/Graff request.  *Id.* ¶¶ 16, 17, 21.

18.     On May 18, 2017, Freedom Watch submitted a FOIA request to the FBI seeking access to "[a]ny and all documents and records . . ., which constitute, refer, or relate in any way to any memoranda prepared, written and/or issues by former FBI Director James Comey concerning Barack Obama, Hillary Clinton, Bill Clinton, Lieutenant General Michael Flynn, and President Donald Trump."  Compl. (No. 17-1212) ¶ 6 (Dkt. No. 1).

19.     With regard to this request as it encompassed the Comey memos, the FBI responded by letter dated June 16, 2017, stating that the material requested was being withheld pursuant to FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A).  First Hardy Decl. ¶ 48 & Ex. Freedom Watch-D.  The present motion does not include this part of Freedom Watch's FOIA request.

20.     With regard to the remaining portions of Freedom Watch's request, the FBI responded on November 1, 2017, stating that it had located two responsive pages and that it was withholding these two pages in full pursuant to FOIA Exemption 7(A).   Third Hardy Decl. ¶ 26 & Ex. Freedom Watch-E.

21.     In preparing this motion, the FBI re-reviewed the results of its processing of this request and concluded that all the records responsive to parts 2 and 3 of the JMP/Graff request

were also responsive to Freedom Watch's request.  Third Hardy Decl. ¶ 27.  Accordingly, the

FBI's final determination is that it has located three pages responsive to this request, all of which

are being withheld in full.  *Id.* ¶¶ 27-28.

22.     The three pages of withheld records have been "compiled for" the Special

Counsel's investigation.  Third Hardy Decl. ¶ 34; Second *In Camera, Ex Parte* Declaration of

David Archey.  The FBI's declarants state that these records, which directly relate to/reference

one or more of the Comey Memos, could reasonably be expected to adversely affect the pending

investigation by revealing non-public information about the memos that the FBI protected in the

first instance to prevent harm to the investigation.  Third Hardy Decl. ¶ 35.  The FBI states that

these additional three pages, if disclosed, would highlight particular activities, interactions, and

individuals, which in turn would draw attention to them in relation to the pending investigation.

*Id.*; *see also In Camera, Ex Parte* Declarations.

23.     The FBI considered the disclosures made by Mr. Comey in making the

determination that the release of the Comey Memos could serve to compromise the pending

investigation, and nonetheless concluded that the release of these documents would cause harm

to the investigative efforts.  Third Hardy Decl. ¶ 37.

Dated:  January 19, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Director, Civil Division

*/s/Carol Federighi*
CAROL FEDERIGHI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendant. | Civil Action No. 1:17-cv-01167-JEB |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 1:17-cv-01175-JEB |
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 1:17-cv-01189-JEB |
| FREEDOM WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendants. | Civil Action No. 1:17-cv-01212-JEB |

THE DAILY CALLER NEWS
FOUNDATION,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendant.

Civil Action No. 1:17-cv-01830-JEB

## [PROPOSED] ORDER GRANTING DEFENDANTS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

Upon consideration of the Defendants' Second Partial Motion for Summary Judgment, and response and reply thereto, and the entire record herein, and for good cause shown, it is hereby

**ORDERED** that, for the reasons set forth in Defendants' Motion, Defendants' Motion is hereby **GRANTED**.

So ordered on this _____ day of _____, 2018.

_____
James E. Boasberg
United States District Judge

2