**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CABLE NEWS NETWORK, INC.,** | |
| **Plaintiff,** | |
| v. | **Civil Action Nos. 17-1167, 17-1175,** |
| | **17-1189, 17-1212,** |
| **FEDERAL BUREAU OF** | **17-1830 (JEB)** |
| **INVESTIGATION,** | |
| **Defendant.** | |
| **(And Consolidated Cases)** | |

<u>**MEMORANDUM OPINION**</u>

These five consolidated cases pertain to Freedom of Information Act requests by assorted media and non-profit organizations, mainly seeking any memoranda prepared by former Federal Bureau of Investigation Director James Comey about his conversations with President Donald Trump.  On February 2, 2018, this Court granted a partial Motion for Summary Judgment in favor of Defendants FBI and Department of Justice, holding that the Government was not required to disclose the Memos.  <u>See</u> <u>Cable News Network, Inc. v. FBI</u>, 2018 WL 692921 (D.D.C. Feb. 2, 2018).  Defendants now seek to get rid of the little that remains: requests from a group of reporters and organizations (collectively, USA Today) and from Freedom Watch, Inc. for documents related to the memos about Trump and for any memos by Comey (or related documents) about other specific prominent figures.  Finding that a valid exemption again shields most of the information from release, the Court will largely grant the Motion.

I.      **Background**

As the prior Opinion provides the full background, id. at *1-2, the Court only briefly

recites some essential facts here.  On May 9, 2017, the President fired Comey as Director of the

FBI.  Id. at *1.  One week later, Acting Attorney General Rod Rosenstein appointed Robert

Mueller as Special Counsel to investigate "(i) any links and/or coordination between the Russian

government and individuals associated with the campaign of President Donald Trump; and (ii)

any matters that arose or may arise directly from the investigation; and (iii) any other matters

within the scope of 28 C.F.R. § 600.4(a)."  Id. at *5 (quoting DOJ Order No. 3915–2017 (May

17, 2017)).

The day before Mueller was appointed, the New York Times published a report about an

earlier meeting between then-Director Comey and the President, claiming to rely on a

contemporaneous memo written by Comey.  Id. at *5.  Following that story, it soon came out

that the former Director had "[c]reat[ed] written records immediately after one-on-one

conversations with" Trump.  Id. at *1 (citation omitted).  With that revelation, the "Comey

Memos" entered the American lexicon and, subsequently, this Court's docket.  Five Plaintiffs

submitted FOIA requests to the FBI and/or DOJ seeking the Memos.  In addition, USA Today

and Freedom Watch sought other records related to the former Director.  USA Today requested

from both the FBI and DOJ "[a]ny records reflecting discussions" between Comey and FBI or

DOJ staff regarding the Comey Memos.  Gannett Satellite Info. Network, LLC v. DOJ, No. 17-

1175, ECF No. 9 (Amended Complaint), ¶ 27.  Freedom Watch asked the FBI for all documents

and records that "relate in any way to any memoranda prepared, written and/or issued by former

FBI Director James Comey concerning Barack Obama, Hillary Clinton, Bill Clinton, Lieutenant

General Michael Flynn, and President Donald Trump."  Freedom Watch v. DOJ, No. 17-1212,

ECF No. 1, Exh. A at 2.  Defendants and the Court have construed that latter request to include

2

(1) the Comey Memos themselves; (2) other records that relate to the Memos; and (3) any Comey-penned memoranda or related documents concerning Obama, the Clintons, or Flynn. The Government denied all of Plaintiffs' requests, claiming that release of any responsive documents would interfere with the Special Counsel's investigation.

Undeterred, Plaintiffs separately brought suit, which the Court consolidated. See Minute Order of July 26, 2017. In October 2017, Defendants moved for partial summary judgment only as to the requests for the actual Comey Memos. See ECF No. 22. In addition to the briefing, the Court reviewed the Memos themselves in camera, conducted a sealed, on-the-record ex parte proffer session with a member of the Special Counsel's Office, and received an ex parte declaration from the Government detailing how the Comey Memos related to the ongoing Russia investigation. CNN, 2018 WL 692921, at *1, 3. Ultimately, the Court determined that the Government had carried its burden to show that release of the Memos "could reasonably be expected to interfere" with the Special Counsel's investigation, id. at *7 (quoting 5 U.S.C. § 552(b)((7)(A)), and "at least for now, [they would] remain in the hands of the Special Counsel and not the public." Id. at *1.

