**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CABLE NEWS NETWORK, INC.,<br><br>              Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>              Defendant. | Case No. 1:17-cv-01167-JEB |

**PLAINTIFF'S RENEWED CROSS-MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANT'S RENEWED
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff Cable News Network, Inc.

("CNN"), by and through its undersigned counsel, hereby moves for summary judgment against

Defendant Federal Bureau of Investigation ("FBI") and opposes the FBI's renewed motion for

summary judgment.

For the reasons set forth more fully in the accompanying Memorandum, CNN's

Statement of Material Facts as to Which There is No Genuine Dispute and Response to the FBI's

Statement of Material Facts as to Which There is No Genuine Dispute, and the supporting

Declaration and Exhibits thereto, CNN states that there is no genuine dispute as to any material

fact and that it is entitled to judgment as a matter of law.

**REQUEST FOR HEARING**

CNN respectfully requests a hearing on its renewed motion for summary judgment.

[SIGNATURE ON NEXT PAGE]

Dated:  January 18, 2019                    Respectfully submitted,

                                            BALLARD SPAHR LLP

                                            /s/ *Charles D. Tobin*
                                            Charles D. Tobin (#455593)
                                            Adrianna C. Rodriguez (#1020616)
                                            Maxwell S. Mishkin (#1031356)
                                            1909 K Street, NW, 12th Floor
                                            Washington, DC 20006
                                            Telephone: (202) 661-2200
                                            Fax: (202) 661-2299
                                            tobinc@ballardspahr.com
                                            rodriguezac@ballardspahr.com
                                            mishkinm@ballardspahr.com

                                            *Counsel for Plaintiff Cable News Network, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CABLE NEWS NETWORK, INC.,

        Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION,

        Defendant.

Case No. 1:17-cv-01167-JEB

**Oral Argument Requested**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
RENEWED CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION
TO DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

BALLARD SPAHR LLP

Charles D. Tobin (#455593)
Adrianna C. Rodriguez (#1020616)
Maxwell S. Mishkin (#1031356)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
rodriguezac@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Plaintiff Cable News Network, Inc.*

Dated:  January 18, 2019

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND AND PROCEDURAL HISTORY ....................................................................1

      A.     The Initial FOIA Litigation ...........................................................................1

      B.     The Release Of The Comey Memos ...............................................................3

      C.     The Renewed FOIA Litigation ......................................................................4

ARGUMENT ................................................................................................................................5

I.      STANDARD OF REVIEW ...........................................................................................5

II.     THE FBI SHOULD RELEASE THE COMEY MEMOS IN FULL ..................................6

      A.     The FBI Has Not Justified Redacting Any Information Under
            Exemption 1 ....................................................................................................6

      B.     The FBI Has Not Justified Redacting Any Information Under
            Exemption 3 ..................................................................................................17

      C.     The FBI Has Not Justified Redacting Any Information Under
            Exemption 7(A) .............................................................................................18

      D.     The FBI Has Not Justified Redacting Any Information Under
            Exemption 7(E) .............................................................................................20

CONCLUSION ...........................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blackwell v. FBI,*
   646 F.3d 37 (D.C. Cir. 2011) .................................................................................20, 21

*CIA v. Sims,*
   471 U.S. 159 (1985) ..........................................................................................................17

*CREW v. Department of Justice,*
   746 F.3d 1082 (D.C. Cir. 2014) ....................................................................................18

*Department of Navy v. Egan,*
   484 U.S. 518 (1988) ..........................................................................................................19

*\*Gardels v. CIA,*
   689 F.2d 1100 (D.C. Cir. 1982) ............................................................................7, 9, 17

*Gray v. U.S. Army Criminal Investigation Command,*
   742 F. Supp. 2d 68 (D.D.C. 2010) ...............................................................................19

*James Madison Project v. Department of Justice,*
   320 F. Supp. 3d 143 (D.D.C. 2018) ..............................................................................12

*Juarez v. Department of Justice,*
   518 F.3d 54 (D.C. Cir. 2008) .........................................................................................18

*Judicial Watch, Inc. v. Department of Defense,*
   715 F.3d 937 (D.C. Cir. 2013) .........................................................................................6

*\*Larson v. Department of State,*
   565 F.3d 857 (D.C. Cir. 2009) ..........................................................................6, 10, 15

*Murphy v. Executive Office for U.S. Attorneys,*
   789 F.3d 204 (D.C. Cir. 2015) .......................................................................................17

*Public Citizen, Inc. v. OMB,*
   598 F.3d 865 (D.C. Cir. 2010) .........................................................................................6

*\*Rosenberg v. Department of Defense,*
   --- F. Supp. 3d ---, 2018 WL 4637363 (D.D.C. Sept. 27, 2018).........................7, 17

*Shapiro v. Department of Justice,*
   153 F. Supp. 3d 253 (D.D.C. 2016) ..............................................................................20

**Statutes**

5 U.S.C. § 552............................................................................................................6, 17, 20

## PRELIMINARY STATEMENT

This renewed cross-motion for summary judgment seeks the same relief that Plaintiff Cable News Network, Inc. ("CNN") has consistently requested for the past year and a half: release of the unredacted "Comey Memos," a series of memoranda prepared by former Federal Bureau of Investigation ("FBI") Director Comey about his discussions with President Trump. The public interest in these contemporaneous records of disputed conversations between two of the nation's highest ranking officials, who accuse each other of grave breaches of the public trust, has escalated with each new court filing by the Special Counsel's office. The FBI has not justified its decision to keep portions of the memos from the public under the Freedom of Information Act ("FOIA"). The Court should therefore deny the FBI's renewed motion for summary judgment, grant CNN's renewed cross-motion for summary judgment, and order that the Comey Memos finally be released in full.

