**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendant. | Case No. 1:17-cv-01167-JEB |

### PLAINTIFF'S MOTION FOR ACCESS TO SEALED JUDICIAL RECORDS

Pursuant to the First Amendment and common law rights of access to judicial records and proceedings, Plaintiff Cable News Network, Inc. ("CNN"), by and through its undersigned counsel, hereby moves the Court to unseal the first and third *ex parte* declarations of FBI Deputy Assistant Director David Archey filed in this matter, as well as a transcript and all other records of the *ex parte* proceeding that the Court convened *sua sponte* with Counsel to the Special Counsel Michael Dreeben (together, the "Sealed Records").

In support of this motion, CNN relies on the accompanying Memorandum of Points and Authorities.  As demonstrated in that Memorandum, the Sealed Records are subject to both the constitutional and common law rights of access, and the Government cannot carry its heavy burden to justify withholding the Sealed Records under either of those standards.

### REQUEST FOR HEARING

CNN respectfully requests a hearing on this motion.

[SIGNATURE ON NEXT PAGE]

Dated:  January 18, 2019        Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Adrianna C. Rodriguez (#1020616)
Maxwell S. Mishkin (#1031356)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
rodriguezac@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Plaintiff Cable News Network, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CABLE NEWS NETWORK, INC.,

       Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION,

       Defendant.

Case No. 1:17-cv-01167-JEB

**Oral Argument Requested**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR ACCESS TO SEALED JUDICIAL RECORDS**

BALLARD SPAHR LLP

Charles D. Tobin (#455593)
Adrianna C. Rodriguez (#1020616)
Maxwell S. Mishkin (#1031356)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
rodriguezac@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Plaintiff Cable News Network, Inc.*

Dated:  January 18, 2019

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND AND PROCEDURAL HISTORY ....................................................................2

    A.      The Initial FOIA Litigation..................................................................................2

    B.      The Release Of The Comey Memos ....................................................................5

    C.      The Special Counsel's Ongoing Investigations ...................................................6

    D.      The Renewed FOIA Litigation .............................................................................7

ARGUMENT ..................................................................................................................8

I.      THE COURT SHOULD RELEASE THE SEALED RECORDS
       PURSUANT TO THE FIRST AMENDMENT RIGHT OF ACCESS ..............................9

    A.      The First Amendment Right Of Access Applies To The Sealed
         Records ..............................................................................................................10

    B.      The Government Cannot Carry Its Heavy Burden To Overcome The
         First Amendment Right Of Access ......................................................................11

II.     IN THE ALTERNATIVE, THE COURT SHOULD RELEASE THE
       SEALED RECORDS PURSUANT TO THE COMMON LAW
       RIGHT OF ACCESS ...........................................................................................14

    A.      The Sealed Records Are "Judicial Records" .......................................................14

    B.      The *Hubbard* Factors Weigh In Favor Of Access ...............................................15

CONCLUSION..............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown & Williamson Tobacco Corp. v. FTC*,
  710 F.2d 1165 (6th Cir. 1983) ...............................................................10

*Courthouse News Service v. Planet*,
  750 F.3d 776 (9th Cir. 2014) .................................................................10

*CREW v. Department of Justice*,
  746 F.3d 1082 (D.C. Cir. 2014) .............................................................16

*\*Dhiab v. Trump*,
  852 F.3d 1087 (D.C. Cir. 2017) ..........................................................9, 11

*Doe v. Public Citizen*,
  749 F.3d 246 (4th Cir. 2014) .................................................................10

*EEOC v. National Children's Center, Inc.*,
  98 F.3d 1406 (D.C. Cir. 1996) ...............................................................17

*FTC v. Standard Financial Management Corp.*,
  830 F.2d 404 (1st Cir. 1987) ...................................................................9

*In re Continental Illinois Securities Litigation*,
  732 F.2d 1302 (7th Cir. 1984) ...............................................................10

*In re Guantanamo Bay Detainee Litigation*,
  624 F. Supp. 2d 27 (D.D.C. 2009) .........................................................10

*In re Iowa Freedom of Information Council*,
  724 F.2d 658 (8th Cir. 1983) .................................................................10

*In re New York Times Co.*,
  585 F. Supp. 2d 83 (D.D.C. 2008) .........................................................13

*In re New York Times Co.*,
  828 F.2d 110 (2d Cir. 1987) ...................................................................13

*In re Special Proceedings*,
  842 F. Supp. 2d 232 (D.D.C. 2012) .......................................................13

*Lugosch v. Pyramid Co. of Onondaga*,
  435 F.3d 110 (2d Cir. 2006) ...................................................................10

*Lykins v. Department of Justice*,
  725 F.2d 1455 (D.C. Cir. 1984) ............................................................................3

