**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CABLE NEWS NETWORK, INC., | Civil Action No. 1:17-cv-01167-JEB |
| Plaintiff, | |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON REMAND**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.   THE FBI PROPERLY WITHHELD PORTIONS OF THE RECORDS PURSUANT TO
     EXEMPTION 1 .......................................................................................................... 2

      Redaction Blocks 1-7 ............................................................................................. 5

      Redaction Block 8 .................................................................................................. 7

      Redactopm Block 9 ................................................................................................ 8

      Redaction Blocks 10-15 & 18 ................................................................................ 9

      Redaction Blocks 16 & 17 ..................................................................................... 10

      Redaction Block 19 ................................................................................................ 11

      Redaction Block 20 ................................................................................................ 12

      Redaction Blocks 21-24 ......................................................................................... 12

II.  THE FBI PROPERLY WITHHELD PORTIONS OF THE RECORDS PURSUANT TO
     EXEMPTION 3 .......................................................................................................... 13

III. PORTIONS OF THE RECORDS ARE EXEMPT FROM DISCLOSURE PURSUANT
     TO EXEMPTION 7 .................................................................................................... 14

      A.  The FBI Properly Withheld Redaction Block 19 Pursuant To Exemption 7(A) .............. 14

      B.  The FBI Properly Withheld Redaction Blocks 16 and 17 Pursuant To Exemption 7(E) . 17

CONCLUSION................................................................................................................... 199

## **INTRODUCTION**

This action involves a request submitted by plaintiff Cable News Network ("CNN" or plaintiff) to defendant Federal Bureau of Investigation ("FBI") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Plaintiff requested records created by then-Director of the FBI, James B. Comey, documenting his interactions with President Donald J. Trump; these records have been referred to as the "Comey Memos."  On February 2, 2018, this Court held that the FBI had conducted an adequate search for the Comey Memos and had properly withheld them in full under FOIA Exemption 7(A), 5 U.S.C. § 552(b)(7)(A), which protects documents compiled for law enforcement purposes where their disclosure "could reasonably be expected to interfere with enforcement proceedings."  *Cable News Network v. FBI ("CNN v. FBI")*, 293 F. Supp. 3d 59 (D.D.C. 2018).  CNN appealed but, while the appeal was pending, redacted versions of the Comey Memos were made public.  The court of appeals subsequently remanded the appeal to this Court for it to consider the propriety of the limited redactions made to the public version of the memos, which this Court had not previously considered, as well as to consider whether other responsive records might exist.

Plaintiff now states that it is no longer challenging the adequacy of the FBI's search for the Comey Memos, writing that it "accepts the FBI's representation on this point and accordingly considers that question answered."  Pl.'s Renewed Summ. J. Mem. 5 (Dkt. No. 70) ("Pl.'s Mem.").  Plaintiff challenges only the FBI's redaction of small blocks of information from three of the memoranda responsive to its request.  All of these redactions were made pursuant to FOIA Exemption 1, governing classified information.  Some of these blocks of information have also been withheld under Exemptions 3, 7(A), and 7(E).  As explained in the FBI's opening summary judgment memorandum (Dkt. No. 69-1) and the Fifth Declaration of

David Hardy submitted therewith (Dkt. No. 69-2), the information withheld under Exemption 1

is properly classified as information pertaining to or obtained from intelligence activities,

sources, and methods, or information about foreign relations or foreign activities of the United

States.  Information regarding intelligence sources and methods is also properly withheld under

FOIA Exemption 3.  Exemption 7, for records complied for law enforcement purposes, properly

applies to a reference to an intelligence method and the information derived from it, the

disclosure of which would, in the judgment of the FBI, interfere with the pending investigation

into Russian interference in the 2016 election  (Exemption 7(A)) and to information that would

reveal whether or not the FBI conducted Foreign Intelligence Surveillance Act ("FISA")

surveillance of Lieutenant General Flynn in that investigation (Exemption 7(E)).  The Court

should therefore grant defendant's motion for summary judgment and deny plaintiff's cross-

motion for summary judgment.

## ARGUMENT

## I.    THE FBI PROPERLY WITHHELD PORTIONS OF THE RECORDS PURSUANT TO EXEMPTION 1

As explained in the FBI's opening memorandum, limited portions of three of the Comey

Memos responsive to plaintiff's request have been redacted to protect classified information that

is exempt from disclosure under the FOIA pursuant to Exemption 1.  Fifth Hardy Decl. pp. 7-8 &

¶¶ 25-39, Dkt. No. 69-2.  David Hardy, Section Chief of the Record/Information Dissemination

Section ("RIDS") of the Information Management Division of the FBI, confirmed that this

information is currently and properly classified at the Secret or Confidential level pursuant to

either section 1.4(c) or 1.4(d) of Executive Order 13,526.  *Id.* ¶ 25.  Section Chief Hardy

explained that he determined that the unauthorized disclosure of this information reasonably

could be expected to result in damage to the national security (for information classified at the Confidential level) or serious damage to the national security (for information classified at the Secret level). *Id.* ¶¶ 25-27.  He described the expected damage to the extent possible on the public record. *Id.* ¶¶ 28-39.

Plaintiff agrees that "the Judiciary defers to the Executive in assessing the possibility of harm from releasing information that potentially relates to national security."  Pl.'s Mem. 7.  As the D.C. Circuit has noted, "in the FOIA context, we have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review."  *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003).  Indeed, the D.C. Circuit has instructed that "little proof or explanation is required beyond a plausible assertion that information is properly classified."  *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007).  The declaration submitted by the FBI in this case is more than sufficient to justify the withholdings under Exemption 1 under this highly deferential standard.

In response, plaintiff principally argues that the government cannot establish a "logical and plausible link" between the release of any of the withheld information and a risk to national security because of other, publicly available information that makes the "marginal impact" of releasing the withheld material very small.  Pl.'s Mem. 9.  The Court, however, must give deference to the FBI's determination that, even in view of what is publicly known, release of this information reasonably risks harm to national security; plaintiff is without any authority or expertise to evaluate what is or is not a sufficiently "small" marginal impact.  Moreover, in comparing what is in the public domain with its own surmises about the redactions, plaintiff fails to properly apply the "official acknowledgment" doctrine, which governs disclosure in these

3

circumstances.  Under this doctrine, a prior disclosure requires release of classified information

over government objection only if: "(1) the information requested [is] as specific as the

information previously released; (2) the information requested … match[es] the information

previously disclosed; and (3) the information requested ...  already ha[s] been made public

through an official and documented disclosure."  *Am. Civil Liberties Union v. U.S. Dep't of Def.*,

628 F.3d 612, 620-21 (D.C. Cir. 2011).  "Prior disclosure of similar information does not suffice;

instead, the specific information sought by the plaintiff must already be in the public domain by

official disclosure."  *Id.* at 621.  This "insistence on exactitude," *id.*, recognizes that, "in the

arena of intelligence and foreign relations there can be a critical difference between official and

unofficial disclosures."  *Shaffer v. Def. Intelligence Agency*, 102 F. Supp. 3d 1, 9 (D.D.C. 2015).

