**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CABLE NEWS NETWORK, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>        Defendant. | Civil Action No. 1:17-cv-01167-JEB |

### NOTICE OF FILING OF DECLARATION BY THE FEDERAL BUREAU OF INVESTIGATION

As represented by the Federal Bureau of Investigation ("FBI") in its Notice in Response to the Court's Order of April 1, 2019 (ECF No. 79), attached please find a declaration explaining why the remaining redactions to the *In Camera, Ex Parte* Declaration of the FBI (Oct. 13, 2017) (ECF No. 79-2), continue to be necessary.

Dated:  April 15, 2019

Respectfully submitted,

HASHIM M. MOOPPAN
Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Civil Division

*/s/Carol Federighi*
CAROL FEDERIGHI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CABLE NEWS NETWORK, INC.,

      Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION,

      Defendant.

Civil Action No. 1:17-cv-1167-JEB

## SIXTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Information Management Division ("IMD"), in Winchester, Virginia.[1] I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 242 employees who staff a total of twelve Federal Bureau of Investigation Headquarters ("FBIHQ") units and three field operational service center units whose collective mission is to effectively

---

[1] IMD was previously the Records Management Division or RMD.

plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010), and the preparation of declarations in support of Exemption (b)(1) claims asserted under the FOIA. I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Specifically, I am aware of the FBI's handling of the FOIA requests to FBI at issue in this litigation, which was originally consolidated under Civil Action No. 17-cv-1167 (D.D.C.), to include the following lawsuits: *CNN v. FBI,* 17-cv-1167 (D.D.C.); *Gannett Satellite Information Network et al. v. DOJ,* 17-cv-1175 (D.D.C.); *Judicial Watch v. DOJ,* 17-cv-1189 (D.D.C.); *Freedom Watch v. DOJ & FBI,* 17-cv-1212 (D.D.C.); and *Daily Caller v. DOJ,* 17-cv-1830 (D.D.C.). *See* Civil Action No. 17-cv-1167 (D.D.C.), Minute Order dated July 26, 2017 (consolidating all lawsuits except the Daily Caller lawsuit) and Minute Order dated September 7, 2017 (consolidating the Daily Caller lawsuit).

2

(4)     The only remaining plaintiff in the consolidated cases is CNN.

(5)     This declaration incorporates by reference and supplements all prior declarations submitted in this case: ECF No. 22-2, Declaration of David M. Hardy (October 13, 2017) ("First Hardy Declaration"), ECF No. 36-1, Second Declaration of David M. Hardy (November 5, 2017) ("Second Hardy Declaration"), and ECF No. 45-2, Third Declaration of David M. Hardy (January 19, 2018) ("Third Hardy Declaration"); ECF No. 55-1, Fourth Declaration of David M. Hardy (February 8, 2018); ECF No. 69-2, Fifth Declaration of David M. Hardy (December 14, 2018) ("Fifth Hardy Declaration"); ECF No. 75-1, Declaration of Michael G. Seidel (February 28, 2019); the *in camera* and *ex parte* declaration previously submitted in support of the FBI's motion for partial summary judgment regarding the Comey Memos (ECF No. 22), *see In Camera, Ex Parte* Declaration of the FBI (October 13, 2017) (*see* ECF No. 75-1, Declaration of Michael G. Seidel, Exhibit B, and ECF No. 79-1, Exhibit B); the *in camera* and *ex parte* declaration submitted in conjunction with the FBI's second motion for partial summary judgment (ECF No. 45), *see In Camera, Ex Parte* Declaration of David Archey (January 19, 2018); the *in camera* and *ex parte* declaration submitted in further support of the FBI's first motion for partial summary judgment (ECF No. 47), *see* Third *In Camera, Ex Parte* Declaration of David Archey (January 31, 2018) (*see* ECF No. 75-1, Declaration of Michael G. Seidel, Exhibit A, and ECF No. 79-1, Exhibit A); and the sealed on-the-record, *ex parte* proffer of Michael R. Dreeben, Counsel to the Special Counsel. *See* ECF No. 49, Memorandum Opinion, at p. 5.

