UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CABLE NEWS NETWORK, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDERAL BUREAU OF INVESTIGATION,<br><br>    Defendant. | Civil Action No. 17-1167 (JEB) |

**MEMORANDUM OPINION**

Last June, this Court granted Plaintiff Cable News Network's motion to unseal certain judicial records. In its opposition to that request, Defendant Federal Bureau of Investigation never mentioned Freedom of Information Act Exemption 3. Nor did that exemption make any appearance in an FBI agent's declaration filed in support of the Government's position. In now seeking partial reconsideration of the Court's decision, the Bureau nevertheless contends that the Court's failure to address Exemption 3 constituted either "clear error" or "manifest injustice." The Court, Defendant believes, should have construed three sentences of the declaration — which referred to a different statute altogether — as not only invoking FOIA Exemption 3 but also fulfilling Defendant's burden of demonstrating the applicability of that exemption, and thus delivering it victory. While such a position certainly takes chutzpah, it does not take the cake here. The Motion for Reconsideration will be denied.

**I.      Background**

News broke in May of 2017 that former FBI Director James Comey had penned several memos documenting his meetings with President Trump. This revelation set off a mad dash by

1

several media outlets — including CNN — to get their hands on the documents, which, like many disputes concerning government records, soon fell to the courts. Over the last two years, CNN's suit against the Bureau has gone through several twists and turns before arriving at the present Motion. Only an abbreviated rehearsal of this history need be repeated here.

In February 2018, this Court granted the FBI's first request for summary judgment and refused to release the Comey memos, citing the then-ongoing nature of the Special Counsel's investigation into Russian interference in the 2016 election. See Cable News Network, Inc. v. FBI, 293 F. Supp. 3d 59, 77 (D.D.C. 2018). In coming to this determination, the Court relied on two declarations from FBI Special Agent David W. Archey, filed under seal, and an *ex parte* proffer session. Id. at 66–67. CNN appealed, but before much could happen in that proceeding, outside circumstances changed. The Government turned over redacted versions of the memos to Congress, which in turn released them to the public. The Circuit thus remanded the matter to this Court to consider the propriety of the remaining withheld material. See Cable News Network, Inc. v. FBI, 2018 WL 3868760, at *1 (D.C. Cir. Aug. 8, 2018). Both parties again moved for summary judgment. The ensuing proceedings culminated in a decision in June granting in part and denying in part summary judgment to both CNN and the FBI. See Cable News Network, Inc. v. FBI, 2019 WL 2408644, at *1 (D.D.C. June 7, 2019).

In conjunction with its second motion for summary judgment, CNN also filed a simultaneous motion for access to the two FBI declarations filed during the first round of summary-judgment briefing, as well as a transcript of the *ex parte* proffer. See ECF No. 72 (Pl. Access Mot.). Plaintiff sought this information under both common-law and First Amendment rights of access to judicial records. Id. In response to CNN's motion, the FBI eventually turned over much of the requested information. See ECF No. 76 (Def. Access Opp.) at 2; ECF No. 75,

Attach. 1 (Declaration of Michael Seidel); ECF No. 81, Attach. 1 (Declaration of David M. Hardy); ECF No. 84 (Notice). Its redactions to one declaration, however, required judicial intervention. See Hardy Decl., ¶ 6. On this lingering dispute, the Court ruled that Plaintiff had met its burden under the common-law right of access. See CNN, 2019 WL 2408644, at *17. The network, therefore, was entitled to see the last unredacted Archey declaration.

The FBI now seeks reconsideration of this last decision. It has moved under Rule 59(e) to request that the Court revisit its prior reasoning, urging it to amend the Opinion to reflect that the Bureau "effectively asserted" FOIA Exemption 3 as a basis to protect the redactions in the declaration. See ECF No. 87, Attach. 1 (Def. Mot.) at 1; see also ECF No. 92 (Def. Reply) at 1–2 (similar). Defendant then asks that the Court find that this exemption covers the information at issue and, accordingly, reverse its judgment. See Def. Mot. at 1.

## II.     Legal Standard

Federal Rule of Civil Procedure 59(e) permits the filing of a motion to alter or amend a judgment when such motion is filed within 28 days after the judgment's entry. The Court must apply a "stringent" standard when evaluating Rule 59(e) motions. See Ciralsky v. CIA, 355 F.3d 661, 673 (D.C. Cir. 2004) (citation omitted). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks and citation omitted). Critically, Rule 59(e) "is not a vehicle to present a new legal theory that was available prior to judgment." Patton Boggs LLP v. Chevron Corp., 683 F.3d 397, 403 (D.C. Cir. 2012).

