APPEAL,CLOSED,CONSOL,TYPE I−FOIA

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:17−cv−01167−JEB</u>

CABLE NEWS NETWORK, INC. v. FEDERAL BUREAU OF INVESTIGATION
Assigned to: Judge James E. Boasberg
Member cases:

    1:17−cv−01175−JEB

    1:17−cv−01212−JEB

    1:17−cv−01189−JEB

 Case:  1:17−cv−01830−JEB

 Case in other court:  USCA, 18−05041

                18−05043

                18−05077

                18−05118

Cause: 05:552 Freedom of Information Act

Date Filed: 06/15/2017
Date Terminated: 02/26/2018
Jury Demand: None
Nature of Suit: 895 Freedom of Information Act
Jurisdiction: U.S. Government Defendant

**<u>Plaintiff</u>**

**CABLE NEWS NETWORK, INC.**

represented by **Matthew E. Kelley**
BALLARD SPAHR LLP
1909 K Street, NW
12th Floor
Washington, DC 20006
(202) 508−1112
Fax: (202) 661−2299
Email: <u>kelleym@ballardspahr.com</u>
*ATTORNEY TO BE NOTICED*

**Charles D. Tobin**
BALLARD SPAHR LLP
1909 K Street, NW
12th Floor
Washington, DC 20006
(202) 661−2218
Fax: (202) 661−2299
Email: <u>tobinc@ballardspahr.com</u>
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**GANNETT SATELLITE INFORMATION NETWORK, LLC**
*17−cv−1175*
*doing business as*
USA TODAY

represented by **Bradley Prescott Moss**
LAW OFFICES OF MARK S. ZAID, P.C.
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
(202) 454−2809
Fax: (202) 330−5610

Email: brad@markzaid.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark Steven Zaid**
LAW OFFICES OF MARK S. ZAID, P.C.
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036
(202) 454–2809
Fax: (202) 330–5610
Email: Mark@MarkZaid.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**BRAD HEATH**                    represented by **Bradley Prescott Moss**
*17–cv–1175*                      (See above for address)
*doing business as*               *LEAD ATTORNEY*
USA TODAY                         *ATTORNEY TO BE NOTICED*

                                  **Mark Steven Zaid**
                                  (See above for address)
                                  *LEAD ATTORNEY*
                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**LACHLAN MARKAY**                represented by **Bradley Prescott Moss**
*17–cv–1175*                      (See above for address)
                                  *LEAD ATTORNEY*
                                  *ATTORNEY TO BE NOTICED*

                                  **Mark Steven Zaid**
                                  (See above for address)
                                  *LEAD ATTORNEY*
                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

**GARRETT GRAFF**                 represented by **Bradley Prescott Moss**
*17–cv–1175*                      (See above for address)
                                  *LEAD ATTORNEY*
                                  *ATTORNEY TO BE NOTICED*

                                  **Mark Steven Zaid**
                                  (See above for address)
                                  *LEAD ATTORNEY*
                                  *ATTORNEY TO BE NOTICED*

**Plaintiff**

                                  represented by

**JUDICIAL WATCH, INC.**
*17−cv−1189*

**Paul J. Orfanedes**
JUDICIAL WATCH, INC.
425 Third Street, SW
Suite 800
Washington, DC 20024
(202) 646−5172
Fax: (202) 646−5199
Email: porfanedes@judicialwatch.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**FREEDOM WATCH, INC.**
*17−cv−1212*

represented by **Larry E. Klayman**
KLAYMAN LAW GROUP, P.A.
2020 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20006
(310) 595−0800
Fax: (202) 379−9289
Email: leklayman@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**DAILY CALLER NEWS
FOUNDATION**

represented by **Michael Bekesha**
JUDICIAL WATCH, INC.
425 Third Street, SW
Suite 800
Washington, DC 20024
(202) 646−5172
Fax: (202) 646−5199
Email: mbekesha@judicialwatch.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**FEDERAL BUREAU OF
INVESTIGATION**
*17−cv−1167 and 17−cv−1212*

represented by **Carol Federighi**
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Ben Franklin Station
Washington, DC 20044
(202) 514−1903
Email: carol.federighi@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF JUSTICE**                    represented by  **Carol Federighi**
*17−cv−1175, 17−cv−1189 and*                                 (See above for address)
*17−cv−1212*                                                 *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF JUSTICE**               represented by  **Carol Federighi**
                                                             (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/15/2017 | 1 | | COMPLAINT against FEDERAL BUREAU OF INVESTIGATION ( Filing fee $ 400 receipt number 0090−4991998) filed by CABLE NEWS NETWORK, INC.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Civil Cover Sheet, # 11 Summons, # 12 Summons, # 13 Summons)(Tobin, Charles) Modified on 6/15/2017 (zrdj). (Entered: 06/15/2017) |
| 06/15/2017 | 2 | | Corporate Disclosure Statement by CABLE NEWS NETWORK, INC.. (Tobin, Charles) (Entered: 06/15/2017) |
| 06/15/2017 | | | Case Assigned to Judge James E. Boasberg. (zsb) (Entered: 06/15/2017) |
| 06/15/2017 | 3 | | SUMMONS (3) Issued Electronically as to FEDERAL BUREAU OF INVESTIGATION, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Consent Form)(zsb) (Entered: 06/15/2017) |
| 07/05/2017 | 4 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General June 15, 2017. (Tobin, Charles) (Entered: 07/05/2017) |
| 07/05/2017 | 5 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. FEDERAL BUREAU OF INVESTIGATION served on 6/15/2017 (Tobin, Charles) (Entered: 07/05/2017) |
| 07/05/2017 | 6 | | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 6/15/2017. Answer due for ALL FEDERAL DEFENDANTS by 7/15/2017. (Tobin, Charles) (Entered: 07/05/2017) |
| 07/10/2017 | 7 | | NOTICE of Appearance by Carol Federighi on behalf of FEDERAL BUREAU OF INVESTIGATION (Federighi, Carol) (Entered: 07/10/2017) |
| 07/12/2017 | 8 | | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint, by FEDERAL BUREAU OF INVESTIGATION (Attachments: # 1 Text of Proposed Order)(Federighi, Carol) (Entered: 07/12/2017) |
| 07/13/2017 | | | MINUTE ORDER GRANTING Unopposed 8 Motion for Extension of Time to File. The Court ORDERS that Defendant shall respond to the Complaint on or before July 31, 2017. Signed by Judge James E. Boasberg on 7/13/17. (lcjeb2) (Entered: 07/13/2017) |

| 07/13/2017 | | | Set/Reset Deadlines: Respond due by 7/31/2017. (nbn) (Entered: 07/13/2017) |
|---|---|---|---|
| 07/25/2017 | 9 | | Unopposed MOTION to Consolidate Cases by FEDERAL BUREAU OF INVESTIGATION (Attachments: # 1 Text of Proposed Order)(Federighi, Carol) (Entered: 07/25/2017) |
| 07/26/2017 | | | MINUTE ORDER: The Court ORDERS that: (1) Defendant's 9 Unopposed Motion to Consolidate Cases is GRANTED; (2) the cases Cable News Network, Inc. v. Federal Bureau of Investigation, No. 17–1167; Gannett Satellite Information Network LLC v. Department of Justice, No. 17–1175; Judicial Watch, Inc., v. Department of Justice, No. 17–1189; and Freedom Watch, Inc., v. Department of Justice, No. 17–1212, shall be CONSOLIDATED; (3) all filings in these consolidated cases shall be made only in the first–filed case, 17–1167; and (4) the Clerk is directed to administratively close any of the open cases that are being consolidated. Signed by Judge James E. Boasberg on 7/26/17. (lcjeb2) (Entered: 07/26/2017) |
| 07/31/2017 | 10 | | ANSWER to Complaint by FEDERAL BUREAU OF INVESTIGATION.(Federighi, Carol) (Entered: 07/31/2017) |
| 07/31/2017 | | | MINUTE ORDER: The Court ORDERS that all parties in this consolidated case shall meet, confer, and submit a proposed briefing schedule on or before August 14, 2017. Signed by Judge James E. Boasberg on 7/31/17. (lcjeb2) (Entered: 07/31/2017) |
| 08/01/2017 | | | Set/Reset Deadlines: Proposed Briefing Schedule due by 8/14/2017 (lsj) (Entered: 08/01/2017) |
| 08/02/2017 | 11 | | ANSWER to Complaint in No. 17–1175 by DEPARTMENT OF JUSTICE.(Federighi, Carol) (Entered: 08/02/2017) |
| 08/03/2017 | | | NOTICE OF ERROR re 11 Answer to Complaint; emailed to carol.federighi@usdoj.gov, cc'd 13 associated attorneys –– The PDF file you docketed contained errors: 1. In future, also include lead case number on all documents. Do not refile. (znmw, ) (Entered: 08/03/2017) |
| 08/08/2017 | 12 | | NOTICE of Appearance by Mark Steven Zaid on behalf of GANNETT SATELLITE INFORMATION NETWORK, LLC, GARRETT GRAFF, BRAD HEATH, LACHLAN MARKAY, GANNETT SATELLITE INFORMATION NETWORK, LLC, GARRETT GRAFF, BRAD HEATH, JAMES MADISON PROJECT, LACHLAN MARKAY Associated Cases: 1:17–cv–01167–JEB, 1:17–cv–01175–JEB(Zaid, Mark) (Entered: 08/08/2017) |
| 08/14/2017 | 13 | | PROPOSED BRIEFING SCHEDULE re Order (Joint) by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Federighi, Carol) (Entered: 08/14/2017) |
| 08/15/2017 | | | MINUTE ORDER: Per the parties' 13 Proposed Briefing Schedule, the Court ORDERS that: (1) As to the Comey memos, Defendants shall file their motion for summary judgment and Vaughn declaration on or before October 11, 2017; Plaintiffs shall file their opposition and cross–motion for summary judgment on or before November 1, 2017; Defendants shall file their reply and opposition to the cross–motion on or before November 21, 2017; and Plaintiffs shall file their reply on or before December 6, 2017; (2) As to Freedom |

| | | |
|---|---|---|
| | | Watch's request to DOJ's Criminal Division, Defendants shall file their motion for judgment on the pleadings or for summary judgment on or before August 18, 2017; Freedom Watch shall file its opposition on or before September 1, 2017; and Defendants shall file their reply on or before September 15, 2017; (3) As to the remainder of Plaintiffs' FOIA requests, the parties shall submit a further status report on or before September 18, 2017. Signed by Judge James E. Boasberg on 8/15/17. (lcjeb2, ) (Entered: 08/15/2017) |
| 08/15/2017 | | Set/Reset Deadlines: Summary Judgment motions due by 10/11/2017. Response to Motion for Summary Judgment due by 11/1/2017. Reply to Motion for Summary Judgment due by 11/21/2017. Replies due by 12/6/2017. Motion for judgment on the pleadings or for summary judgment by 8/18/2017. Opposition due by 9/1/2017. Reply due by 9/15/2017. Status Report due by 9/18/2017. (nbn) (Entered: 08/16/2017) |
| 08/18/2017 | 14 | MOTION for Judgment on the Pleadings *or, in the Alternative, for Summary Judgment* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Declaration of Gail Brodfuehrer, # 4 Text of Proposed Order, # 5 Text of Proposed Order)(Federighi, Carol). Added MOTION for Summary Judgment on 8/21/2017 (znmw). (Entered: 08/18/2017) |
| 09/07/2017 | 15 | Unopposed MOTION to Consolidate Cases by THE DAILY CALLER NEWS FOUNDATION (Attachments: # 1 Text of Proposed Order)(Bekesha, Michael) (Entered: 09/07/2017) |
| 09/07/2017 | | MINUTE ORDER: The Court ORDERS that: 1) Plaintiff DCNF's 15 Motion to Consolidate is GRANTED; 2) Case No. 17–1830 is CONSOLIDATED with No. 17–1167 and the other cases already consolidated therein; (3) All filings in these consolidated cases shall be made only in the first–filed case, No. 17–1167; (4) DCNF shall abide by all previously established deadlines; and (5) The Clerk is directed to administratively close No. 17–1830. Signed by Judge James E. Boasberg on 9/7/2017. (lcjeb2) (Entered: 09/07/2017) |
| 09/13/2017 | 16 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 9/11/2017. ( Answer due for ALL FEDERAL DEFENDANTS by 10/11/2017.), RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 9/11/2017., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF JUSTICE served on 9/11/2017 (Attachments: # 1 Affidavit of Cristina Rotaru)(Bekesha, Michael) (Entered: 09/13/2017) |
| 09/18/2017 | 17 | Joint STATUS REPORT by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Federighi, Carol) (Entered: 09/18/2017) |
| 09/19/2017 | | MINUTE ORDER: Per the parties' 17 Joint Status Report, the Court ORDERS that the parties shall submit a status report or a proposed briefing schedule on or before October 25, 2017. Signed by Judge James E. Boasberg on 9/19/2017. (lcjeb2) (Entered: 09/19/2017) |
| 09/19/2017 | | Set/Reset Deadlines: Brief due by 10/25/2017. (nbn) (Entered: 09/19/2017) |
| 09/22/2017 | 18 | |

| | | | |
|---|---|---|---|
| | | | ORDER GRANTING Defendant Department of Justice's <u>14</u> Motion for Summary Judgment and ENTERING JUDGMENT as to that Defendant in Case No. 17–1212 only. Signed by Judge James E. Boasberg on 9/22/2017. (lcjeb2) (Entered: 09/22/2017) |
| 09/22/2017 | <u>19</u> | | MEMORANDUM OPINION re <u>18</u> Order on Motion for Summary Judgment. Signed by Judge James E. Boasberg on 9/22/2017. (lcjeb2) (Entered: 09/22/2017) |
| 10/05/2017 | <u>20</u> | | Unopposed MOTION for Extension of Time to *File Motion for Summary Judgment* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Attachments: # <u>1</u> Text of Proposed Order)(Federighi, Carol) (Entered: 10/05/2017) |
| 10/06/2017 | | | MINUTE ORDER GRANTING <u>20</u> Motion for Extension of Time to File. The Court ORDERS that: (1) Defendants shall file their motion for summary judgment and Vaughn declaration as to the Comey memos on or before October 13, 2017; (2) Plaintiffs shall file their opposition and cross–motion for summary judgment on or before November 3, 2017; (3) Defendants shall file their reply and opposition to the cross–motion on or before November 29, 2017; and (4) Plaintiffs shall file their reply on or before December 14, 2017. So ORDERED by Judge James E. Boasberg on 10/6/2017. (lcjeb2) (Entered: 10/06/2017) |
| 10/06/2017 | | | Set/Reset Deadlines: Summary Judgment motions due by 10/13/2017. Response to Motion for Summary Judgment due by 11/3/2017. Reply to Motion for Summary Judgment due by 11/29/2017. Plaintiffs' Replies due by 12/14/2017. (lsj) (Entered: 10/06/2017) |
| 10/11/2017 | <u>21</u> | | ANSWER to Complaint *in No. 17–1830* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION.(Federighi, Carol) (Entered: 10/11/2017) |
| 10/13/2017 | <u>22</u> | | MOTION for Partial Summary Judgment *(Partial)* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Declaration of David Hardy, # <u>3</u> Exhibit to Hardy Decl (CNN–A to CNN–F), # <u>4</u> Exhibit to Hardy Decl (USA Today–A to USA Today–D), # <u>5</u> Exhibit to Hardy Decl (JMPGraff–A to JMPGraff–F), # <u>6</u> Exhibit to Harcy Decl (JMPMarkay–A to JMPMarkay–E), # <u>7</u> Exhibit to Hardy Decl (Judicial Watch–A to Judicial Watch–D), # <u>8</u> Exhibit to Hardy Decl (Freedom Watch–A to Freedom Watch–D), # <u>9</u> Exhibit to Hardy Decl (Daily Caller–A to Daily Caller–F), # <u>10</u> Statement of Facts, # <u>11</u> Text of Proposed Order)(Federighi, Carol) Modified event title on 10/16/2017 (znmw). (Entered: 10/13/2017) |
| 10/13/2017 | <u>23</u> | | MOTION for Leave to File */Submit In Camera, Ex Parte Declaration* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Attachments: # <u>1</u> Text of Proposed Order)(Federighi, Carol) (Entered: 10/13/2017) |
| 10/18/2017 | <u>24</u> | | Joint STATUS REPORT *(Second)* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Federighi, Carol) (Entered: 10/18/2017) |
| 10/19/2017 | | | |