The Government now seeks summary judgment on the remaining portion of Plaintiffs' FOIA suits — namely, documents related to the Comey Memos (USA Today) as well as Comey memoranda and related documents concerning other specific individuals (Freedom Watch). In support of their Motion, Defendants each filed two public declarations, and the FBI also sought leave to submit an ex parte declaration, which the Court granted. See ECF Nos. 45, Exhs. A, B; 46; Minute Order of February 13, 2018. Additionally, the Court ordered the Bureau to submit the three withheld pages for in camera review. See Minute Order of February 13, 2018.

Briefing on these issues is now complete, though only USA Today responded to the

Government's Motion.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v.

Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the

substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at

895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the non-moving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477

U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely

disputed must support the assertion" by "citing to particular parts of materials in the record" or

"showing that the materials cited do not establish the absence or presence of a genuine dispute,

or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ.

56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of

material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically are decided on motions for summary judgment.  See Brayton v.

Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, the Court may

accept an "agency's affidavits, without pre-summary judgment discovery, if the affidavits are

made in good faith and provide reasonably specific detail concerning the methods used to

produce the information sought."  Broaddrick v. Exec. Office of the President, 139 F. Supp. 2d

55, 64 (D.D.C. 2001).  "Agency affidavits are accorded a presumption of good faith, which

cannot be rebutted by purely speculative claims about the existence and discoverability of other

documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal

quotation marks and citation omitted).  "Summary judgment may not be appropriate without *in camera* review," however, "when agency affidavits in support of a claim of exemption are insufficiently detailed."  Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996).  In such a circumstance, "district court judges [have] broad discretion in determining whether *in camera* review is appropriate."  Id. at 577-78.

**III.    Analysis**

As with most FOIA cases, the Court must answer two central questions: did the Government adequately search for the requested documents, and did the FBI lawfully withhold three pages of responsive material?  Although USA Today does not contest that the search was adequate, see Opp. at 1 n.1, because Freedom Watch chose not to respond at all to the Government's Motion, the Court is in the odd position of having to nonetheless consider the search.  This is so because the Court of Appeals recently forbade district courts from regarding the failure to even respond as a concession.  See Winston & Strawn, LLP v. McLean, 843 F.3d 503, 506 (D.C. Cir. 2016).

A.    Adequacy of Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1994). The Government may do so through affidavit.  See Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).  The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

Here, the FBI's Records Management Division first determined that any responsive records "would likely be found either in hard copy within the collection of former Director Comey's records that were inventoried and stored in FBI Headquarters . . . or in his e-mails." MSJ, Exh. A (Third Declaration of David M. Hardy), ¶ 22.  The agency used an inventory to search the hard-copy records and found nothing responsive.  Id., ¶ 23.  The FBI also used software to search Comey's classified and unclassified emails for messages between the time he became FBI Director (July 1, 2015) and the date on which he was fired (May 9, 2017) with the terms "Memo AND Obama," "Memo AND Clinton," and "Memo AND Flynn" — *i.e.*, the names of the other individuals about whom Freedom Watch sought memos.  Id., ¶¶ 24-25.  That search yielded two of the same three responsive pages the FBI found (and withheld) in response to USA Today's FOIA request.  Id., ¶¶ 26-27.  "In re-reviewing the records to prepare" its summary-judgment motion, "the FBI has concluded that all three pages of the records it located in response to [USA Today's] request and ultimately deemed to be responsive to the request, could also be responsive to Freedom Watch's request."  Id., ¶ 27.  In the end, then, the FBI's search uncovered three pages that were responsive to both Plaintiffs' requests: a one-page email and a two-page email chain.