## BACKGROUND AND PROCEDURAL HISTORY[1]

### A.    The Initial FOIA Litigation

On May 16, 2017, shortly after the existence of the Comey Memos first came to light, CNN submitted a FOIA request to the FBI for "copies of all records of notes taken by or communications sent from FBI Director James Comey regarding or documenting interactions (including interviews and other conversations) with President Donald Trump." Compl. Ex. A, June 15, 2017, Dkt. 1-1. On June 15, 2017, having not received the memos or an explanation for why they were being withheld, CNN filed this lawsuit. Compl., Dkt. 1. The following day, the

---

[1] CNN offers a concise summary of the case history in light of the Court's familiarity with this matter. A more detailed account of the underlying facts can be found in CNN's Nov. 3, 2017 Memorandum in Support of its Cross-Motion for Summary Judgment and in Opposition to the FBI's (1) Motion for Summary Judgment and (2) Motion to Submit an *In Camera*, *Ex Parte* Declaration ("CNN's Initial Mem."), Dkt. 25, and CNN's Dec. 21, 2017 Reply Memorandum in Further Support of its Cross-Motion for Summary Judgment, Dkt. 42.

FBI notified CNN that it was withholding the Comey Memos in their entirety under Exemption 7(A), stating that "[t]he records responsive to [CNN's] request are law enforcement records," that "[t]here is a pending or prospective law enforcement proceeding relevant to these responsive records," and that "release of the information could reasonably be expected to interfere with enforcement proceedings." Memorandum Opinion ("Mem. Op.") at 4, Feb. 2, 2018, Dkt. 49.

The FBI moved for summary judgment on October 13, 2017, arguing to withhold the Comey Memos in full under Exemption 7(A), and to withhold portions of the memos under Exemptions 1, 3, 6, 7(C), and 7(E). *Id.* at 9. On November 3, 2017, CNN opposed the FBI's motion for summary judgment and cross-moved for summary judgment, seeking release of the memos in full as required by FOIA. CNN's Initial Mem. at 1.

On February 2, 2018, the Court issued a Memorandum Opinion and Order granting the FBI's motion for summary judgment and denying CNN's cross-motion. The Court ruled that "the Comey Memos, at least for now, will remain in the hands of the Special Counsel and not the public," concluding that the memos fell within the scope of Exemption 7(A) based on the FBI's stated concern that their release would interfere with the Special Counsel's investigation into Russian election interference. Mem. Op. at 1-2, 9-15.[2] The Court did not reach the FBI's argument that portions of the memos also could be withheld under other exemptions. *Id.* at 9. CNN timely appealed. Notice of Appeal, Feb. 5, 2018, Dkt. 52; Notice of Appeal, Apr. 25, 2018, Dkt. 61.

---

[2] A motion for access under the First Amendment and common law to the sealed *ex parte* declarations that the FBI filed in support of its initial summary judgment motion, as well as the records of an *ex parte* proceeding that the Court convened *sua sponte* to hear a "proffer" from the Special Counsel's office, is being filed contemporaneously with this renewed cross-motion and opposition.

**B.      The Release Of The Comey Memos**

On April 13, 2018, the chairs of three congressional committees jointly sent a letter to United States Deputy Attorney General Rod Rosenstein requesting copies of the Comey Memos. Pl.'s Statement of Material Facts Not In Genuine Dispute ("SUMF") ¶ 1, Jan. 18, 2019.  Deputy Attorney General Rosenstein responded that because "one or more of the memos may relate to an ongoing investigation, may contain classified information, and may report confidential Presidential communications," the Justice Department had "a legal duty to evaluate the consequences of providing access to them."  SUMF ¶ 2.

The following day, Comey's memoir, *A Higher Loyalty*, went on sale to the public, providing more details about his interactions with President Trump.  SUMF ¶ 3.  Two days after that, on April 19, 2018, United States Assistant Attorney General Stephen Boyd sent another letter to the three congressional committee chairs, writing that "[i]n light of the unusual events occurring since the previous limited disclosure, the Department has consulted the relevant parties and concluded that the release of the memoranda to Congress at this time would not adversely impact any ongoing investigation or other confidentiality interests of the Executive Branch."  SUMF ¶ 4.  The letter enclosed "an unclassified version of the documents redacted to remove any classified information."  *Id.*

On the evening of April 19, 2018, multiple media organizations obtained and published copies of the redacted version of the Comey Memos that the Department of Justice transmitted to Congress.  SUMF ¶ 5.  President Trump promptly acknowledged this release.  SUMF ¶ 6.  The FBI subsequently released its own redacted copies of the Comey Memos as well.  SUMF ¶ 7.

C.      **The Renewed FOIA Litigation**

After the memos became public, the D.C. Circuit *sua sponte* ordered CNN to show cause why "the recent public disclosure of records at issue" did not render the appeal moot.  Order, *CNN v. FBI*, No. 18-5041 (D.C. Cir. Apr. 24, 2018), Doc. No. 1727918.  In response, CNN first observed that the question remained whether *all* of the memos were public, as the FBI would not disclose either their total "number" or their "volume."  CNN's Resp. to Order to Show Cause at 10-12, *CNN v. FBI*, No. 18-5041, (D.C. Cir. May 17, 2018), Doc. No. 1731461 (citing Mem. in Supp. of FBI's Mot. for Partial Summ. J. at 11-12, Oct. 13, 2017, Dkt. 22-1).  Second, CNN noted that the redactions to the memos were untested, and so a court could order the FBI to remove redactions and reproduce copies of the memos if some or all of the redacted information was not exempt from disclosure under FOIA.  *Id.* at 12-14.  CNN accordingly asked the D.C. Circuit to remand the case so that this Court could address those issues in the first instance.  *Id.* at 14-15.

On August 8, 2018, the D.C. Circuit granted CNN's request for remand.  Mandate & Order, *CNN v. FBI*, No. 18-5041 (D.C. Cir. Aug. 8, 2018), Doc. No. 1744629 & 1744635.  The appeals court framed the issues for this Court precisely: "[f]urther proceedings in the district court are . . . necessary to determine whether there exist any additional memoranda that have not been publically disclosed, and whether [CNN] is entitled to the disclosure of any unreleased memoranda or redacted portions of released memoranda."  *Id.*  It also helpfully noted that "[f]urther proceedings on the continuing applicability of Exemption 7(A) to the remaining withheld information are necessary in light of subsequent statements by government officials that release of the memoranda would no longer adversely impact any ongoing investigation."  *Id.*

This Court then directed the parties to file a joint status report "set[ting] forth whether they believe issues still remain to be decided," Minute Order, Aug. 31, 2018, and CNN identified the same points that the D.C. Circuit included in its remand order, Joint Status Report at 4, Sept. 13, 2018, Dkt. 66.  The FBI subsequently moved for summary judgment.  FBI's Mot. for Summ. J. on Remand ("FBI Mem."), Dec. 14, 2018, Dkt. 69.