*Metlife, Inc. v. Financial Stability Oversight Council*,
  865 F.3d 661 (D.C. Cir. 2017) ...............................................................9, 14, 15

*Newman v. Graddick*,
  696 F.2d 796 (11th Cir. 1983) ............................................................................10

*Nixon v. Warner Communications, Inc.*,
  435 U.S. 589 (1978)...............................................................................................8

*NYCLU v. N.Y. City Transit Authority*,
  684 F.3d 286 (2d Cir. 2012)................................................................................10

*Press-Enterprise Co. v. Superior Court*,
  464 U.S. 501 (1984)..............................................................................................11

*Press-Enterprise Co. v. Superior Court*,
  478 U.S. 1 (1986)...................................................................................10, 11, 13

*Publicker Industries, Inc. v. Cohen*,
  733 F.2d 1059 (3d Cir. 1984)..............................................................................10

*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980)........................................................................................8, 9, 11

*Roth v. Department of Justice*,
  642 F.3d 1161 (D.C. Cir. 2011) ............................................................................3

*Rushford v. New Yorker Magazine, Inc.*,
  846 F.2d 249 (4th Cir. 1988) ..............................................................................10

*Senate of the Commonwealth of Puerto Rico v. Department of Justice*,
  823 F.3d 574 (D.C. Cir. 1987 ...............................................................................3

*Shelton v. Tucker*,
  364 U.S. 479 (1960)..............................................................................................11

*United States v. Hubbard*,
  650 F.2d 293 (D.C. Cir. 1980) ............................................................................14

*Washington Post v. Robinson*,
  935 F.2d 282 (D.C. Cir. 1991) ...............................................................11, 12, 13

## PRELIMINARY STATEMENT

In two sealed, *ex parte* filings and at a sealed *ex parte* proceeding, the government represented to this Court that disclosure of the "Comey Memos" – a series of memoranda prepared by former Federal Bureau of Investigation ("FBI") Director Comey about his discussions with President Trump – would impede the Special Counsel's investigation into Russian interference in the 2016 election. The Court accepted those *ex parte* representations, and based on them, at least in part, allowed the government to withhold the Comey Memos from disclosure under the Freedom of Information Act ("FOIA"). The Court stated it was "fully convinced that disclosure 'could reasonably be expected to interfere' with that ongoing investigation." Memorandum Opinion ("Mem. Op.") at 14, Feb. 2, 2018, Dkt. 49.

Two months later, however, the government produced the memos to Congress, which promptly released them to the public. Since that time, the Special Counsel's office has lodged criminal charges against more than a dozen individuals, obtained a guilty plea from President Trump's former personal attorney, and secured the conviction of the President's former campaign manager. The government's concerns expressed secretly to this Court were overblown then, and they certainly should carry no weight now.

Pursuant to the First Amendment and common law rights of access to judicial records and proceedings, Plaintiff Cable News Network, Inc. ("CNN") now seeks to learn what the government said that persuaded this Court behind closed doors. The Court should unseal the government's *ex parte* filings and a transcript of the *ex parte* proceeding in this case so that, with the benefit of having seen the Comey Memos themselves, the public can evaluate the government's complete rationale for keeping the memos secret for so long and, as it is now clear, for no public benefit.

## BACKGROUND AND PROCEDURAL HISTORY

**A.    The Initial FOIA Litigation[1]**

On May 16, 2017, shortly after the existence of the Comey Memos first came to light, CNN submitted a FOIA request to the FBI for "copies of all records of notes taken by or communications sent from FBI Director James Comey regarding or documenting interactions (including interviews and other conversations) with President Donald Trump."  Compl. Ex. A, June 15, 2017, Dkt. 1-1.  On June 15, 2017, having not received the memos or an explanation for why they were being withheld, CNN filed its Complaint in this action.  Compl., Dkt. 1.  The following day, the FBI notified CNN that it was withholding the Comey Memos in their entirety under Exemption 7(A), stating that "[t]he records responsive to [CNN's] request are law enforcement records," that "[t]here is a pending or prospective law enforcement proceeding relevant to these responsive records," and that "release of the information could reasonably be expected to interfere with enforcement proceedings."  Mem. Op. at 4.

The FBI moved for summary judgment against CNN on October 13, 2017, arguing to withhold the Comey Memos in full under Exemption 7(A), and to withhold portions under Exemptions 1, 3, 6, 7(C), and 7(E).  *Id.* at 9.  In support of that motion, the FBI submitted a declaration of FBI Section Chief David Hardy.  Decl. of David M. Hardy, Oct. 13, 2017, Dkt. 22-2.  The FBI also sought leave to file a sealed declaration in further support of its motion from a then-unnamed declarant, Defs.' Mot. to Submit *In Camera*, *Ex Parte* Decl., Oct 13, 2017, Dkt. 23, later identified as FBI Deputy Assistant Director David Archey, Mem. Op. at 5.