Accordingly, a plaintiff asserting a claim of official acknowledgement bears the "initial

burden of pointing to specific information in the public domain that appears to duplicate that

being withheld."  *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (quoting *Afshar v. Dep't of

State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)).  Plaintiff has not met this burden here.  Plaintiff

points to publicly available information on the same general topics, only some of which has been

officially disclosed and which is not in any event specific information that matches the withheld

information exactly.  Plaintiff then speculates on the content of the withheld information, but

surmise is not the same as official acknowledgment.  Plaintiff also misreads the case that it cites,

*Rosenberg v. Department of Defense*, 342 F. Supp. 3d 62 (D.D.C. 2018).  To be sure, one

holding of this case was that information regarding the reactions of third-party detainees to their

transfers from Guantanamo was not properly withheld under Exemption 1.  *Id.* at 86.  But this

type of information, that is, the "feelings and thoughts" *of third parties*, is not at issue here.

Otherwise, this decision discussed and applied the "official acknowledgement" doctrine and

made clear that a requestor must strictly satisfy the requirements that the information requested but withheld is "as specific as the information previously released" and "precisely tracks or duplicates" or "matches" that information. *Id.* at 84-85 (internal quotation marks and citations omitted). Plaintiff has failed to do so here.

Defendant addresses plaintiff's arguments with regard to the specific redactions below.

**Redaction Blocks 1-7**: These blocks contain the names of specific countries or foreign leaders, the disclosure of which would reveal the relative importance attached by the President to contacts from one country/leader over another and which are therefore classified under section 1.4(d) of E.O. 13526 (for foreign relations or foreign activities of the United States). Fifth Hardy Decl. ¶¶ 36-39. Plaintiff points out that some of this information identifies which country's leader was first to call President Trump after his inauguration and argues, first, that it is not a secret who called President Trump first. Pl.'s Mem. 8. But, even assuming plaintiff is correct that some of these redacted blocks "match" what has been publicly revealed about the call sequence, and that this information has also been officially acknowledged, the effect of disclosing those blocks is not limited to the disclosure of that information alone. Disclosure of even just some of the blocks in this group of redactions would also reveal the contents of the remaining blocks, which do directly reveal the President's views of the importance of certain countries. Accordingly, any official confirmation, through release, of what is in any of these blocks would risk producing the harm to foreign relations detailed in Section Chief Hardy's declaration.

Plaintiff then makes two attempts to second guess the classification authority's decisions regarding the effect of disclosure on the United States' relations with other countries. Plaintiff argues that identifying which country was first to call, in the context of the discussion in which

these blocks appear, could not *adversely* affect relations with that country because the discussion reveals that the President thought that country was important.  Pl.'s Mem. 8-9.  Plaintiff, of course, is not qualified to determine what will or will not affect such relations.  In any event, even if release of such positive information does not harm the United States' relations with *that* particular country, it is logical and plausible that it could hurt our relations with *other* countries.

Plaintiff also contends that the President's views, in 2017, "cannot reasonably affect international relations today" given that, since taking office, "President Trump has insulted any number of foreign countries using far sharper language."  Pl.'s Mem. 9.  Notwithstanding such other public statements, however, the unreleased statements in the memorandum could nevertheless still affect the government's relationship vis-à-vis those same countries if released. For example, the private statements of the President could further confirm negative views that were subsequently expressed or lend a more positive (or negative) gloss to those statements. *Afshar*, 702 F.2d at 1130-31 ("[u]nofficial leaks and public surmise can often be ignored by foreign governments …, but official acknowledgment may force a government to retaliate"); *Phillippi v. CIA*, 655 F.2d 1325, 1332-33 (D.C. Cir. 1981) (holding that information was properly classified when "official confirmation [of the information sought] could have an adverse effect on our relations with the Soviets" given "the world of international diplomacy, where face-saving may often be as important as substance"); *Am. Civil Liberties Union v. Dep't of Defense*, 389 F. Supp. 2d 547, 561 (S.D.N.Y. 2005) (reasoning that "even if the only question was whether to recognize officially that which was informally or unofficially believed to exist, the niceties of international diplomacy sometimes make it important not to embarrass a foreign country or its leaders, and exemptions from FOIA protect that concern as well").

6

Simply put, the classification authority has determined that release of these statements would impact our relations with other countries, and neither plaintiff, nor this Court, can second guess that decision. *See Halperin v. CIA,* 629 F.2d 144, 148 (D.C. Cir. 1980) (judges "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case"). Plaintiff's attempts to argue that these blocks are not properly classified therefore fail.

**Redaction Block 8**: This redaction withholds the name of an individual in the White House who received a "defensive briefing" in February 2017, classified pursuant to section 1.4(c) of E.O. 13526 (for intelligence activities, sources, or methods). Fifth Hardy Decl. ¶ 31. Plaintiff again seeks to rely on the passage of time by arguing that "[i]t is not plausible that release of this information, nearly two years after the fact, would have any effect on national security," in light of the fact that "it is a matter of common knowledge that White House officials are likely targets of foreign surveillance efforts." Pl.'s Mem. 9-10. However, even if it is accepted that White House officials are "likely targets of foreign surveillance efforts," the fact that one particular White House official was viewed as a possible particular intelligence target at a specific point in time is, as Section Chief Hardy explains, itself useful information that, when pieced together with other information known or publicly accessible by the hostile actors, could cause them to develop countermeasures, abandon known techniques, or identify others to target. Fifth Hardy Decl. ¶ 34; *see Wolf v. CIA,* 473 F.3d 370, 378 (D.C. Cir. 2007) ("[T]he fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption.").

As Section Chief Hardy explains with regard to all the redactions at issue here under 1.4(c), under the mosaic theory even seemingly innocuous, indirect references to an intelligence activity, source, or method could have significant adverse effects when juxtaposed with other

publicly-available data because terrorist organizations and other hostile or foreign intelligence groups have the capacity and ability to gather information from myriad sources, analyze it, and deduce means and methods from disparate details to defeat the U.S. government's collection efforts. Fifth Hardy Decl. ¶ 30; *see generally Salisbury v. United States*, 690 F.2d 966, 971 (D.C. Cir. 1982) (acknowledging "mosaic-like nature of intelligence gathering"). Thus, *general* knowledge about the existence of defensive briefings does not vitiate the need to protect *specific* information about who was briefed when, which could reveal a significant piece of harmful information to our adversaries. This redaction should therefore be upheld as well.