(6)     This declaration is being submitted in further support of Defendant's Opposition to Plaintiff's Motion for Access to Sealed Judicial Records. In a declaration dated February 28, 2019, Assistant Section Chief Michael Seidel explained the bases for redacting certain information from the two *in camera* and *ex parte* declarations submitted in support of the FBI's

original motion for partial summary judgment regarding the Comey Memos (ECF No. 22), *see In Camera, Ex Parte* Declaration of the FBI (October 13, 2017), and Third *In Camera, Ex Parte* Declaration of David Archey (January 31, 2018), as well as sealed on-the-record, *ex parte* proffer of Michael R. Dreeben, Counsel to the Special Counsel. *See* ECF No. 79-1 at ¶ 8. Specifically, ASC Seidel explained that portions of both declarations could not be disclosed without risking adverse effects to the then-still pending investigation being conducted by Special Counsel Mueller's office. That decision was based on consultation and coordination between the FBI and the Special Counsel's Office (SCO) regarding disclosure of the two *in camera* and *ex parte* declarations. Following conclusion of the Special Counsel's investigation, the FBI and the SCO re-reviewed the two declarations and concluded that one could be released in full (*see* ECF No. 79-1, Exhibit A). As a result of that further review, the FBI concluded that regardless of the conclusion of the SCO investigation, certain discrete information on two pages of the other declaration needed to remain redacted in order to protect FBI law enforcement interests. Specifically, information redacted on both pages reveals non-public information about intelligence methods, including methods related to intelligence sources, relied upon in the investigation into Russian interference in the 2016 Presidential election. The FBI is obligated to protect such information under the National Security Act of 1947, regardless of the conclusion of the investigation or whether the information is classified. Also, some of these same redactions could, if lifted, expose information that the FBI would typically redact under Exemption (b)(7)(E) in a FOIA case to protect aspects of the law enforcement technique of utilizing confidential human sources. The FBI cannot provide any further details publicly about the still withheld information or the potential harms from disclosure because such disclosure would risk those harms occurring. Upon further review, however, the government is releasing additional

language on one of the pages, page seven, that had previously been redacted.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that Exhibit A attached hereto is a true and accurate copy.

Executed this 15 day of April , 2019.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CABLE NEWS NETWORK, INC.,

      Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION,

      Defendant.

Civil Action No. 1:17-cv-1167-JEB

## SIXTH DECLARATION OF DAVID M. HARDY

# EXHIBIT A

UNCLASSIFIED//~~LES~~

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CABLE NEWS NETWORK, INC., | Civil Action No. 1:17-cv-01167-JEB |
| Plaintiff, | |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION, | |
| Defendant. | |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, d/b/a USA TODAY, *et al.*, | Civil Action No. 1:17-cv-01175-JEB |
| Plaintiffs, | |
| v. | |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| JUDICIAL WATCH, INC., | Civil Action No. 1:17-cv-01189-JEB |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| FREEDOM WATCH, INC., | Civil Action No. 1:17-cv-01212-JEB |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE and FEDERAL BUREAU OF INVESTIGATION, | |
| Defendants. | |

UNCLASSIFIED//~~LES~~

1

UNCLASSIFIED//~~LES~~

THE DAILY CALLER NEWS
FOUNDATION,

      Plaintiff,

v.

UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendant.

Civil Action No. 1:17-cv-01830-JEB

### *IN CAMERA, EX PARTE* DECLARATION OF THE FBI

(U//~~LES~~) I, DAVID W. ARCHEY, declare as follows:

(1)     (U//~~LES~~) I have been a Special Agent with the Federal Bureau of Investigation

(FBI) for approximately sixteen and a half (16.5) years. I was assigned to the

Counterintelligence Division at FBI Headquarters as a Deputy Assistant Director in September

2017 to supervise all FBI personnel assigned to the pending Special Counsel investigation into

Russia's interference with the 2016 Presidential election.[1] Before then, I served as the Deputy

Assistant Director of the Weapons of Mass Destruction Directorate at FBI Headquarters. Prior

to that, I was a Section Chief in the Counterintelligence Division at FBI Headquarters, where I

supported counterintelligence operations since 2014.

(2)     (U) To my knowledge, at this time no FBI personnel currently assigned to the

Russian interference investigation are publicly known. Because of the high profile and sensitive

nature of the investigation, and to avoid any potential interference with the ongoing

investigation, my identity and association with the investigation cannot be disclosed on the

---

[1] On May 17, 2017, Deputy Attorney General Rod Rosenstein named former FBI Director Robert S.
Mueller, III as Special Counsel to conduct the investigation into Russia's interference with the 2016 Presidential
election. DOJ Order No. 3915-2017, Appointment of Special Counsel to Investigate Russian Interference with the
2016 Presidential Election and Related Matters (May 17, 2017)).

UNCLASSIFIED//~~LES~~

UNCLASSIFIED//~~LES~~

public record.