**III.     Analysis**

The FBI's core contention is that the Court failed to notice that the Government had asserted the protection of FOIA Exemption 3 in connection with the access motion. This exemption covers material "specifically exempted from disclosure by [a] statute." 5 U.S.C. § 552(b)(3). Had the Court spotted its argument and taken up this exemption on the merits, Defendant asserts, it would have ruled in the FBI's favor. See Def. Mot. at 1, 3–4. A reader familiar with the briefing in this case, however, would be forgiven for being confused about the basis for such Motion. Not once, as the FBI concedes, did it mention this exemption in any of its filings pertaining to the access motion. Id. at 3. The path by which the Bureau reaches its conclusion that the Court erred, therefore, requires a bit of explanation.

CNN filed its access motion in January of 2018. In Defendant's opposition, it tossed up a slew of reasons why Plaintiff should not get the information it wished under the common-law right of access to judicial records. See ECF No. 76 (Def. Access Opp.) at 3–6, 10–11. That Exemption 3 covered the material at issue, however, was not one of them.

Then, a few weeks after briefing wrapped up on that motion — and following the Special Counsel's announcement that his investigation had concluded — the FBI withdrew some of its redactions to the Archey declaration, but retained others. See ECF No. 79; ECF No. 81. To its release of the final version of the document at issue, which still contained some redactions, the Government attached the sworn declaration of another FBI special agent, David Hardy, who explained the FBI's rationale for its continued tight-fistedness over the remaining redacted information. Hardy pointed out that the FBI had determined that certain material must remain secret "in order to protect FBI law enforcement interests," even though the Special Counsel's investigation had concluded. Id., ¶ 6. This was so, he said, for two reasons. First, the redactions

4

contained "non-public information about intelligence methods" that the FBI was "obligated to protect . . . under the National Security Act of 1947." Id.  In addition, Hardy continued, "some of these same redactions could, if lifted, expose information that the FBI would typically redact under Exemption (b)(7)(E) in a FOIA case." Id.

In its Opinion, the Court addressed each of these two reasons in turn.  It first concluded that, contrary to what the Hardy declaration seemed to imply, invoking the National Security Act was not a way around the common-law right of access to judicial records.  See CNN, 2019 WL 2408644, at *12–13.  This conclusion followed closely from the D.C. Circuit's reasoning in Metlife, Inc. v. Financial Stability Oversight Council, 865 F.3d 661, 669–73 (D.C. Cir. 2017).  The FBI's first avenue, therefore, could not deliver the outcome it sought.  Next, the Court turned to the sentence in Hardy's declaration that mentioned FOIA Exemption 7(E).  It concluded that the FBI's brief and equivocal statement fell far short of meeting its burden.  CNN, 2019 WL 2408644, at *14.  For this reason, it was unnecessary for the Court to wade into the "murky waters" flooding the intersection of the common-law right of access and FOIA's statutory scheme for transparency.  Id.

Now on reconsideration, the FBI says that it meant to argue something different.  Its invocation of the National Security Act, it asserts, was really an attempt to raise the Freedom of Information Act.  The reasoning proceeds as follows.  In its original summary-judgment briefing regarding the memos, the Bureau had relied on the former Act as the statute that "exempt[s] from disclosure" certain information under the latter Act's Exemption 3.  See 5 U.S.C. § 552(b)(3); ECF No. 69, Attach. 1 (Def. MSJ) at 17–18.  By referencing the National Security Act in its declaration here, the FBI now says, it intended to do the same thing.  See Def. Mot. at 3.  So, while it "did not expressly mention" the exemption's name or language in its briefing on access,

it asserts that the Court should have inferred such intention from the earlier pleadings. Id. The Bureau now asks the Court to "deem[] the FBI" to have "effectively asserted" Exemption 3. Id. at 1, 3; see also Def. Reply at 1–3.

But that is not all. Defendant seeks this mulligan in the context of Rule 59(e), which, as it acknowledges, requires amendment only in the face of "an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." Def. Mot. at 2 (quoting Johnson v. Penn Camera Exchange, 583 F. Supp. 2d 81, 85 (D.D.C. 2008)). Defendant points to no change in law or new evidence. Its Motion, consequently, rests on it having been a "clear error" or "manifest injustice" for the Court not to have previously seen Hardy's declaration in the light the FBI now shines.

This is a bridge too far. For one, if the Bureau wanted to offer legal argument on the applicability of a FOIA exemption, the Court would expect it would do so in a legal brief, rather than relying only on an FBI agent's declaration. Here, there is no basis whatsoever — and, to its credit, it does not contend otherwise — that Defendant came anywhere close to gesturing at the argument it now presents in any brief it filed with the Court. Perhaps the end of the Special Counsel's investigation, which occurred after briefing on this motion had concluded, altered the FBI's calculus about the arguments on which it wanted to lean. If that was the case, the Bureau could have moved for leave to file a supplemental brief. It did not. Not only would this avenue have created space for legal argument, it would also have granted opposing counsel the opportunity to respond, thus engaging in the adversarial process on which the Court depends. One statement in an FBI agent's declaration is no way to raise a new legal argument.