| | | |
|---|---|---|
| | | MINUTE ORDER: Per the parties' 24 Status Report, the Court ORDERS that they shall, by November 8, 2017, submit a further joint report, which may include a proposed briefing schedule. So ORDERED by Judge James E. Boasberg on 10/19/2017. (lcjeb2) (Entered: 10/19/2017) |
| 10/19/2017 | | Set/Reset Deadlines: Joint Status Report due by 11/8/2017. (nbn) (Entered: 10/19/2017) |
| 11/03/2017 | 25 | Cross MOTION for Summary Judgment by CABLE NEWS NETWORK, INC. (Attachments: # 1 Declaration of Charles D. Tobin, # 2 Tobin Decl., Ex. 1, # 3 Tobin Decl., Ex. 2, # 4 Tobin Decl., Ex. 3, # 5 Tobin Decl., Ex. 4, # 6 Tobin Decl., Ex. 5, # 7 Tobin Decl., Ex. 6, # 8 Tobin Decl., Ex. 7, # 9 Tobin Decl., Ex. 8, # 10 Tobin Decl., Ex. 9, # 11 Tobin Decl., Ex. 10, # 12 Tobin Decl., Ex. 11, # 13 Tobin Decl., Ex. 12, # 14 Tobin Decl., Ex. 13, # 15 Tobin Decl., Ex. 14, # 16 Tobin Decl., Ex. 15, # 17 Tobin Decl., Ex. 16, # 18 Tobin Decl., Ex. 17, # 19 Tobin Decl., Ex. 18, # 20 Tobin Decl., Ex. 19, # 21 Text of Proposed Order, # 22 Text of Proposed Order)(Tobin, Charles) (Entered: 11/03/2017) |
| 11/03/2017 | 26 | Memorandum in opposition to re 23 MOTION for Leave to File /*Submit In Camera, Ex Parte Declaration*, 22 MOTION for Partial Summary Judgment filed by CABLE NEWS NETWORK, INC.. (Attachments: # 1 Declaration of Charles D. Tobin, # 2 Tobin Decl., Ex. 1, # 3 Tobin Decl., Ex. 2, # 4 Tobin Decl., Ex. 3, # 5 Tobin Decl., Ex. 4, # 6 Tobin Decl., Ex. 5, # 7 Tobin Decl., Ex. 6, # 8 Tobin Decl., Ex. 7, # 9 Tobin Decl., Ex. 8, # 10 Tobin Decl., Ex. 9, # 11 Tobin Decl., Ex. 10, # 12 Tobin Decl., Ex. 11, # 13 Tobin Decl., Ex. 12, # 14 Tobin Decl., Ex. 13, # 15 Tobin Decl., Ex. 14, # 16 Tobin Decl., Ex. 15, # 17 Tobin Decl., Ex. 16, # 18 Tobin Decl., Ex. 17, # 19 Tobin Decl., Ex. 18, # 20 Tobin Decl., Ex. 19, # 21 Text of Proposed Order, # 22 Text of Proposed Order)(Tobin, Charles) (Entered: 11/03/2017) |
| 11/03/2017 | 27 | Memorandum in opposition to re 22 MOTION for Partial Summary Judgment filed by DAILY CALLER NEWS FOUNDATION. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Bekesha, Michael) (Entered: 11/03/2017) |
| 11/03/2017 | 28 | Cross MOTION for Summary Judgment by DAILY CALLER NEWS FOUNDATION (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Bekesha, Michael) (Entered: 11/03/2017) |
| 11/03/2017 | 29 | Memorandum in opposition to re 22 MOTION for Partial Summary Judgment filed by GANNETT SATELLITE INFORMATION NETWORK, LLC, GARRETT GRAFF, BRAD HEATH, LACHLAN MARKAY. (Attachments: # 1 Exhibit 1 – Moss Declaration, # 2 Statement of Facts Response, # 3 Text of Proposed Order)(Moss, Bradley) (Entered: 11/03/2017) |
| 11/03/2017 | 30 | Cross MOTION for Summary Judgment *(Partial)* by GANNETT SATELLITE INFORMATION NETWORK, LLC, GARRETT GRAFF, BRAD HEATH, LACHLAN MARKAY (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Text of Proposed Order)(Moss, Bradley) (Entered: 11/03/2017) |
| 11/03/2017 | 31 | Memorandum in opposition to re 22 MOTION for Partial Summary Judgment filed by JUDICIAL WATCH, INC.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Text of Proposed Order)(Orfanedes, Paul) (Entered: 11/03/2017) |

| 11/03/2017 | 32 | | Cross MOTION for Summary Judgment by JUDICIAL WATCH, INC. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Text of Proposed Order)(Orfanedes, Paul) (Entered: 11/03/2017) |
|---|---|---|---|
| 11/03/2017 | 33 | | RESPONSE re 22 MOTION for Partial Summary Judgment *and Motion Under Federal Rules of Civil Procedure 56(d)* filed by FREEDOM WATCH, INC.. (Attachments: # 1 Affidavit)(Klayman, Larry) (Entered: 11/03/2017) |
| 11/08/2017 | 34 | | Joint STATUS REPORT *(Third)* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Federighi, Carol) (Entered: 11/08/2017) |
| 11/09/2017 | | | MINUTE ORDER: Per the parties' 34 Joint Status Report, the Court ORDERS that: (1) Defendants shall file their motion for summary judgment and *Vaughn* declaration on or before January 12, 2018; (2) Plaintiffs shall file their cross−motion for summary judgment and opposition on or before February 2, 2018; (3) Defendants shall file their opposition and reply brief on or before February 23, 2018; and (4) Plaintiffs shall file their reply brief on or before March 9, 2018. So ORDERED by Judge James E. Boasberg on 11/09/2017. (lcjeb2) (Entered: 11/09/2017) |
| 11/09/2017 | | | Set/Reset Deadlines: Summary Judgment motions due by 1/12/2018. Response to Motion for Summary Judgment due by 2/2/2018. Reply to Motion for Summary Judgment due by 2/23/2018. Replies due by 3/9/2018. (nbn) (Entered: 11/09/2017) |
| 11/22/2017 | 35 | | MOTION for Extension of Time to File Response/Reply as to 23 MOTION for Leave to File */Submit In Camera, Ex Parte Declaration*, 22 MOTION for Partial Summary Judgment, 25 Cross MOTION for Summary Judgment , 32 Cross MOTION for Summary Judgment , 28 Cross MOTION for Summary Judgment , 30 Cross MOTION for Summary Judgment *(Partial)* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Federighi, Carol) (Entered: 11/22/2017) |
| 11/28/2017 | | | MINUTE ORDER GRANTING Defendants' 35 Motion for Extension of Time to File. The Court ORDERS that Defendants' Opposition and Reply shall be due December 6, 2017, and that Plaintiffs' Replies shall be due December 21, 2017. So ORDERED by Judge James E. Boasberg on 11/28/2017. (lcjeb2) (Entered: 11/28/2017) |
| 11/29/2017 | | | Set/Reset Deadlines: Responses due by 12/6/2017. Replies due by 12/21/2017. (nbn) (Entered: 11/29/2017) |
| 12/06/2017 | 36 | | Memorandum in opposition to re 25 Cross MOTION for Summary Judgment , 28 Cross MOTION for Summary Judgment , 32 Cross MOTION for Summary Judgment , 30 Cross MOTION for Summary Judgment *(Partial)* filed by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Attachments: # 1 Declaration Second Hardy Declaration, # 2 Response to CNN SOMF, # 3 Response to Gannett SOMF, # 4 Response to JW SOMF, # 5 Response to DCNF SOMF, # 6 Text of Proposed Order)(Federighi, Carol) (Entered: 12/06/2017) |
| 12/06/2017 | 37 | | REPLY to opposition to motion re 23 MOTION for Leave to File */Submit In Camera, Ex Parte Declaration*, 22 MOTION for Partial Summary Judgment filed by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF |

| | | | |
|---|---|---|---|
| | | | INVESTIGATION. (Attachments: # 1 Second Hardy Declaration)(Federighi, Carol) (Entered: 12/06/2017) |
| 12/07/2017 | 38 | | RESPONSE re 30 Cross MOTION for Summary Judgment *(Partial) Statement of Material Facts* filed by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Federighi, Carol) (Entered: 12/07/2017) |
| 12/13/2017 | 39 | | REPLY to opposition to motion re 32 Cross MOTION for Summary Judgment filed by JUDICIAL WATCH, INC.. (Orfanedes, Paul) (Entered: 12/13/2017) |
| 12/18/2017 | 40 | | REPLY to opposition to motion re 30 Cross MOTION for Summary Judgment *(Partial)* filed by GANNETT SATELLITE INFORMATION NETWORK, LLC, GARRETT GRAFF, BRAD HEATH, LACHLAN MARKAY. (Moss, Bradley) (Entered: 12/18/2017) |
| 12/21/2017 | 41 | | REPLY to opposition to motion re 28 Cross MOTION for Summary Judgment filed by DAILY CALLER NEWS FOUNDATION. (Bekesha, Michael) (Entered: 12/21/2017) |
| 12/21/2017 | 42 | | REPLY to opposition to motion re 25 Cross MOTION for Summary Judgment filed by CABLE NEWS NETWORK, INC.. (Attachments: # 1 Declaration Second Declaration of Charles D. Tobin, # 2 Exhibit A to the Second Decl. of C. Tobin, # 3 Exhibit B to the Second Decl. of C. Tobin, # 4 Exhibit C to the Second Decl. of C. Tobin, # 5 Exhibit D to the Second Decl. of C. Tobin, # 6 Exhibit E to the Second Decl. of C. Tobin, # 7 Exhibit F to the Second Decl. of C. Tobin, # 8 Exhibit G to the Second Decl. of C. Tobin, # 9 Exhibit H to the Second Decl. of C. Tobin)(Tobin, Charles) (Entered: 12/21/2017) |
| 12/21/2017 | 43 | | NOTICE *of Joinder to Replies Filed* by FREEDOM WATCH, INC. (Klayman, Larry) (Entered: 12/21/2017) |
| 01/09/2018 | 44 | | Unopposed MOTION for Extension of Time to File *Second Motion for Partial Summary Judgment* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Federighi, Carol) (Entered: 01/09/2018) |
| 01/10/2018 | | | MINUTE ORDER GRANTING 44 Motion for Extension of Time to File. The Court ORDERS that Defendants shall file their Second Motion for Partial Summary Judgment on or before January 19, 2018. So ORDERED by Judge James E. Boasberg on 01/10/2018. (lcjeb2) (Entered: 01/10/2018) |
| 01/10/2018 | | | Set/Reset Deadlines: Second Motion for Partial Summary Judgment due by 1/19/2018. (nbn) (Entered: 01/10/2018) |
| 01/11/2018 | | | MINUTE ORDER: The Court ORDERS that: 1) The Government's 23 Motion is GRANTED, and it shall file its *Ex Parte* Declaration by January 18, 2018; and 2) By the same date, the Government shall submit all withheld documents for the Court's *in camera* review. So ORDERED by Judge James E. Boasberg on 01/11/2018. (lcjeb2) (Entered: 01/11/2018) |
| 01/11/2018 | | | Set/Reset Deadlines: Ex Parte Declaration due by 1/18/2018. (nbn) (Entered: 01/12/2018) |
| 01/19/2018 | 45 | | Second MOTION for Partial Summary Judgment by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Attachments: # 1 Memorandum in Support, # 2 Exhibit A: Third Hardy Declaration, # 3 Exhibit B: Castellano Declaration, # 4 Statement of Facts, # 5 Text of Proposed |

| | | | |
|---|---|---|---|
| | | | Order)(Federighi, Carol) Modified event title on 1/22/2018 (znmw). (Entered: 01/19/2018) |
| 01/19/2018 | 46 | | MOTION for Leave to File /Submit Second In Camera, Ex Parte Declaration by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Attachments: # 1 Text of Proposed Order)(Federighi, Carol) (Entered: 01/19/2018) |
| 02/01/2018 | 47 | | NOTICE of Submission of Third In Camera, Ex Parte Declaration by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION re 22 MOTION for Partial Summary Judgment (Federighi, Carol) (Entered: 02/01/2018) |
| 02/02/2018 | 48 | | ORDER: The Court ORDERS that: 1) Defendants' 22 Motion for Partial Summary Judgment is GRANTED; 2) Plaintiffs' 25 28 30 32 Cross−Motions for Summary Judgment are DENIED; 3) Plaintiff Freedom Watch's 33 Motion under Rule 56(d) is DENIED; and 4) Judgment is ENTERED in favor of Defendants in Case Nos. 17−1167, 17−1189, and 17−1830. Signed by Judge James E. Boasberg on 2/2/2018. (lcjeb3) (Entered: 02/02/2018) |
| 02/02/2018 | 49 | | MEMORANDUM OPINION re 48 Order Granting Defendants' Motion for Partial Summary Judgment. Signed by Judge James E. Boasberg on 2/2/2018. (lcjeb3) (Entered: 02/02/2018) |
| 02/02/2018 | 50 | | Memorandum in opposition to re 45 MOTION for Partial Summary Judgment filed by GANNETT SATELLITE INFORMATION NETWORK, LLC, GARRETT GRAFF, BRAD HEATH, LACHLAN MARKAY. (Attachments: # 1 Statement of Facts Response, # 2 Text of Proposed Order)(Moss, Bradley) (Entered: 02/02/2018) |
| 02/05/2018 | 51 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 49 Memorandum & Opinion, 48 Order on Motion for Partial Summary Judgment, by DAILY CALLER NEWS FOUNDATION, JUDICIAL WATCH, INC.. Filing fee $ 505, receipt number 0090−5318360. Fee Status: Fee Paid. Parties have been notified. (Orfanedes, Paul) (Entered: 02/05/2018) |
| 02/05/2018 | 52 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 48 Order on Motion for Partial Summary Judgment, by CABLE NEWS NETWORK, INC.. Filing fee $ 505, receipt number 0090−5318719. Fee Status: Fee Paid. Parties have been notified. (Tobin, Charles) (Entered: 02/05/2018) |
| 02/06/2018 | 53 | | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 51 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 02/06/2018) |
| 02/06/2018 | 54 | | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 52 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 02/06/2018) |
| 02/09/2018 | 55 | | REPLY to opposition to motion re 45 MOTION for Partial Summary Judgment filed by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Attachments: # 1 Declaration of David Hardy (Fourth))(Federighi, Carol) (Entered: 02/09/2018) |