Based on the Government's "reasonably detailed affidavit, setting forth the search terms and the type of search performed," the Court is satisfied that the search was adequate.  See Oglesby, 920 F.2d at 68.  Hardy "aver[red] that all files likely to contain responsive materials were searched," id., and the "search terms were reasonably calculated to lead to responsive documents."  Agility Pub. Warehousing Co. K.S.C. v. NSA, 113 F. Supp. 3d 313, 340 (D.D.C. 2015); see Third Hardy Decl., ¶ 29 ("[T]he FBI searched the locations where responsive records

were likely to be maintained."). And, as pointed out, Freedom Watch deemed it unnecessary to even respond to the Motion.

      B.    <u>Withholdings</u>

Next, the Court assesses whether the Government properly withheld these documents pursuant to a valid exemption. Here, as with the Comey Memos, the agency invoked Exemption 7(A), which protects from disclosure "records or information compiled for law enforcement purposes" if publicly revealing them "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The three pages here "all relate to and concern the Comey Memos." Third Hardy Decl., ¶ 30. As "the Comey Memos themselves could reasonably be expected to risk harm to the [Special Counsel's] investigation," the Government similarly concluded that "disclosure of contemporaneous records relating to the same subject matter as those memos would similarly risk harm to the pending investigation." <u>Id.</u> USA Today argues that the Government's public assertions are too conclusory to carry its burden.

"[J]udicial review of an asserted Exemption 7 privilege requires a two-part inquiry." <u>FBI v. Abramson</u>, 456 U.S. 615, 622 (1982). As a threshold matter, the Court must determine whether the withheld "records or information" were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). If the agency so establishes, it must then, in the 7(A) context, demonstrate that release of those records "could reasonably be expected to interfere with enforcement proceedings." <u>Id.</u> § 552(b)(7)(A). As discussed below, the Court finds that the Government has proved both.

       *1.  Exemption 7 Threshold*

USA Today does not challenge the first part of the Exemption 7 inquiry — *viz.*, that the records were compiled for law-enforcement purposes. <u>See</u> Opp. at 3. Because Freedom Watch

did not file an Opposition, however, the Court must again ensure that the Government has met its

burden.

There is little doubt that the Special Counsel's investigation into Russian interference in

the election serves law-enforcement needs.  See CNN, 2018 WL 692921, at *5.  Further, the

documents "sought merely must have been 'compiled' when the Government invokes the

Exemption."  John Doe Agency v. John Doe Corp., 493 U.S. 146, 153 (1989); see Pub. Emps.

for Environmental Responsibility v. U.S. Sec., Int'l Boundary and Water Comm'n, U.S.-Mexico,

740 F.3d 195, 203 (D.C. Cir. 2014) ("[T]he term 'compiled' in Exemption 7 requires that a

document be created, gathered, or used by an agency for law enforcement purposes at some time

before the agency invokes the exemption.").  The FBI has met this burden via its *ex parte*

declaration.  Exemption 7's threshold requirement is thus satisfied.  See Clemente v. FBI, 867

F.3d 111, 120 (D.C. Cir. 2017) (FBI's assertion that records were compiled for law-enforcement

purposes entitled to deference).

### 2.  *Exemption 7(A)*

The Court turns now to whether releasing the three pages "could reasonably be expected

to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  The parties do not dispute

that the ongoing Special Counsel's investigation is an "enforcement proceeding[]" within the

definition of the statute.  See Opp. at 3-5.  Rather, USA Today argues that the Government has

not provided enough evidence to satisfy 7(A)'s interference prong.

In evaluating the applicability of the exemption to the emails here, the Court must

balance FOIA's "goal of broad disclosure," Milner v. Dep't of Navy, 562 U.S. 562, 571 (2011)

(citation omitted), with exemption 7(A)'s purpose recognizing "law enforcement agencies['] . . .

legitimate needs to keep certain records confidential, lest the agencies be hindered in their

investigations."  NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978).  This Court

must also "give deference to an agency's predictive judgment of the harm that will result from disclosure of information."  CREW v. DOJ, 746 F.3d 1082, 1098 (D.C. Cir. 2014).