As to the total number and volume of Comey Memos, the FBI states in its renewed motion that it "has now revealed that it has located only seven memos," and that it has released all those memos "totaling fifteen pages."  *Id.* at 4, 7-8.  CNN accepts the FBI's representation on this point and accordingly considers that question answered.

CNN's entitlement to the disclosure of redacted portions of released memos remains in dispute.  The FBI maintains that it may continue to withhold two dozen blocks of text from CNN and the public.  *Id.* at 17.  The FBI argues that all of these passages fall under Exemption 1, that twelve passages also satisfy Exemption 3, that two passages may be withheld under Exemptions 1, 3, and 7(E), and that a single passage can be redacted under Exemptions 1, 3, and 7(A).  *See* Fifth Declaration of David M. Hardy ("Fifth Hardy Decl.") ¶ 19, Dec. 14, 2018, Dkt. 69-2.

CNN now opposes the FBI's motion and cross-moves for summary judgment.  The FBI's redactions are improper under FOIA, and the Comey Memos should finally be released in full.

## ARGUMENT

## I.     STANDARD OF REVIEW

A court may grant summary judgment to the government in FOIA litigation only if the government's filings "describe the justifications for nondisclosure with *reasonably specific* detail, demonstrate that the information withheld *logically* falls within the claimed exemption, and are *not controverted* by either contrary evidence in the record nor by evidence of agency bad

faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (emphasis added and

citation omitted).   Underlying this analysis is the principle that FOIA's objective is "'to pierce

the veil of administrative secrecy and to open agency action to the light of public scrutiny,'" and

that its exemptions should be "construed narrowly in keeping with FOIA's presumption in favor

of disclosure." *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 869 (D.C. Cir. 2010) (quoting *Dep't of

Air Force v. Rose*, 425 U.S. 352, 360-61 (1976)).

## II.   THE FBI SHOULD RELEASE THE COMEY MEMOS IN FULL

The FBI has not justified its continued redaction of the Comey Memos.   Its motion offers

facially implausible arguments for the application of Exemptions 1, 3, 7(A), and/or 7(E) to its

withholdings.   Indeed, the FBI fails to justify – as the D.C. Circuit has directed it – why any

exemptions apply in light of the vast amount of information about the memos and the Special

Counsel's investigation released to the public over the past year.

### A.   The FBI Has Not Justified Redacting Any Information Under Exemption 1

The FBI seeks to withhold all 24 redacted passages under Exemption 1, which allows an

agency to withhold records that are "(A) specifically authorized under criteria established by an

Executive order to be kept secret in the interest of national defense or foreign policy and (B) are

in fact properly classified pursuant to such Executive order."   5 U.S.C. § 552(b)(1).   The

propriety of withholding classified information turns on the criteria set out in Executive Order

13,526.   Fifth Hardy Decl. ¶¶ 21-22.   Under that order, "classified information must pertain to at

least one of eight subject-matter classification categories." *Judicial Watch, Inc. v. Dep't of Def.*,

715 F.3d 937, 941 (D.C. Cir. 2013).   Moreover, "disclosure of that information must *reasonably*

be expected to cause some degree of harm to national security." *Id.* (emphasis added).

While the Judiciary defers to the Executive in assessing the possibility of harm from releasing information that potentially relates to national security, that deference has a limit.  For instance, in *Rosenberg v. Department of Defense*, --- F. Supp. 3d ---, 2018 WL 4637363 (D.D.C. Sept. 27, 2018), a journalist requested records concerning Joint Task Force Guantánamo.  The government withheld responsive information under Exemption 1, in particular records reflecting "the reactions of [Guantánamo] detainees upon learning of their transfer" to other countries, arguing that releasing this material would cause "significant national security risks." *Id.* at *12. The court found the asserted link between the release of this information and the alleged risk of harm to be "tenuous at best," explaining that "[i]nformation about a detainee's feelings or thoughts about his impending transfer would not seem to pose the same security risk as, say, information regarding how or when the detainees are being transferred, or the name of the receiving nation." *Id.*  The court thus denied the government's motion for summary judgment as to those withholdings, finding that it could not "discern, even affording due deference to the agency on national security matters as required, a *logical* connection between the disclosure of [the requested information] and a risk to the national security." *Id.* (emphasis added).[3]  *See also Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982) ("[T]he issue is whether on the whole record the Agency's judgment objectively survives the test of reasonableness, good faith, specificity, and plausibility").

Here, too, the FBI errs in redacting the memos under Exemption 1.  Reviewing the redactions in context and in light of publicly available information about those memorialized meetings and the Special Counsel's investigation, the FBI cannot possibly establish a logical and plausible link between the release of any withheld information and a risk to national security.

---

[3] The court allowed the government to "supplement its declarations to address the[se] deficiencies," *Rosenberg*, 2018 WL 4637363, at *21, and the case remains pending.

**Redaction Blocks 1-7[4]:**  The first set of information withheld under Exemption 1 concerns which foreign leader was the first to call President Trump after his inauguration.  As Comey writes in the memo describing his January 27, 2017 private dinner with the President:

> [President Trump] then went on to explain that he has serious reservations about Mike Flynn's judgment and illustrated with a story from that day in which the President apparently discovered during his toast to Teresa May that [**Redaction 1**] had called four days ago.  Apparently as the President was toasting PM May, he was explaining that she had been the first to call him after his inauguration and Flynn interrupted to say that [**Redaction 2**] had called (first, apparently).  It was then that the President learned of [**Redaction 3**] call and he confronted Flynn about it (not clear whether that was in the moment or after the lunch with PM May).  Flynn said the return call was scheduled for Saturday, which prompted a heated reply from the President that six days was not an appropriate period of time to return a call from the [**Redaction 4**] of a country like [**Redaction 5**] ("This isn't [**Redaction 6**] we're talking about.").  He said that if he called [**Redaction 7**] and didn't get a return call for six days he would be very upset.

Fifth Hardy Decl., Ex. B at 3-4.  The FBI asserts that releasing this information "would reveal the relative importance attached by the President to contacts from one country/leader over another," such that "disclosure of this redacted information could reasonably be expected to impair or adversely impact relations with the referenced countries, and thus, cause harm to the national security."  FBI Mem. at 14-15.