---

[1] CNN offers a concise summary of the case history in light of the Court's familiarity with this matter.  A more detailed account of the underlying facts can be found in CNN's Nov. 3, 2017 Memorandum in Support of its Cross-Motion for Summary Judgment and in Opposition to the FBI's (1) Motion for Summary Judgment and (2) Motion to Submit an *In Camera*, *Ex Parte* Declaration ("CNN's Initial Mem."), Dkt. 25, and CNN's Dec. 21, 2017 Reply Memorandum in Further Support of its Cross-Motion for Summary Judgment ("CNN's Initial Reply"), Dkt. 42.

On November 3, 2017, CNN opposed the FBI's motion for summary judgment, cross-moved, and opposed the FBI's request to file its *ex parte* declaration.  In contesting the FBI's request to make arguments in secret, CNN cited *Lykins v. Department of Justice*, 725 F.2d 1455, 1465 (D.C. Cir. 1984), where the D.C. Circuit held that "a trial court should not use *in camera* affidavits unless necessary and, if such affidavits are used, it should be certain to make the public record as complete as possible," and *Roth v. Department of Justice*, 642 F.3d 1161, 1185 (D.C. Cir. 2011), where the court stated that "[r]equiring agencies to provide public explanations for their [withholdings] allows for adversarial testing of the agencies' claims, which helps focus the court's attention on the most important issues in the litigation and may reveal not otherwise apparent flaws in the agencies' reasoning."  CNN's Initial Mem. at 29-30.

On December 6, 2017, the FBI filed a reply in support of its summary judgment motion and an opposition to CNN's cross-motion, as well as another public declaration from Section Chief Hardy.  The FBI continued to argue that it should be permitted to file a sealed declaration as well, stating that its "public declarations along with the *in camera* declaration are sufficient to support withholding pursuant to Exemption 7(A)."  Defs.' Opp. to Pls.' Cross-Mots. for Summ. J. at 14, Dec. 6, 2017, Dkt. 36.  The FBI invited even more secrecy to these proceedings, asserting that if it had not met its burden on that exemption, the Court should "order [it] to submit a further affidavit, *in camera* if necessary."  *Id.* at 14-15.

On December 21, 2017, CNN filed a reply in support of its cross-motion, reiterating its opposition to any *ex parte* government filing and citing *Senate of the Commonwealth of Puerto Rico v. Department of Justice*, 823 F.2d 574, 588-89 (D.C. Cir. 1987), where the D.C. Circuit observed that "[a] court's *in camera* resolution of any issue . . . runs counter to the fundamental principles on which our adversary system is based."  CNN's Initial Reply at 8-10.

The Court ultimately granted the FBI's request to file an *ex parte* declaration, and it directed the FBI to submit a copy of the Comey Memos as well for *in camera* review. Minute Order, Jan. 11, 2018. With no contemporaneous notation on the public docket, after reviewing the memos and the sealed filing, the Court later disclosed that it had sought "more specifics as to the Memos' connection with an ongoing investigation." Mem. Op. at 5. The Court *sua sponte* convened a sealed, *ex parte* hearing with Counsel to the Special Counsel Michael Dreeben. *Id.* CNN had no opportunity to object to this procedure, and the docket still does not reflect when the hearing occurred, how long it lasted, how it was recorded, or whether anyone other than Dreeben attended or offered arguments. After the sealed proceeding, the Court asked "follow-up questions," which the FBI answered in another *ex parte* declaration. *Id.*; Defs.' Notice of Submission of Third *In Camera, Ex Parte* Decl. of David W. Archey, Feb. 1, 2018, Dkt. 47.

On February 2, 2018, the Court issued a Memorandum Opinion and Order, and, based largely on these sealed proceedings, granted the FBI's motion for summary judgment and denied CNN's cross-motion. The Court first held that the Comey Memos met the threshold requirement of Exemption 7 because they were compiled "in service of" the Special Counsel's investigation into Russian election interference. Mem. Op. at 10-11. It then addressed whether release of the memos "could reasonably be expected to interfere with enforcement proceedings," such that the FBI could withhold them under Exemption 7(A). *Id.* at 13. The Court stated that the FBI's "initial submissions fell short" of demonstrating that the memos' release would harm the Special Counsel's investigation, and that the Court still was not persuaded following "*in camera* review of the First Archey Declaration and the Memos themselves." *Id.* at 14. Only after the *ex parte* proceeding and the FBI's filing of a second *ex parte* declaration was the Court "fully convinced that disclosure 'could reasonably be expected to interfere' with that ongoing investigation." *Id.*

The Court expressly recognized the significance that the *ex parte* filings and *ex parte* proceeding played in reaching its decision on summary judgment.  The Court noted that while these sealed materials were not "currently available" to CNN, they were "part of the record that could be reviewed on appeal or in any subsequent litigation."  *Id.* at 5.