**Redaction Block 9**: This block contains information known to the FBI about Lieutenant General Flynn as of a particular date, classified pursuant to section 1.4(c). Fifth Hardy Decl. ¶ 31. Section Chief Hardy explained that disclosing such information "would reveal particular, singular details about the FBI's intelligence interests, priorities, activities, and methods at a particular time and in relation to a particular set of circumstances," which could harm national security by allowing "adversaries … to avoid or thwart FBI scrutiny and intelligence-gathering efforts." *Id.*

Plaintiff challenges the FBI's claim of this exemption on the ground that its description of the material withheld is too "barebones" and does not provide sufficient detail to "demonstrate that the information withheld logically falls within the claimed exemption." Pl.'s Mem. 10. But, the description – "information known to the FBI about Flynn as of a particular date" – is fairly specific, and, given the limited nature of the redaction (part of one sentence, comprising one line, clearly itself a "barebones" statement), not much more can be said without revealing the information for which protection is sought. Plaintiff also notes that there have been several recent disclosures in connection with criminal cases involving Lieutenant General Flynn and that

8

these disclosures "render[] the FBI's concerns [about harm from disclosure] implausible."  Pl.'s

Mem. 13.  The FBI has considered whether these disclosures affected the withholding

determinations as to these redaction blocks.  Decl. of Michael G. Seidel, Acting Section Chief,

RIDS, ¶ 8, filed herewith.  Acting Section Chief Seidel attests that the information included in

these blocks does not match information that has been the subject of official public disclosures

by the FBI or the Department of Justice, including the particular disclosures made in the Flynn

prosecution that occurred between the filing of the FBI's renewed motion for summary judgment

in this case and the date of this declaration.  *Id.*  He reaffirms that disclosure of this information

would risk harm to national security, notwithstanding these public disclosures.  *Id.*

**Redaction Blocks 10-15 & 18**:  These redaction blocks contain information "about how

the FBI did or did not use information provided by confidential intelligence sources as well as

the reliability of that information," classified pursuant to section 1.4(c).  Fifth Hardy Decl. ¶ 31.

Section Chief Hardy explained that disclosure of this information could reveal "details about the

FBI's intelligence interests, priorities, activities, and methods at a particular time and in relation

to a particular set of circumstances," which could harm national security by allowing

"adversaries … to avoid or thwart FBI scrutiny and intelligence-gathering efforts."  *Id.* ¶ 32.

Plaintiff speculates that these redactions refer to the "Trump Dossier" or a government synopsis

thereof.  Pl.'s Mem. 11-12.  Plaintiff argues that it is not plausible that release of this information

could be harmful to national security given that the synopsis has been officially acknowledged

and now been released (in redacted form).  *Id.* at 12.

The government does not concede that these redactions pertain to the Dossier or the

synopsis.  But, even if they do, Acting Chief Seidel confirms that disclosure of the particular

discussion in these blocks, even given recent release of the synopsis, would still be harmful to

national security because it would reveal specific details about how the FBI did or did not use information provided by confidential intelligence sources as well as the reliability of that information.  Seidel Decl. ¶ 8.  Moreover, the "official acknowledgment doctrine," which requires an exact match between the information withheld and the information released, does not apply here.  Plaintiff provides no evidence that the redactions from the memorandum "match" passages from the Dossier, the synopsis, or any other document.  Indeed, plaintiff's contention that information released in the public version of the synopsis *could* match the withheld information is disingenuous.  The released synopsis is highly redacted, *see* https://www.politico.com/f/?id=00000167-aff0-df35-adef-fff5758a0001, and accordingly there is little chance that *any* match exists between the public information in that document and the information in the redaction blocks here.  In any event, Acting Chief Seidel confirms that there is no "match" between the redacted synopsis and the information in these blocks.  Seidel Decl. ¶ 8.

**Redaction Blocks 16 & 17**:  These blocks contain information concerning whether or not the FBI relied on Foreign Intelligence Surveillance Act ("FISA") surveillance to gather intelligence information about Lieutenant General Flynn.  Fifth Hardy Decl. ¶¶ 31, 33.  As with the previous set of redaction blocks, Section Chief Hardy explained that disclosure of this information could reveal "details about the government's intelligence interests, priorities, activities, and methods at a particular time and in relation to a particular set of circumstances," which could harm national security by allowing "adversaries … to avoid or thwart FBI scrutiny and intelligence-gathering efforts."  *Id.*  Once an intelligence activity, source, or method – or the fact of its use or non-use in a certain situation – is discovered, its continued successful use is seriously jeopardized.  *Id. ¶* 29.

Plaintiff argues that publicly available information indicates that "the FBI created or acquired verbatim records of Flynn's communications with the representative of a foreign power," which, it infers, could only have come about through FISA surveillance.  Pl.'s Mem. 13. The publicly filed documents do not, however, use the phrase "verbatim records."  In addition, plaintiff's guess as to the source of the information that is discussed in the Flynn filing is not the same as official acknowledgment of that fact.  Information about the content of communications can be obtained by the FBI in multiple ways and via a variety of techniques.  As discussed above, in the absence of true official acknowledgment as to whether or not information was obtained through FISA surveillance, that material remains properly classified and the Court should uphold the FBI's claimed exemption.

**<u>Redaction Block 19</u>**:  This block contains information that, if disclosed would reveal "another intelligence method used to gather particular information."  Fifth Hardy Decl. ¶ 31. Plaintiff contends that the FBI had not provided sufficiently specific detail to permit the Court to review the application of the exemption.  However, Section Chief Hardy's claim that this redaction protects another "intelligence method" provides sufficient detail by its own terms to justify classification to protect an "intelligence method."  Further detail is not required, as such detail would only reveal the information for which protection is sought.  *See Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 775 (9th Cir. 2015) (finding explanation that disclosure "would reveal intelligence sources and methods and compromise the intelligence information collection mission effectiveness of the intelligence community" sufficient because "no other information could be revealed without revealing the very information Exemption 1 was designed to protect"). In the alternative, should the Court find that the information provided is insufficient to uphold

11

this redaction, the government requests the opportunity provide an *in camera, ex parte* declaration further explaining this redaction.

**Redaction Block 20**:  This redaction contains President Trump's "observation about responding to a question he was asked about Russian President Putin," classified pursuant to section 1.4(d) because, in the context of other surrounding information, disclosure could reasonably be expected to impair or adversely impact relations with other countries.  Fifth Hardy Decl. ¶ 38.  Plaintiff's challenge to this redaction is similar to that asserted against redaction blocks 1-7 – that release of this one, years-old observation could not affect the United States' relationship with Russia in light of the "President's broad array of prior statements about Russian and its leader."  Pl.'s Mem. 15.  For the same reasons discussed above, plaintiff's speculation about what has been withheld and what may or may not affect foreign relations is entitled to no weight in view of the expert opinion of the FBI declarant that official acknowledgment of the statement included in the redacted portion would affect those relations.

**Redaction Blocks 21-24**:  These blocks similarly contain information reflecting the President's impressions of specific foreign leaders, disclosure of which could reasonably be expected to impair or adversely impact relations with other countries.  Fifth Hardy Decl. ¶ 38. Plaintiff first contends that "it is apparent that redaction blocks 22 and 23 simply identify the leader of Jordan, King Abdullah II, and it is implausible that disclosing that piece of information could cause any effect whatsoever on foreign relations or national security."  Pl.'s Mem. 16.  As stated earlier, even if plaintiff has guessed correctly, a guess based on surmise is very different from official acknowledgment, and the latter may well harm relations where the former did not. Plaintiff's attempt to overcome the exemption through educated guesses must be rejected. Second, in challenging redaction blocks 21 and 24, plaintiff again attempts to second guess the

FBI's conclusion as to whether President Trump's "impressions" of foreign leaders would harm

national security.  The Court should reject this attempt as well, for the reasons discussed above.