(3)     (U)  The statements contained in this declaration are based upon my personal

knowledge, upon information provided to me in my official capacity, and upon conclusions and

determinations reached and made in accordance therewith.  I have been advised about plaintiffs'

Freedom of Information Act ("FOIA") requests to the FBI for all memos or other documents by

former FBI Director James B. Comey discussing or memorializing conversations with President

Donald J. Trump, and that the FBI denied those requests in full.  This declaration is being

submitted to supplement the public declaration of David M. Hardy, Section Chief (SC) of the

FBI's Record/Information Dissemination Section ("RIDS"), and to support the FBI's motion for

partial summary judgment.

### FOIA EXEMPTION (b)(7)(A) – PENDING ENFORCEMENT PROCEEDINGS

(4)     (U)  SC Hardy explained in his public declaration that the FBI is withholding in

full the records responsive to plaintiffs' request – *i.e.*, the "Comey Memos" – because disclosure

could reasonably be expected to adversely affect the pending investigation into Russia's

interference in the 2016 Presidential election.  However, little explanation of the reason for this

conclusion could be provided publicly without causing the very harms that the FBI is trying to

avoid.  Additional details about the harms to the pending investigation are provided below.

(5)     (U//~~LES~~)  The FBI and the Special Counsel's Office have determined that

disclosure of the Comey Memos – or any portions of them – could reasonably be expected to

adversely affect the pending Russia investigation. Former FBI Director James B. Comey is a

witness in the pending investigation. The Comey Memos are his contemporaneous notes about

incidents that are of interest in that investigation (*i.e.*, the records sought here), and are

UNCLASSIFIED/~~/LES~~

UNCLASSIFIED//~~LES~~

considered witness statements and therefore evidence in the Russia investigation.[2]

      (6)    (U//~~LES~~)  Consistent with its standard practices, the FBI has not publicly disclosed information and evidence collected in its pending Russia investigation, including the Comey Memos, nor has the Special Counsel done so.  Indeed, beyond the FBI's general acknowledgment of an investigation into Russia's interference in the 2016 Presidential election, details about the targets, witnesses, focus, scope, and nature of the investigation have not been publicly disclosed, confirmed, or denied by either the FBI or the Special Counsel.

      (7)    (U//~~LES~~)  In the context of the pending Russia investigation, disclosing the Comey Memos risks influencing, compromising, or tainting testimony by other witnesses and/or the fabrication of other evidence for the purpose of countering or undermining the information contained therein.  Disclosing witness statements of investigative interest, especially when those statements identify other witnesses and evidence in the investigation, also reveals aspects of specific, non-public areas of investigative interest.  Disclosure would further suggest a map of possible investigative activity, which could reasonably be expected to result in a race to the evidence pertinent to such activity.

      (8)    (U//~~LES~~)  The FBI has considered whether former Director Comey's public testimony before Congress in June 2017 would alleviate or overcome the normal concerns associated with disclosing evidence during pending investigations, and have concluded that it would not.  Notwithstanding former Director Comey's testimony – as a private citizen – to the Senate Select Committee on Intelligence ("SSCI") on June 8, 2017, revealing the memos

---

    [2] (U//~~LES~~)  The fact that the Comey Memos *in toto* have been incorporated into the pending investigation and thus recompiled as investigative records satisfies Exemption (b)(7)'s threshold requirement – *i.e.*, "records or information compiled for law enforcement purposes."

UNCLASSIFIED//~~LES~~

UNCLASSIFIED//~~LES~~

themselves risks substantial harm to the investigation because former Director Comey did not publish the memos, nor did his testimony cover everything contained in the memos. Disclosure of the memos, in any capacity, would provide substantially more information about his recorded, contemporaneous recollections than his testimony provided, thereby increasing the effectiveness of any potential efforts to impede or compromise the Russia investigation. For example, the memos discuss sensitive details regarding the progress of the pending Russia investigation as of the dates of the meetings or conversations memorialized in them. Specifically, additional witnesses are identified and a confidential human source is identified by both true and code name, as well as evidence obtained therefrom, and investigative steps taken or not yet taken in the investigation as of the dates of the meetings memorialized in the memos are revealed. The memos also identify at least one investigative target and reflect aspects of the investigation as of those dates. In short, the memos include highly sensitive information from the pending investigation. None of this information was the subject of former Director Comey's testimony. Former Director Comey did not reveal the identity of the witnesses or confidential source; describe the information provided by the source or the FBI's investigative interest in it; or otherwise explicitly describe the pending investigation. Disclosure of any of this non-public information would cause the harms discussed above.