Even if the Court were to accept as sufficient the declaration in lieu of a brief, the FBI's position fares no better. As already noted, the Bureau's argument rests on the proposition that it

raised the "substance" of an Exemption 3 argument in the declaration, if not "the words." Id. at 3. Words matter, however. It is the party's obligation to "spell out [its] arguments squarely and distinctly," and an aggrieved litigant's failure to do so does not morph into the Court's error. See In re Carvalho, 598 B.R. 356, 362 (D.D.C. 2019) (quoting Raines v. U.S. Dep't of Justice, 424 F. Supp. 2d 60, 66 n.3 (D.D.C. 2006)); see also Cement Kiln Recycling Coal. v. EPA, 255 F.3d 855, 869 (D.C. Cir. 2001) ("A litigant does not properly raise an issue by addressing it in a cursory fashion with only bare-bones arguments.") (internal quotation marks and citation omitted). Said otherwise, the duty to deduce "all of the implications" of a perfunctory statement should not fall on the Court's shoulders. See Tarpley v. Greene, 684 F.2d 1, 7 n.17 (D.C. Cir. 1982); cf. GSS Grp. Ltd v. Nat'l Port Auth., 680 F.3d 805, 812 (D.C. Cir. 2012) (concluding that "district court did not abuse its discretion in rejecting" argument that plaintiff's "Rule 59(e) arguments are not waived because they were implicit in its original argument"). If the FBI wished the Court to consider the protection of a specific exemption, then, at the very minimum, it should have named that exemption. Rule 59(e) is not the vessel to now change course. See Williams v. Brennan, 322 F. Supp. 3d 140, 141 (D.D.C. 2018) (stating that Rule 59(e) not opportunity to present "theories or arguments that could have been advanced earlier") (citation omitted); U.S. CFTC v. McGraw-Hill Companies, Inc., 403 F. Supp. 2d 34, 36 (D.D.C. 2005); (noting that "strictness with which" Rule 59(e) motions "are viewed is justified by the need to protect . . . the integrity of the adversarial process in which parties are expected to bring all arguments before the court").

But wait, says the Bureau. In the Court's prior Opinion, it addressed Exemption 7(E), although Defendant did not "formally assert[]" that exemption either but said in its declaration only that disclosure would "expose information that the FBI would typically redact under" that protection. See Def. Mot. at 3–4 (citation omitted). The Court, Defendant reasons, "should have

7

similarly deemed the FBI to have asserted . . . Exemption 3." Id. at 3.  This one lands well wide of the mark.  For one, the fact that the Court granted Defendant the indulgence of addressing an argument it arguably forfeited (*i.e.*, Exemption 7(E)) does not necessarily entitle the FBI to the Court's consideration of another one it did not even bother to mention by name (*i.e.*, Exemption 3).  More to the point, however, the FBI at least referenced Exemption 7(E) by name in its filings, albeit the declaration, thus permitting the Court to recognize the argument it might be trying to make.

Having carefully considered the Government's Motion, the Court sees no error in its prior Opinion.  Even the existence of error, however, would not be enough to compel amendment: Defendant must show "clear error" to prevail.  See Firestone, 76 F.3d at 1208 (citation omitted). This is the type of mistake that is "dead wrong."  Lardner v. FBI, 875 F. Supp. 2d 49, 53 (D.D.C .2012) (citation omitted).  It must strike readers as erroneous "with the force of a five-week-old, unrefrigerated dead fish."  Mohammadi v. Islamic Republic of Iran, 947 F. Supp. 2d 48, 78 (D.D.C. 2013), aff'd, 782 F.3d 9 (D.C. Cir. 2015) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)).  Urging the Court to consider an argument that Defendant "did not expressly mention" but claims to have "effectively asserted" — its words, not this Court's, see Def. Mot. 1, 3 — does not come close.

Before wrapping up this matter, one quick note is worth mentioning.  Even if the Bureau had both invoked Exemption 3 and met its burden of demonstrating the exemption's applicability, that alone would not lead the FBI to its final destination.  Rather — keeping the rest of the Court's Opinion intact — it could only prevail if a FOIA exemption in this context supplanted the six-factor test governing the common-law right of access to judicial records.  This is no simple question, compare Metlife, 865 F.3d at 672 (reasoning that "[i]f FOIA . . .

preempted the common-law right of access to judicial records," then "there would be little left of that right in litigation involving the federal government") with Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 937 (D.C. Cir. 2003) (concluding that "balanced scheme of disclosure and exemption" that Congress provided in FOIA "preempts any preexisting common law right"), and one the Court expressly avoided.  See CNN, 2019 WL 2408644, at *14 (stating it "need not wade into [these] murky waters").  In its Motion for Reconsideration, however, the FBI does not wrestle with these issues, much less establish the correctness of the position it favors.  This deficiency adds to the stack of reasons counseling against reopening this can of worms.  See Firestone, 76 F.3d at 1208 (requiring showing of "clear error" or "manifest injustice" to compel amendment) (citation omitted).

### IV.    Conclusion

For these reasons, the Court will deny Defendant's Motion for Reconsideration.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 12, 2019