| 02/13/2018 | | | MINUTE ORDER: The Court ORDERS that: 1) Defendants' 46 Motion for Leave to Submit Second In Camera Declaration is GRANTED; and 2) By February 16, 2018, Defendants shall submit such Declaration in camera along with the withheld pages themselves. So ORDERED by Judge James E. Boasberg on 2/13/2018. (lcjeb2) (Entered: 02/13/2018) |
| 02/13/2018 | | | Set/Reset Deadlines: Defendants shall submit such Declaration in camera along with the withheld pages themselves by 2/16/2018. (nbn) (Entered: 02/14/2018) |
| 02/15/2018 | | | USCA Case Number 18–5041 for 52 Notice of Appeal to DC Circuit Court filed by CABLE NEWS NETWORK, INC. (zrdj) (Entered: 02/15/2018) |
| 02/15/2018 | | | USCA Case Number 18–5042 for 51 Notice of Appeal to DC Circuit Court, filed by DAILY CALLER NEWS FOUNDATION, JUDICIAL WATCH, INC.. (td) (Entered: 02/23/2018) |
| 02/15/2018 | | | USCA Case Number 18–5043 for 51 Notice of Appeal to DC Circuit Court, filed by DAILY CALLER NEWS FOUNDATION, JUDICIAL WATCH, INC.. (td) (Entered: 02/28/2018) |
| 02/23/2018 | 56 | | ORDER GRANTING Defendants' 45 Motion for Partial Summary Judgment. The Court ORDERS that: (1) Defendants Motion for Summary Judgment is GRANTED, provided that the Government shall produce to Plaintiffs the redacted version of one document; and (2) Judgment is ENTERED for Defendants against all Plaintiffs in case number 17–1175, and Freedom Watch, Inc. in case number 17–1212. Signed by Judge James E. Boasberg on 2/23/18. Associated Cases: 1:17–cv–01167–JEB, 1:17–cv–01175–JEB, 1:17–cv–01189–JEB, 1:17–cv–01212–JEB(lcjeb1) (Entered: 02/23/2018) |
| 02/23/2018 | 57 | | MEMORANDUM OPINION re 56 Order. Signed by Judge James E. Boasberg on 2/23/18. Associated Cases: 1:17–cv–01167–JEB, 1:17–cv–01175–JEB, 1:17–cv–01189–JEB, 1:17–cv–01212–JEB(lcjeb1) (Entered: 02/23/2018) |
| 02/26/2018 | 58 | | CLERK'S JUDGMENT in favor of the Defendants and against the Plaintiffs. Signed by Judge James E. Boasberg on 2/26/18. (lsj) (Entered: 02/26/2018) |
| 03/15/2018 | 59 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 58 Clerk's Judgment by DAILY CALLER NEWS FOUNDATION, JUDICIAL WATCH, INC.. Filing fee $ 505, receipt number 0090–5374494. Fee Status: Fee Paid. Parties have been notified. (Bekesha, Michael) (Entered: 03/15/2018) |
| 03/16/2018 | 60 | | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 59 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 03/16/2018) |
| 03/26/2018 | | | USCA Case Number 18–5078 for 59 Notice of Appeal to DC Circuit Court filed by DAILY CALLER NEWS FOUNDATION, JUDICIAL WATCH, INC.. (td) (Entered: 03/28/2018) |
| 03/26/2018 | | | USCA Case Number 18–5077 for 59 Notice of Appeal to DC Circuit Court filed by DAILY CALLER NEWS FOUNDATION, JUDICIAL WATCH, INC.. (td) (Entered: 03/28/2018) |
| 04/25/2018 | 61 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 58 Clerk's Judgment by CABLE NEWS NETWORK, INC.. Filing fee $ 505, receipt number |

| | | | |
|---|---|---|---|
| | | | 0090–5441758. Fee Status: Fee Paid. Parties have been notified. (Tobin, Charles) (Entered: 04/25/2018) |
| 04/26/2018 | 62 | | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date 4/25/18 re 61 Notice of Appeal to DC Circuit Court. (td) (Entered: 04/26/2018) |
| 04/26/2018 | | | USCA Case Number 18–5118 for 61 Notice of Appeal to DC Circuit Court filed by CABLE NEWS NETWORK, INC.. (td) (Entered: 04/26/2018) |
| 07/03/2018 | 63 | | Corporate Disclosure Statement by CABLE NEWS NETWORK, INC.. (Tobin, Charles) (Entered: 07/03/2018) |
| 07/05/2018 | 64 | | MANDATE of USCA as to 59 Notice of Appeal to DC Circuit Court filed by DAILY CALLER NEWS FOUNDATION, JUDICIAL WATCH, INC., 52 Notice of Appeal to DC Circuit Court filed by CABLE NEWS NETWORK, INC., 51 Notice of Appeal to DC Circuit Court, filed by DAILY CALLER NEWS FOUNDATION, JUDICIAL WATCH, INC., 61 Notice of Appeal to DC Circuit Court filed by CABLE NEWS NETWORK, INC. ; USCA Case Number 18–5042. (consolidated with 18–5042, 18–5043, 18–5077, 18–5078, 18–5118, 18–5043) (Attachments: # 1 USCA Order)(ztd) (Entered: 07/09/2018) |
| 08/08/2018 | 65 | | MANDATE of USCA as to 61 Notice of Appeal to DC Circuit Court filed by CABLE NEWS NETWORK, INC. USCA Case Number 18–5041 Consolidated with 18–5118. (Attachments: # 1 USCA Order)(zrdj) (Entered: 08/13/2018) |
| 08/31/2018 | | | MINUTE ORDER: Given that the Court of Appeals's mandate has issued, the Court ORDERS that: the parties shall meet, confer, and submit a joint status report by September 13, 2018, that sets forth whether they believe issues still remain to be decided and, if so, proposes a briefing schedule to resolve them. So ORDERED by Judge James E. Boasberg on 08/31/2018. (lcjeb2) (Entered: 08/31/2018) |
| 08/31/2018 | | | Set/Reset Deadlines: Joint Status Report due by 9/13/2018. (znbn) (Entered: 09/06/2018) |
| 09/13/2018 | 66 | | Joint STATUS REPORT by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Federighi, Carol) (Entered: 09/13/2018) |
| 09/13/2018 | | | MINUTE ORDER: The Court ADOPTS the parties' 66 Joint Status Report and ORDERS that: 1) Defendant shall file its renewed motion for summary judgment and Vaughn Index concerning the Comey Memos by November 9, 2018; 2) Plaintiff shall file its renewed cross–motion for summary judgment, opposition to Defendant's renewed motion, and motion for access to the Sealed Records by November 30, 2018; 3) Defendant shall file its opposition to Plaintiff's renewed cross–motion, opposition to Plaintiff's access motion, and reply in support of Defendant's renewed motion by January 4, 2019; and 4) Plaintiff shall file its replies in support of its renewed cross–motion and access motion by January 25, 2019. So ORDERED by Judge James E. Boasberg on 9/13/2018. (lcjeb2) (Entered: 09/13/2018) |
| 09/13/2018 | | | |

| | | | |
|---|---|---|---|
| | | | Set/Reset Deadlines: Summary Judgment motions due by 11/9/2018. Response to Motion for Summary Judgment due by 11/30/2018. Reply to Motion for Summary Judgment due by 1/4/2019. Replies due by 1/25/2019. (znbn) (Entered: 09/14/2018) |
| 11/07/2018 | <u>67</u> | | Unopposed MOTION for Extension of Time to *File Motion for Summary Judgment* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF JUSTICE (Federighi, Carol) (Entered: 11/07/2018) |
| 11/07/2018 | | | MINUTE ORDER GRANTING Consent <u>67</u> Motion for Extension of Time to File. The Court ORDERS that: 1) Defendant shall file its renewed motion for summary judgment and *Vaughn* Index concerning the Comey Memos by December 7, 2018; 2) Plaintiff shall file its renewed cross–motion for summary judgment, opposition to Defendant's renewed motion, and motion for access to the Sealed Records by January 11, 2019; 3) Defendant shall file its opposition to Plaintiff's renewed cross–motion, opposition to Plaintiff's access motion, and reply in support of Defendant's renewed motion by February 8, 2019; and 4) Plaintiff shall file its replies in support of its renewed cross–motion and access motion by March 1, 2019. So ORDERED by Judge James E. Boasberg on 11/7/2018. (lcjeb2) (Entered: 11/07/2018) |
| 11/07/2018 | | | Set/Reset Deadlines: Summary Judgment motions due by 12/7/2018. Response to Motion for Summary Judgment due by 1/11/2019. Reply to Motion for Summary Judgment due by 2/8/2019. Replies due by 3/1/2019. Vaughn Index due by 12/7/2018. (znbn) (Entered: 11/07/2018) |
| 12/05/2018 | <u>68</u> | | Unopposed MOTION for Extension of Time to *File Motion for Summary Judgment* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Federighi, Carol) (Entered: 12/05/2018) |
| 12/06/2018 | | | MINUTE ORDER: The Court GRANTS Defendant's <u>68</u> Motion for Extension of Time and ORDERS that: 1) Defendant shall file its renewed motion for summary judgment and *Vaughn* Index concerning the Comey Memos by December 14, 2018; 2) Plaintiff shall file its renewed cross–motion for summary judgment, opposition to Defendant's renewed motion, and motion for access to the Sealed Records by January 18, 2019; 3) Defendant shall file its opposition to Plaintiff's renewed cross–motion, opposition to Plaintiff's access motion, and reply in support of Defendant's renewed motion by February 15, 2019; and 4) Plaintiff shall file its replies in support of its renewed cross–motion and access motion by March 8, 2019. So ORDERED by Judge James E. Boasberg on 12/6/2018. (lcjeb2) (Entered: 12/06/2018) |
| 12/06/2018 | | | Set/Reset Deadlines: Summary Judgment motions due by 12/14/2018. Response to Motion for Summary Judgment due by 1/18/2019. Reply to Motion for Summary Judgment due by 2/15/2019. Replies due by 3/8/2019. (znbn) (Entered: 12/06/2018) |
| 12/14/2018 | <u>69</u> | | MOTION for Summary Judgment *on Remand* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit 1: Fifth Hardy Declaration, # <u>3</u> Statement of Facts, # <u>4</u> Text of Proposed Order)(Federighi, Carol) (Entered: 12/14/2018) |
| 01/18/2019 | <u>70</u> | | |

| | | | |
|---|---|---|---|
| | | | Cross MOTION for Summary Judgment by CABLE NEWS NETWORK, INC. (Attachments: # 1 Declaration Third Decl. of Charles D. Tobin, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Text of Proposed Order)(Tobin, Charles) (Entered: 01/18/2019) |
| 01/18/2019 | 71 | | Memorandum in opposition to re 69 MOTION for Summary Judgment *on Remand* filed by CABLE NEWS NETWORK, INC.. (Attachments: # 1 Declaration Third Decl. of Charles D. Tobin, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Text of Proposed Order)(Tobin, Charles) (Entered: 01/18/2019) |
| 01/18/2019 | 72 | | MOTION to Unseal Document by CABLE NEWS NETWORK, INC. (Attachments: # 1 Text of Proposed Order)(Tobin, Charles) (Entered: 01/18/2019) |
| 02/12/2019 | 73 | | Unopposed MOTION for Extension of Time to *File Combined Opposition to Pl's Cross−Motion for Summ. J. and Reply in Support of Def's Mot. for Summ. J., and Opp. to Pl's Mot. for Access to Sealed Records* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Federighi, Carol) (Entered: 02/12/2019) |
| 02/12/2019 | | | MINUTE ORDER GRANTING Defendant's 73 Motion for Extension of Time to File. The Court ORDERS that: 1) Defendant shall file its opposition to Plaintiff's renewed cross−motion, opposition to Plaintiff's access motion, and reply in support of Defendant's renewed motion by March 1, 2019; and 2) Plaintiff shall file its replies in support of its renewed cross−motion and access motion by March 22, 2019. So ORDERED by Judge James E. Boasberg on 2/12/2019. (lcjeb2) (Entered: 02/12/2019) |
| 02/12/2019 | | | Set/Reset Deadlines: Response to Cross Motions due by 3/1/2019. Reply to Cross Motions due by 3/22/2019. (znbn) (Entered: 02/13/2019) |
| 03/01/2019 | 74 | | REPLY to opposition to motion re 69 MOTION for Summary Judgment *on Remand* filed by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Attachments: # 1 Declaration of Michael Seidel)(Federighi, Carol) (Entered: 03/01/2019) |
| 03/01/2019 | 75 | | Memorandum in opposition to re 70 Cross MOTION for Summary Judgment filed by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Attachments: # 1 Declaration of Michael Seidel, # 2 Text of Proposed Order)(Federighi, Carol) (Entered: 03/01/2019) |
| 03/01/2019 | 76 | | Memorandum in opposition to re 72 MOTION to Unseal Document filed by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Attachments: # 1 Text of Proposed Order)(Federighi, Carol) (Entered: 03/01/2019) |
| 03/22/2019 | 77 | | REPLY to opposition to motion re 70 Cross MOTION for Summary Judgment filed by CABLE NEWS NETWORK, INC.. (Tobin, Charles) (Entered: |

| | | | |
|---|---|---|---|
| | | | 03/22/2019) |
| 03/22/2019 | 78 | | REPLY to opposition to motion re 72 MOTION to Unseal Document filed by CABLE NEWS NETWORK, INC.. (Tobin, Charles) (Entered: 03/22/2019) |
| 03/28/2019 | | | MINUTE ORDER: The Court ORDERS that by April 1, 2019, the Government shall submit to the Court for *in camera* inspection clean and redacted copies of the documents in dispute here. So ORDERED by Judge James E. Boasberg on 3/28/2019. (lcjeb2) (Entered: 03/28/2019) |
| 03/28/2019 | | | Set/Reset Deadlines: In−Camera Submission due by 4/1/2019. (lsj) (Entered: 03/28/2019) |
| 04/01/2019 | | | MINUTE ORDER: The Court ORDERS that, by April 8, 2019, the Government shall file a Notice indicating whether the completion of the Special Counsel's investigation permits the Government to release more material from the Archey Declarations and the *ex parte* sealed proceeding. So ORDERED by Judge James E. Boasberg on 4/1/2019. (lcjeb2) (Entered: 04/01/2019) |
| 04/01/2019 | | | Set/Reset Deadlines: The Government shall file a Notice indicating whether the completion of the Special Counsel's investigation permits the Government to release more material from the Archey Declarations and the ex parte sealed proceeding by 4/8/2019. (znbn) (Entered: 04/01/2019) |
| 04/08/2019 | 79 | | RESPONSE to Order of the Court re Minute Order filed on April 1, 2019 by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION, U.S. DEPARTMENT OF JUSTICE re Order, (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Federighi, Carol); Modified event and text on 4/9/2019 (tth). (Entered: 04/08/2019) |
| 04/11/2019 | 80 | | RESPONSE re 79 Notice (Other), filed by CABLE NEWS NETWORK, INC.. (Tobin, Charles) (Entered: 04/11/2019) |
| 04/15/2019 | 81 | | NOTICE *of Filing of Declaration of the Federal Bureau of Investigation* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Attachments: # 1 Declaration (Sxith) of David Hardy)(Federighi, Carol) (Entered: 04/15/2019) |
| 04/16/2019 | 82 | | RESPONSE re 81 Notice (Other) filed by CABLE NEWS NETWORK, INC.. (Tobin, Charles) (Entered: 04/16/2019) |
| 04/18/2019 | | | MINUTE ORDER: In light of the release today of the Special Counsel's Report, the Court ORDERS that by April 25, 2019, the Government shall file a Notice with the Court indicating whether such release alters the Government's position in relation to any withheld portions of the Comey memos, the Archey Declaration, or the *ex parte* proceeding. The Court will require that a transcript of such proceeding be promptly created and transmitted to the Government for review. So ORDERED by Judge James E. Boasberg on 4/18/2019. (lcjeb2) (Entered: 04/18/2019) |
| 04/18/2019 | | | Set/Reset Deadlines: Government shall file a Notice with the Court indicating whether such release alters the Government's position in relation to any withheld portions of the Comey memos, the Archey Declaration, or the ex parte proceeding by 4/25/2019. (znbn) (Entered: 04/18/2019) |