In an ongoing criminal investigation such as the Special Counsel's, the Government must be somewhat obscure in its public filings about the effect of disclosure so as not to risk spilling the very information it seeks to keep secure.  See, e.g., Shapiro v. CIA, 247 F. Supp. 3d 53, 65 (D.D.C. 2017) (accepting as "sufficient" FBI's argument that disclosing documents "could expose potential leads and/or suspects the FBI identified in relation to an on-going domestic terrorism investigation and releasing the concealed information . . . could harm the on-going investigation by impeding the FBI's efforts to locate the fugitive") (internal quotation marks and citations omitted).  That said, contrary to USA Today's assertions, the Government has not simply made "conclusory, boilerplate statements, without reference to specific documents or even categories of documents."  Opp. at 5 (quoting Gray v. Army Crim. Investigation Command, 742 F. Supp. 2d 68, 75 (D.D.C. 2010)).  Instead, "[t]he FBI has offered sufficient explanations." Shapiro, 247 F. Supp. 3d at 65.  Its public declaration states that the three pages "relate to and concern the Comey Memos," Third Hardy Decl., ¶ 30, documents that the Court has already held are exempt under 7(A).  See CNN, 2018 WL 692921, at *6-7.  Next, the FBI explained that releasing the emails could "reveal[] non-public information about the memos that the FBI protected in the first instance to prevent harm to the investigation."  Third Hardy Decl., ¶ 35. Disclosing the records "would highlight particular activities, interactions, and individuals," which could assist subjects or targets of the investigation in shaping their testimony.  Id., ¶ 36. These averments meet the specificity required for 7(A).  See, e.g., Dillon v. DOJ, 102 F. Supp. 3d 272, 292-93 (D.D.C. 2015) (accepting similar statements from FBI in asserting Exemption 7(A)).

More significantly, the Court has conducted an *in camera* review of the three pages. After doing so, it easily concludes, just as with the Memos themselves, that disclosure would interfere with law-enforcement proceedings.  See CNN, 2018 WL 692921, at *7.

      C.      Segregability

Finally, the Court must assess whether "[a]ny reasonably segregable portion" of the records could be produced "after deletion of the portions which are exempt."  5 U.S.C. § 552(b); see Morley v. CIA, 508 F.3d 1108, 1123 (D.C. Cir. 2007) (district court has "an affirmative duty to consider" segregability and must "make[] an express finding on segregability" before granting Government summary judgment).  The FBI asserts that "no non-exempt information exists that can be reasonably segregated and released to plaintiffs" because "all information in the responsive three pages . . . is inextricably intertwined with exempt information such that segregation is not reasonably possible; or, if segregated, nothing but disjointed words or phrases lacking in substantive content would be available for disclosure."  Third Hardy Decl., ¶ 45.  The Court does not entirely agree, as there are a few non-exempt sentences in one of the documents that make sense standing alone.

The Court first notes that "email can pose special challenges" for segregability "because it is not unusual for an email chain to traverse a variety of topics having no relationship to the subject of a FOIA request."  Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review, 830 F.3d 667, 678 (D.C. Cir. 2016) (citation omitted).  Such is the case here.  One responsive document includes two separate conversational threads, one of which relates to the Comey Memos and the other of which is a wholly distinct discussion regarding a meeting with a senator.  Although the only non-exempt information — *i.e.*, the senator discussion — is not responsive to Plaintiffs' requests, the Bureau must nonetheless produce it because "once an agency . . . identifies a particular document or collection of material — such as a chain of emails

— as a responsive 'record,' the only information the agency may redact from that record is that falling within one of the statutory exemptions." Id. at 678-79.  In other words, the information's non-responsiveness is now irrelevant.  Under the clear language of the statute and Circuit precedent, it must be disclosed.  See 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt.").  The Court will, accordingly, return a redacted version of one document to the FBI, which then must turn it over to Plaintiffs.  Other very minor redactions are appropriate under Exemption 7(c).

## IV.     Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Partial Summary Judgment and order that the FBI produce a redacted version of one record.  A contemporaneous Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 23, 2018

11