As an initial matter, it has been widely reported Russia's President Vladimir Putin was the first head of state to call President Trump.  SUMF ¶ 8.  But setting that aside, it is difficult to imagine how identifying which country's leader was the first to call President Trump could *adversely* affect relations with that country.  Suppose for the sake of argument that Prime Minister Trudeau of Canada was the first to call.  Releasing that information would show that the

---

[4] To help track to Section Chief Hardy's latest declaration, CNN refers to the FBI's withholdings by the same redaction block numbers the agency uses.  *See* Fifth Hardy Decl. ¶ 19.

President thinks the relationship between the United States and Canada is important; that the

President wishes he had known about and returned the Canadian leader's call even faster; and

that the President believes those feelings are reciprocated.  The notion that this disclosure would

*harm* national security by *injuring* the relationship between the United States and the nation

whose leader was the first to call is therefore, on its face, not logical or plausible.  *Gardels*, 689

F.2d at 1105.  The FBI accordingly cannot withhold this information under Exemption 1.

It is likewise not plausible that disclosure of redaction block 6 could logically or

plausibly be expected to harm national security.  The withheld information appears to identify a

foreign country or leader who President Trump extemporaneously characterized, approximately

two years ago, as less important than the country or leader who called him first.  For one,

releasing that kind of off-the-cuff and years-old comment cannot reasonably affect international

relations today.  For another, since taking office President Trump has insulted any number of

foreign countries and leaders using far sharper language.  SUMF ¶ 9 (referencing statements

about, *inter alia*, North Korea, Mexico, China, Pakistan, Iran, El Salvador, Syria, Canada,

Turkey, Honduras, and Guatemala).  In light of these and other statements by President Trump,

the marginal impact of releasing this one tepid comment cannot plausibly harm national security.

**Redaction Block 8**: This redaction withholds the name of an individual in the White

House who received a "defensive briefing" in February 2017.  Comey writes:

> I went to the White House today for a 4 pm "meet and greet" with
> COS Reince Priebus.  As I walked in from West Exec, I saw and
> briefly chatted with Bill Priestap and Jen Boone, who were there to
> do a defensive briefing [**Redaction 8**].

Fifth Hardy Decl., Ex. B at 5.  The FBI asserts that a "defensive briefing" is designed to "inform

individuals that they may be targets of foreign intelligence surveillance."  FBI Mem. at 14.  But

it is a matter of common knowledge that White House officials are likely targets of foreign

surveillance efforts.  SUMF ¶ 10.  This redacted phrase, therefore, would merely identify which particular White House official happened to receive an official briefing about that well-known risk.  It is simply not plausible that release of this information, nearly two years after the fact, would have any effect on national security.

**Redaction Block 9**:  According to the FBI, this redaction block withholds a piece of "information known to the FBI concerning Lieutenant General Flynn as of a particular date." FBI Mem. at 11.  Comey writes:

> As I waited in the West Wing lobby, Mike Flynn stopped by and sat down.  We chatted for about five minutes about his new job, the challenges in building a staff, and working with folks who had never been in government before, how he maintains fitness, etc. There was no mention by either of us of [**Redaction 9**].

Fifth Hardy Decl., Ex. B at 5.  The FBI asserts that this information "would reveal particular, singular details about the FBI's intelligence interests, priorities, activities, and methods at a particular period of time and in relation to a particular set of circumstances."  FBI Mem. at 12. As a threshold matter, that barebones statement does not satisfy this Circuit's requirement that an agency provide "*reasonably specific* detail" to "demonstrate that the information withheld logically falls within the claimed exemption."  *Larson*, 565 F.3d at 862 (emphasis added).

Moreover, the Special Counsel's office recently released a substantial amount of new information about the FBI's investigation of Flynn – precisely the type of information that the FBI seeks to redact here.  *See, e.g.*, Gov.'s Mem. in Aid of Sentencing at 2-5, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 4, 2018), Dkt. 46; Gov.'s Reply to Def.'s Mem. in Aid of Sentencing at 2-5, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 14, 2018), Dkt. 56; *Id.*, Ex. A, Dkt. 56-1 (Jan. 24, 2017 Memorandum of Andrew McCabe); *Id.*, Ex. B, Dkt. 56-2 (Report of FBI's July 19, 2017 interview with Flynn); Gov.'s Resp. to the Court's Dec. 17, 2018

Minute Order, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 17, 2018), Dkt. 62 (redacted

versions of report on FBI's Jan. 24, 2017 interview with Flynn). These records, particularly the

"FD-302" reports, reveal a host of "particular, singular details" regarding "intelligence interests,

priorities, activities, and methods" at work during the FBI's investigation of Flynn. In light of

this wealth of now-public information about the Flynn investigation, it is implausible that

releasing the information redacted in block 9 as well would have any effect on national security.

**Redaction Blocks 10-15**: These redactions withhold portions of Comey's account of a

conversation he had with then-White House Chief of Staff Reince Priebus, prior to Comey's

February 2017 Oval Office meeting with the President. Comey writes:

> We touched on a variety of subjects, including "how the
> [**Redaction 10**] ended up in the report." I explained that the
> analysts from all three agencies agreed it was relevant and that
> portions of the material were corroborated by other intelligence.
> They discussed whether [**Redaction 11**] and decided it made most
> sense to [**Redaction 12**]. I said I agreed with that decision and
> thought it very important that it be included and briefed to a select
> audience. He pressed again and said that the material was
> [**Redaction 13**]. I explained that the primary source [**Redaction
> 14**] much of it was consistent with and corroborative of other
> intelligence, and that the incoming president needed to know the
> rest of it was out there.
>
> I explained to him that at our dinner the President had expressed
> interest in having me investigate the Golden Shower things. I
> repeated what I had told the President about not wanting to create a
> narrative that we were investigating him.
>
> He then asked about leaks of the fact of [**Redaction 15**] and that it
> was briefed to the incoming president.