## B.     The Release Of The Comey Memos

On April 13, 2018, the chairs of three congressional committees jointly sent a letter to United States Deputy Attorney General Rod Rosenstein requesting copies of the Comey Memos. Ltr. from Reps. Goodlatte, Gowdy, and Nunes to U.S. Deputy Atty. Gen. Rosenstein, Apr. 13, 2018, https://www.scribd.com/document/376307023/GOP-chairmen-demand-Comey-memos-on-Trump.  Deputy Attorney General Rosenstein responded that because "one or more of the memos may relate to an ongoing investigation, may contain classified information, and may report confidential Presidential communications," the Justice Department had "a legal duty to evaluate the consequences of providing access to them."  Ltr. from U.S. Deputy Atty. Gen. Rosenstein to Reps. Goodlatte, Gowdy, and Nunes, Apr. 16, 2018, https://web.archive.org/web/20180420024727/https://www.politico.com/f/?id=00000162-da1f-d817-a7f2-db1ff6fc0001.

The following day, Comey's memoir, *A Higher Loyalty*, went on sale to the public, providing more details about his interactions with President Trump.  *E.g.*, Stephen Collinson, *Comey paints unsparing portrait of Trump in devastating tell-all book*, CNN, Apr. 13, 2018, https://www.cnn.com/2018/04/13/politics/donald-trump-james-comey-book-revelations/index.html.  Two days after that, on April 19, 2018, United States Assistant Attorney General Stephen Boyd sent another letter to the three congressional committee chairs, writing that "[i]n light of the unusual events occurring since the previous limited disclosure, the Department has consulted the relevant parties and concluded that the release of the memoranda to Congress at

this time would not adversely impact any ongoing investigation or other confidentiality interests of the Executive Branch."  Ltr. from U.S. Asst. Atty. Gen. Boyd to Reps. Goodlatte, Gowdy, and Nunes, Apr. 19, 2018, https://assets.documentcloud.org/documents/4442858/2018-4-19-Comey-Memo-Goodlatte-Gowdy-Nunes.pdf.  The letter enclosed "an unclassified version of the documents redacted to remove any classified information."  *Id.*

On the evening of April 19, 2018, multiple media organizations obtained and published copies of the redacted version of the Comey Memos that the Department of Justice transmitted to Congress.  *E.g.*, *Read: James Comey's Memos*, CNN, Apr. 19, 2018, https://www.cnn.com/2018/04/19/politics/comey-memo-release/index.html.  President Trump promptly acknowledged this release.  Donald J. Trump (@realDonaldTrump), Twitter, Apr. 19, 2018, https://twitter.com/realDonaldTrump/status/987173366401585155.  The FBI subsequently released its own redacted copies of the Comey Memos as well.  *The Vault*, FBI, May 4, 2018, https://vault.fbi.gov/director-comey-memoranda-of-communications-with-president-trump/.

## C.     The Special Counsel's Ongoing Investigations

The FBI argued that disclosure of the Comey Memos "while th[e] [Special Counsel's] investigation remains ongoing, would be reasonably expected to adversely affect the integrity of that investigation," Mem. in Supp. of Defs.' Mot. for Partial Summ. J. at 1, Oct. 13, 2017, Dkt. 22-1, but the Special Counsel's office continued working – to all outward appearances, unhindered – after the memos became public, *see generally Special Counsel's Office*, Dep't of Justice, https://www.justice.gov/sco:

- In June 2018, the Special Counsel lodged a superseding incitement against President Trump's former campaign manager Paul Manafort and his former associate

Konstantin Kilimnik.  Superseding Indictment, *United States v. Manafort*, No. 1:17-cr-201 (D.D.C. June 8, 2018).

- In July 2018, the Special Counsel obtained the indictment of twelve Russian nationals for conspiracy arising out of hacking efforts against persons involved in the 2016 election.  Indictment, *United States v. Netyksho*, No. 1:18-cr-215 (D.D.C. July 13, 2018).

- In August 2018, the Special Counsel secured Manafort's conviction on multiple counts of fraud, Minute Entry, *United States v. Manafort*, No. 1:18-cr-83 (E.D. Va. Aug. 21, 2018), and the following month Manafort pleaded guilty to additional counts of conspiracy related to money laundering and obstruction of justice, among other charges, Plea Agreement, *United States v. Manafort*, No. 1:17-cr-201 (D.D.C. Sept. 14, 2018).