## II.     THE FBI PROPERLY WITHHELD PORTIONS OF THE RECORDS PURSUANT TO EXEMPTION 3

FOIA Exemption 3 protects information that is specifically exempted from public

disclosure by a statute that:

> (A)(i) requires that the matters be withheld from the public in such
> a manner as to leave no discretion on the issue; or (ii) establishes
> particular criteria for withholding or refers to particular types of
> matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act
> of 2009, specifically cites to this paragraph.

5 U.S.C. § 552(b)(3).  As explained above and in the FBI's opening memorandum, redaction

blocks 8-19 include information concerning intelligence sources and methods, the disclosure of

which is prohibited under the National Security Act of 1947, 50 U.S.C. § 3024(i)(1).  Fifth

Hardy Decl. ¶ 41.  In addition to being covered by Exemption 1, this information is therefore

also exempt under Exemption 3(A)(ii).  *See CIA v. Sims*, 471 U.S. 159, 167 (1985) (holding that

the prior version of this provision qualifies as a withholding statute under Exemption 3(A)(ii)

because it "clearly 'refers to particular types of matters'").

Plaintiff contests the application of this exemption only on the ground that "the FBI has

failed to make a "logical or plausible" showing of harm to "intelligence sources and methods"

from disclosure for all the same reasons that it failed to make such a showing of harm to national

security under Exemption 1.  However, a showing of harm is not required for proper application

of Exemption 3.  "In exemption 3 cases, the only issues before the Court are the existence of an

exemption 3 confidentiality statute and the inclusion of the withheld matters within the coverage

13

of that statute." *Fonda v. CIA*, 434 F. Supp. 498, 504 (D.D.C. 1977).  The statute at issue here,

50 U.S.C. § 3024(i)(1), does not require a showing of harm.  Plaintiff does not contest that the

redactions at issue are covered by the statute.  Therefore, its challenge to this exemption fails.

## III.  PORTIONS OF THE RECORDS ARE EXEMPT FROM DISCLOSURE PURSUANT TO EXEMPTION 7

### A.  The FBI Properly Withheld Redaction Block 19 Pursuant To Exemption 7(A)

Exemption 7(A) protects "records or information compiled for law enforcement purposes

[when release] could reasonably be expected to interfere with enforcement proceedings."  5

U.S.C. § 552(b)(7)(A).  In order to protect its still-pending investigation into Russian

interference in the election, the FBI is continuing to withhold redaction block 19 pursuant to

Exemption 7(A).  Fifth Hardy Decl. ¶ 55.  Redaction block 19 is a reference to an intelligence

method and the information derived from it that is relevant to the pending investigation.  *Id*.  As

an initial matter – and plaintiff does not dispute – this information was "compiled for law

enforcement purposes."  Second, in addition to the harms to national security that would be

caused by revealing such information, described above and in the FBI's opening memorandum,

the FBI determined that disclosure of this information could also reasonably be expected to cause

interference with its pending investigation.  *Id*.  Specifically, the FBI explained that disclosure of

the use of this particular intelligence method and information derived from it at an identifiable

point in time can reasonably be expected to prematurely reveal particular information or areas of

interest in the investigation, as well as information that is available to the investigators, and

thereby risks revealing some non-public aspects of the focus of the investigation at a specific

point in time.  *Id*.  This would provide targets, potential targets, or others intent on interfering

with the investigation with information that they could use to attempt to undermine the

investigation by fabricating records or information to counter what the investigators already know or adulterating/destroying evidence that the investigators might not already know about or have, or taking other steps to thwart investigative efforts.  *Id.*  Accordingly, the FBI properly relied on Exemption 7(A) to redact this information from the Comey Memos.

Plaintiff argues that, "[o]n the law, the FBI's stated fears about releasing this information cannot support an Exemption 7(A) withholding because the FBI could assert these same vague and conclusory risks about how information might be used against law enforcement in virtually any investigation."  Pl.'s Mem. 19.  But it is CNN that is wrong "[o]n the law."  Exemption 7(A) may be invoked on a "generic" basis, based on categorical types of records.  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 235-36 (1978).  The agency may therefore identify "functional" categories of documents or information that are "sufficiently distinct to allow a court to grasp how each ... category of documents, if disclosed, would interfere with the investigation."  *Bevis v. Dep't of State*, 801 F.2d 1386, 1389, (D.C. Cir. 1986) (internal quotation marks and citations omitted).  Under this approach, the agency need not provide the level of detail required for a *Vaughn* index, *Gould Inc. v. GSA*, 688 F. Supp. 689, 703-04 n.34 (D.D.C. 1988), but may make "a generic showing that disclosure of those particular kinds of investigatory records would generally interfere with enforcement proceedings."  *Hatcher v. U.S. Postal Serv.*, 556 F. Supp. 331, 333 n.1 (D.D.C. 1982).

Using this standard, courts routinely uphold the application of this exemption to records revealing the use of specific investigative techniques and information obtained through these techniques, recognizing that to release this information would generally "permit[] the subjects of the investigation 'to anticipate and possibly alter or negate incriminating evidence which could be used in future prosecutions of himself or other subjects.'"  *Kidder v. FBI*, 517 F. Supp. 2d 17,

31 (D.D.C. 2007) (quoting FBI declaration); *see also Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996) (upholding exemption claim for witness statements where those records "could reveal much about the focus and scope of the Commission's investigation, and are thus precisely the sort of information exemption 7(A) allows an agency to keep secret"); *Owens v. U.S. Dep't of Justice*, No. 04-1701, 2007 WL 778980, at *8 (D.D.C. Mar. 9, 2007) (upholding invocation of Exemption 7(A) over, *inter alia*, information regarding the type of secure communications equipment used by government agents where the FBI explained "that which is obvious given the nature of the information in the documents: the likelihood that disclosure would reveal sensitive strategic information, endanger sources, alert potential suspects, lead to the destruction of evidence, and increase the risk that agents in the field will be detected"); *Suzhou Yuanda Enter., Co. v. U.S. Customs & Border Prot.*, 404 F. Supp. 2d 9, 14 (D.D.C. 2005) (upholding Exemption 7(A) claim over "information that would reveal investigation techniques and procedures for handling seizure cases" where "disclosure of the information … could inform the public of the evidence sought and scrutinized in this type of investigation").  Indeed, *in this very case*, the Court has already held similar statements by the FBI justifying redactions to be sufficiently specific.  *CNN v. FBI*, 298 F. Supp. 3d 124, 130 (D.D.C. 2018).

Plaintiff also contends that the FBI's invocation of this exemption here is wrong "[o]n the facts" because, "[t]o the extent the FBI is raising a concern that releasing this information would allow President Trump or persons acting on his behalf to interfere with the Russia investigation by 'fabricating records' or 'adulterating/destroying evidence' relating to that conversation, such concerns presuppose that the President has not already seen an unredacted version of the memo." Pl.'s Mem. 19.  Plaintiff then speculates that, because of his classification authority, the President has or could easily "view the redacted information at will and share it with anyone

16

else." *Id.* Plaintiff finally opines that "[w]ithholding that information from the *public* … does nothing to address the FBI's stated concerns as to possible interference with the investigation." *Id.* But this argument is nothing more than speculation built on speculation. There is no evidence that the FBI is solely (or even) concerned with allowing "President Trump and persons acting on his behalf" access to this information, and not public access generally, or that the President could or will seek access to the redacted information. Plaintiff cannot overcome the FBI's legitimate assertion of this privilege based on these fanciful assumptions.