(9)    (U//~~LES~~) The FBI has specifically considered whether we can release those portions of the Comey Memos about which he testified before SSCI on June 8, 2017, and we have concluded that we cannot. Former Director Comey's testimony was not an official public release by the FBI because he was no longer the FBI Director or a government official at the time. But aside from there being no waiver of the content of the memos for this reason, disclosing those portions of the Comey Memos that are the same or substantially similar to

UNCLASSIFIED//~~LES~~

former Director Comey's testimony could reasonably be expected to harm the pending

investigation, notwithstanding that very testimony, again, due to the harms described above.

(10)   (U//LES)   Finally, in addition to not being able to disclose the Comey Memos –

in whole or in part – without risking adverse effects on the pending Russia investigation, the FBI

also cannot disclose the total number of Comey Memos or the total number of pages of memos

without risking harm to the investigation.  While former Director Comey testified publicly about

having nine conversations with President Trump and documenting all or almost all of them, he

did not explicitly disclose the total number of memos he authored or provide any specific

information about the level of detail they do or do not contain.  The FBI and the Special Counsel

also have not publicly stated how many Comey Memos exist or whether one exists for each

conversation.  Moreover, neither the FBI nor the Special Counsel has disclosed any information

suggesting the length of the memos, individually or in total, or any other information about them,

such as the detail and extent to which they document the meetings that they memorialize.  Public

and official confirmation by the FBI about whether each conversation was documented or

whether only a subset of them was, could reasonably be expected to affect the testimony of

people knowledgeable about the conversations – *e.g.*, what and how much they tell investigators,

whether they try to hide or fabricate information – based on what is already known (or not

known) by the investigators.  Similarly, the volume of the records would tend to show the public

– and also potential subjects of the investigation – how detailed former Director Comey's

recollections of the meetings were, and the extent to which his public testimony was a

comprehensive review of his memos or only a partial disclosure.  As with disclosing the total

number of Comey Memos, disclosing the volume of pages comprising the memos could

reasonably be expected to affect the testimony of people knowledgeable about the conversations

UNCLASSIFIED//~~LES~~

by revealing to them information suggestive of how much investigators already know – or do not know – about the conversations.

### FOIA EXEMPTION (b)(1) – CLASSIFIED INFORMATION

(11)    (U//~~LES~~) As explained in SC Hardy's public declaration, the Comey Memos contain some information that is classified under subsections 1.4(c) and 1.4(d) of EO 13526, in order to protect intelligence activities, sources, and methods and foreign relations or activities of the United States.  More particularly, the memos contain classified discussions concerning: subjects of FBI national security investigations; the code name and true identity of a confidential source, as well as details of foreign intelligence information obtained from and through this source by the FBI ███████████████████████████; information about whether the FBI initiated coverage through the Foreign Intelligence Surveillance Act (FISA) on a particular individual; ████████████████████████████████████ ████████████████████████████ the sources and methods used in the investigation; and information concerning the President's foreign-policy decisionmaking.  This information is currently and properly classified pursuant to § 1.4(c).

(12)    (U//~~LES~~) The memos also identify specific foreign governments and officials, and reflect particular, non-public interactions between them and the United States Government, the public disclosure of which could reasonably be expected to affect the United States' relationships with those countries.  In addition, the revelation of the confidential source's name would identify the confidential source's ████████████████████████████ █████████████████████████████████████ █████████████, and would restrict the ability of the FBI to continue to investigate and collect evidence in the Russian interference investigation.  Accordingly, this information is

UNCLASSIFIED//~~LES~~

7

UNCLASSIFIED//~~LES~~

currently and properly classified pursuant to § 1.4(d).

### FOIA EXEMPTION (b)(7)(E) – LAW ENFORCEMENT TECHNIQUES AND PROCEDURES

(13)    (U) SC Hardy explained in his public declaration that the Comey Memos contain information about law enforcement techniques and procedures utilized in the investigation of Russia's interference in the 2016 Presidential election that the FBI has protected pursuant to Exemption (b)(7)(E). However, he could not provide any further information about the protected techniques or procedures without undermining the FBI's use of them and/or causing harm protected against by Exemption (b)(7)(A).