| 04/23/2019 | 83 | | Unopposed MOTION for Extension of Time to *File Notice in Response to Court's Order of April 18, 2019* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Federighi, Carol) (Entered: 04/23/2019) |
|---|---|---|---|
| 04/23/2019 | | | MINUTE ORDER GRANTING Unopposed 83 Motion for Extension of Time. The Court ORDERS that the Government shall file its Notice by May 7, 2019. So ORDERED by Judge James E. Boasberg on 4/23/2019. (lcjeb2) (Entered: 04/23/2019) |
| 04/23/2019 | | | Set/Reset Deadlines: Government to file its Notice by 5/7/2019. (znbn) (Entered: 04/24/2019) |
| 05/07/2019 | 84 | | RESPONSE TO ORDER re MINUTE Order filed on 4/18/2019 by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Federighi, Carol); Modified event and text on 5/8/2019 (tth). (Entered: 05/07/2019) |
| 05/07/2019 | | | MINUTE ORDER: Given the Government's position in its 84 Notice, the Court ORDERS that the Government shall promptly release to Plaintiff an unredacted copy of the transcript of the January 22, 2018, *ex parte* sealed proceeding. So ORDERED by Judge James E. Boasberg on 5/7/2019. (lcjeb2) (Entered: 05/07/2019) |
| 06/07/2019 | 85 | | ORDER: The Court ORDERS that: 1) Defendant's 69 Motion for Summary Judgment is GRANTED IN PART as to redactions 6, 8 through 21, and 24 in the Comey Memos and DENIED IN PART as to redactions 1 through 5, 7, 22, and 23 in the Comey Memos; 2) Plaintiff's 70 Cross–Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART along the same lines; 3) Plaintiff's 72 Motion for Access to Judicial Records is GRANTED; and 4) Judgment is ENTERED in favor of each side in part. Signed by Judge James E. Boasberg on 6/7/2019. (lcjeb2) (Entered: 06/07/2019) |
| 06/07/2019 | 86 | | MEMORANDUM OPINION re 85 Order. Signed by Judge James E. Boasberg on 6/7/2019. (lcjeb2) (Entered: 06/07/2019) |
| 07/05/2019 | 87 | | MOTION to Amend/Correct 85 Order on Motion for Summary Judgment,,,,,, Order on Motion to Unseal Document,, 86 Memorandum & Opinion by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Federighi, Carol) (Entered: 07/05/2019) |
| 07/19/2019 | 88 | | RESPONSE re 87 MOTION to Amend/Correct 85 Order on Motion for Summary Judgment,,,,,, Order on Motion to Unseal Document,, 86 Memorandum & Opinion filed by CABLE NEWS NETWORK, INC.. (Attachments: # 1 Text of Proposed Order)(Tobin, Charles) (Entered: 07/19/2019) |
| 07/19/2019 | 89 | | MOTION for Attorney Fees by CABLE NEWS NETWORK, INC. (Attachments: # 1 Exhibit A CNN correspondence to FBI, # 2 Exhibit B FBI response, # 3 Text of Proposed Order)(Tobin, Charles) (Entered: 07/19/2019) |
| 07/25/2019 | 90 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 87 MOTION to Amend/Correct 85 Order on Motion for Summary Judgment,,,,,, Order on Motion to Unseal Document,, 86 Memorandum & Opinion by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION |

| | | | |
|---|---|---|---|
| | | | (Federighi, Carol) (Entered: 07/25/2019) |
| 07/25/2019 | | | MINUTE ORDER GRANTING Defendant's 90 Motion for Extension of Time. The Court ORDERS that Defendant shall file its Reply in support of its 87 Motion by August 2, 2019. So ORDERED by Judge James E. Boasberg on 7/25/2019. (lcjeb2) (Entered: 07/25/2019) |
| 07/25/2019 | | | Set/Reset Deadlines: Replies due by 8/2/2019. (znbn) (Entered: 07/25/2019) |
| 08/01/2019 | 91 | | MOTION to Stay re 89 MOTION for Attorney Fees by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Attachments: # 1 Text of Proposed Order)(Federighi, Carol) (Entered: 08/01/2019) |
| 08/02/2019 | | | MINUTE ORDER: If Plaintiff opposes Defendant's 91 Motion, it shall file an opposition by August 6, 2019. So ORDERED by Judge James E. Boasberg on 8/2/2019. (lcjeb2) (Entered: 08/02/2019) |
| 08/02/2019 | 92 | | REPLY to opposition to motion re 87 MOTION to Amend/Correct 85 Order on Motion for Summary Judgment,,,,,, Order on Motion to Unseal Document,, 86 Memorandum & Opinion filed by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Federighi, Carol) (Entered: 08/02/2019) |
| 08/02/2019 | | | Set/Reset Deadlines: Opposition due by 8/6/2019. (znbn) (Entered: 08/02/2019) |
| 08/05/2019 | 93 | | RESPONSE re 91 MOTION to Stay re 89 MOTION for Attorney Fees filed by CABLE NEWS NETWORK, INC.. (Tobin, Charles) (Entered: 08/05/2019) |
| 08/12/2019 | 94 | | ORDER: The Court ORDERS that Defendant's 87 Motion to Amend/Correct is DENIED. Signed by Judge James E. Boasberg on 8/12/2019. (lcjeb2) (Entered: 08/12/2019) |
| 08/12/2019 | 95 | | MEMORANDUM OPINION re 94 Order. Signed by Judge James E. Boasberg on 8/12/2019. (lcjeb2) (Entered: 08/12/2019) |
| 08/12/2019 | | | MINUTE ORDER: The Court ORDERS that Defendant's 91 Motion to Stay is DENIED and the opposition shall be due August 26, 2019. So ORDERED by Judge James E. Boasberg on 8/12/2019. (lcjeb2) (Entered: 08/12/2019) |
| 08/12/2019 | | | Set/Reset Deadlines: Opposition due by 8/26/2019. (znbn) (Entered: 08/14/2019) |
| 08/14/2019 | 96 | | MOTION to Enforce *Order of June 7, 2019* by CABLE NEWS NETWORK, INC. (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A, # 3 Exhibit B)(Tobin, Charles) (Entered: 08/14/2019) |
| 08/26/2019 | 97 | | Memorandum in opposition to re 96 MOTION to Enforce *Order of June 7, 2019* filed by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Attachments: # 1 Text of Proposed Order)(Federighi, Carol) (Entered: 08/26/2019) |
| 08/26/2019 | 98 | | MOTION to Stay re 85 Order on Motion for Summary Judgment,,,,,, Order on Motion to Unseal Document,, *(In the Alternative)* by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Federighi, Carol) (Entered: 08/26/2019) |

| 08/26/2019 | 99 | | Memorandum in opposition to re 89 MOTION for Attorney Fees filed by DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF INVESTIGATION. (Attachments: # 1 Text of Proposed Order)(Federighi, Carol) (Entered: 08/26/2019) |
|---|---|---|---|
| 08/27/2019 | | | MINUTE ORDER: As discussed in today's conference call from chambers, the Court ORDERS that: 1) Plaintiff's 96 Motion to Enforce is DENIED; and 2) Defendants' 98 Motion to Stay is GRANTED inasmuch as the Government need not release the subject material until it makes a determination on appeal. So ORDERED by Judge James E. Boasberg on 08/27/2019. (lcjeb2) (Entered: 08/27/2019) |
| 08/29/2019 | 100 | | NOTICE of Appearance by Matthew E. Kelley on behalf of CABLE NEWS NETWORK, INC. (Kelley, Matthew) (Entered: 08/29/2019) |
| 09/03/2019 | 101 | | REPLY to opposition to motion re 89 MOTION for Attorney Fees filed by CABLE NEWS NETWORK, INC.. (Tobin, Charles) (Entered: 09/03/2019) |
| 09/05/2019 | | | MINUTE ORDER: The Court ORDERS that Plaintiff's 89 Motion for Attorney Fees shall be held in abeyance until Defendant's deadline to appeal expires. So ORDERED by Judge James E. Boasberg on 09/5/2019. (lcjeb1) (Entered: 09/05/2019) |
| 10/10/2019 | 102 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 94 Order on Motion to Amend/Correct, 85 Order on Motion for Summary Judgment,,,,,, Order on Motion to Unseal Document,, 95 Memorandum & Opinion, 86 Memorandum & Opinion by FEDERAL BUREAU OF INVESTIGATION. Fee Status: No Fee Paid. Parties have been notified. (Federighi, Carol) (Entered: 10/10/2019) |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CABLE NEWS NETWORK, INC.,

     Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION,

     Defendant.

Civil Action No. 1:17-cv-01167-JEB

## NOTICE OF APPEAL

Notice is hereby given that Defendant the Federal Bureau of Investigation appeals to the United States Court of Appeals for the D.C. Circuit from the memorandum opinion (Dkt No. 86) and order and final judgment (Dkt. No. 85) entered by the Court on June 7, 2019, and from the memorandum opinion (Dkt. No. 95) and order (Dkt. No. 94) entered by the Court on August 12, 2019.

Dated: October 10, 2019

Respectfully submitted,

ETHAN P. DAVIS
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Director, Civil Division

*/s/Carol Federighi*
CAROL FEDERIGHI
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-1903
Email: carol.federighi@usdoj.gov

*Counsel for Defendant*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CABLE NEWS NETWORK, INC.,

      Plaintiff,

      v.                       Civil Action No. 17-1167 (JEB)

FEDERAL BUREAU OF
INVESTIGATION,

      Defendant.

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, the Court

ORDERS that:

1. Defendant's [69] Motion for Summary Judgment is GRANTED IN PART as to redactions 6, 8 through 21, and 24 in the Comey Memos and DENIED IN PART as to redactions 1 through 5, 7, 22, and 23 in the Comey Memos;

2. Plaintiff's [70] Cross-Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART along the same lines;

3. Plaintiff's [72] Motion for Access to Judicial Records is GRANTED; and

4. Judgment is ENTERED in favor of each side in part.

IT IS SO ORDERED.

                           /s/ *James E. Boasberg*
                           JAMES E. BOASBERG
                           United States District Judge

Date: June 7, 2019

CABLE NEWS NETWORK, INC.,

     Plaintiff,

     v.

FEDERAL BUREAU OF
INVESTIGATION,

     Defendant.

Civil Action No. 17-1167 (JEB)

## MEMORANDUM OPINION

Although the Special Counsel's investigation into Russian election interference may have come to an end, this long-running litigation over the Comey Memos marches on. Since the existence of the Memos first came to light, Plaintiff Cable News Network has steadfastly sought copies of these documents, which were penned by then-Federal Bureau of Investigation Director James Comey to memorialize his meetings with President Trump. Last year, this Court ruled that the ongoing nature of the Special Counsel's investigation barred the records from release under the Freedom of Information Act. Much has changed since. Most notably, Defendant FBI publicly released lightly redacted copies of the Memos, and the Special Counsel's investigation has concluded. Still hoping to see what lies beneath the few remaining redaction boxes, CNN now renews its quest for disclosure. It also asks the Court to release an *in camera* declaration submitted by the Bureau to justify its withholding in this litigation's last go-round. The FBI resists both requests. Finding that the Government has partially — but not completely — met its burden on the Memos, the Court will grant in part and deny in part both the FBI's Motion for Summary Judgment as well as Plaintiff's Cross-Motion. Presented with little meaningful

1

opposition from Defendant to Plaintiff's Motion for Access to Judicial Records, moreover, the Court will also grant CNN's request to see the unredacted declaration.

## I.       Background

Given the array of prior Opinions and the extensive press coverage on this topic, the background of this case will be familiar to most not lost at sea for the past couple of years. The Court will thus offer only a brief synopsis of the facts that first led to this lawsuit, saving its ink for events that have transpired since its last telling. Readers curious for a more comprehensive treatment are directed to this Court's earlier Opinions. See Cable News Network, Inc. v. FBI (CNN III), 298 F. Supp. 3d 124, 125–27 (D.D.C. 2018); Cable News Network, Inc. v. FBI (CNN II), 293 F. Supp. 3d 59, 65–67, 69–70 (D.D.C. 2018); Cable News Network, Inc. v. FBI (CNN I), 271 F. Supp. 3d 108, 110 (D.D.C. 2017).

As Director of the FBI, Comey authored several confidential memoranda immediately following his meetings with President Trump. The purpose of such documentation, Comey later reported, lay in his concern that the President "might lie about the nature of [their] meeting." CNN II, 293 F. Supp. 3d at 66 (citation omitted). After Trump fired Comey from his post, the existence of these records did not stay secret. Within a week, a New York Times story catapulted the Memos to the forefront of public consciousness, galvanizing CNN and others to seek their release. Id. at 65–66. As a means to get its hands on these written narratives, CNN employed a well-known tool: the Freedom of Information Act, 5 U.S.C. § 552 et seq. Unhappy with the Government's rebuff of its request, Plaintiff filed suit here.

Unmoved, the FBI invoked a slew of FOIA exemptions, including 1, 3, 6, 7(C), and 7(E). See CNN II, 293 F. Supp. 3d at 69. Most notably, however, Defendant relied on the protection of Exemption 7(A), which shields documents whose release "could reasonably be expected to

interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A) — namely, the then-nascent Special Counsel's investigation into Russian interference in the 2016 presidential election. To aid the Court in understanding why release could obstruct the investigation, the Government submitted two declarations from FBI Special Agent David W. Archey *in camera*. See <u>CNN II</u>, 293 F. Supp. 3d at 66–67. It also provided additional explanation in a sealed, on-the-record proceeding. <u>Id.</u> at 67. Digesting this material and thereafter agreeing that the pendency of the investigation shielded the Memos from release, the Court granted Defendant's motion for summary judgment. <u>Id.</u> at 77. "[T]he Comey Memos," the Court said, "at least for now, will remain in the hands of the Special Counsel and not the public." <u>Id.</u> at 65. In making this decision, the Court relied on Exemption 7(A) only, without passing on the merit of the FBI's other claimed exemptions. <u>Id.</u> at 69.

Understandably disappointed, CNN appealed. But before much could happen in that legal proceeding, outside circumstances intervened. In response to a congressional request, the Department of Justice agreed to turn over copies of the Comey Memos to the Hill — its calculation altered, it appears, by the recent publication of Comey's memoir — but only after redacting what it deemed to be classified information. See ECF No. 69, Attach. 3 (Def. Statement of Facts), ¶ 14; ECF No. 70 (Pl. MSJ & Opp.) at 27 (Pl. Statement of Facts), ¶¶ 3–4. The deletions were fairly minor, and these versions of the Memos soon found themselves splashed across the front pages of multiple outlets. See Def. SOF, ¶ 14; Pl. SOF, ¶ 5. The FBI then followed suit. Believing that its tight-handedness could no longer be justified, it published the redacted versions of the Memos on its public site, which is dubbed the Vault. See Def. SOF, ¶ 15. In light of these developments and "subsequent statements by government officials that release of the memoranda would no longer adversely impact any ongoing investigation," the

3

D.C. Circuit remanded the case to this Court for further proceedings without deciding the merits of Plaintiff's appeal. See Cable News Network, Inc. v. FBI, No. 18-5041, 2018 WL 3868760, at *1 (D.C. Cir. Aug. 8, 2018). With the ball now back in this Court, the facts on the ground stand thus: the vast majority of the Memos have been publicly released, but some minor redactions remain.

The FBI has again moved for summary judgment. It invokes multiple FOIA exemptions to justify keeping the redacted snippets of the Comey Memos from public view — namely, Exemptions 1, 3, and 7. See ECF No. 69, Attach. 1 (Def. MSJ) at 9, 17, 19. Believing the Government overzealous in its protectiveness, CNN, too, has moved for summary judgment, urging the Court to order release of the information underlying all 24 redactions remaining in the Memos. See Pl. MSJ & Opp. at 6, 17, 18, 20. As in the last iteration of this investigation, the Court ordered the FBI to produce *in camera* unredacted versions of the Memos to the Court. See Minute Order of Mar. 28, 2019. This has been done.

Plaintiff has also taken another step in its efforts to deliver information withheld by the Government to the public eye. It filed a second motion in this case, this time seeking access to the two *in camera* Archey Declarations from the last round of briefing and a transcript of the sealed, *ex parte* proceeding that the Court relied upon in its earlier Opinion. As the legal bases for this relief, it leans on both the First Amendment and common-law rights of access to judicial records. See ECF No. 72 (Pl. Access Mot.) at 1. On this count, the FBI has shown some flexibility. In response to CNN's Motion, Defendant released both Archey Declarations with redactions. See ECF No. 76 (Def. Access Opp.) at 2; see also ECF No. 74, Attach. 1, Exh. A (Redacted Third Archey Declaration) & Exh. B (Redacted First Archey Declaration). Plaintiff, however, is not yet satisfied and maintains its request for access to the unredacted documents.

4

25

See ECF No. 78 (Pl. Access Reply) at 1–2.  In order to provide thorough consideration, here, too, the Court required the Government to provide unredacted copies of the declarations at issue *in camera*.  See Minute Order of Mar. 28, 2019.