Fifth Hardy Decl., Ex. B at 5. The FBI asserts that these redactions withhold "information about

how the FBI did or did not use information provided by confidential intelligence sources as well

as the reliability of that information." FBI Mem. at 11. Despite this vague description, it is clear

in context that these passages refer to the "Trump Dossier" – a "compilation of memoranda

prepared by former British intelligence officer Christopher Steele concerning Russian efforts to influence the 2016 presidential election and alleged ties between Russia and then candidate Trump" – or a government synopsis thereof.  *See James Madison Project v. Dep't of Justice*, 320 F. Supp. 3d 143, 145 (D.D.C. 2018).  As the court explained in *James Madison Project*, in February 2018 "President Trump authorized release of a memorandum . . . commonly referred to as the Nunes Memo," which "revealed that former British intelligence operative Christopher Steele drafted the Dossier," as well as that "the FBI was undertaking efforts to corroborate the allegations contained within the Dossier," and "that in early January 2017, Director Comey briefed President-elect Trump on a summary of the Steele dossier."  *Id.* at 146-47 (internal marks omitted); *see also* SUMF ¶ 11.

As the court held in *James Madison Project*, "[b]y authorizing the release of the Nunes Memo to make known the existence of the 'summary' of the Dossier on which he was briefed, the President has publicly acknowledged the existence of the two-page synopsis in Director Comey's possession."  320 F. Supp. 3d at 151.  The FBI subsequently released that synopsis with redactions.  SUMF ¶ 12.  Based on this official acknowledgment, the synopsis itself, and other information available to the public about the Dossier, it is not plausible that releasing the information redacted in these passages could have any impact on national security.

**Redaction Blocks 16-17**:  This set of redactions withholds additional portions of Comey's conversation with Priebus, this time relating to the Flynn investigation.  Comey writes:

> [Priebus] then said he wanted to ask me a question and I could decide whether it was appropriate to answer.  He then asked, "Do you have a FISA order on Mike Flynn?"  I [] paused for a few seconds and then said that I would answer here, but that this illustrated the kind of question that had to be asked and answered through established channels.  I said the answer [**Redaction 16**].  I then explained that the normal channel was from DOJ leadership to the WH counsel about such things.  [**Redaction 17**].  I would

>normally make sure the AG and DAG were aware and they would
>likely inform the WH counsel and he could decide whether to
>inform the COS.

Fifth Hardy Decl., Ex. B at 6.  The FBI asserts that the withheld information would reveal

"whether or not the FBI relied on a particular intelligence-gathering method/activity (Foreign

Intelligence Surveillance Act ('FISA') surveillance) to surveil Lieutenant General Flynn," FBI

Mem. at 11, and that such a disclosure "would cause harm to national security by revealing

details about the FBI's intelligence interests, priorities, activities, and methods at a particular

point in time and in relation to a particular set of circumstances, which adversaries could use to

avoid or thwart FBI scrutiny and intelligence-gathering efforts," *id.* at 13.  Once again, now-

public information about the Flynn investigation renders the FBI's concerns implausible.

The Special Counsel's sentencing briefs in the Flynn case have disclosed that when

interviewing Flynn in January 2017 about his contacts with the Russian Ambassador, the FBI

"used the exact words [Flynn] had used in order to prompt a truthful response."  Gov.'s Reply to

Def.'s Mem. in Aid of Sentencing at 3, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 14,

2018), Dkt. 56; *Id.*, Ex. B at 3 ("if Flynn said he did not remember something they knew he said,

they would use the exact words Flynn used").  Comey himself elaborated on that point in recent

congressional testimony, stating that the FBI "understood clearly the nature and extent of a

variety of communications, telephonic, between Mr. Flynn and the Russian Ambassador," and

that the FBI "had clear transcripts of [those] conversations."  SUMF ¶ 13.

As a result of these disclosures, the public knows that the FBI created or acquired

verbatim records of Flynn's communications with the representative of a foreign power.  The

FBI has not carried its burden under Exemption 1 of showing that release of this one additional

data point about the Flynn investigation could logically and plausibly cause harm to national security.

**Redaction Block 18**:  This redaction withholds a phrase from Comey's description of a conversation between himself, Priebus, and President Trump in the Oval Office.  Comey writes:

> The President brought up the "Golden Showers thing" and said it really bothered him if his wife had any doubt about it.  He then explained, as he did at our dinner, that he hadn't stayed overnight in Russia during the Miss Universe trip.  Twice during this part of the conversation, Reince tried to interject a comment about the [**Redaction 18**] and "why it was even in there," but the President ignored him.

Fifth Hardy Decl., Ex. B at 7.  The FBI asserts this redacted information would disclose "information about how the FBI did or did not use information provided by confidential intelligence sources as well as the reliability of that information."  FBI Mem. at 11.  But as with redaction blocks 10-15, context makes clear that this redacted passage concerns the Trump Dossier.  And once again, based on the extensive information that has already come to light about the Dossier and the government's synopsis thereof, the FBI cannot show that disclosure of this one additional phrase would logically or plausibly cause harm to national security.

**Redaction Block 19**:  This redaction withholds another piece of information from the conversation about the Dossier between Comey, Priebus, and President Trump.  Comey writes:

> The President said "the hookers thing" is nonsense but that Putin had told him "we have some of the most beautiful hookers in the world."  (He did not say when Putin had told him this and I don't recall [**Redaction 19**]).

Fifth Hardy Decl., Ex. B at 7.  The FBI asserts that the redacted information "would reveal another intelligence method used to gather particular information."  FBI Mem. at 11.  In making this vague claim, the FBI has failed to carry its threshold burden under Exemption 1 of providing

"*reasonably specific* detail" to "demonstrate that the information withheld *logically* falls within the claimed exemption." *Larson*, 565 F.3d at 862 (emphasis added).

**Redaction Block 20**: This redaction in Comey's February 8, 2017 memo relates to an interview that President Trump gave two days earlier with Bill O'Reilly. O'Reilly had asked President Trump whether he respected Putin, and when he said he did, O'Reilly responded, "But he's a killer," to which the President replied, "There are a lot of killers. You think our country's so innocent?" SUMF ¶ 14. A spokesperson for Putin then sought an apology from O'Reilly, who responded on-air that he's "working on that apology, but it might take a little time. Might want to check in with me around 2023." SUMF ¶ 15. Discussing that exchange, Comey writes:

> [President Trump] then pivoted to the Russians wanting an apology from Bill O'Reilly. I said I had seen that and O'Reilly's reply, which was to "call him in 2023." The President then said that O'Reilly's question about whether he respected Putin had been a hard one. [**Redaction 20**]. He said he does respect the leader of a major country and thought that was the best answer.