- In November 2018, the Special Counsel received a guilty plea from President Trump's former personal attorney Michael Cohen for making false statements to Congress during its investigation into Russian election interference.  Minute Entry, *United States v. Cohen*, No. 1:18-cr-850 (S.D.N.Y. Nov. 29, 2018).

- President Trump has also submitted written answers to questions from the Special Counsel as part of the investigation into Russian election meddling.  Pamela Brown & Jeremy Herb, *Trump sends finished written answers to Mueller*, CNN, Nov. 20, 2018, https://www.cnn.com/2018/11/20/politics/trump-mueller-questions-done/index.html.

**D.      The Renewed FOIA Litigation**

CNN timely appealed the Court's summary judgment ruling to the D.C. Circuit.  Notice of Appeal, Feb. 5, 2018, Dkt. 52; Notice of Appeal, Apr. 25, 2018, Dkt. 61.  In light of the

memos' release, however, the D.C. Circuit remanded so that this Court could conduct "further

proceedings" as to "whether there exist any additional memoranda that have not been publically

disclosed, and whether [CNN] is entitled to the disclosure of any unreleased memoranda or

redacted portions of released memoranda," as well as "the continuing applicability of Exemption

7(A) to the remaining withheld information . . . in light of subsequent statements by government

officials that release of the memoranda would no longer adversely impact any ongoing

investigation."  Mandate & Order, *CNN v. FBI*, No. 18-5041 (D.C. Cir. Aug. 8, 2018), Doc. Nos.

1744629 & 1744635.  This Court subsequently directed the parties to file a joint status report

"set[ting] forth whether they believe issues still remain to be decided."  Minute Order, Aug. 31,

2018.  CNN identified the points discussed in the remand order as still to be decided, and further

advised:

> Pursuant to the common law and constitutional rights of access to judicial records
> and proceedings, CNN also intends to move this Court to release the two sealed
> *ex parte* declarations submitted in support of the FBI's October 13, 2017 motion
> for partial summary judgment, as well as the record of the "sealed, on-the-record
> *ex parte*" proffer session with a representative from the Special Counsel's office
> (together, the "Sealed Records").

Joint Status Report at 4, Sept. 13, 2018, Dkt. 66.  CNN now files that motion seeking the release

of the Sealed Records.

## **ARGUMENT**

The press and public have a right of access to judicial records and proceedings, including

the Sealed Records, arising out both the First Amendment and the common law.  In *Nixon v.

Warner Communications, Inc.*, the Supreme Court recognized a common law right "to inspect

and copy . . . judicial records and documents."  435 U.S. 589, 597 (1978).  Two years later, in

*Richmond Newspapers, Inc. v. Virginia*, the Supreme Court held that the First Amendment's

protections for freedom of speech, freedom of the press, and the right to petition carry with them

an implied right of access to judicial documents and proceedings.  448 U.S. 555 (1980).  These

rights of access to court records are "a fundamental element of the rule of law, important to

maintaining the integrity and legitimacy of an independent Judicial Branch."  *Metlife, Inc. v. Fin.*

*Stability Oversight Council*, 865 F.3d 661, 663 (D.C. Cir. 2017).  The importance of access to

court records is further "accentuated" where, as here, the government is a party, because "in such

circumstances, the public's right to know what the executive branch is about coalesces with the

concomitant right of the citizenry to appraise the judicial branch."  *FTC v. Standard Fin. Mgmt.*

*Corp.*, 830 F.2d 404, 410 (1st Cir. 1987), *cited with approval by EEOC v. Nat'l Children's Ctr.,*

*Inc.*, 98 F.3d 1406, 1409 (D.C. Cir. 1996).

These constitutional and common law rights of access plainly apply to the Sealed

Records, and the records therefore should be released.

## I.     THE COURT SHOULD RELEASE THE SEALED RECORDS PURSUANT TO THE FIRST AMENDMENT RIGHT OF ACCESS

"The Supreme Court has sketched a two-stage process for resolving whether the First

Amendment affords the public access to a particular judicial record or proceeding."  *Dhiab v.*

*Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Williams, J., concurring).  "First the court must

determine whether a qualified First Amendment right of public access exists.  If so, then . . . the

record or proceeding may be closed only if closure is essential to preserve higher values and is

narrowly tailored to serve that interest."  *Id.* (citations and internal marks omitted).  Following

this process, it is clear that the First Amendment right of access applies to the Sealed Records

and that the government cannot carry the heavy burden required to overcome that right.[2]