### B. The FBI Properly Withheld Redaction Blocks 16 and 17 Pursuant To Exemption 7(E)

Exemption 7(E) protects "records or information compiled for law enforcement purposes [when release] would disclose techniques and procedures for law enforcement investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E). The FBI has applied Exemption 7(E) to withhold redaction blocks 16 and 17, which contain information that would reveal whether or not the FBI conducted FISA-authorized surveillance of Lieutenant General Flynn. Fifth Hardy Decl. ¶ 52. The FBI explained that FISA-authorized surveillance is a technique used to further FBI national security investigations, as well as its intelligence mission, and that disclosure of such non-public details about when and against which targets the FBI has or has not conducted such surveillance would reveal the circumstances under which the FBI will or will not seek authority to do so. *Id.* Over time, disclosure of such information would create a mosaic that criminals and other adversaries could use to predict when, where, and against whom surveillance may occur; detect it when it is occurring; and develop and utilize countermeasures to defeat or avoid it. *Id.*

Plaintiff contends that, because the FBI has already disclosed that it "created or obtained verbatim recordings of Flynn's communications with a representative of a foreign power," "the

17

key information here with respect to the FBI's mosaic theory – when, where, and against whom surveillance may occur – is already public knowledge." Pl.'s Mem. 20. Plaintiff's allegations regarding what is public knowledge are wrong. The authorities cited by Plaintiff do not reveal that the FBI has "created or obtained" verbatim recordings. They reveal only that, in their interview with Lieutenant General Flynn, the FBI "used the exact words" Flynn had used in his contact with the Russian ambassador. *See* Gov.'s Reply to Def.'s Mem. in Aid of Sentencing at 3, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 14, 2018), Dkt. 56; *Id.*, Ex. B at 3. But the source of those "exact words" is never identified, and plaintiff can only speculate that the words came from FISA surveillance. There has never been official acknowledgment as to whether or not the FBI conducted FISA surveillance of Lieutenant General Flynn.

18

## <u>CONCLUSION</u>

For the reasons stated above and in the FBI's opening memorandum, defendant's motion for summary judgment should be granted and plaintiff's cross-motion for summary judgment should be denied.

Dated:  March 1, 2019

Respectfully submitted,

CHAD A. READLER
Principal Deputy Assistant Attorney General
Civil Division

MARCIA BERMAN
Assistant Director, Civil Division

*/s/Carol Federighi*
CAROL FEDERIGHI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CABLE NEWS NETWORK, INC.,

     Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION,

     Defendant.

Civil Action No. 1:17-cv-1167-JEB

### DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am currently the Assistant Section Chief ("ASC") of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD") of the Federal Bureau of Investigation ("FBI") in Winchester, Virginia, and, in the absence of RIDS Section Chief, David M. Hardy, I serve as Acting Section Chief for RIDS.

(2)     I joined the FBI in September 2011, and, prior to my current position, I was the Unit Chief, RIDS Litigation Support Unit, from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of the General Counsel, Freedom of Information Act ("FOIA") Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act ("PA") litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney at the U.S. Drug Enforcement Administration ("DEA") from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIA/PA matters and served as agency counsel representing the DEA in FOIA/PA lawsuits nationwide. I also served as a U.S. Army Judge Advocate General's Corps Officer in various assignments from 1994 to September 2006,

1

culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation Division, where I oversaw FOIA/PA litigation for the U.S. Army. I am an attorney registered in the State of Ohio (inactive status) and the District of Columbia (active status).

(3)    In my official capacity as Acting Section Chief of RIDS, I supervise approximately 234 employees who staff a total of twelve Federal Bureau of Investigation Headquarters ("FBIHQ") units and three field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(4)    Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of the FOIA requests to the FBI at issue in this litigation, which was originally consolidated under Civil Action No. 17-cv-1167 (D.D.C.), to include the following lawsuits: *CNN v. FBI,* 17-cv-1167 (D.D.C.); *Gannett Satellite Information Network et al. v. DOJ*, 17-cv-1175 (D.D.C.); *Judicial Watch v. DOJ*, 17-cv-1189 (D.D.C.); *Freedom Watch v. DOJ & FBI*, 17-cv-1212 (D.D.C.); and *Daily Caller v. DOJ*, 17-cv-1830 (D.D.C.). *See* Civil Action No. 17-cv-1167 (D.D.C.), Minute Order dated July 26, 2017 (consolidating all lawsuits

2

except the Daily Caller lawsuit) and Minute Order dated September 7, 2017 (consolidating the Daily Caller lawsuit).

(5)    The only remaining plaintiff in the consolidated cases is CNN.

(6)    This declaration incorporates by reference and supplements all prior declarations submitted in this case:  ECF No. 22-2, Declaration of David M. Hardy (October 13, 2017) ("First Hardy Declaration"); ECF No. 36-1, Second Declaration of David M. Hardy (November 5, 2017) ("Second Hardy Declaration"); ECF No. 45-2, Third Declaration of David M. Hardy (January 19, 2018) ("Third Hardy Declaration"); ECF No. 55-1, Fourth Declaration of David M. Hardy (February 8, 2018) ("Fourth Hardy Declaration"); ECF No. 69-2, Fifth Declaration of David M. Hardy (December 14, 2018) ("Fifth Hardy Declaration"); the *in camera* and *ex parte* declaration previously submitted in support of the FBI's motion for partial summary judgment regarding the Comey Memos (ECF No. 22), *see In Camera, Ex Parte* Declaration of the FBI (October 13, 2017); the *in camera* and *ex parte* declaration submitted in conjunction with the FBI's second motion for partial summary judgment (ECF No. 45), *see In Camera, Ex Parte* Declaration of David Archey (January 19, 2018); the *in camera* and *ex parte* declaration submitted in further support of the FBI's first motion for partial summary judgment (ECF No. 47), *see* Third *In Camera, Ex Parte* Declaration of David Archey (January 31, 2018); and the sealed on-the-record, *ex parte* proffer of Michael R. Dreeben, Counsel to the Special Counsel. *See* ECF No. 49, Memorandum Opinion, at p. 5.

(7)    This declaration is being submitted in conjunction with the FBI's reply in support of its renewed motion for summary judgment in this case.  This declaration is also being submitted in support of the FBI's Opposition to Plaintiff's Motion for Access to Sealed Judicial Records.