(14)    (U//~~LES~~) The FBI is protecting its use of at least one particular technique or procedure in the pending Russia investigation, which is discussed in the Comey Memos – *i.e.*, use of confidential sources. Neither DOJ, the FBI, nor the Special Counsel has publicly acknowledged the use of confidential sources in the investigation, and disclosure of this information could reasonably be expected to undermine the effectiveness of their use and jeopardize the particular source referenced in the memos. Negating the effectiveness of this technique generally and of this source specifically could reasonably be expected to adversely affect the investigation.[3]

(15)    (U//~~LES~~) Use of confidential sources is a vital investigative tool used by the FBI, but key to the utility of the technique is maintaining the confidentiality of the sources. If the FBI were to release information about and provided by its sources, they could be subjected to efforts to curtail their cooperation or undermine their assistance, as well as retaliation, intimidation, and physical or mental harm. This would have a chilling effect on the pending investigation, not

---

[3] (U//~~LES~~) The use and identity of the confidential source here is also covered by Exemptions (b)(1) and (b)(3), which protect intelligence sources and methods.

only with respect to these particular sources' continued cooperation but also with respect to the cooperation of other witnesses or sources, who would reasonably fear exposure. It is implicit in investigations such as the pending Russian interference investigation that a source's identity and the information/assistance he/she/it provided will be afforded confidentiality. The FBI goes to great lengths to protect and maintain its sources' confidentiality because sources are an integral part of successful investigations and prosecutions.

(16)    (U//~~LES~~) Disclosing information in the Comey Memos reflecting the FBI's use of confidential sources in relation to the Russia investigation could also reasonably be expected to reveal the confidential source's ability to access information, allowing adversaries the opportunity to take steps to undermine or counteract that access, and thereby stop an effective means of foreign intelligence and evidence gathering used by the FBI.

(17)    (U) For the preceding reasons, disclosure of the FBI's use of this technique at this time would risk circumvention of the law. And for the same reasons, it could reasonably be expected to adversely affect the pending investigation.

(18)    (U//~~LES~~) Moreover, this information independently would be subject to FOIA Exemption (b)(7)(D). However, publicly asserting Exemption (b)(7)(D) would reveal the very information that the FBI is protecting under Exemptions (b)(7)(A) and (b)(7)(E) – *i.e.*, the use of confidential sources in this investigation. Accordingly, the FBI concluded that the only way to avoid these harms was to raise Exemption (b)(7)(D) only *in camera* and *ex parte* as part of its Exemption (b)(7)(E) explanation.

(19)    (U//~~LES~~) FOIA Exemption (b)(7)(D) protects records or information compiled for law enforcement purposes when disclosure:

UNCLASSIFIED//~~LES~~

> could reasonably be expected to disclose the identity of a
> confidential source, including a State, local or foreign agency or
> authority or any private institution which furnished information on
> a confidential basis, and, in the case of a record or information
> compiled by a criminal law enforcement authority in the course of
> a criminal investigation or by an agency conducting a lawful
> national security intelligence investigation, information furnished
> by the confidential source.

5 U.S.C. § 552(b)(7)(D). Exemption (b)(7)(D) provides categorical protection for the identities

of confidential sources, as well as information provided by such a source in a criminal or

national security investigation. No balancing of interests is required and the public's interest in

the information is not a factor. Rather, once the FBI establishes that the source provided

information under express or implied assurances of confidentiality, the identity of the source and

all information the source provided in a criminal or national security investigation are exempt

under Exemption (b)(7)(D).

    (20)   (U//~~LES~~) Here, the information subject to Exemption (b)(7)(D) in the Comey

Memos consists of the true name and code name of a confidential source, as well as information

provided by the source, including information about the origins of the information (*i.e.*, the

████████████████████). Code-named sources operate under express assurances of

confidentiality. This alone entitles this information to protection under Exemption (b)(7)(D).

Moreover, the information provided by the confidential source is entitled to protection under the

second clause of Exemption (b)(7)(D). Consequently, both the identity of the source, including

the code name, and the information provided by this source, are entitled to protection under

Exemption (b)(7)(D).

UNCLASSIFIED//~~LES~~

UNCLASSIFIED//~~LES~~

## WAIVER AND SEGREGATION

(21)    (U//~~LES~~) Official Government statements and comments have been carefully reviewed and compared against the Comey Memos to determine whether there is any information in the memos that is as exact as information already made public in official statements or comments.  The FBI has concluded that no official Government statements or comments have been made that precisely match anything in the Comey Memos.  While there are some similarities, there are no exact matches and any particular words from official statements or comments that seem to match information in the Comey Memos is inextricably intertwined with non-matching words and contents such that waiver has not occurred and segregation is not reasonably possible.

UNCLASSIFIED//~~LES~~

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 13th day of October, 2017.

DAVID W. ARCHEY
Deputy Assistant Director
Counterintelligence Division
Federal Bureau of Investigation
Washington D.C.