Despite this already protracted saga, the tale is not yet over.  Demonstrating, again, the ability of real-world events to outpace judicial proceedings, the Special Counsel announced the end of his investigation after the latest round of briefing in this case had been completed.  Because the Government's opposition to releasing some of the materials requested by CNN relied, in part, on the ongoing nature of that investigation, the Court ordered the FBI to file a notice indicating whether the investigation's conclusion altered the positions taken in its briefs.  See Minute Order of Apr. 1, 2019.  In response, the Government agreed to release one of the two Archey Declarations at issue in full and narrowed the redactions of the second.  See ECF No. 79 (First Def. Response) at 2.  A week later, the FBI filed another copy of this redacted declaration, removing again some of the claimed redactions and explaining its rationale for retaining the remainder.  See ECF No. 81 (Def. Notice) at 1.  Defendant also withdrew its reliance on one exemption — namely, Exemption 7(A), which protects information collected for ongoing law-enforcement proceedings.  See First Def. Response at 1.  The import of that last concession is narrow, however.  The FBI's invocation applied to only one redaction in the Comey Memos, and Defendant maintained that two other exemptions continued to shield this information from public release.  Id.

Just a few days after this response from the Government, the Special Counsel's Report was publicly released in redacted form.  As this disclosure, too, could affect the FBI's calculation, the Court sought to learn "whether such release alters the Government's position in relation to any withheld portions of the Comey memos, the Archey Declaration, or the *ex parte*

5

proceeding." Minute Order of Apr. 18, 2019. Once again, this development resulted in a further softening of the Bureau's stance. More specifically, it dropped its objection to release of the transcript of the *ex parte* proceeding. See ECF No. 84 (Second Def. Response) at 2. The Court thus ordered the Government to turn over that transcript to Plaintiff. See Minute Order of May 7, 2019.

Winnowed down over this lengthy history, what remains disputed are the propriety of 24 redactions to the Comey Memos and a handful of redactions to one Archey Declaration. After setting out the legal standards that govern its analysis, the Court will turn to the merits of these two legal quarrels.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Office of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011); see also Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof. See Dep't of Justice v. Tax Analysts, 492 U.S.

136, 142 n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail." Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 509 (D.C. Cir. 2011). This standard applies most saliently in national-security cases. See ACLU v. U.S. Dep't of Def., 628 F.3d 612, 624 (D.C. Cir. 2011). That said, "[u]nlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

Plaintiff's separate request for access to judicial records under the common law — the only ground ultimately addressed in this Opinion — is governed by a two-part inquiry. The Court will save a rehearsal of that legal framework for the relevant discussion below.

## III.  Analysis

It begins with Plaintiff's attempt to pry from the Government's clutches the remaining text in the Comey Memos that has not yet seen the light of day. The Court will next consider CNN's request for access to the full Archey Declaration.

A.  Comey Memos

FOIA, Plaintiff says, entitles it to view the unredacted Memos.  Congress enacted this

law "to pierce the veil of administrative secrecy and to open agency action to the light of public

scrutiny."  Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976) (quotation marks and

citation omitted).  In doing so, FOIA helps "to ensure an informed citizenry, vital to the

functioning of a democratic society, needed to check against corruption and to hold the

governors accountable to the governed."  John Doe Agency v. John Doe Corp., 493 U.S. 146,

152 (1989) (citation omitted).  The statute provides that "each agency, upon any request for

records which (i) reasonably describes such records and (ii) is made in accordance with

published rules . . . shall make the records promptly available to any person."  5 U.S.C.

§ 552(a)(3)(A).  Consistent with this statutory mandate, federal courts have jurisdiction to order

the production of records that an agency improperly withholds.  See id. § 552(a)(4)(B); Reporters

Comm., 489 U.S. at 754–55.

The Government need not, however, turn over requested information that falls into one of

nine statutorily created exemptions from FOIA's broad directive.  See 5 U.S.C. § 552(b)(1)–(9).

These exemptions are to be "narrowly construed."  Rose, 425 U.S. at 361.  That is so because

courts must "[a]t all times . . . bear in mind that FOIA mandates a 'strong presumption in favor

of disclosure.'"  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002)

(quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

Plaintiff no longer challenges the adequacy of the Government's search, an issue the

Court addressed in its prior Opinion, see CNN II, 293 F. Supp. 3d at 68–69, nor does it question

Defendant's representation as to the number of pertinent Memos in existence.  See Pl. MSJ &

8

Opp. at 5. What remains disputed, therefore, is solely the propriety of the FBI's 24 withholdings pursuant to the listed exemptions.

Because "the Government may withhold documents or portions thereof as long as [one] privilege applies," Cause of Action Inst. v. U.S. Dep't of Justice, 330 F. Supp. 3d 336, 351–52 (D.D.C. 2018), the Court "need not address the other exemptions invoked" for any particular withholding justified by a single exemption. See Ctr. for Nat'l Sec. Studies v. U.S. Dept' of Justice, 331 F.3d 918, 925 (D.C. Cir. 2003). The FBI here continues to rely on Exemptions 1 and 3, which, for ease of discussion, the Court addresses in reverse order. The parties have labeled the redactions numerically and refer to blocks of redactions in their briefs grouped by subject matter. The Court follows suit.

1. *Exemption 3*

First up is Exemption 3, which the Bureau invokes to protect redactions 8 through 19. This exemption permits agencies to withhold information "specifically exempted from disclosure by [a] statute" that meets one of two requirements. See 5 U.S.C. § 552(b)(3). Namely, that statute must either "(A)(i) require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld." Id. The applicability of Exemption 3 turns largely on the terms of the statute, as the "sole issue" necessary to invoke the exemption's protection is "the existence of a relevant statute and the inclusion of the withheld material within the statute's coverage." Morley v. CIA, 508 F.3d 1108, 1126 (D.C. Cir. 2007) (citation omitted). Although the invocation of other FOIA exemptions depends on "the detailed factual contents of specified documents," Exemption 3's applicability is thus more categorical. Id.

9

As its statutory basis for withholding here, the FBI rests on Section 102A(i)(1) of the National Security Act of 1947, codified at 50 U.S.C. § 3024(i)(1). It contends that this statute, which provides that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure," id., "prohibit[s]" the disclosure of the redacted information and thus "leaves no discretion" to the Bureau. See ECF No. 69, Attach. 2 (Fifth David M. Hardy Declaration), ¶¶ 41–42.

CNN does not dispute, "nor could [it]," that this Act "is a valid Exemption 3 statute." DiBacco v. U.S. Army, 795 F.3d 178, 197 (D.C. Cir. 2015); see also Elec. Privacy Info. Ctr. v. Dep't of Justice, 296 F. Supp. 3d 109, 121 (D.D.C. 2017) (noting that Director of National Intelligence "has delegated enforcement of this National Security Act mandate to the heads of the 17 agencies that constitute the 'Intelligence Community,'" including FBI); Pl. MSJ & Opp. at 17–18 (discussing Exemption 3 arguments). The remaining question thus becomes whether the redacted information falls within the statute's coverage — i.e., whether turning over the information would result in the disclosure of "intelligence sources and methods." 50 U.S.C. § 3024(i)(1).

The D.C. Circuit has interpreted this provision of the Act broadly, holding that material is properly withheld if it "relates to intelligence sources and methods," Larson, 565 F.3d at 865 (emphasis added) (citation omitted), or "can reasonably be expected to lead to unauthorized disclosure of" such material. See Halperin v. CIA, 629 F.2d 144, 147 (D.C. Cir. 1980) (citation omitted). Courts have recognized that the Act's protection of sources and methods is a "near-blanket FOIA exemption." Elec. Privacy Info. Ctr. v. Office of Dir. of Nat'l Intelligence, 281 F. Supp. 3d 203, 213 (D.D.C. 2017) (citation omitted); accord Whalen v. U.S. Marine Corps, 407 F. Supp. 2d 54, 59 n.5 (D.D.C. 2005) (quoting Minier v. CIA, 88 F.3d 796, 801 (9th Cir. 1996)). It

includes the "power to withhold superficially innocuous information on the ground that it might enable an observer to discover the identity of an intelligence source [or method]." CIA v. Sims, 471 U.S. 159, 178 (1985). This is so because, in the intelligence context, "bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself." Id. (internal quotation marks omitted).

The Bureau's assessments in this realm must not be lightly brushed off. In enacting the National Security Act, "Congress gave [the intelligence agencies] broad power to control the disclosure of intelligence sources." Sims, 471 U.S. at 173. "[I]t is the responsibility of" these agencies, and "not that of the judiciary, to weigh the variety of complex and subtle factors" inherent in the intelligence context. Id. at 180. Because of this "'sweeping power,' courts are required to give 'great deference' to the [agency's] assertion that a particular disclosure could reveal intelligence sources or methods." Whitaker v. CIA, 64 F. Supp. 3d 55, 63–64 (D.D.C. 2014) (quoting Berman v. CIA, 501 F.3d 1136, 1140 (9th Cir. 2007)).

Having reviewed both the Government's rationale and the unredacted Memos, the Court concludes that the FBI has met its minimal burden. At issue here are several redactions whose disclosure — as described in the Bureau's publicly filed affidavit — would reveal whether the FBI used information from "confidential intelligence sources" and the "reliability of that information," as well as the Bureau's possible reliance on particular intelligence methods to gather other material. See Fifth Hardy Decl., ¶ 31 (characterizing redaction blocks 10–19). Other portions of the redactions concern "a statement about information known to the FBI concerning Lieutenant General Flynn as of a particular date" and "non-public details about to whom a defensive intelligence briefing was provided." Id. (characterizing redaction blocks 8–9).

11

If the redacted text were made public, the FBI says, it would reveal Defendant's intelligence practices "at a particular time and in relation to a particular set of circumstances." Id., ¶¶ 32; accord id., ¶ 33. This is knowledge that, the Bureau contends, "[a]dversaries could use . . . in conjunction with other information" to "reveal particular, singular details about the FBI's intelligence interests, priorities, activities, and methods." Id., ¶¶ 32–33. For this reason, the Bureau contends that the information properly falls within the statute's coverage. Id., ¶ 44; see also Def. MSJ at 17–18.

Combining the D.C. Circuit's broad interpretation of the statutory language and the deference owed to the FBI's determination, the Court has little trouble concluding that the redacted information "relates" to intelligence sources and methods. See Larson, 565 F.3d at 865. This is particularly so because, as mentioned above, the Bureau is empowered to "withhold superficially innocuous information on the ground" that it may offer a piece of a puzzle whose completion would reveal information about an intelligence source or method. See Sims, 471 U.S. at 178.

Understanding this, Plaintiff attempts a flanking maneuver. The Government, it says, has failed to establish that releasing the information at issue would cause any harm. See Pl. MSJ & Opp. at 17. CNN offers the following building blocks for this argument. It starts by pointing to its contention that Defendant came up short in its attempt to demonstrate the harm necessary to justify a different exemption — namely, Exemption 1's protection for properly classified information. Id. "[F]or all the same reasons," it then says, the Government has not met its burden under Exemption 3 because it has not made a sufficient "showing of harm to 'intelligence sources and methods.'" Id. This is especially true, CNN continues, in light of "the vast amount of information already available to the public." Id.

12

Here, Plaintiff hits a roadblock. Although a showing of harm to national security is necessary to invoke the protection of Exemption 1, Exemption 3 includes no comparable element. See Associated Press v. FBI, 265 F. Supp. 3d 82, 97 (D.D.C. 2017); Elgabrowny v. CIA, 2019 WL 1440345, at *14 (D.D.C. Mar. 31, 2019). Rather, the "sole issue" after finding a relevant statute is "the inclusion of the withheld material within the statute's coverage." Morley, 508 F.3d at 1126. And the "National Security Act does not require the [agency] to find that disclosure of the information would be expected to harm national security." Elgabrowny, 2019 WL 1440345, at *14; see also Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv., 608 F.2d 1381, 1390 (D.C. Cir. 1979) (stating that while "specific showing of potential harm to national security" is "necessary for Exemption 1," it "is irrelevant to the language of" another exempting statute). Nor does the Act's text reveal any other necessary showing of harm. See 50 U.S.C. § 3024(i)(1). In fact, the scope of information in the public sphere — which serves as the primary pillar of Plaintiff's argument — "bears no legal significance" in this context. See Elgabrowny, 2019 WL 1440345, at *14. All that is necessary is that "the withheld material relates to intelligence sources and methods." Larson, 565 F.3d at 865 (citation omitted).

Because the Government's invocation of Exemption 3 requires no showing of harm, this exemption "presents an easier hurdle for the agency" than Exemption 1. See Associated Press, 265 F. Supp. 3d at 97. The Court's conclusion that the Act is a qualifying statute whose plain language covers the Bureau's redactions thus settles the matter. The purported deficiency to which Plaintiff points has no bearing on the operative question here.

Perhaps anticipating this conclusion, CNN suggests in its Reply brief that the FBI has not shown that the redacted information could "reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods." ECF No. 77 (Pl. Reply) at 4. The Court

13

interprets this sentence as an intimation that the redacted information does not fall within the National Security Act's coverage, something CNN did not seem to challenge in its opening brief. But that implication is hard to confidently discern, as Plaintiff offers no elaboration beyond this single sentence. And if that is indeed its intended effect, it falls far short. For the reasons already stated, the FBI has met its burden: the Act's "broad[]" coverage, see Leopold v. CIA, 106 F. Supp. 3d 51, 57 (D.D.C. 2015), encompasses the redacted references to the use, reliability, and information gleaned from various intelligence sources. See Fifth Hardy Decl., ¶¶ 32–33. The Court does not have any reason to doubt the FBI's assessment that disclosing the information at issue could "reveal particular, singular details about the FBI's intelligence interests, priorities, activities, and methods." Id., ¶ 32. The Court will sustain Defendant's withholdings here.

### 2. *Exemption 1*

What remains are redactions 1 through 7 and 20 through 24, which the FBI posits are protected by Exemption 1. This exemption protects properly classified material. More precisely, it shields from disclosure matters that are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). An agency invoking this exemption must make both a procedural and substantive showing — namely, that it "complies with classification procedures established by the relevant executive order and withholds only such material as conforms to the order's substantive criteria for classification." Mobley v. Dep't of Justice, 870 F. Supp. 2d 61, 66 (D.D.C. 2012) (citing King v. Dep't of Justice, 830 F.2d 210, 214 (D.C. Cir. 1987)); see also Lesar v. Dep't of Justice, 636 F.2d 472, 483 (D.C. Cir. 1980) ("To be classified properly, a document must be classified in

14

accordance with the procedural criteria of the governing Executive Order as well as its substantive terms.").

Like other FOIA exemptions, the invoking agency bears the burden of establishing the applicability of this one. See Larson, 565 F.3d at 863. As a general matter, it satisfies this task with an affidavit that "describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith." ACLU, 628 F.3d at 619. In the national-security context, the Court grants an especially high degree of deference to the Government's judgment. "Because courts lack the expertise to second-guess . . . agency opinions in the typical national security FOIA case," they "must accord substantial weight to an agency's affidavit concerning the details of the classified status of the dispute record." Id. (internal quotation marks omitted). Courts thus find "it unwise to undertake searching judicial review," Ctr. for Nat'l Sec. Studies, 331 F.3d at 927, and instead defer to "an agency's justification for invoking a FOIA exemption" that "appears 'logical' or 'plausible.'" Wolf v. CIA, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

Deference, however, "is not equivalent to acquiescence." Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998). A declaration passes muster "only if it is sufficient 'to afford . . . the district court an adequate foundation to review[] the soundness of the withholding.'" Id. (quoting King, 830 F.2d at 218). For this reason, "conclusory affidavits that merely recite statutory standards, or are overly vague or sweeping will not, standing alone, carry the government's burden." Larson, 565 F.3d at 864. Along similar lines, the Government's failure to establish "a logical connection between the disclosure of" the subject information "and a risk to the national security" — a necessary element under Exemption 1, as explained below —

dooms its attempt to invoke this protection. See Rosenberg v. U.S. Dep't of Def., 342 F. Supp. 3d 62, 86 (D.D.C. 2018); see also ACLU, 628 F.3d at 624 (stating that certain withholdings are "exempt from disclosure under exemption 1[] only if the [agency] can establish that public disclosure of the withheld information will harm national security"). Put another way, the agency must set forth a plausible rationale; it "cannot meet its burden of justifying non-disclosure simply by invoking the phrase 'national security.'" Coldiron v. U.S. Dep't of Justice, 310 F. Supp. 2d 44, 53 (D.D.C. 2004) (citation omitted).