Fifth Hardy Decl., Ex. B at 7. The FBI asserts that releasing this information "could reasonably be expected to impair or adversely impact relations with [Russia], and thus, cause harm to the national security." FBI Mem. at 15. But President Trump has already offered what is effectively every possible opinion one could have about Putin. SUMF ¶ 16. The President's broad array of prior statements about Russia and its leader renders implausible any argument that releasing this one additional, years-old observation could, by itself, affect America's relationship with Russia – let alone that release could injure that relationship to the extent that it harms national security.

**Redaction Blocks 21-24**: This final set of redactions concerns President Trump's thoughts in response to terror attacks in Jordan and Egypt. On November 4, 2016, a Jordanian soldier killed three U.S. servicemen at an airbase in Jordan. SUMF ¶ 17. And on April 9, 2017,

ISIS bombed several Coptic churches in Egypt.  SUMF ¶ 18.  In his last memo, dated April 11,

2017, Comey writes:

> [President Trump] then switched topics and began to talk about
> Egypt and its leader, saying Obama didn't like the guy [**Redaction
> 21**].  He mentioned the Coptic church bombings and how horrible
> they were.  He said that three Americans had been killed by an
> Egyptian soldier and the Egyptian leader had raised it with him.  I
> interrupted to say that I thought he meant [**Redaction 22**] and an
> incident in Jordan.  He agreed and said [**Redaction 23**] had told
> him he wanted to bring the soldier to justice quickly, but that the
> FBI was in some way asking them to delay.  He said [**Redaction
> 24**].  I replied that I would dig into it but that I did not believe it to
> be true that the FBI was delaying a Jordanian prosecution.

Fifth Hardy Decl., Ex. B at 8.  The FBI asserts that these redactions withhold "information

reflecting the President's impressions of specific foreign leaders," and that disclosure "could

reasonably be expected to impair or adversely impact relations with the referenced countries."

FBI Mem. at 15.  But as an initial matter, it appears from context that redaction blocks 22 and 23

simply identify the leader of Jordan, King Abdullah II, and it is implausible that disclosing that

piece of information could cause any effect whatsoever on foreign relations or national security.

As for redaction blocks 21 and 24, even if the FBI is correct that the withheld information

bears on President Trump's "impressions" of the leaders of Egypt and Jordan, it does not follow

that disclosing that information would harm national security.  For one, if President Trump's

impression of those two leaders is *positive*, then release of that information logically would not

*damage* the relationship between those countries and the United States.  For another, even if the

President expressed a negative opinion, it is implausible that releasing this information, years

after the fact, would have any appreciable effect on foreign relations or national security.

As in *Rosenberg*, the link between release of any information redacted from the Comey Memos and harm to national security is "tenuous at best."  2018 WL 4637363, at *12.  The FBI therefore cannot justify even a single one of its two dozen withholdings under Exemption 1.

**B.     The FBI Has Not Justified Redacting Any Information Under Exemption 3**

Exemption 3 authorizes an agency to withhold records that are "specifically exempted from disclosure by statute . . . , if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue . . . or establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  To invoke Exemption 3, the FBI must establish (1) that the statute at issue qualifies as an exempting statute under Exemption 3, and (2) that the records in question must be withheld under that statute.  *CIA v. Sims*, 471 U.S. 159, 167 (1985).  Here, the FBI asserts that redaction blocks 8-19 withhold information "concerning intelligence sources and methods," the disclosure of which is prohibited under the National Security Act of 1947, 50 U.S.C. § 3024(i)(1).  FBI Mem. at 17-18.

In making such withholdings under Exemption 3, the FBI bears the burden of showing that release of the redacted information could "reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods."  *Gardels*, 689 F.2d at 1103 (quoting *Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980)).  The FBI's justification under Exemption 3 must also be "logical or plausible."  *Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 209 (D.C. Cir. 2015) (citation omitted).

As set out above, the FBI has failed to make a "logical or plausible" showing of harm to "intelligence sources and methods" under Exemption 3 for all the same reasons that it failed to make such a showing of harm to national security under Exemption 1 – particularly because of the vast amount of information already available to the public about the Special Counsel's

investigation, the Trump Dossier, and the Flynn prosecution. The FBI has therefore failed to justify withholding any of the redacted portions of the Comey Memos under Exemption 3.

## C.     The FBI Has Not Justified Redacting Any Information Under Exemption 7(A)

Exemption 7(A) applies where an "investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence." *Juarez v. Dep't of Justice*, 518 F.3d 54, 59 (D.C. Cir. 2008). To justify withholding under Exemption 7(A), therefore, the FBI must "demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'" *CREW v. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (quoting *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993)). Courts "give deference to an agency's predictive judgment of the harm that will result from disclosure of information," but "it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate *how* disclosure will do so." *Id.* at 1098 (emphasis in original) (internal marks and citations omitted).

Here, the FBI relies on Exemption 7(A) – as well as Exemptions 1 and 3 – to withhold redaction block 19. FBI Mem. at 22-23. Again, the relevant portion of the memo states:

> The President said "the hookers thing" is nonsense but that Putin had told him "we have some of the most beautiful hookers in the world." (He did not say when Putin had told him this and I don't recall [**Redaction 19**]).

Fifth Hardy Decl., Ex. B at 7. The FBI asserts that this passage makes "reference to an intelligence method and the information derived from it that is relevant to the pending [Russia] investigation," and that the withheld information "would provide targets, potential targets, or others intent on interfering with the investigation with information that they could use to attempt to undermine the investigation by fabricating records or information to counter what the

investigators already know or adulterating/destroying evidence that the investigators might not already know about or have, or taking other steps to thwart investigative efforts." FBI Mem. at 23.

This argument fails both on the law and the facts. On the law, the FBI's stated fears about releasing this information cannot support an Exemption 7(A) withholding because the FBI could assert these same vague and conclusory risks about how information *might* be used against law enforcement in virtually any investigation. *See Gray v. U.S. Army Criminal Investigation Command*, 742 F. Supp. 2d 68, 75 (D.D.C. 2010) (withholding under Exemption 7(A) is improper where the agency's declaration "appear[s] designed to cover every scenario in which a plaintiff seeks the disclosure of records related to a law enforcement proceeding").