---

[2] Though the D.C. Circuit has "never *found* a qualified First Amendment right outside the criminal context," the court has "never categorically ruled it out either," and "many other circuits have concluded that such a right exists in civil and even administrative matters."  *Dhiab*, 852 F.3d at 1104 (Williams, J., concurring).  But every Circuit to have addressed the issue has found

A.      **The First Amendment Right Of Access Applies To The Sealed Records**

The Supreme Court has long relied on the "experience and logic" test to determine where the constitutional access right applies to records or a proceeding.  *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise II*"), 478 U.S. 1, 9 (1986).  Under this test, the constitutional right of access attaches if "the place and process have historically been open to the press and general public" and if public access "plays a significant positive role in the function of the particular process." *Id.* at 8.  It is well-settled that, as a result of this test, the First Amendment right of access applies to filings made in support of or in opposition to motions for summary judgment and proceedings related to those motions.  *Pub. Citizen*, 749 F.3d at 267 ("summary judgment is an adjudication that serves as a substitute for trial, and therefore, the First Amendment right of access attaches to documents and materials filed in connection with a summary judgment motion") (citations omitted); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006) (same, and further noting that "oral arguments relating to a motion for summary judgment fall into the category of civil proceedings to which there is a First Amendment presumption of access"); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) ("the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case").  The Sealed Records at issue here – two declarations filed in

---

the First Amendment access right applies to civil matters.  *E.g.*, *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014); *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014); *NYCLU v. N.Y. City Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984); *In re Cont'l Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983); *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983); *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983); *see also In re Guantanamo Bay Detainee Litig.*, 624 F. Supp. 2d 27, 36 (D.D.C. 2009) ("[t]he consensus of the Circuits is that there has been a history of public access to *civil* proceedings") (emphasis added).

support of the FBI's summary judgment motion and the record of a proceeding related to that

motion – are therefore clearly subject to the First Amendment access right as a threshold matter.

**B.      The Government Cannot Carry Its Heavy Burden To Overcome The First
           Amendment Right Of Access**

Because the First Amendment right of access applies to the Sealed Records, the Court

should release those records unless the government can show that continued withholding "is

essential to preserve higher values and is narrowly tailored to serve that interest."  *Dhiab*, 852

F.3d at 1102 (Williams, J., concurring).  Specifically, to overcome the constitutional access right

the government must demonstrate that:

> 1.   There is a ***substantial probability*** of prejudice to a ***compelling*** interest
>       if the right is not limited.  *Press-Enterprise II*, 478 U.S. at 13-14;
>       *Press-Enter. Co. v. Super. Ct.* ("*Press-Enterprise I*"), 464 U.S. 501,
>       510 (1984); *Richmond Newspapers, Inc.*, 448 U.S. at 580-81.

> 2.   There is ***no alternative*** to a limitation of the access right that will
>       adequately protect against the threatened harm.  *Press-Enterprise II*,
>       478 U.S. at 13-14; *Washington Post v. Robinson*, 935 F.2d 282, 289-
>       90 (D.C. Cir. 1991).

> 3.   Restricting access will ***effectively*** protect against the threatened harm.
>       *Press-Enterprise II*, 478 U.S. at 14; *Robinson*, 935 F.2d at 291-92.

> 4.   The restriction on access is ***narrowly tailored*** to minimize the harm to
>       the public's access rights.  *Press-Enterprise II*, 478 U.S. at 13-14;
>       *Robinson*, 935 F.2d at 287; *see also Shelton v. Tucker*, 364 U.S. 479,
>       488 (1960) (even "legitimate and substantial" interests "cannot be
>       pursued by means that broadly stifle fundamental personal liberties").

The government cannot credibly make this showing with respect to the Sealed Records.

By all accounts, the Sealed Records reflect the government's arguments for withholding the

Comey Memos in full under Exemption 7(A).  But the government released the memos with only

a single phrase still redacted on the basis of that exemption.  *See* Fifth Decl. of David M. Hardy

("Fifth Hardy Decl.") ¶ 55 & n.11, Dec. 14, 2018, Dkt. 69-2.  It is difficult to imagine how the

government could justify, long after the memos themselves have become public, keeping secret this largely inapplicable rationale for sealing the Comey Memos.

Controlling case law further compels the release of the Sealed Records.  In *Washington Post v. Robinson*, the *Post* sought access to the plea agreement of a district employee who cooperated with an investigation into Mayor Marion Barry.  935 F.2d at 283-85.  The government argued that the record should remain sealed because it "was part of an ongoing criminal investigation that might be compromised or that might embarrass innocent parties if publicized," because "release of the agreement may [have made] it difficult to secure the cooperation of other witnesses," and because "the safety of [the cooperator] and his family would have been placed at risk."  *Id.* at 291 (citation, internal marks, and alterations omitted). The court rejected these speculative concerns, reasoning that the substantial amount of already-public information about the investigation and the cooperator's involvement, including information reported by the press, meant that unsealing the plea agreement "could hardly have posed any *additional* threat to the ongoing criminal investigation."  *Id.* at 292 (emphasis added).