3

(8)     In the Fifth Hardy Declaration, the FBI explained that it had considered whether any of the minimal redactions that remain in the Comey Memos had been the subject of any official documented public disclosures. *See* ECF No. 69-2, Fifth Hardy Declaration, p. 21. Since then, additional official public disclosures have been made in the prosecution of Lieutenant General Flynn and the FBI released, in part, the document that plaintiff refers to as the "synopsis" (which the FBI refers to as Annex A) in response to FOIA litigation brought by the James Madison Project and Josh Gerstein, *JMP et al. v. DOJ*, 17-cv-0144 (D.D.C.). In light of these subsequent disclosures, the FBI considered whether these disclosures affected the withholding determinations as to any of the remaining redactions in the Comey Memos, and particularly information withheld under Redaction Blocks 9, 10-15, and 18. As a result, the FBI reaffirms that the information redacted in the Comey Memos does not match information that has been the subject of official public disclosures by the FBI or DOJ, including the particular disclosures made in the Flynn prosecution and of Annex A that occurred between the filing of the FBI's renewed motion for summary judgment in this case and the date of this declaration, and that continued redaction is necessary to protect national security and law enforcement interests, as outlined in the Fifth Hardy Declaration.

(9)     Plaintiff has also sought access to the two *in camera* and *ex parte* declarations submitted in support of the FBI's original motion for partial summary judgment regarding the Comey Memos (ECF No. 22), *see In Camera, Ex Parte* Declaration of the FBI (October 13, 2017), and Third *In Camera, Ex Parte* Declaration of David Archey (January 31, 2018), as well as sealed on-the-record, *ex parte* proffer of Michael R. Dreeben, Counsel to the Special Counsel, which were referenced previously in paragraph 5. The FBI has reviewed the above-identified *in camera, ex parte* declarations and has concluded that they can be published in part on the public

4

docket. The redacted versions of the declarations are attached hereto as Exhibits A and B. However, portions of both declarations must remain undisclosed to avoid adversely affecting the pending investigation currently being conducted by Special Counsel Mueller's office. Specifically, the portions of the two declarations that have been redacted would reveal information about the focus and scope of the Special Counsel Office's investigation that have not been officially publicly disclosed, and which if disclosed now could reasonably be expected to cause the types of harms generally outlined in those declarations themselves. The FBI cannot provide any further details publicly about the potential harms because such disclosure would also risk those harms occurring.

(10)    The redacted versions of the two *in camera, ex parte* declarations are attached hereto as Exhibits A and B.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A and B attached hereto are true and correct copies.

Executed this 28th day of February, 2019.

MICHAEL G. SEIDEL
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CABLE NEWS NETWORK, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 1:17-cv-1167-JEB |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |

**DECLARATION OF MICHAEL G. SEIDEL**

# EXHIBIT A

UNCLASSIFIED//~~LES~~

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CABLE NEWS NETWORK, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>      Defendant. | Civil Action No. 1:17-cv-01167-JEB |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*,<br><br>      Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE,<br><br>      Defendant. | Civil Action No. 1:17-cv-01175-JEB |
| JUDICIAL WATCH, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE,<br><br>      Defendant. | Civil Action No. 1:17-cv-01189-JEB |
| FREEDOM WATCH, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION,<br><br>      Defendants. | Civil Action No. 1:17-cv-01212-JEB |

UNCLASSIFIED//~~LES~~

UNCLASSIFIED/~~LES~~

THE DAILY CALLER NEWS
FOUNDATION,

     Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

     Defendant.

Civil Action No. 1:17-cv-01830-JEB

## THIRD *IN CAMERA, EX PARTE* DECLARATION OF DAVID W. ARCHEY

(U)  I, DAVID W. ARCHEY, declare as follows:

(1)    (U)  I have been a Special Agent with the Federal Bureau of Investigation (FBI) for approximately seventeen (17) years.  I was assigned to the Counterintelligence Division at FBI Headquarters as a Deputy Assistant Director in August 2017 to supervise all FBI personnel assigned to the Special Counsel's investigation.[1]  Before then, I served as the Deputy Assistant Director of the Weapons of Mass Destruction Directorate at FBI Headquarters.  Prior to that, I was a Section Chief in the Counterintelligence Division at FBI Headquarters, where I supported counterintelligence operations since 2014.

(2)    (U)  The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.  I have been advised about plaintiffs'

---

[1] (U) On May 17, 2017, Deputy Attorney General Rod Rosenstein named former FBI Director Robert S. Mueller, III as Special Counsel to conduct the investigation into Russia's interference with the 2016 Presidential election.  DOJ Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017).

UNCLASSIFIED/~~LES~~

UNCLASSIFIED/~~LES~~

Freedom of Information Act ("FOIA") requests to the FBI that are the subject of this litigation

concerning former FBI Director James B. Comey's memoranda memorializing his conversations

with President Donald J. Trump (*i.e.*, the "Comey Memos"), and that the FBI denied those

requests in full.

(3)     (U)  This declaration supplements and incorporates by reference my first

declaration in this case – *In Camera, Ex Parte* Declaration of the FBI (October 13, 2017).

(4)     ~~(U//LES)~~  In my prior declaration, I explained that the Comey Memos have been

incorporated into a pending investigation and thus compiled as investigative records.  *See In*

*Camera, Ex Parte* Declaration of the FBI (October 13, 2017) at fn. 2.  Regarding when this

compilation occurred, on or by ███████████ following the termination of former Director

Comey, the Comey Memos – which were previously maintained by the Director's staff – were

████████████████████, at which point they were compiled as investigative records

into the FBI's case file.  It is my understanding that the FBI invoked FOIA Exemption (b)(7)(A)

and declined to produce the Comey Memos in response to plaintiffs' FOIA requests on June 23,

2017, after the date they were compiled as investigative records.  *See John Doe Agency v. John*

*Doe Corp.*, 493 U.S. 146, 155 (1989) ("Under the statute, documents need only to have been

compiled when the response to the FOIA request must be made.").

UNCLASSIFIED/~~LES~~

3

UNCLASSIFIED/~~/LES~~

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 31st day of January, 2018.

DAVID W. ARCHEY
Deputy Assistant Director
Counterintelligence Division
Federal Bureau of Investigation
Washington D.C.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CABLE NEWS NETWORK, INC.,

      Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION,

      Defendant.

Civil Action No. 1:17-cv-1167-JEB

<u>**DECLARATION OF MICHAEL G. SEIDEL**</u>

# EXHIBIT B

UNCLASSIFIED/~~/LES~~

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CABLE NEWS NETWORK, INC., <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendant. | Civil Action No. 1:17-cv-01167-JEB |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 1:17-cv-01175-JEB |
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 1:17-cv-01189-JEB |
| FREEDOM WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION, <br><br> Defendants. | Civil Action No. 1:17-cv-01212-JEB |

UNCLASSIFIED/~~/LES~~

UNCLASSIFIED/~~LES~~

---

THE DAILY CALLER NEWS
FOUNDATION,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendant.

Civil Action No. 1:17-cv-01830-JEB

---

### *IN CAMERA, EX PARTE* DECLARATION OF THE FBI

~~(U//LES)~~ I, DAVID W. ARCHEY, declare as follows:

    (1)    ~~(U//LES)~~ I have been a Special Agent with the Federal Bureau of Investigation

(FBI) for approximately sixteen and a half (16.5) years. I was assigned to the

Counterintelligence Division at FBI Headquarters as a Deputy Assistant Director in September

2017 to supervise all FBI personnel assigned to the pending Special Counsel investigation into

Russia's interference with the 2016 Presidential election.[1] Before then, I served as the Deputy

Assistant Director of the Weapons of Mass Destruction Directorate at FBI Headquarters. Prior

to that, I was a Section Chief in the Counterintelligence Division at FBI Headquarters, where I

supported counterintelligence operations since 2014.