To justify its redactions of the Comey Memos, the FBI submitted the declaration of David M. Hardy, Section Chief of the Bureau's Records/Information Dissemination Section of the Information Management Division. See Fifth Hardy Decl., ¶ 1. In his declaration, Hardy invokes Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), as the basis for Defendant's use of Exemption 1. Id., ¶¶ 2, 19–39. This Order establishes procedures and standards to govern the federal government's classification of records. It requires both substantive and procedural steps. On the substantive side — the only disputed step here — the Executive Order demands that the information pass two separate standards. First, its disclosure must "reasonably be expected to cause identifiable or describable damage to the national security." EO 13526, § 1.4. Second, the information must "pertain[] to one of" several possible categories, only one of which is at issue here: Section 1.4(d), which shields "foreign relations or foreign activities of the United States, including confidential sources." Id. This provision, the Bureau maintains, covers the remaining redactions. See Fifth Hardy Decl., ¶ 19.

CNN's challenge is straightforward. Defendant, it says, has not sustained its burden of demonstrating a logical connection between the withheld information and any adverse effect on national security. See Pl. MSJ & Opp. at 7. Plaintiff does not appear to dispute that the

16

information properly qualifies as "pertain[ing]" to "foreign relations or foreign activities of the United States." EO 13526, § 1.4(d). Like the parties, the Court will proceed through the redactions in blocks, assessing the national-security connection.

        a. Redactions 1–7

The first batch of redactions concerns Comey's recounting of a conversation with President Trump concerning former National Security Advisor Michael Flynn. As Comey recounts, Trump

> then went on to explain that he has serious reservations about Mike Flynn's judgment and illustrated with a story from that day in which the President apparently discovered during his toast to Teresa [*sic*] May that [Redaction 1] had called four days ago. Apparently, as the President was toasting PM May, he was explaining that she had been the first to call him after his inauguration and Flynn interrupted to say that [Redaction 2] had called (first, apparently). It was then that the President learned of [Redaction 3] call and he confronted Flynn about it (not clear whether that was in the moment or after the lunch with PM May). Flynn said the return call was scheduled for Saturday, which prompted a heated reply from the President that six days was not an appropriate period of time to return a call from the [Redaction 4] of a country like [Redaction 5] ("This isn't [Redaction 6] we are talking about."). He said that if he called [Redaction 7] and didn't get a return call for six days he would be very upset.

ECF No. 69, Attach 2, Exh. B (Comey Memos) at 3–4.

The redacted information, the FBI says, contains "[r]eferences to foreign countries or foreign leaders that reflect the relative importance attached by the President to contacts from one over another." Fifth Hardy Decl., ¶ 19. The Bureau contends that its disclosure "could reasonably be expected to . . . cause damage to the national security." Id., ¶ 38. The rationale underlying this conclusion, however, is somewhat curt. The Hardy Declaration merely asserts that "[i]n general," the release of any information "concerning foreign relations" can lead to

diplomatic tensions and perhaps diminished cooperation from foreign nations.  Id., ¶ 37; see also id., ¶ 38 (stating similarly).

It is here that CNN starts its fight.  That rationale may very well suffice, it says, when the withheld information contains <u>negative</u> information about foreign countries or dignitaries.  But in this case, the released information makes clear that redactions 1 through 5 and 7 reference only <u>positive</u> interactions with the United States' foreign partners.  See Pl. MSJ & Opp. at 8–9.  The release of this information, CNN contends, cannot possibly cause "damage to the national security" as required by the pertinent Executive Order.  See EO 13526, § 1.4; see also Pl. MSJ & Opp. at 9.  Given that the Executive Order leaves little ambiguity about the effect on national security required — damage is indeed necessary — Plaintiff is off to a strong start.

In its Reply brief, the FBI offers three responses.  First, it says that CNN "is not qualified to determine what will or will not affect [foreign] relations."  ECF No. 75 (Def. Opp. & Reply) at 6.  This misses the point.  Plaintiff's qualifications and preferred rationale are irrelevant; it is Defendant who has the burden of demonstrating a connection between the withheld information and harm to national security.  If it does not sustain its burden of demonstrating a "logical or plausible" connection to a damaged national-security interest, the fault lies with the Bureau.  See Rosenberg, 342 F. Supp. 3d at 86 (requiring Government to show "a logical connection between the disclosure of" the subject information "and a risk to the national security").

Second, the FBI posits that "even if release of such positive information does not harm the United States' relations with <u>that</u> particular country, it is logical and plausible that it could hurt our relations with <u>other</u> countries."  Def. Opp. & Reply at 6.  This isolated sentence does little to advance the ball.  As an initial matter, there is only a hint of this rationale in the sworn declaration that typically serves as the basis for the Court's review.  See ACLU, 628 F.3d at 619.

Hardy characterizes the redactions as reflecting the "relative importance" assigned to foreign leaders by the President. See Fifth Hardy Decl., ¶ 38. As the public version of this Memo makes clear, however, redactions 1 through 5 and 7 contain only factual or positive statements; they alone reveal nothing about the relative importance assigned to foreign leaders. Disclosing these few redactions, further, would not risk revealing the remaining one — *i.e.*, redaction 6.

If the Bureau intends to argue more in its Reply brief, it fares no better. A mere assertion that harm is "logical" or "plausible" is exactly the type of "conclusory" statement that falls short of the FBI's minimal burden. See Larson, 565 F.3d at 864. Defendant must offer a rationale that is logical or plausible; it cannot simply state that it is logical or plausible that harm will ensue. And here, the Bureau has provided no line of reasoning linking the disclosure of these redactions to any harm to the United States' relations with a foreign country or leader and a consequent harm to national security.

Grasping at a final straw, the FBI redirects its fire at the Court, saying that its job is not to "second guess" the Agency's opinion. See Def. Opp. & Reply at 7. Since the Bureau's "classification authority has determined that release of these statements would impact our relations with other countries," it says, that should be the end of the matter. Id. This is a bridge too far. What Defendant seems to be asking for here is more than deference; it wants acquiescence. Such an approach would relegate the Court to the role of the Bureau's loyal sidekick, offering only affirmation of its decisions. That, plainly, is not how judicial review works. "No matter how much a court defers to an agency, its 'review is not vacuous.'" Coldiron, 310 F. Supp. 2d at 53 (quoting Ctr. for Nat'l Sec. Studies, 331 F.3d at 939 (Tatel, J., dissenting)); see also Campbell, 164 F.3d at 30 (holding that deference "is not equivalent to acquiescence"). Although the Court will not second-guess a plausible rationale articulating a

19

line between withheld information and harm to foreign relations, it is the Bureau's job to provide that line of reasoning. Without submitting a rationale that "afford[s]" the Court "an adequate foundation to review[] the soundness of the withholding," the Government cannot prevail. See Campbell, 164 F.3d at 30 (citation omitted). It has not met this minimal burden here.

Two notes are necessary before moving to the next category of redactions. First, the Court does not impose a categorical rule that a statement must be disparaging to fall under the Executive Order's protection under § 1.4(d). Far from it. It only concludes, consistent with other courts in this district and controlling law, that the FBI must set forth a logical connection between disclosure and damage to national security. In this factual circumstance, the Bureau has not articulated the links to forge such a chain.

Second, the deficiency evident in Defendant's declaration does not extend to redaction 6. Given the statement and context, the Court has no trouble following the link offered by the FBI between disclosure and harm to national security. Although Plaintiff points out that "President Trump has insulted any number of foreign countries and leaders using far sharper language," Pl. MSJ & Opp. at 9, that does not diminish the logical likelihood that an additional statement could cause additional harm. The plausible connection is evident. The Court, therefore, will uphold the Bureau's withholding of this redaction, but not the others in this group.

b. Redaction 20

Skipping redactions 8 through 19 — which the Court has already held are properly protected by Exemption 3 — the next stop is redaction 20. In this part of his Memo, Comey states that Trump

> then pivoted to the Russians wanting an apology from Bill O'Reilly. I said I had seen that and O'Reilly's reply, which was to "call him in 2023." The President then said that O'Reilly's question about whether he respected Putin had been a hard one. [Redaction 20].

20

> He said he does respect the leader of a major country and thought that was the best answer.

Comey Memos at 7.

According to the FBI, the redacted sentence contains "a reference about the President's observation about responding to a question he was asked about Russian President Putin." Fifth Hardy Decl., ¶ 38. "In the context of other surrounding information," Hardy asserts, the "disclosure of the redacted information could reasonably be expected to impart or adversely impact relations with the referenced countries, and thus, cause harm to national security." Id.; see also id., ¶ 37 (explaining link between foreign relations and national security). Unlike some of the earlier redacted information, which is classified at the "Confidential" level, this information garnered the higher "Secret" classification. Id., ¶ 38. The FBI determined, therefore, that its disclosure could be expected to cause "serious damage" — as opposed to merely "damage" — to national security. Id.

CNN offers a single rebuttal. It says that "President Trump has already offered what is effectively every possible opinion one could have about Putin." Pl. MSJ & Opp. at 15. This "broad array" of statements "renders implausible any argument that releasing this one additional" observation could harm national security. Id.

The Court does not see things the same way. As an initial matter, the FBI has offered a "logical connection" linking disclosure to a consequent harm to national security. It requires little explanation to establish that most confidential observations about a foreign leader — other than those that are patently laudatory, which may require additional justification — could plausibly harm relations with that leader's country and thus adversely affect national security. See Rosenberg, 342 F. Supp. 3d at 86; see also Wolf, 473 F.3d at 374–75 (requiring "logical or plausible" explanation). Plaintiff's precise beef, it seems, is not with the links in this logical

21

chain — *i.e.*, if President Trump had uttered no other public statements, nothing in CNN's brief would undermine the FBI's rationale for disclosure here. Rather, it contends that any harm to foreign relations is muted by statements already in the public record. This rationale suffers from two primary deficiencies.

First, even granting CNN's premise that the President may have uttered "effectively every possibly opinion one could have," its conclusion does not necessarily follow. See Pl. MSJ & Opp. at 15. Contrary to Plaintiff's argument, it is by no means "implausible" that a further observation stated by a President could have an additional impact on relations with the subject country. Other courts in this district have endorsed the intuitive proposition that official disclosure of information already in the public realm can nevertheless affect national security. See Edmonds v. FBI, 272 F. Supp. 2d 35, 49 (D.D.C. 2003) ("[I]n the area of national security, it is accepted that an agency can determine that disclosure of information already in the public realm 'reasonably could be expected to cause damage to the national security.'") (quoting Washington Post v. U.S. Dep't of Def., 766 F. Supp. 1, 10 (D.D.C. 1991)). Said otherwise, the mere fact that a similar statement may have already been publicly uttered "does not eliminate the possibility that further disclosures can cause harm." Fitzgibbon v. CIA, 911 F.2d 755, 766 (D.C. Cir. 1990). In addition, there is a large gulf — particularly in the eyes of a foreign country — between what a public figure may say to the press (or others) in public and what she might reveal in private to the Director of the FBI.

Second, once the Government has established the logical connection necessary to invoke the exemption, the calculus about the degree of harm is not CNN's — or this Court's, for that matter — to perform. As long as the Bureau has provided a plausible rationale, tailored to this factual circumstance, "the court should not second-guess an agency's 'facially reasonable

concerns' regarding the harm disclosure may cause to national security." Coldiron, 310 F. Supp. 2d at 54 (quoting Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999). Decisions regarding the magnitude of impact from the disclosure of confidential observations on the complex world of international diplomacy are properly within the intelligence agencies' wheelhouse. See Frugone, 169 F.3d at 775. The judiciary, and CNN, are in an "extremely poor position to" question such "predictive judgments." Larson, 565 F.3d at 865 (citation omitted). And here, the FBI determined that release would cause "serious damage" to national security and thus classified the information at the "Secret" level. See Fifth Hardy Decl., ¶ 38. To the degree Plaintiff challenges the "extent" that disclosure would "harm[] national security," Pl. MSJ & Opp. at 15, that argument finds no success here in light of Defendant's plausible calculation.

The Court will, accordingly, permit the FBI to keep secret the text that lies beneath redaction 20.

### c. Redactions 21–24

Finally, the last of the redactions occur in a description of a discussion between the two men concerning foreign leaders. Comey states that Trump

> then switched topics and began to talk about Egypt and its leader, saying Obama didn't like the guy [Redaction 21]. He mentioned the Coptic church bombings and how horrible they were. He said that three Americans had been killed by an Egyptian soldier and the Egyptian leader had raised it with him. I interrupted to say that I thought he meant [Redaction 22] and an incident in Jordan. He agreed and said [Redaction 23] had told him he wanted to bring the soldier to justice quickly, but that the FBI was in some way asking them to delay. He said [Redaction 24]. I replied that I would dig into it but that I did not believe it to be true that the FBI was delaying a Jordanian prosecution.

Comey Memos at 8.

The redactions, the FBI contends, contain "information reflecting the President's impressions of specific foreign leaders." Fifth Hardy Decl., ¶ 38. For much the same reasons as redaction 20, discussed above, the Bureau thus believes that release of these impressions could harm national security. Id. Unlike that earlier redaction, however, the FBI applied the lower "Confidential" classification to this material. Id.

As to redactions 22 and 23, the Government has not toed the line. The Court fails to see, quite simply, how the redacted information contains anything about Trump's "impressions of specific foreign leaders." Id. Redaction 22 concerns a factual correction about a particular event, and redaction 23 contains information about what another foreign leader purportedly said to the President. Perhaps this information warrants protection in its own right, but if it does, it is not on the basis offered by the FBI. And because the Bureau has offered no other concrete explanation for its withholding, once this proffered rationale collapses, it is left with only abstract and conclusory statements about national security untethered to the specific information withheld. That is plainly not enough to carry its burden. The Government must offer the Court "an adequate foundation to review[] the soundness of the withholding." Campbell, 164 F.3d at 30 (quoting King, 820 F.2d at 218). Conclusory and sweeping generalizations will not suffice. See Larson, 565 F.3d at 864. The Government cannot justify its actions "simply by invoking the phrase 'national security.'" Coldiron, 310 F. Supp. 2d at 53 (citation omitted).

As for redactions 21 and 24, however, the story is different. The FBI's justification for the possible harm to national security that could result from sharing impressions of foreign leaders applies to this information. The Court finds no fault in this rationale for withholding. CNN's only response is to advocate for the categorical rule the Court rejected earlier. It contends that if the comments are positive, then they cannot possibly damage national security; if

24

they are negative, they are by now too old to have any real impact.  <u>See</u> Pl. MSJ & Opp. at 16.
The Court is unpersuaded by this position.  The complex world of international diplomacy is a
poor fit for such categorical statements, and Plaintiff's judgment about the degree of harm that
might ensue from release matters little.  Having reviewed the redactions *in camera*, the Court is
satisfied that the FBI has met its burden here.  Redactions 21 and 24 need not be released.

*　　*　　*

The final tally is now in: the FBI has properly justified its invocation of Exemption 3 for
redactions 8 through 19 and Exemption 1 for redactions 6, 20, 21, and 24.  These may continue
to be withheld.  The others — namely, redactions 1 through 5, 7, 22, and 23 — must be released,
as the FBI has only asserted the protection of Exemption 1 here, which it failed to substantiate.

### B.  <u>Archey Declaration</u>

With this tour of the Comey Memos complete, the Court moves to the last stop on its
journey.  In the previous iteration of this litigation, the FBI provided material in two *in camera*
declarations and one sealed *ex parte* proffer to justify its decision to keep the Memos secret.  In
response to Plaintiff's Motion and this Court's probing, the Bureau has now publicly released
both declarations — one in full and a second with redactions — and a transcript of the sealed
proceeding.  CNN is not satisfied.  It wants unfettered access to all the FBI's submissions to this
Court.  What remains at issue, therefore, are approximately five redactions in a single
declaration.