On the facts, the redacted passage plainly refers to a conversation between Putin and President Trump. To the extent the FBI is raising a concern that releasing this information would allow President Trump or persons acting on his behalf to interfere with the Russia investigation by "fabricating records" or "adulterating/destroying evidence" relating to that conversation, such concerns presuppose that the President has not already seen an unredacted version of the memo. But the Constitution provides the President with "authority to classify and control access to information bearing on national security," *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988), and thus President Trump can presumably view the redacted information at will and share it with anyone else. Withholding that information from the *public*, on the other hand, does nothing to address the FBI's stated concerns as to possible interference with the investigation.

Because this Exemption 7(A) argument fails on the facts and the law, the FBI cannot justify continuing to withhold the information contained in redaction block 19.

**D.      The FBI Has Not Justified Redacting Any Information Under Exemption 7(E)**

Exemption 7(E) allows the government to withhold law enforcement investigatory

records or information, "but only to the extent that the production . . . would disclose techniques

and procedures for law enforcement investigations or prosecutions, or would disclose guidelines

for law enforcement investigations or prosecutions if such disclosure could reasonably be

expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  Thus, in Exemption 7(E)

cases the government bears the burden of "demonstrat[ing] *logically* how the release of the

requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646

F.3d 37, 42 (D.C. Cir. 2011) (emphasis added and citation omitted).

The FBI cites Exemption 7(E) for redaction blocks 16 and 17, asserting again that the

withheld information "would reveal whether or not the FBI conducted FISA-authorized

surveillance of Lieutenant General Flynn," and arguing that "[o]ver time, disclosure of such

information would create a mosaic that criminals and other adversaries could use to predict

when, where, and against whom surveillance may occur; detect it when it is occurring; and

develop and utilize countermeasures to defeat or avoid it." FBI Mem. at 21-22.  But as the court

explained in *Shapiro v. Department of Justice*, "the purpose of Exemption 7(E) is to prevent the

public from learning about the existence of confidential law enforcement techniques, not to

prevent it from learning about the use of already-disclosed law enforcement techniques." 153 F.

Supp. 3d 253, 273 (D.D.C. 2016).  Here, as discussed above, the FBI has already disclosed that it

created or obtained verbatim recordings of Flynn's communications with a representative of a

foreign power at around the time of the presidential transition.  Gov.'s Reply to Def.'s Mem. in

Aid of Sentencing at 3, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 14, 2018), Dkt. 56;

*Id.*, Ex. B at 3.  In other words, the key information here with respect to the FBI's mosaic theory – when, where, and against whom surveillance may occur – is already public knowledge.

To satisfy Exemption 7(E), the FBI must demonstrate *logically* that, even in light of the information already available about the Flynn investigation, the marginal effect of confirming whether this surveillance was conducted pursuant to FISA could itself risk circumvention of the law.  *Blackwell*, 646 F.3d at 42.  The FBI fails to make that showing, and as a result it cannot continue to withhold this information under Exemption 7(E).

## **CONCLUSION**

For the foregoing reasons, CNN respectfully requests that its renewed cross-motion for summary judgment be granted, that the FBI's motion for summary judgment on remand be denied, that the FBI be ordered to release the Comey Memos without redactions, and that CNN be awarded its costs and reasonable attorneys' fees incurred in this action.

Dated:  January 18, 2019          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Adrianna C. Rodriguez (#1020616)
Maxwell S. Mishkin (#1031356)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
rodriguezac@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Plaintiff Cable News Network, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CABLE NEWS NETWORK, INC.,

              Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION,

              Defendant.

Case No. 1:17-cv-01167-JEB

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE
IS NO GENUINE DISPUTE AND RESPONSE TO DEFENDANT'S STATEMENT
OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

Plaintiff Cable News Network, Inc. ("CNN"), by and through its undersigned counsel and pursuant to Local Civil Rule 7(h), hereby submits its Statement of Material Facts As To Which There Is No Genuine Dispute in connection with its Renewed Cross-Motion for Summary Judgment and in Opposition to Defendant's Renewed Motion for Summary Judgment, together with its Response to the Statement of Material Facts As To Which There Is No Genuine Dispute submitted by Defendant Federal Bureau of Investigation ("FBI") with its Renewed Motion for Summary Judgment, Dec. 14, 2018, ECF 69-3 ("FBI's Statement").

**CNN'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

1.       On April 13, 2018, the chairs of three congressional committees jointly sent a letter to United States Deputy Attorney General Rod Rosenstein requesting copies of the Comey Memos. *See* Third Declaration of Charles D. Tobin, executed January 18, 2019 ("Third Tobin Decl.") ¶ 1 & Ex. 1.

2.       On April 16, 2018, Deputy Attorney General Rosenstein responded to the April 13, 2018 letter, stating in part that because "one or more of the memos may relate to an ongoing

investigation, may contain classified information, and may report confidential Presidential communications," the Justice Department had "a legal duty to evaluate the consequences of providing access to them."  *See* Third Tobin Decl. ¶ 2 & Ex. 2.

3.　　　On April 17, 2018, former FBI Director James Comey's memoir *A Higher Loyalty* went on sale to the public, providing more details about his interactions with President Trump.  *See* Third Tobin Decl. ¶ 3 & Ex. 3.

4.　　　On April 19, 2018, United States Assistant Attorney General Stephen Boyd sent another letter to the three congressional committee chairs, writing in part that "[i]n light of the unusual events occurring since the previous limited disclosure, the Department has consulted the relevant parties and concluded that the release of the memoranda to Congress at this time would not adversely impact any ongoing investigation or other confidentiality interests of the Executive Branch."  The letter enclosed "an unclassified version of the documents redacted to remove any classified information."  *See* Third Tobin Decl. ¶ 4 & Ex. 4.

5.　　　On the evening of April 19, 2018, multiple media organizations obtained and published copies of the redacted version of the Comey Memos that the Department of Justice transmitted to Congress.  *See* Third Tobin Decl. ¶ 5 & Ex. 5.

6.　　　President Trump promptly acknowledged the release of the redacted version of the Comey Memos published by those media organizations.  *See* Third Tobin Decl. ¶ 6 & Ex. 6.

7.　　　The FBI subsequently released its own redacted copies of the Comey Memos. *See* Third Tobin Decl. ¶ 7 & Ex. 7.

8.　　　It has been widely reported that Russian President Vladimir Putin was the first head of state to call President Trump.  *See* Third Tobin Decl. ¶ 8 & Ex. 8.