Given the wealth of now-public information about the Comey Memos specifically and the Special Counsel's work generally, releasing the Sealed Records likewise could hardly be expected to pose an *additional* threat to the Russia investigation.  *See, e.g.*, Tr. of Dec. 17, 2018 Exec. Session, H. Comm. on the Judiciary & H. Comm. on Oversight and Gov. Reform, https://d3i6fh83elv35t.cloudfront.net/static/2018/12/Comey-interview-12-17-18-redacted.pdf (173-page transcript of interview of Comey); Tr. of Dec. 7, 2018 Exec. Session, H. Comm. on the Judiciary & H. Comm. on Gov. Reform and Oversight, https://www.lawfareblog.com/document-transcript-james-comeys-dec-7-interview-house-committees (235-page transcript of interview of Comey).  Indeed, because the public already has access to so much related

information, continuing to withhold the Sealed Records "would be the equivalent of giving a reader only every other chapter of a complicated book, distorting the story and making it impossible for the reader to put in context the information provided.  The First Amendment, the public, and our system of justice demand more." *In re Special Proceedings*, 842 F. Supp. 2d 232, 235 (D.D.C. 2012) (granting access under the First Amendment to report of investigation into possible Executive Branch misconduct in the prosecution of Senator Ted Stevens).

Even if the government could articulate some valid reason why release of the Sealed Records would harm a compelling interest, that still would not justify keeping the records entirely out of sight.  Because limits on access must be narrowly tailored to survive constitutional scrutiny, the Supreme Court and the D.C. Circuit have held that courts must consider alternatives to wholesale sealing when adjudicating requests for access to judicial records and proceedings. *Press-Enterprise II*, 478 U.S. at 13-14; *Robinson*, 935 F.2d at 287.  In other words, a court should ask whether "the goal of protecting the [compelling interest] can be accomplished by means less restrictive than prohibiting access . . . altogether." *In re New York Times Co.*, 585 F. Supp. 2d 83, 91 (D.D.C. 2008).  The Second Circuit has observed, for instance, that "[t]o protect whatever [compelling] interests may be prejudiced by disclosure of the [sealed] papers, redaction . . .  as opposed to the wholesale sealing of the papers, might be appropriate," and it therefore ordered the district court to make "a determination of what portions of the [sealed] papers in question must remain sealed or must be redacted to preserve other values." *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987).  Here, too, releasing redacted versions of the Sealed Records would be a less restrictive alternative to withholding those records entirely.

The government cannot show that withholding the Sealed Records is essential to preserving any higher value, nor that a wholesale denial of access is narrowly tailored to serve such a compelling interest.  The Court should therefore order the release of the Sealed Records.

## II.   IN THE ALTERNATIVE, THE COURT SHOULD RELEASE THE SEALED RECORDS PURSUANT TO THE COMMON LAW RIGHT OF ACCESS

The Sealed Records should also be released pursuant to the common law right of access. "Although [this] right is not absolute, there is a strong presumption in its favor, which courts must weigh against any competing interests."  *Metlife*, 865 F.3d at 663.  Like the constitutional right of access, the common law access right requires courts to conduct a two-stage analysis. First, courts determine whether the records at issue are "judicial records," to which there is a "strong presumption" in favor of access.  *Id.* at 665-67.  If they are judicial records, courts then apply the six-factor test set out in *United States v. Hubbard* to conclude whether the presumption of access has been rebutted.  650 F.2d 293 (D.C. Cir. 1980).  Here, the Sealed Records, which reflect the government's arguments for summary judgment, are plainly judicial records, and the *Hubbard* factors weigh squarely in favor of public access.

## A.   The Sealed Records Are "Judicial Records"

Under controlling case law, the Sealed Records are "judicial records" to which the public has a presumptive right of access under the common law.  In *Metlife*, the D.C. Circuit recently held that the common law right of access applied to summary judgment briefs and an accompanying joint appendix that had been filed under seal in the district court.  865 F.3d at 666-68.  As the D.C. Circuit explained, those documents were judicial records even though they were filed under seal, because they "were filed before the district court's decision and were intended to influence it," and because "an appellate court reviewing the district court's decision

14

. . . would want to examine all of the materials—sealed and unsealed—to determine whether the court correctly" reached its decision.  *Id.* at 668-69.