    (2)    (U) To my knowledge, at this time no FBI personnel currently assigned to the

Russian interference investigation are publicly known. Because of the high profile and sensitive

nature of the investigation, and to avoid any potential interference with the ongoing

investigation, my identity and association with the investigation cannot be disclosed on the

---

[1] On May 17, 2017, Deputy Attorney General Rod Rosenstein named former FBI Director Robert S. Mueller, III as Special Counsel to conduct the investigation into Russia's interference with the 2016 Presidential election. DOJ Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the 2016 Presidential Election and Related Matters (May 17, 2017)).

UNCLASSIFIED/~~LES~~

public record.

    (3)    (U) The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith. I have been advised about plaintiffs' Freedom of Information Act ("FOIA") requests to the FBI for all memos or other documents by former FBI Director James B. Comey discussing or memorializing conversations with President Donald J. Trump, and that the FBI denied those requests in full. This declaration is being submitted to supplement the public declaration of David M. Hardy, Section Chief (SC) of the FBI's Record/Information Dissemination Section ("RIDS"), and to support the FBI's motion for partial summary judgment.

## FOIA EXEMPTION (b)(7)(A) – PENDING ENFORCEMENT PROCEEDINGS

    (4)    (U) SC Hardy explained in his public declaration that the FBI is withholding in full the records responsive to plaintiffs' request – *i.e.*, the "Comey Memos" – because disclosure could reasonably be expected to adversely affect the pending investigation into Russia's interference in the 2016 Presidential election. However, little explanation of the reason for this conclusion could be provided publicly without causing the very harms that the FBI is trying to avoid. Additional details about the harms to the pending investigation are provided below.

    (5)    ~~(U//LES)~~ The FBI and the Special Counsel's Office have determined that disclosure of the Comey Memos – or any portions of them – could reasonably be expected to adversely affect the pending Russia investigation. Former FBI Director James B. Comey is ███. The Comey Memos are his contemporaneous notes about incidents that are of interest in that investigation (*i.e.*, the records sought here), and are

UNCLASSIFIED//~~LES~~

███████████████████████████████████ in the Russia investigation.[2]

(6)    ~~(U//LES)~~ Consistent with its standard practices, the FBI has not publicly disclosed information and evidence collected in its pending Russia investigation, including the Comey Memos, nor has the Special Counsel done so.  Indeed, beyond the FBI's general acknowledgment of an investigation into Russia's interference in the 2016 Presidential election, details about the targets, witnesses, focus, scope, and nature of the investigation have not been publicly disclosed, confirmed, or denied by either the FBI or the Special Counsel.

(7)    ~~(U//LES)~~ In the context of the pending Russia investigation, disclosing the Comey Memos risks █████████████████████████████████████████ ████████████████████████████████████████████████ contained therein.  Disclosing ███████████████████████ especially when those statements identify ██████████████████████████, also reveals aspects of specific, non-public areas of investigative interest.  Disclosure would further suggest a map of possible investigative activity, which could reasonably be expected to result in a race to the evidence pertinent to such activity.

(8)    ~~(U//LES)~~ The FBI has considered whether former Director Comey's public testimony before Congress in June 2017 would alleviate or overcome the normal concerns associated ██████████████████ during pending investigations, and have concluded that it would not.  Notwithstanding former Director Comey's testimony – as a private citizen – to the Senate Select Committee on Intelligence ("SSCI") on June 8, 2017, revealing the memos

---

[2] ~~(U//LES)~~  The fact that the Comey Memos *in toto* have been incorporated into the pending investigation and thus recompiled as investigative records satisfies Exemption (b)(7)'s threshold requirement – *i.e.*, "records or information compiled for law enforcement purposes."

UNCLASSIFIED//~~LES~~

4

UNCLASSIFIED/~~/LES~~

themselves risks substantial harm to the investigation because former Director Comey did not

publish the memos, nor did his testimony cover everything contained in the memos. Disclosure

of the memos, in any capacity, would provide substantially more information about his recorded,

contemporaneous recollections than his testimony provided, thereby increasing the effectiveness

of any potential efforts to impede or compromise the Russia investigation. For example, the

memos discuss sensitive details regarding the progress of the pending Russia investigation as of

the dates of the meetings or conversations memorialized in them.  Specifically, ███████████

████████████████ and a confidential human source is identified ███████████████████

███████ as well as evidence obtained therefrom, and investigative steps taken or not yet taken in

the investigation as of the dates of the meetings memorialized in the memos are revealed.  The

memos also identify at least one investigative target and reflect aspects of the investigation as of

those dates.  In short, the memos include highly sensitive information from the pending

investigation.  None of this information was the subject of former Director Comey's testimony.

Former Director Comey did not ██████████████████████ or confidential source;

describe the information provided by the source or the FBI's investigative interest in it; or

otherwise explicitly describe the pending investigation.  Disclosure of any of this non-public

information would cause the harms discussed above.

(9)    ~~(U//LES)~~ The FBI has specifically considered whether we can release those

portions of the Comey Memos about which he testified before SSCI on June 8, 2017, and we

have concluded that we cannot.  Former Director Comey's testimony was not an official public

release by the FBI because he was no longer the FBI Director or a government official at the

time.  But aside from there being no waiver of the content of the memos for this reason,

disclosing those portions of the Comey Memos that are the same or substantially similar to

former Director Comey's testimony could reasonably be expected to harm the pending

investigation, notwithstanding that very testimony, again, due to the harms described above.

(10)   ~~(U//LES)~~ Finally, in addition to not being able to disclose the Comey Memos –

in whole or in part – without risking adverse effects on the pending Russia investigation, the FBI

also cannot disclose the total number of Comey Memos or the total number of pages of memos

without risking harm to the investigation.  While former Director Comey testified publicly about

having nine conversations with President Trump and documenting all or almost all of them, he

did not explicitly disclose the total number of memos he authored or provide any specific

information about the level of detail they do or do not contain.  The FBI and the Special Counsel

also have not publicly stated how many Comey Memos exist or whether one exists for each

conversation.  Moreover, neither the FBI nor the Special Counsel has disclosed any information

suggesting the length of the memos, individually or in total, or any other information about them,

such as the detail and extent to which they document the meetings that they memorialize.  Public

and official confirmation by the FBI about whether each conversation was documented or

whether only a subset of them was, could reasonably be expected to affect the testimony of

people knowledgeable about the conversations – *e.g.*, what and how much they tell investigators,

whether they try to hide or fabricate information – based on what is already known (or not

known) by the investigators.  Similarly, the volume of the records would tend to show the public

– and also potential subjects of the investigation – how detailed former Director Comey's

recollections of the meetings were, and the extent to which his public testimony was a

comprehensive review of his memos or only a partial disclosure.  As with disclosing the total

number of Comey Memos, disclosing the volume of pages comprising the memos could

reasonably be expected to affect the testimony of people knowledgeable about the conversations

UNCLASSIFIED//LES

by revealing to them information suggestive of how much investigators already know – or do not

know – about the conversations.