Plaintiff mounts its attack on two fronts.  Both the First Amendment and common-law
rights of access — two distinct but overlapping doctrines — entitle the public, CNN contends, to
know what lies beneath the black boxes.  In other words, CNN is not relying on FOIA or its
status as a requester here; it acts simply as a member of the public.  The Court begins with the

25

common law. As this route gets Plaintiff to its desired destination, the Court need not wade into the parties' constitutional arguments.

"In the courts of this country — including the federal courts — the common law bestows upon the public a right of access to public records and documents." Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 902 (D.C. Cir. 1996) (internal quotation marks omitted). This doctrine of transparency, which includes the right to access "judicial records," Nixon v. Warner Comm's, Inc., 435 U.S. 589, 597 (1978), is grounded in the public's "interest in keeping a watchful eye on the workings of public agencies." SEC v. Am. Int'l Grp., 712 F.3d 1, 3 (D.C. Cir. 2013) (internal quotation marks omitted). "[E]nsuring the integrity of judicial proceedings" serves as another pillar of this mission. See Metlife, Inc. v. Fin. Stability Oversight Council, 865 F.3d 661, 665 (D.C. Cir. 2017) (citation omitted). Given these underpinnings, the public's entitlement to judicial records "is fundamental to a democratic state." Id. (citation omitted).

1. *Preemption*

Before turning to the applicability of this right, however, the Court appreciates that two antecedent obstacles lie in Plaintiff's path. First, the Government contends that the redacted information contains "non-public information about intelligence methods" that the FBI is "obligated to protect" under the National Security Act. See ECF No. 81, Attach. 1 (Sixth David M. Hardy Declaration), ¶ 6. Although not stated in such explicit terms, what the FBI appears to argue is that this statute's strictures obviate the need to consider the applicability of the public's right to records; simply put, the Act supersedes this common-law right. Second, along similar lines, the Government invokes — although somewhat equivocally — the protection of FOIA Exemption 7(E). Id. The Court addresses the operation and applicability of each statute in turn.

a. National Security Act

Start with the National Security Act. This statute — which the Court discussed at length in the preceding section — provides that the "Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). While "it is true that the [common-law] inquiry must yield to a statute 'when Congress has spoken directly to the issue at hand,'" Metlife, 865 F.3d at 669 (quoting Ctr. for Nat'l Sec. Studies, 331 F.3d at 937), the Court concludes that the NSA is "not such a statute." Id.

The D.C. Circuit recently addressed a similar question in Metlife. There, Metlife — the party seeking to prevent disclosure — argued that the Dodd-Frank Act's mandate that "[t]he Council, the Office of Financial Research, and the other member agencies" keep certain materials confidential superseded the common-law right of access. Id. at 669. The circuit disagreed. It held that the statute's plain text required only that the agencies keep material confidential, but "imposes no such obligation on — and does not even mention — the courts" and thus did not eclipse the common-law right to judicial records. Id. In doing so, the circuit squarely rejected the argument that "when a statute requires an agency to preserve the confidentiality of administrative materials, the statute supersedes the [common-law] test and requires that agency materials be sealed during litigation." Id. at 673. And although other aspects of the statute "reinforce[d]" the circuit's conclusion, the absence of a textual application appeared sufficient to preclude Dodd-Frank from abrogating the common-law right of access to judicial records. Id. at 669.

So, too, here. In a singular directive, the National Security Act mandates that the "Director of National Intelligence" keep intelligence sources confidential but does not mention the courts. See 50 U.S.C. § 3024(i)(1). This directive looks a lot like the one at issue in Metlife.

27

As in that case, moreover, the FBI has complied with the Act's directive that intelligence agencies not disclose the information. The "'typical' question of whether a <u>court</u> should unseal those records," however, is a question that remains "governed by [the common law]." <u>Metlife,</u> 865 F.3d at 674 (emphasis added) (citing <u>In re Sealed Case,</u> 237 F. Supp. 657, 666 (D.C. Cir. 2001)). That said, as in <u>Metlife,</u> Congress's view that information within the statute's coverage warrants protection must "weigh heavily" in the Court's common-law-access inquiry. <u>Id.</u> at 675. The key takeaway, however, is that the NSA is something to be considered <u>in</u> that analysis; it is not a way <u>around</u> the inquiry.

b. FOIA

Next up is the Government's argument that an exemption from FOIA protects the redactions from release. More specifically, the FBI contends that "some of these same redactions could, if lifted, expose information that the FBI would typically redact under Exemption []7(E)." Sixth Hardy Decl., ¶ 6. Here, again, the Court must consider whether a statute — this time, FOIA — preempts the common-law right of access.

The Court does not write on a blank slate. In <u>Metlife,</u> the D.C. Circuit recently weighed in on the interaction of these two legal schemes. There, it reasoned that "[i]f FOIA . . . preempted the common-law right of access to judicial records," then "there would be little left of that right in litigation involving the federal government." 865 F.3d at 672; <u>but see</u> <u>Ctr. for Nat'l Sec. Studies,</u> 331 F.2d at 936–37 (concluding that "balanced scheme of disclosure and exemption" that Congress provided in FOIA "preempts any preexisting common law right"). The circuit thus held that the access right survived in that suit. <u>See</u> <u>Metlife,</u> 865 F.3d at 674. This conclusion initially appears to preclude the Government's reliance on FOIA to protect the information sought.

28

There may be reason to think, however, that <u>Metlife</u>'s holding is less than categorical.  <u>Id.</u> at 672–73 & n.14 (relying on factual circumstances).  This is especially so when a plaintiff employs the common-law right in a FOIA suit to seek information that FOIA itself denies.  But even if <u>Metlife</u> does leave some room for FOIA to supersede the common-law right in certain contexts, such displacement would only occur if a FOIA exemption did, in fact, apply to the records sought.  And here, for the reasons articulated below, the Government has not successfully met that burden.  The Court, therefore, need not wade into preemption's murky waters, as an assumption in the FBI's favor still leaves the Bureau short of the finish line.

In a traditional FOIA suit, the agency bears the burden of justifying its withholdings, <u>see</u> <u>Reporters Comm.</u>, 489 U.S. at 755, and the Court sees no reason why that should be any different in this scenario.  To protect information from disclosure, the agency must, at a minimum, "describe the justifications for nondisclosure with reasonably specific detail, [and] demonstrate that the information withheld logically falls within the claimed exemption." <u>Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice</u>, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (citation omitted); <u>see also</u> <u>Morley</u>, 508 F.3d at 1115 (holding that "conclusory and generalized allegations of exemptions are unacceptable") (internal quotation marks omitted).

This it has not done.  The FBI falters right off the bat, since it is not clear to the Court the redactions for which it seeks to invoke Exemption 7(E) or, in fact, whether it truly attempts to invoke it at all.  It says only that "<u>some</u> of these redactions <u>could</u>, if lifted, expose information that the FBI would <u>typically</u> redact under Exemption []7(E)."  Sixth Hardy Decl., ¶ 6 (emphases added).  The Government's statement is hopelessly equivocal.  To explain its potential withholding, moreover, the Bureau says only that the information pertains to the "law

enforcement technique of utilizing confidential human sources." Id. This sauce needs more flavor. To succeed, the Government "must at least provide some explanation of what procedures are involved and how they would be disclosed." CREW, 746 F.3d at 1102. When an agency's declaration "lacks the reasonably specific detail required to carry its burden" and "fails to give the reviewing a reasonable basis to evaluate the claim of privilege," as is the case here, the Court will not sustain its desire for secrecy. Id. at 1099–1100 (internal quotation marks omitted). Even if a properly invoked FOIA exemption would wipe out any common-law right to the information, the Bureau cannot thus rely on that protection here.

### 2. *Common-Law Right of Access to Judicial Records*

With that lengthy detour complete, the Court can now turn to Plaintiff's contention that it is owed the unredacted declaration under the common-law right of access to judicial records. A party seeking to invoke this right must clear two hurdles. First, it must demonstrate that the information to which it seeks access does, in fact, qualify as a "judicial record." In re Fort Totten Metrorail Cases, 960 F. Supp. 2d 2, 6 (D.D.C. 2013) (citing Wash. Legal Found., 89 F.3d at 902). The applicability of this category is judged according to "the role [the document] plays in the adjudicatory process." United States v. El-Sayegh, 131 F.3d 158, 163 (D.C. Cir. 1997). Something "intended to influence" a court's pending decision — a party's brief, for example — is almost certainly a judicial record, see Metlife, 865 F.3d at 668, while a document about which the court "made no decisions" and did not "otherwise rel[y]" does not qualify. See Am. Int'l Grp., 712 F.3d at 3–4. A withdrawn plea agreement the court never ruled on, for example, lies in the latter category. Id. at 3 (citing El-Sayegh, 131 F.3d at 162).

A court's conclusion that a document constitutes a judicial record triggers a "strong presumption in favor of public access." EEOC v. Nat'l Children's Ctr., Inc., 98 F.3d 1406, 1409

(D.C. Cir. 1996) (citation omitted).  But making it over this first hump does not, alone, entitle

Plaintiff to view the records it seeks, as the common-law "right is not absolute."  Am. Int'l Grp.,

712 F.3d at 3.  Rather, at the second step of the Court's inquiry, it must determine whether "the

government's interest in secrecy outweighs the public's interest in disclosure."  Id.  To apply this

broad query to a particular factual circumstance, the D.C. Circuit has crafted a multi-pronged

test, dubbed the Hubbard factors, which "fully account for the various public and private

interests at stake."  Metlife, 865 F.3d at 665–66 (citing United States v. Hubbard, 650 F.2d 293,

317–22 (D.C. Cir. 1980)).  These factors are:

> (1) the need for public access to the documents at issue; (2) the
> extent of previous public access to the documents; (3) the fact that
> someone has objected to disclosure, and the identity of that person;
> (4) the strength of any property and privacy interests asserted; (5)
> the possibility of prejudice to those opposing disclosure; and (6) the
> purposes for which the documents were introduced during the
> judicial proceedings.

Nat'l Children's Ctr., 98 F.3d at 1409 (citing Hubbard, 650 F.2d at 317–22).  A finding in favor

of the Government "might act to overcome th[e] presumption" in favor of access.  Id.

a.   Judicial Record

Turning to the records at hand, Plaintiff clears the first hurdle without breaking a sweat.

The Archey Declaration is clearly a judicial record.  In the last go-round, the Government sought

leave to file this declaration *in camera* to bolster is motion for summary judgment.  See CNN II,

293 F. Supp. 3d at 66; see also ECF No. 23 (Def. Request for Leave).  Because the FBI was

"limited in the amount of information it can provide publicly" to justify its withholdings, it

provided *in camera* information about the "harms that could reasonably be expected to flow from

disclosure."  Def. Request for Leave, ¶¶ 3–4.  After reviewing these declarations, the Court

granted the Government summary judgment.  There can be no doubt, therefore, that the

declaration was "intended to influence" the Court, see Metlife, 865 F.3d at 667, and thus played a central "role . . . in the adjudicatory process," rendering it a judicial record. See El-Sayegh, 131 F.3d at 163. The FBI does not appear to contend otherwise.

b. Hubbard Factors

This conclusion creates a presumption in favor of disclosure. See Wash. Legal Found., 89 F.3d at 902. The question upon which the propriety of the FBI's withholding then turns is whether the six Hubbard factors sufficiently tip the scales back in the Government's favor. See Nat'l Children's Ctr., 98 F.3d at 1409. The Court will march through each prong in turn.

First is "the need for public access to the documents at issue." Id. This one favors Plaintiff. Although the Court sees little public value in the specific information that remains redacted, there is enormous public interest in the Comey Memos and documents related to their disclosure. The FBI does not argue to the contrary; in fact, it does not even mention this factor. The need for public access, therefore, counsels disclosure.

The Court next weighs "the extent of previous public access to the documents." Id. There is little, in the end, helpful here. On the one hand, the FBI has already released the vast majority of the declaration. This previous public access seems to cut in favor of release. See Hubbard, 650 F.2d at 424 ("Previous access is a factor which may weigh in favor of subsequent access."); see also In re Fort Totten Metrorail Cases, 960 F. Supp. 2d at 8 (similar). Then again, the reason the FBI would like to keep the remaining redactions secret is, presumably, because the specific information is somehow distinct from what is in the public record. Defendant, however, offers no explanation or argument here. The Court thus concludes that this factor, too, tips in favor of access.

32

Third, the Court considers "the fact that someone has objected to disclosure, and the identity of that person." Nat'l Children's Ctr., 98 F.3d at 1409. On this prong, the Government makes a bit more progress. The FBI has objected to disclosure. See Sixth Hardy Decl., ¶ 6. Given that it is an agency tasked with national security, the Court takes this objection seriously. That said, "litigants to this proceeding have a lesser claim to privacy than third parties." Hyatt v. Lee, 251 F. Supp. 3d 181, 185 (D.D.C. 2017) (citation omitted). The strength of any potential objection related to national security, moreover, is taken into account in the next two prongs, obviating the need to place much weight on it here. While the Court thus takes the FBI's objection into account, it "do[es] not have the same strength as a third-party objection." Id.

The fourth and fifth prongs go hand in hand. They are "the strength of any property and privacy interests asserted" and "the possibility of prejudice to those opposing disclosure." Nat'l Children's Ctr., 98 F.3d at 1409. This is a bit of a mixed bag for the parties. The National Security Act's protection for "intelligence sources and methods" — which the FBI says applies to the redactions here, see Sixth Hardy Decl., ¶ 6 — favors withholding. Such a "congressional judgment about the importance of maintaining . . . confidentiality" creates a privacy interest in favor of keeping the records from public view, which the Court must "weigh heavily." Metlife, 865 F.3d at 675. But beyond a brief nod to this Act in Hardy's declaration, see Sixth Hardy Decl., ¶ 6, the Government does nothing to address the strength of the interests at play. To be sure, it repeatedly invoked the then-ongoing nature of the Special Counsel's investigation in its earlier briefing as a reason to keep the documents from public light. See Def. Access Opp. at 5–6, 10. That investigation, however, has now come to an end. And with it, so has the strength of the Bureau's argument.

33

Defendant's brief and subsequent filings articulate no other basis for the Court to conclude that these two prongs favor withholding. Nor is it self-evident from the Court's review of the withheld information why secrecy is important here. Perhaps the redactions constitute "superficially innocuous" material that, in conjunction with other available data, may "enable an observer to discover the identity of an intelligence source [or method]." Sims, 471 U.S. at 178. The FBI, however, has provided no such rationale, and the Court is not in the position to make such a determination without the Government's help. On the current record, therefore, these two prongs also provide little support for Defendant's position.

The sixth and final factor is "the purposes for which the documents were introduced during the judicial proceedings." Nat'l Children's Ctr., 98 F.3d at 1409. Under this prong, "[t]he public's entitlement to judicial records is commensurate with the documents' importance to the judicial proceeding in question." Matter of Leopold to Unseal Certain Elec. Surveillance Applications & Orders, 300 F. Supp. 3d 61, 96 (D.D.C. 2018). This is the "single most important" Hubbard factor. See Hubbard, 650 F.2d at 321. Although the FBI spills most of its ink on this prong, CNN still comes out ahead in the end.

The Government introduced the *in camera* declaration to persuade the Court to rule against CNN, which sought to inform the public about documents that were central to an investigation in the public eye. This Court relied on those declarations and noted their existence in its prior Opinion. See CNN II, 293 F. Supp. 3d at 66–67. This sequence of events elevates the public's interest in disclosure. See Nat'l Children's Ctr., 98 F.3d at 1409; cf. Hubbard, 650 F.2d at 427 (noting fact that documents were not "expressly relied upon by the trial judge in his decision" as reason for withholding). At first blush, therefore, the purposes for which the documents were introduced appear to cut heavily in Plaintiff's favor.