9.      Since taking office, President Trump has insulted any number of foreign countries and leaders, including, *inter alia*, North Korea, Mexico, China, Pakistan, Iran, El Salvador, Syria, Canada, Turkey, Honduras, and Guatemala.  *See* Third Tobin Decl. ¶¶ 9, 10 & Exs. 9, 10.

10.      It is a matter of common knowledge that White House officials are likely targets of foreign surveillance efforts.  *See* Third Tobin Decl. ¶ 11 & Ex. 11.

11.      In February 2018, President Trump authorized the release of a memorandum known as the Nunes Memo, which acknowledged the author of the Trump Dossier, the FBI's efforts to corroborate allegations contained within the Trump Dossier, and Comey's briefing of President Trump on a summary of the Trump Dossier.  *See* Third Tobin Decl. ¶ 12 & Ex. 12.

12.      The FBI has released a redacted version of the synopsis of the Trump Dossier on which President Trump was briefed.  *See* Third Tobin Decl. ¶ 13 & Ex. 13.

13.      On December 17, 2018, Comey stated in congressional testimony that the FBI "understood clearly the nature and extent of a variety of communications, telephonic, between Mr. Flynn and the Russian Ambassador," and that the FBI "had clear transcripts of [those] conversations."  *See* Third Tobin Decl. ¶ 14 & Ex. 14.

14.      On February 6, 2017, Bill O'Reilly interviewed President Trump, during which O'Reilly asked President Trump whether he respected Putin.  When President Trump said he did, O'Reilly responded, "But he's a killer," to which President Trump replied, "There are a lot of killers. You think our country's so innocent?"  *See* Third Tobin Decl. ¶ 15 & Ex. 15.

15.      Following the February 6, 2017 interview, a spokesperson for Putin sought an apology from O'Reilly, who responded that he's "working on that apology, but it might take a little time.  Might want to check in with me around 2023."  *See* Third Tobin Decl. ¶ 16 & Ex. 16.

16.     President Trump has made a broad array of statements regarding Putin.  *See* Third Tobin Decl. ¶ 17 & Ex. 17.

17.     On November 4, 2016, a Jordanian soldier killed three U.S. servicemen at an airbase in Jordan.  *See* Third Tobin Decl. ¶ 18 & Ex. 18.

18.     On April 9, 2017, ISIS bombed several Coptic churches in Egypt.  *See* Third Tobin Decl. ¶ 19 & Ex. 19.

## RESPONSE TO THE FBI'S STATEMENT[1]

1.     The facts set forth in this paragraph are undisputed.

2.     The facts set forth in this paragraph are undisputed.

3.     The facts set forth in this paragraph are undisputed.

4.     The facts set forth in this paragraph are undisputed.

5.     The facts set forth in this paragraph are undisputed.

6.     The facts set forth in this paragraph are undisputed.

7.     The facts set forth in this paragraph are undisputed.

8.     The facts set forth in this paragraph are undisputed.

9.     The facts set forth in this paragraph are undisputed.

10.     Disputed in part.  CNN does not dispute that the FBI would not reveal the total number or volume of the Comey Memos or that the FBI did not specify which memo(s) were responsive to each plaintiff's request.  CNN disputes the FBI's stated basis for withholding this information and the FBI's assertion that it "could not" disclose this information.

---

[1] CNN globally objects to those portions of the FBI's Statement that recite legal arguments or conclusions.  *Morgan v. Fed. Aviation Admin.*, 657 F. Supp. 2d 146, 152 (D.D.C. 2009) (where purported "'facts' amount to legal arguments, the court is not required to accept them as true in ruling on [a] motion for summary judgment").

11.     Disputed in part.  CNN does not dispute that the FBI has asserted Exemptions 1, 3, 6, 7(C), and 7(E) with respect to withholding certain portions of the Comey Memos, but CNN disputes that any of those exemptions are applicable.

12.     The facts set forth in this paragraph are undisputed.

13.     The facts set forth in this paragraph are undisputed.

14.     The facts set forth in this paragraph are undisputed.

15.     Disputed in part.  CNN disputes that any of the FOIA exemptions on which the FBI relies to withhold portions of the Comey Memos are "pertinent."

16.     The facts set forth in this paragraph are undisputed.

17.     The facts set forth in this paragraph are undisputed.

18.     The facts set forth in this paragraph are undisputed.

19.     Disputed in part.  Whether information in the Comey Memos is properly classified constitutes a legal argument or conclusion.  CNN respectfully refers the Court to CNN's statement of material facts not in dispute for citation to the evidence of record that supports CNN's disagreement with the FBI's legal conclusions.

20.     The facts set forth in this paragraph are undisputed, but immaterial.

21.     The facts set forth in this paragraph are undisputed, but immaterial.

22.     Disputed in part.  The consequences of "unauthorized disclosure of information concerning foreign relations or foreign activities of the United States" that "can reasonably be expected" depend on the nature of the information that has been disclosed.

23.     Disputed in part.  The National Security Act of 1947 prohibits the unauthorized disclosure of information concerning intelligence sources and methods, not all such disclosure.

24.     Disputed in part.  Whether the Comey Memos contain information "compiled through investigative efforts by the FBI in support of the Russia investigation" constitutes a legal argument or conclusion, but CNN does not dispute that the Comey Memos have themselves been compiled into the Russia investigation.

25.     Disputed in part.  The consequences of "[d]isclosure of public details about when and against which targets the FBI has or has not used a particular law enforcement technique" depend in part on how well known that technique is to the public already.

26.     Disputed in part.  The consequences of "[d]isclosure of the use of a particular method and information derived from it at an identifiable point of time" that "can reasonably be expected" depend in part on how well known that method is to the public already and on the nature of the information that has been disclosed.

27.     Disputed.

28.     Because the Comey Memos have not been provided to CNN in unredacted form, CNN is unable to assert whether or not it disputes the statements of fact made in this paragraph.

Dated:  January 18, 2019          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*_____
Charles D. Tobin (#455593)
Adrianna C. Rodriguez (#1020616)
Maxwell S. Mishkin (#1031356)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
rodriguezac@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Plaintiff Cable News Network, Inc.*