It cannot be disputed that the Sealed Records were likewise filed before this Court's decision on the government's motion for summary judgment, that the government intended them to influence the Court's decision, and that they formed part of the basis for the Court's ruling. Indeed, the Memorandum Opinion notes that the government's arguments regarding Exemption 7(A) did not persuade the Court until *after* the Court reviewed the Sealed Records as well.  Mem. Op. at 13-14.  The Court further noted that the Sealed Records "could be reviewed on appeal or in any subsequent litigation."  *Id.* at 5.  The Sealed Records are therefore "judicial records" to which the public has a "strong presumption" of access pursuant to common law.

## B.  The *Hubbard* Factors Weigh In Favor Of Access

Because the public has a presumptive right of access to the Sealed Records, the Court should release them unless the government can rebut that presumption through the six-factor *Hubbard* test.  Those factors are: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings."  *Metlife*, 865 F.3d at 665 (citations and internal marks omitted).  These factors weighs conclusively in favor of access.

**Factor 1**:  After the existence of the Comey Memos came to light and particularly following Comey's testimony before the Senate Select Committee on Intelligence, the public interest in the memos was overwhelming.  President Trump and his former FBI Director were

15

publicly disputing, among other topics, whether the President had insisted on a pledge of loyalty and whether the President had pressured Comey with respect to the FBI's investigation into Michael Flynn, the recently-resigned National Security Advisor. *See, e.g.*, CNN's Initial Mem. at 5-8; Donald J. Trump (@realDonaldTrump), Twitter, Dec. 3, 2017, https://twitter.com/realDonaldTrump/status/937279001684598784 ("I never asked Comey to stop investigating Flynn. Just more Fake News covering another Comey lie!"). The President even suggested that "tapes" of his talks with Comey would reveal Comey's accounts to be false. Donald J. Trump (@realDonaldTrump), Twitter, May 12, 2017, https://twitter.com/realdonaldtrump/status/863007411132649473. The memos themselves would have offered the public a unique account of these critical, disputed discussions between two of the nation's highest ranking officials.

The government argued to this Court that, regardless of this surpassing public interest, the memos must not be released because that would harm the Special Counsel's investigation. The Court was not persuaded by this argument until it reviewed the Sealed Records. At that point "fully convinced that disclosure 'could reasonably be expected to interfere' with that ongoing investigation," Mem. Op. at 14, the Court allowed the government to withhold the memos. But just months later, under pressure from Congress, the government made the memos public, and there has been no indication that their release interfered with the Special Counsel's investigation. The government therefore has no interest, let alone an interest outweighing the public's, to keep secret its sealed justifications for sealing the Comey Memos. *See CREW v. Dep't of Justice*, 746 F.3d 1082, 1092-93 (D.C. Cir. 2014) (recognizing the importance of records that "shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes that undermine the very foundation of our government").

**Factors 2 and 5**:  As discussed above, the Sealed Records reflect the government's rationale, as of January 2018, for why releasing the memos would interfere with the Special Counsel's investigation, supplementing arguments the government made publicly in its briefs and other declarations.  Yet the government recognized more than eight months ago that releasing the memos themselves would not harm the Russia investigation.  Fifth Hardy Decl. ¶ 13.  Given the public's access to the Comey Memos themselves and the information that has come to light in the past year about the Special Counsel's investigation, the risk of prejudice, if any, from releasing the Sealed Records pales in comparison to the public interest in those documents.

**Factor 6**:  The fact that the Sealed Records were introduced for the purpose of persuading the Court to grant the government's motion for summary judgment – and that, by the Court's own account, the Sealed Records played a dispositive role in its decision – further strengthens the case for their release pursuant to the common law right of access.  *See Nat'l Children's Ctr.*, 98 F.3d at 1409 ("there is a need for public access in those instances where the documents at issue are specifically referred to in the trial judge's public decision") (alterations and internal marks omitted) (citing *Hubbard*, 650 F.2d at 318).

**Factors 3 and 4**:  It remains to be seen whether, having considered the foregoing arguments, the government will still object to disclosure of the Sealed Records, and what if any interest the government could plausibly claim would be harmed by their release at this time.  But it is nonetheless clear that, on balance, the *Hubbard* factors will not rebut the strong presumption of access under the common law.  The Court should therefore release the Sealed Records.

## CONCLUSION

For the foregoing reasons, CNN respectfully requests that the Court (1) unseal the First Archey Declaration, Third Archey Declaration, and a transcript of and any other records relating

17

to the proffer proceeding; (2) place copies of those records on the public docket in this matter; and (3) grant any other relief that the Court finds just and proper.

Dated:  January 18, 2019          Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Adrianna C. Rodriguez (#1020616)
Maxwell S. Mishkin (#1031356)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
rodriguezac@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Plaintiff Cable News Network, Inc.*