### FOIA EXEMPTION (b)(1) – CLASSIFIED INFORMATION

(11)    ~~(U//LES)~~ As explained in SC Hardy's public declaration, the Comey Memos

contain some information that is classified under subsections 1.4(c) and 1.4(d) of EO 13526, in

order to protect intelligence activities, sources, and methods and foreign relations or activities of

the United States.  More particularly, the memos contain classified discussions concerning:

████████████████████████████████ the ████████████ identity of a confidential

source, as well as details of foreign intelligence information obtained from and through this

source by the FBI ██████████████████████████; information about

whether the FBI initiated coverage through the Foreign Intelligence Surveillance Act (FISA) on

a particular individual; ████████████████████████████████████

█████████████████████████; the sources and methods used in the

investigation; and information concerning the President's foreign-policy decisionmaking.  This

information is currently and properly classified pursuant to § 1.4(c).

(12)    ~~(U//LES)~~ The memos also identify specific foreign governments and officials,

and reflect particular, non-public interactions between them and the United States Government,

the public disclosure of which could reasonably be expected to affect the United States'

relationships with those countries.  In addition, the revelation of the confidential source's name

would identify the confidential source's ████████████████████████

████████████████████████████████████████████

████████████, and would restrict the ability of the FBI to continue to investigate and

collect evidence in the Russian interference investigation.  Accordingly, this information is

UNCLASSIFIED//LES

7

UNCLASSIFIED//~~LES~~

currently and properly classified pursuant to § 1.4(d).

### FOIA EXEMPTION (b)(7)(E) – LAW ENFORCEMENT TECHNIQUES AND PROCEDURES

(13)   (U)  SC Hardy explained in his public declaration that the Comey Memos contain

information about law enforcement techniques and procedures utilized in the investigation of

Russia's interference in the 2016 Presidential election that the FBI has protected pursuant to

Exemption (b)(7)(E).  However, he could not provide any further information about the protected

techniques or procedures without undermining the FBI's use of them and/or causing harm

protected against by Exemption (b)(7)(A).

(14)   ~~(U//LES)~~ The FBI is protecting its use of at least one particular technique or

procedure in the pending Russia investigation, which is discussed in the Comey Memos – *i.e.*,

use of confidential sources.  Neither DOJ, the FBI, nor the Special Counsel has publicly

acknowledged the use of confidential sources in the investigation, and disclosure of this

information could reasonably be expected to undermine the effectiveness of their use and

jeopardize the particular source referenced in the memos.  Negating the effectiveness of this

technique generally and of this source specifically could reasonably be expected to adversely

affect the investigation.[3]

(15)   ~~(U//LES)~~ Use of confidential sources is a vital investigative tool used by the FBI,

but key to the utility of the technique is maintaining the confidentiality of the sources.  If the FBI

were to release information about and provided by its sources, they could be subjected to efforts

to curtail their cooperation or undermine their assistance, as well as retaliation, intimidation, and

physical or mental harm.  This would have a chilling effect on the pending investigation, not

---

[3] ~~(U//LES)~~ The use and identity of the confidential source here is also covered by Exemptions (b)(1) and (b)(3), which protect intelligence sources and methods.

UNCLASSIFIED//~~LES~~

only with respect to these particular sources' continued cooperation but also with respect to the

cooperation of other witnesses or sources, who would reasonably fear exposure.  It is implicit in

investigations such as the pending Russian interference investigation that a source's identity and

the information/assistance he/she/it provided will be afforded confidentiality.  The FBI goes to

great lengths to protect and maintain its sources' confidentiality because sources are an integral

part of successful investigations and prosecutions.

(16)    (U//LES) Disclosing information in the Comey Memos reflecting the FBI's use

of confidential sources in relation to the Russia investigation could also reasonably be expected

to reveal the confidential source's ability to access information, allowing adversaries the

opportunity to take steps to undermine or counteract that access, and thereby stop an effective

means of foreign intelligence and evidence gathering used by the FBI.

(17)    (U)  For the preceding reasons, disclosure of the FBI's use of this technique at this

time would risk circumvention of the law.  And for the same reasons, it could reasonably be

expected to adversely affect the pending investigation.

(18)    (U//LES) Moreover, this information independently would be subject to FOIA

Exemption (b)(7)(D).  However, publicly asserting Exemption (b)(7)(D) would reveal the very

information that the FBI is protecting under Exemptions (b)(7)(A) and (b)(7)(E) – *i.e.*, the use of

confidential sources in this investigation.  Accordingly, the FBI concluded that the only way to

avoid these harms was to raise Exemption (b)(7)(D) only *in camera* and *ex parte* as part of its

Exemption (b)(7)(E) explanation.

(19)    (U//LES) FOIA Exemption (b)(7)(D) protects records or information compiled

for law enforcement purposes when disclosure:

UNCLASSIFIED//~~LES~~

> could reasonably be expected to disclose the identity of a
> confidential source, including a State, local or foreign agency or
> authority or any private institution which furnished information on
> a confidential basis, and, in the case of a record or information
> compiled by a criminal law enforcement authority in the course of
> a criminal investigation or by an agency conducting a lawful
> national security intelligence investigation, information furnished
> by the confidential source.

5 U.S.C. § 552(b)(7)(D). Exemption (b)(7)(D) provides categorical protection for the identities

of confidential sources, as well as information provided by such a source in a criminal or

national security investigation. No balancing of interests is required and the public's interest in

the information is not a factor. Rather, once the FBI establishes that the source provided

information under express or implied assurances of confidentiality, the identity of the source and

all information the source provided in a criminal or national security investigation are exempt

under Exemption (b)(7)(D).

    (20)   (U//~~LES~~) Here, the information subject to Exemption (b)(7)(D) in the Comey

Memos consists of ████████████████████ confidential source, as well as information

provided by the source, ████████████████████████████

████████████████ . ████████ sources operate under express assurances of

confidentiality. This alone entitles this information to protection under Exemption (b)(7)(D).

Moreover, the information provided by the confidential source is entitled to protection under the

second clause of Exemption (b)(7)(D). Consequently, both the identity of the source, ████████

████████ , and the information provided by this source, are entitled to protection under

Exemption (b)(7)(D).

UNCLASSIFIED/ ~~/LES~~

## WAIVER AND SEGREGATION

(21)     (U/~~LES~~) Official Government statements and comments have been carefully

reviewed and compared against the Comey Memos to determine whether there is any

information in the memos that is as exact as information already made public in official

statements or comments.  The FBI has concluded that no official Government statements or

comments have been made that precisely match anything in the Comey Memos.  While there are

some similarities, there are no exact matches and any particular words from official statements or

comments that seem to match information in the Comey Memos is inextricably intertwined with

non-matching words and contents such that waiver has not occurred and segregation is not

reasonably possible.

UNCLASSIFIED/ ~~/LES~~

UNCLASSIFIED/~~LES~~

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed this 13th day of October, 2017.

DAVID W. ARCHEY
Deputy Assistant Director
Counterintelligence Division
Federal Bureau of Investigation
Washington D.C.