Not so fast, says the FBI. If the redacted information were released, Defendant counters, it would "impair the very . . . rights [defendants] seek to vindicate" — namely, the exemptions to FOIA. See Def. Access Opp. at 10 (quoting Hubbard, 650 F.2d at 321). Rather, the FBI continues, it is FOIA itself that should provide the appropriate framework here and submitting *in camera* declarations is routine in such cases. Id. at 10–11. That may be so. But see Metlife, 865 F.3d at 672 (concluding that FOIA does not displace common-law right). The Court, however, has already found that the Government has fallen short of meeting its burden for invoking any FOIA exemption here. And if the FBI is not, in fact, entitled to the "right" it seeks to "vindicate," then nothing in this prong counsels withholding the redacted information. The Court's initial take is also its final: the sixth Hubbard factor stands on Plaintiff's side of the aisle.

All in all, Defendant's showing under the Hubbard factors does not overcome the presumption in favor of disclosure. No factor overwhelmingly favors the Government; some, on the other hand, counsel strongly for disclosure, including the "single most important" one. See Hubbard, 650 F.2d at 321. On this record, Plaintiff must prevail.

## IV.   Conclusion

For these reasons, the Court will grant in part and deny in part Defendant's Motion for Summary Judgment and will grant in part and deny in part Plaintiff's Cross-Motion for Summary Judgment. It will also grant Plaintiff's Motion for Access to Judicial Records. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 7, 2019

| | |
|---|---|
| **CABLE NEWS NETWORK, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 17-1167 (JEB)** |
| **FEDERAL BUREAU OF INVESTIGATION,** | |
| **Defendant.** | |

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, the Court

ORDERS that Defendant's [87] Motion to Amend/Correct is DENIED.

IT IS SO ORDERED.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  August 12, 2019

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CABLE NEWS NETWORK, INC.,

     Plaintiff,

        v.                            Civil Action No. 17-1167 (JEB)

FEDERAL BUREAU OF
INVESTIGATION,

     Defendant.

## MEMORANDUM OPINION

Last June, this Court granted Plaintiff Cable News Network's motion to unseal certain judicial records. In its opposition to that request, Defendant Federal Bureau of Investigation never mentioned Freedom of Information Act Exemption 3. Nor did that exemption make any appearance in an FBI agent's declaration filed in support of the Government's position. In now seeking partial reconsideration of the Court's decision, the Bureau nevertheless contends that the Court's failure to address Exemption 3 constituted either "clear error" or "manifest injustice." The Court, Defendant believes, should have construed three sentences of the declaration — which referred to a different statute altogether — as not only invoking FOIA Exemption 3 but also fulfilling Defendant's burden of demonstrating the applicability of that exemption, and thus delivering it victory. While such a position certainly takes chutzpah, it does not take the cake here. The Motion for Reconsideration will be denied.

## I.    Background

News broke in May of 2017 that former FBI Director James Comey had penned several memos documenting his meetings with President Trump. This revelation set off a mad dash by

1

several media outlets — including CNN — to get their hands on the documents, which, like many disputes concerning government records, soon fell to the courts. Over the last two years, CNN's suit against the Bureau has gone through several twists and turns before arriving at the present Motion. Only an abbreviated rehearsal of this history need be repeated here.

In February 2018, this Court granted the FBI's first request for summary judgment and refused to release the Comey memos, citing the then-ongoing nature of the Special Counsel's investigation into Russian interference in the 2016 election. See Cable News Network, Inc. v. FBI, 293 F. Supp. 3d 59, 77 (D.D.C. 2018). In coming to this determination, the Court relied on two declarations from FBI Special Agent David W. Archey, filed under seal, and an *ex parte* proffer session. Id. at 66–67. CNN appealed, but before much could happen in that proceeding, outside circumstances changed. The Government turned over redacted versions of the memos to Congress, which in turn released them to the public. The Circuit thus remanded the matter to this Court to consider the propriety of the remaining withheld material. See Cable News Network, Inc. v. FBI, 2018 WL 3868760, at *1 (D.C. Cir. Aug. 8, 2018). Both parties again moved for summary judgment. The ensuing proceedings culminated in a decision in June granting in part and denying in part summary judgment to both CNN and the FBI. See Cable News Network, Inc. v. FBI, 2019 WL 2408644, at *1 (D.D.C. June 7, 2019).

In conjunction with its second motion for summary judgment, CNN also filed a simultaneous motion for access to the two FBI declarations filed during the first round of summary-judgment briefing, as well as a transcript of the *ex parte* proffer. See ECF No. 72 (Pl. Access Mot.). Plaintiff sought this information under both common-law and First Amendment rights of access to judicial records. Id. In response to CNN's motion, the FBI eventually turned over much of the requested information. See ECF No. 76 (Def. Access Opp.) at 2; ECF No. 75,

2

Attach. 1 (Declaration of Michael Seidel); ECF No. 81, Attach. 1 (Declaration of David M. Hardy); ECF No. 84 (Notice). Its redactions to one declaration, however, required judicial intervention. See Hardy Decl., ¶ 6. On this lingering dispute, the Court ruled that Plaintiff had met its burden under the common-law right of access. See CNN, 2019 WL 2408644, at *17. The network, therefore, was entitled to see the last unredacted Archey declaration.

The FBI now seeks reconsideration of this last decision. It has moved under Rule 59(e) to request that the Court revisit its prior reasoning, urging it to amend the Opinion to reflect that the Bureau "effectively asserted" FOIA Exemption 3 as a basis to protect the redactions in the declaration. See ECF No. 87, Attach. 1 (Def. Mot.) at 1; see also ECF No. 92 (Def. Reply) at 1–2 (similar). Defendant then asks that the Court find that this exemption covers the information at issue and, accordingly, reverse its judgment. See Def. Mot. at 1.

## II.     Legal Standard

Federal Rule of Civil Procedure 59(e) permits the filing of a motion to alter or amend a judgment when such motion is filed within 28 days after the judgment's entry. The Court must apply a "stringent" standard when evaluating Rule 59(e) motions. See Ciralsky v. CIA, 355 F.3d 661, 673 (D.C. Cir. 2004) (citation omitted). "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks and citation omitted). Critically, Rule 59(e) "is not a vehicle to present a new legal theory that was available prior to judgment." Patton Boggs LLP v. Chevron Corp., 683 F.3d 397, 403 (D.C. Cir. 2012).

3

## III.    Analysis

The FBI's core contention is that the Court failed to notice that the Government had asserted the protection of FOIA Exemption 3 in connection with the access motion. This exemption covers material "specifically exempted from disclosure by [a] statute." 5 U.S.C. § 552(b)(3). Had the Court spotted its argument and taken up this exemption on the merits, Defendant asserts, it would have ruled in the FBI's favor. See Def. Mot. at 1, 3–4. A reader familiar with the briefing in this case, however, would be forgiven for being confused about the basis for such Motion. Not once, as the FBI concedes, did it mention this exemption in any of its filings pertaining to the access motion. Id. at 3. The path by which the Bureau reaches its conclusion that the Court erred, therefore, requires a bit of explanation.

CNN filed its access motion in January of 2018. In Defendant's opposition, it tossed up a slew of reasons why Plaintiff should not get the information it wished under the common-law right of access to judicial records. See ECF No. 76 (Def. Access Opp.) at 3–6, 10–11. That Exemption 3 covered the material at issue, however, was not one of them.

Then, a few weeks after briefing wrapped up on that motion — and following the Special Counsel's announcement that his investigation had concluded — the FBI withdrew some of its redactions to the Archey declaration, but retained others. See ECF No. 79; ECF No. 81. To its release of the final version of the document at issue, which still contained some redactions, the Government attached the sworn declaration of another FBI special agent, David Hardy, who explained the FBI's rationale for its continued tight-fistedness over the remaining redacted information. Hardy pointed out that the FBI had determined that certain material must remain secret "in order to protect FBI law enforcement interests," even though the Special Counsel's investigation had concluded. Id., ¶ 6. This was so, he said, for two reasons. First, the redactions

4

contained "non-public information about intelligence methods" that the FBI was "obligated to protect . . . under the National Security Act of 1947." Id. In addition, Hardy continued, "some of these same redactions could, if lifted, expose information that the FBI would typically redact under Exemption (b)(7)(E) in a FOIA case." Id.

In its Opinion, the Court addressed each of these two reasons in turn. It first concluded that, contrary to what the Hardy declaration seemed to imply, invoking the National Security Act was not a way around the common-law right of access to judicial records. See CNN, 2019 WL 2408644, at *12–13. This conclusion followed closely from the D.C. Circuit's reasoning in Metlife, Inc. v. Financial Stability Oversight Council, 865 F.3d 661, 669–73 (D.C. Cir. 2017). The FBI's first avenue, therefore, could not deliver the outcome it sought. Next, the Court turned to the sentence in Hardy's declaration that mentioned FOIA Exemption 7(E). It concluded that the FBI's brief and equivocal statement fell far short of meeting its burden. CNN, 2019 WL 2408644, at *14. For this reason, it was unnecessary for the Court to wade into the "murky waters" flooding the intersection of the common-law right of access and FOIA's statutory scheme for transparency. Id.

Now on reconsideration, the FBI says that it meant to argue something different. Its invocation of the National Security Act, it asserts, was really an attempt to raise the Freedom of Information Act. The reasoning proceeds as follows. In its original summary-judgment briefing regarding the memos, the Bureau had relied on the former Act as the statute that "exempt[s] from disclosure" certain information under the latter Act's Exemption 3. See 5 U.S.C. § 552(b)(3); ECF No. 69, Attach. 1 (Def. MSJ) at 17–18. By referencing the National Security Act in its declaration here, the FBI now says, it intended to do the same thing. See Def. Mot. at 3. So, while it "did not expressly mention" the exemption's name or language in its briefing on access,

5

it asserts that the Court should have inferred such intention from the earlier pleadings.  Id.  The Bureau now asks the Court to "deem[] the FBI" to have "effectively asserted" Exemption 3.  Id. at 1, 3; see also Def. Reply at 1–3.

But that is not all.  Defendant seeks this mulligan in the context of Rule 59(e), which, as it acknowledges, requires amendment only in the face of "an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." Def. Mot. at 2 (quoting Johnson v. Penn Camera Exchange, 583 F. Supp. 2d 81, 85 (D.D.C. 2008)).  Defendant points to no change in law or new evidence.  Its Motion, consequently, rests on it having been a "clear error" or "manifest injustice" for the Court not to have previously seen Hardy's declaration in the light the FBI now shines.

This is a bridge too far.  For one, if the Bureau wanted to offer legal argument on the applicability of a FOIA exemption, the Court would expect it would do so in a legal brief, rather than relying only on an FBI agent's declaration.  Here, there is no basis whatsoever — and, to its credit, it does not contend otherwise — that Defendant came anywhere close to gesturing at the argument it now presents in any brief it filed with the Court.  Perhaps the end of the Special Counsel's investigation, which occurred after briefing on this motion had concluded, altered the FBI's calculus about the arguments on which it wanted to lean.  If that was the case, the Bureau could have moved for leave to file a supplemental brief.  It did not.  Not only would this avenue have created space for legal argument, it would also have granted opposing counsel the opportunity to respond, thus engaging in the adversarial process on which the Court depends. One statement in an FBI agent's declaration is no way to raise a new legal argument.

Even if the Court were to accept as sufficient the declaration in lieu of a brief, the FBI's position fares no better.  As already noted, the Bureau's argument rests on the proposition that it

6

raised the "substance" of an Exemption 3 argument in the declaration, if not "the words." Id. at

3. Words matter, however. It is the party's obligation to "spell out [its] arguments squarely and

distinctly," and an aggrieved litigant's failure to do so does not morph into the Court's error. See

In re Carvalho, 598 B.R. 356, 362 (D.D.C. 2019) (quoting Raines v. U.S. Dep't of Justice, 424 F.

Supp. 2d 60, 66 n.3 (D.D.C. 2006)); see also Cement Kiln Recycling Coal. v. EPA, 255 F.3d 855,

869 (D.C. Cir. 2001) ("A litigant does not properly raise an issue by addressing it in a cursory

fashion with only bare-bones arguments.") (internal quotation marks and citation omitted). Said

otherwise, the duty to deduce "all of the implications" of a perfunctory statement should not fall

on the Court's shoulders. See Tarpley v. Greene, 684 F.2d 1, 7 n.17 (D.C. Cir. 1982); cf. GSS

Grp. Ltd v. Nat'l Port Auth., 680 F.3d 805, 812 (D.C. Cir. 2012) (concluding that "district court

did not abuse its discretion in rejecting" argument that plaintiff's "Rule 59(e) arguments are not

waived because they were implicit in its original argument"). If the FBI wished the Court to

consider the protection of a specific exemption, then, at the very minimum, it should have named

that exemption. Rule 59(e) is not the vessel to now change course. See Williams v. Brennan,

322 F. Supp. 3d 140, 141 (D.D.C. 2018) (stating that Rule 59(e) not opportunity to present

"theories or arguments that could have been advanced earlier") (citation omitted); U.S. CFTC v.

McGraw-Hill Companies, Inc., 403 F. Supp. 2d 34, 36 (D.D.C. 2005); (noting that "strictness

with which" Rule 59(e) motions "are viewed is justified by the need to protect . . . the integrity of

the adversarial process in which parties are expected to bring all arguments before the court").

But wait, says the Bureau. In the Court's prior Opinion, it addressed Exemption 7(E),

although Defendant did not "formally assert[]" that exemption either but said in its declaration

only that disclosure would "expose information that the FBI would typically redact under" that

protection. See Def. Mot. at 3–4 (citation omitted). The Court, Defendant reasons, "should have

similarly deemed the FBI to have asserted . . . Exemption 3." Id. at 3. This one lands well wide of the mark. For one, the fact that the Court granted Defendant the indulgence of addressing an argument it arguably forfeited (*i.e.*, Exemption 7(E)) does not necessarily entitle the FBI to the Court's consideration of another one it did not even bother to mention by name (*i.e.*, Exemption 3). More to the point, however, the FBI at least referenced Exemption 7(E) by name in its filings, albeit the declaration, thus permitting the Court to recognize the argument it might be trying to make.

Having carefully considered the Government's Motion, the Court sees no error in its prior Opinion. Even the existence of error, however, would not be enough to compel amendment: Defendant must show "clear error" to prevail. See Firestone, 76 F.3d at 1208 (citation omitted). This is the type of mistake that is "dead wrong." Lardner v. FBI, 875 F. Supp. 2d 49, 53 (D.D.C .2012) (citation omitted). It must strike readers as erroneous "with the force of a five-week-old, unrefrigerated dead fish." Mohammadi v. Islamic Republic of Iran, 947 F. Supp. 2d 48, 78 (D.D.C. 2013), aff'd, 782 F.3d 9 (D.C. Cir. 2015) (quoting Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988)). Urging the Court to consider an argument that Defendant "did not expressly mention" but claims to have "effectively asserted" — its words, not this Court's, see Def. Mot. 1, 3 — does not come close.

Before wrapping up this matter, one quick note is worth mentioning. Even if the Bureau had both invoked Exemption 3 and met its burden of demonstrating the exemption's applicability, that alone would not lead the FBI to its final destination. Rather — keeping the rest of the Court's Opinion intact — it could only prevail if a FOIA exemption in this context supplanted the six-factor test governing the common-law right of access to judicial records. This is no simple question, compare Metlife, 865 F.3d at 672 (reasoning that "[i]f FOIA . . .

preempted the common-law right of access to judicial records," then "there would be little left of that right in litigation involving the federal government") with Ctr. for Nat. Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 937 (D.C. Cir. 2003) (concluding that "balanced scheme of disclosure and exemption" that Congress provided in FOIA "preempts any preexisting common law right"), and one the Court expressly avoided. See CNN, 2019 WL 2408644, at *14 (stating it "need not wade into [these] murky waters"). In its Motion for Reconsideration, however, the FBI does not wrestle with these issues, much less establish the correctness of the position it favors. This deficiency adds to the stack of reasons counseling against reopening this can of worms. See Firestone, 76 F.3d at 1208 (requiring showing of "clear error" or "manifest injustice" to compel amendment) (citation omitted).

## IV.  Conclusion

For these reasons, the Court will deny Defendant's Motion for Reconsideration. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  August 12, 2019